UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY<br><br>Plaintiff,<br>V.<br><br>KENT SCHOOL CORPORATION<br><br>Defendant. | : | CIVIL NO. 3 02 CV 1095 (CFD)<br><br><br><br><br><br><br>MARCH 17, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Chicago Title Insurance Company ("Chicago Title"), hereby submits the following memorandum of law in support of its motion for summary judgment, pursuant to Fed. R. Civ. P. 56 and Local Civil Rule of Procedure 56(a)(1), on its declaratory judgment action as well as the counterclaims filed by defendant Kent School Corporation ("Kent School"). The sole issue before this court is whether Chicago Title may terminate its obligation to defend Kent School pursuant to its contract of title insurance by tendering the policy limits. The resolution of this issue is apparent from the plain language of the title insurance policy. The policy provides that Chicago Title has the option to tender the policy limits and terminate its liability under the policy. Chicago

Title has tendered the policy limits to Kent School and is therefore not liable for defense costs incurred by Kent School after the policy limits were tendered. Accordingly, summary judgment should enter in favor of Chicago Title in its declaratory judgment action and against Kent School in its counterclaims.

## I. FACTUAL BACKGROUND

In September of 1966, Chicago Title Insurance Company issued a policy of title insurance to Kent School as the named insured in the amount of $100,000 for property located in Kent, Connecticut. (Complaint ¶6; Answer ¶6.) (A true and accurate copy of the policy is attached as Exhibit A.) Kent School paid a one-time premium for the title policy. (Sides Depo., Ex. B, 58:10-59:10[1].)

In 1975, representatives of the Schaghticoke tribe commenced a lawsuit against Kent School, claiming an interest in the title to the insured premises. (Complaint ¶7; Answer ¶7.) Kent School employed the firm of Day, Berry and Howard, LLP, to represent it in the action. (Sides Depo., 12:25; 42:5-8; Woods Depo., 79:2-6.) Kent School sent a written notice of the claim to Chicago Title under the policy and Chicago Title paid Kent School's defense costs in the action pursuant to the policy. (Complaint ¶¶8 and 9; Answer ¶¶8 and 9; Sides Depo., 63:19-65:16, 78:2-9 and Ex. 14; Woods Depo., 52:6-10.) In 1993, the United States District Court for the District of Connecticut

[1] The plaintiff will refer to the transcripts and exhibits from the deposition of Thomas B. Sides, Kent School's 30(b)(6) designee, and Susan Woods, Chicago Title's 30(b)(6) designee, as "Sides Depo., (page): (line) and (Exhibit number) and "Woods Depo., (page): (line) and (Exhibit number)" respectively.

dismissed without prejudice the Schaghticoke Tribal Nation's lawsuit. (Complaint ¶10; Answer ¶10; Woods Depo., 52:16-19; Sides Depo., 78:2-9 and Ex. 14.)

In June 1998, the Schaghticoke Tribal Nation reinstituted the lawsuit and asserted a Non-Intercourse claim against Kent School. (Complaint ¶11; Answer ¶11.) Kent School again retained Day, Berry and Howard, LLP to defend it and also employed the firm of Perkins Coie to represent it in the reinstituted action. (Sides Depo., 66:10-13, 71:21-72:13; Woods Depo., 79:7-11.) Kent School put Chicago Title on notice of the reinstituted suit by letter dated June 30, 1998. (Sides Depo., 78:2-9 and Ex. 15.) As of March 12, 2004, Chicago Title has spent a total of $695,844.21 for Kent School's legal fees in defending the two lawsuits by the Schaghticoke. (Woods Aff., Ex. D, ¶5.) These fees include experts' fees as well as defense attorneys' fees. (Id.)

For over two decades, Chicago Title has paid Kent School's defense costs pursuant to its duty to defend contained in the title policy. However, the policy does not provide that Chicago Title must pay defense costs *ad infinitum*. The policy instead provides Chicago Title with options in handling claims. One of those options is to tender the policy amount and thereby terminate its liability.

Under the policy, Chicago Title insures Kent School against loss and promises to pay defense costs, subject to the conditions contained in the policy:

> Chicago Title . . . insures the within named insured against all loss or damage not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending the title, estate or interest

> insured, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A . . . excepting all loss and damage by reason of the estates, interests, defects, objections, liens, incumbrances and other matters set forth in Schedule B, or by the conditions of this policy hereby incorporated into this contract, the loss and the amount to be ascertained in the manner provided in said conditions . . .

(*See* Exhibit A, Policy Cover Sheet.) (Emphasis added.) The "Conditions of This Policy" section provides in Section Two(a) that "This company will, at its own cost, defend the insured in all action or proceedings founded on a claim of title or encumbrances not excepted in this policy." The "Conditions of This Policy", to which the insuring provision is subject, also gives Chicago Title the option to settle claims, terminate its liability, or limit the extent of its liability under the policy in Section Five, entitled "Payment of Loss" as follows:

> (a) This company will pay, in addition to the loss, all statutory costs and allowances imposed on the insured in litigation carried on by this company for the insured under the terms of this policy. This company shall not be liable for and will not pay the fees of any counsel or attorney employed by the insured.
>
> (b) In every case where claim is made for loss or damage this company (1) reserves the right to settle, at its own cost, any claim or suit which may involve liability under this policy; or (2) may terminate its liability hereunder by paying or tendering the full amount of this policy; or (3) may, without conceding liability, demand a valuation of the insured estate or interest, . . . Such valuation less the amount of any incumbrances on said insured estate and interest not hereby insured against, shall be the extent of this company's liability for such claim . . . (Emphasis added.)

On October 2, 2001, and in subsequent communications, Chicago Title attempted to tender to Kent School the policy limits of $100,000 in an effort to terminate its liability under the policy. (Defendant's Responses to Plaintiff's First Set of Interrogatories, Ex. E, Interrogatory No. 4; Sides Depo., 76:16-77:22 and Ex. 13, 81:16-82:8, 85:6-86:1, 87:20-88:8; Woods Aff., ¶6-8 and Exhibits 1-3.) Kent School would not accept the tender of the policy limits and disputes that Chicago Title has the ability to terminate its liability by tendering the policy limits. (Complaint ¶14; Answer ¶ 14; Sides Depo., 78:1-80:17 and Ex. 14, 84:21; Woods Depo., 110:11-111:6.)

Despite tendering the policy limits and commencing of this suit, Chicago Title has continued to pay Kent School's defense costs in the reinstituted action under a reservation of rights. (Woods Aff., ¶9.)

Chicago Title instituted this action against Kent School, seeking a declaratory judgment that it is not under a duty to defend Kent School after Chicago Title tendered the policy limits of the title insurance policy. Kent School also seeks a declaratory judgment that Chicago Title is obligated to pay its defense costs and also has asserted a claim for breach of contract against Chicago Title, claiming that Chicago Title has breached or will breach its contractual obligation by its failure or refusal to pay Kent School's defense costs.

# II. ARGUMENT

## A. Legal Standard

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248.)

The moving party must make a prima facie showing that there are no genuine issues of material fact for trial by demonstrating an absence of evidence in support of the opponent's claims. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 2003 WL 462421 (2d Cir. Feb. 25, 2003); *see also* Celotex, 477 U.S. at 325. Once this initial burden has been satisfied, the burden shifts to the party opposing summary judgment to demonstrate that a genuine issue of material fact exists. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993) (citing Anderson, 477 U.S. at 250). The "mere possibility that a factual dispute may exist, without more, is not sufficient." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (citations omitted). In

determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

There are no genuine issues of material fact here. Analysis of the unambiguous terms of the title policy and the applicable law leads to the irrefutable conclusion that Chicago Title may terminate its liability and cease payment of defense costs, by tendering the policy limits. Accordingly, Chicago Title is entitled to summary judgment.

## B. Chicago Title's Motion For Summary Judgment Should Be Granted

### 1. The Plain Terms Of The Policy Allow Chicago Title To Terminate Its Liability.

Chicago Title is entitled to summary judgment in accordance with the plain, unambiguous terms of the title policy, which permits Chicago Title to terminate its liability by tendering the policy limits. "A title policy, by its terms, defines and limits the liability of the company." Berdon v. Chicago Title Ins. Co., No. CV90-0304940, 1996 Conn. Super. LEXIS 1040, *4 (Conn. Super. Ct., 1996)(Exhibit K). It is clear under Connecticut law that the duty to defend is circumscribed by the language of the insurance contract. Stamford Wallpaper Co. v. TIG Ins., 138 F.3d 75, 79 (2nd Cir. 1998). "The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the court are free to devise rules." Id. It is also clear under Connecticut law

that "'[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy.'" Travelers Ins. Co. v. Namerow, 257 Conn. 812, 826, 778 A.2d 168, 177 (2001) (quoting Schultz v. Hartford Fire Ins. Co., 213 Conn. 696, 702, 569 A.2d 1131 (1990)). "'The determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy.'" Id. (quoting O'Brien v. United States Fid. & Guar. Co., 235 Conn. 837, 842, 669 A.2d 1221 (1996)).

"'The policy words must be accorded their natural and ordinary meaning.'" Imperial Cas. & Indem. Co. v. State, 246 Conn. 313, 325, 714 A.2d 1230, 1236 (1998) (quoting Hansen v. Ohio Cas. Ins. Co., 239 Conn. 537, 542-43, 687 A.2d 1262 (1996)). Moreover, every provision of an insurance contract "'is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it.'" A.M. Larson Co. v. Lawlor Ins. Agency, 153 Conn. 618, 622, 220 A.2d 32, 34 (1966) (quoting Downs v. National Cas. Co., 146 Conn. 490, 495, 152 A.2d 316, 319 (1959)). Indeed, "courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties."

Schilberg Integrated Metals Corp. v. Continental Casualty Co., 263 Conn. 245, 267-68, 819 A.2d 773 (2003).

Review of the title policy provisions leads to but one possible interpretation: Chicago Title can terminate its liability by tendering the policy limits. There are two key provisions which allow Chicago Title to terminate its liability. The first key provision is contained on the cover sheet, which limits Chicago Title's liability as follows:

> Chicago Title . . .insures the within named insured against all loss or damage not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending the title, estate or interest insured, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A . . . excepting all loss and damage by reason of the estates, interests, defects, objections, liens, encumbrances and other matters set forth in Schedule B, or by the conditions of this policy hereby incorporated into this contract, the loss and the amount to be ascertained in the manner provided in said conditions . . .

(Ex. A, Cover Sheet.) (Emphasis added.) This simply means that Chicago Title will insure Kent School against all loss not exceeding $100,000 and pay the expenses of defending the title, except as provided in Schedule B of the policy and the conditions of the policy. In other words, Chicago Title insures against a loss and will defend the insured, subject to the terms and conditions of the policy.

The conditions of the policy contain the second provision which is the key to resolution of the instant controversy. Section Five(b) of the Conditions provides that

> In every case where claim is made for loss or damage this company (1) reserves the right to settle, at its own cost, any claim or suit which may involve liability under this policy; or (2) may terminate its liability hereunder by paying or tendering the full amount of this policy . . . .

(Ex. A.) (Emphasis added.) This provision clearly gives Chicago Title the option to settle a case or terminate its liability under the contract by paying or tendering the policy limits.

Courts have found that similar language in other title policies provides a clear option for an insurer to terminate liability by tendering policy limits. For instance, in Batdorf v. Transamerica Title Ins. Co., 41 Wash. App. 254, 702 P.2d 1211 (1985), the title insurer initially accepted the tender of defense of a quiet title action against the insured, but subsequently tendered the face amount of the policy and the attorney's fees incurred prior to the tender of the policy limits and withdrew from the defense. Affirming summary judgment for the title insurer, the court held that the title insurer's duty to defend was satisfied by payment of the policy limits to the insured. (*See* Exhibit G.) The court found that the cover sheet and the conditions to the title policy contained the relevant provisions. The cover sheet provided: "The total liability is limited to the amount shown in Schedule A, exclusive of costs incurred by the Company as an incident to defense or settlement of claims hereunder." Id. at 256. The conditions and stipulations of the policy provided:

> [Paragraph 1] The Company shall have the right to, and will, at its own expense, defend the insured with respect to all demands and legal proceedings founded upon a claim of title, encumbrance or defect which existed or is claimed to have existed prior to the date hereof and is not

> set forth or excepted herein; reserving however, the option at any time of settling the claim or paying the amount of this policy in full. . . . [Paragraph 3] The Company may at any time pay this policy in full, whereupon all liability of the Company shall terminate. Every payment made by the Company, exclusive of costs incurred by the Company as an incident to defense or settlement of claims hereunder, shall reduce the liability of the Company by the amount paid. The liability of the Company shall in no case exceed the actual loss of the insured and costs which the Company is obligated to pay.

Id. at 256-57. (Emphasis added.) According to the Washington appellate court, the policy clearly gave the title insurer the option to settle adverse claims, pay its insured the policy limits or defend to final judgment. Id. at 258.[2]

In Ruger v. Funk, 1996 Del. Super. LEXIS 34 (Del. Super. 1996), similar title policy language permitted the insurer to tender policy limits to terminate liability. (*See* Exhibit H.) In that case, the title insurer chose to tender its policy limits pursuant to the following policy provision:

> 5. Options to pay or otherwise settle claims. The company shall have the option to pay or otherwise settle for or in the name of an insured claimant any claim insured against or to terminate all liability and obligation of the company hereunder by paying or tendering payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred up to the time of such payment or tender of payment, by the insured claimant and authorized by the company.

---

[2] The Appellate Court of Illinois, Second District has indicated, albeit in *dicta*, that it concurs with the Batdorf court. Sabatino v. First American Title Ins. Co., 308 Ill. App. 3d 819; 721 N.E. 2d 693 (1999)(Exhibit I). After determining that the title insurer had no duty to defend the adverse claims in the underlying litigation, the court went on to say that ". . . even if we were to find defendant had a duty to defend . . . [T]he policy provides that defendant's duty to defend is subject to the option . . . to pay or otherwise settle with the insured claimant the loss or damage provided for under the policy." 721 N.E. 2d at 697.

Id. at *35-36. (Emphasis added.) The insured, however, argued that the insurer was required to pursue a quiet title action because another provision in the policy allowed the insurer to institute such an action if it so chose to do so. Id. at *36-37. The court disagreed with the insured and held that "[U]nder the terms of the contract of insurance, [the insurer] could have brought a quiet title action. It also had the option to tender the policy limits. The plaintiffs purchased from [the insurer] a policy of title insurance which gave [the insurer] the option to do precisely that." Id. at *39.

As was the case in Batdorf and Ruger, the title policy at issue in this action provides for indemnification and defense of title claims, but it also gives Chicago Title further options. Chicago Title may defend any claim pursuant to Section Two of the policy, but it also has the option to settle or tender the policy limits pursuant to Section Five of the policy which states that "in every case where claim is made for loss or damage this company (1) reserves the right to settle, at its own cost, any claim or suit which may involve liability under this policy; or (2) may terminate its liability hereunder by paying or tendering the full amount of this policy." (Ex. A.)

The fact that a title insurance policy as a contract "of indemnity only" which does "not guarantee a clear title or that there will be no losses" figured prominently in the

Batdorf decision. Batdorf, 41 Wash. App. at 258.[3] The Batdorf court framed the issue as follows:

> The issue presented is whether Transamerica's duty to defend its insureds in an action brought against them attacking their title survives Transamerica's tender to the insureds of the face amount of their title insurance policies.

41 Wash.App. at 257. The Washington appellate court concluded that "(B)y paying up, the insurer removed *all* of its further liability" including the duty to defend. Id. at 258. (Emphasis in original.) In other words, once the obligation to indemnify is satisfied by paying the policy amount, the title insurer no longer has an obligation to defend the insured.

Kent School purchased a title insurance policy which clearly gave the insurer the option to terminate its liability by tendering policy limits. Kent School could have afforded itself greater indemnity protection by increasing the amount of its policy limits, yet it chose not to do so. Thomas B. Sides, Kent School's Chief Financial Officer and 30(b)(6) deposition designee, testified that he reviews the school's comprehensive liability insurance coverage and umbrella or excess liability coverage annually and has increased that coverage a number of times. (Sides Depo. 50:5–54:21.) He has not, however, ever reviewed the title insurance coverage despite the "obvious" increase in the value of the Kent School land because title insurance coverage is a "one-time event."

[3] Connecticut courts have also recognized that title insurance is only a contract of indemnity. Cohen v. Security Title & Guaranty Co., 212 Conn. 436, 439, 562 A.2d 510 (1989).

(Sides Depo., 58:10–59:3.) Despite the fact that Kent School paid a one-time premium for a modest $100,000 policy amount, Kent School contends that it has purchased unlimited defense costs.[4]

Kent School disregards key provisions in the title policy in an effort to thwart Chicago Title's attempt to terminate its liability, but the court "must interpret the insurance contract as a whole with all relevant provisions considered together." Schultz v. Hartford Fire Ins. Co., 213 Conn. 696, 705, 569 A.2d 1131 (1990). For example, Kent School cites the insuring provision in the cover sheet, without citing the rest of the sentence which states that the insuring provision is subject to the conditions contained in the policy. (*See* Counterclaim, Count I, ¶7.) Kent School also ignores Section Five(b) of the conditions of the policy. (*See* Counterclaim, Count I, ¶¶7-8.) In its counterclaim for a declaratory action, Kent School outlines its basis for claiming that Chicago Title must continue its obligation to defend:

> 7. Under the terms of the Policy, Chicago Title has an absolute obligation to provide a defense to Kent School in the Underlying Action, unless it can achieve a settlement which protects Kent School. In relevant part, the insuring agreement explicitly provides that:
>
> > Chicago Title in consideration of the payment of its charges for the examination of title and its premium for insurance, insures [Kent School] against all loss or damage not exceeding the amount of insurance stated herein and in addition the costs and expenses of

[4] Chicago Title has already paid seven times the policy amount in defense costs with no end in sight. (Woods Aff., ¶5.)

> defending the title, estate or interest insured . . .
> (Emphasis added.)

8. In addition, Section Two of the Policy provides that:

> [Chicago Title] will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or incumbrances not excepted in this policy.

(Counterclaim, Count I.) (Emphasis in original.) The portion of the coverage page quoted in paragraph 7 of the counterclaim conveniently omits the sentence which provides that insurance against all loss and defense costs, is subject to the conditions contained in the policy.

While Section Two(a) of the conditions of the policy does provide that Chicago Title will pay for a defense, it does not lock Chicago Title into an unlimited defense. Section Two(b) of the policy provides that Chicago Title has the right to defend an action in order to prevent or reduce its liability under the policy:

> This company shall have the right and may, at its own cost, maintain or defend any action or proceeding relating to the title or interest hereby insured, or upon or under any covenant or contract relating thereto which it considers desirable to prevent or reduce loss hereunder.

(Emphasis added.) Section Five(b)(2) then allows Chicago Title to terminate its liability under the policy. Reading the policy as a whole, Chicago Title may decide that a defense is no longer "desirable to prevent or reduce loss" under the policy and may terminate its liability —including the obligation to defend—by tendering the policy amount and legal

fees incurred to that point. Such a tender is consistent with Section Two(a) because it entails the tender of the defense costs incurred to date as well as the policy amount.

Kent School seems to rely heavily on the cover sheet of the policy which provides that that Chicago Title insures "against all loss or damage not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending title . . ." (*See* Counterclaim, Count I.) Kent School claims that the duty to defend is not subject to the policy limits because of the "and in addition" language on the cover sheet. If the court were to consider only that provision of the policy, Chicago Title's duty to defend would appear to be unlimited. However, the "and in addition" language does not create an independent and continuing obligation to pay the cost of defense *ad infinitum*. Rather, this provision was included so that defense costs and other enumerated expenses the insurer agreed to pay would not reduce the limits of liability available for payments of settlements, judgments or tendering payment for termination of liability. *See* Zurich Ins. Co. v. Raymark Indust., 118 Ill. 2d 23, 52, 514 N.E.2d 150 (1987) (interpreting provision whereby insurer undertook to pay defense costs "in addition to the applicable limit of liability"); Pareti v. Sentry Indemnity Co., 536 So.2d 417, 421 (La. 1988) (interpreting provision where insurer promised to pay all defense costs incurred "in addition to our limit of liability"). "This language cannot be taken to mean that the company will continue to pay defense costs once its policy limits have been exhausted." Pareti, 536

So2d. at 421. The interpretation that the "and in addition" language simply means that defense costs will not be applied against policy limits.

Kent School also contends that Chicago Title can only tender the policy limits by offering the policy amount and all future defense expenses. (Defendant's Amended Interrogatory Response to Plaintiff's Interrogatory No. 4, Ex. F.) That interpretation of the title policy defies reason. It would make little sense for Chicago Title to tender the policy limits, without thereby ending its obligation to defend once the policy limits were tendered. Kent School's interpretation of the contract renders Section Five meaningless because there would be no good reason to tender policy limits, if the insurer would still have to defend the insured. However, "[t]he interpretation of contract requires . . . [the court] to construe all of the relevant provisions as a whole so that none is rendered meaningless." Groton v. Yankee Gas Services Co., 224 Conn. 675, 689, 620 A.2d 771 (1993). Accordingly, Kent School's interpretation fails.

The policy clearly and unambiguously provides Chicago Title with the option of terminating its liability, including the obligation to defend, by tendering the policy limits. Since Chicago Title tendered the policy limits to Kent School, Chicago Title has no duty to defend and is not liable for Kent School's defense costs. Accordingly, summary judgment should enter in favor of Chicago Title in the declaratory judgment action.

**2. Kent School's Affirmative Defense of Estoppel Fails.**

In an attempt to circumvent the policy language, Kent School asserts that Chicago Title is estopped from tendering the policy limits because defense costs have been paid for over twenty-four years. However, Kent School's estoppel argument is fatally flawed because Kent School has not alleged, nor could it ever prove, that it suffered some injury because Chicago Title has paid its defense costs for over the course of three decades.

In Connecticut, the doctrine of estoppel requires proof of two essential elements: "First the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and second the other party must change its position in reliance on those facts, thereby incurring some injury." Buell Industries, Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527, 547-48, 791 A.2d 489 (2002); *see also* W. v. W., 256 Conn. 657, 661, 779 A.2d 716 (2001) ("the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done.") "Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." Id. at 661-62.

In the present case, there are no allegations that the Chicago Title has engaged in any misleading conduct which induced Kent School to act to its own detriment. Kent

School, which was represented by counsel, does not allege that Chicago Title misrepresented the terms of the policy.

Kent School alleges in its affirmative defense that "plaintiff accepted coverage for defense of the underlying claim, and unconditionally paid defense costs with respect to the claim for a period in excess of twenty-four (24) years." Kent School also alleges that it "justifiably relied upon the plaintiff's continued defense of the underlying claim . . ." (Answer, Affirmative Defense.) These allegations are insufficient in that there are no assertions that Kent School changed its position in any way. Certainly Kent School does not contend that it would not have defended the Schaghticoke claim, if Chicago Title had refused to defend. In fact, Kent School has continued to defend the Schaghticoke action even after Chicago Title tendered the policy limits and informed Kent School that it would seek reimbursement of future legal fees. In addition, there are no allegations that Kent School was prejudiced by having its defense costs paid by Chicago Title. Indeed, the payment of defense costs has benefited Kent School. Absent any prejudice to Kent School, its estoppel argument fails. W. v. W., 256 Conn. at 661.

**3. Chicago Title Is Entitled to Reimbursement of Defense Costs Incurred After It Tendered the Policy Amount.**

If it is determined that Chicago Title had no duty to defend after the tender of the policy limits, then Chicago Title has a right to reimbursement for defense costs incurred after the tender. Under Connecticut law, an insurer may be reimbursed by the insured for

attorney's fees and other expenses paid in defending an insured against claims for which there was no obligation to defend. Security Insurance Co. v. Lumbermens Mutual Casualty Co., 264 Conn. 688, 717-18, 826 A.2d 107 (2003) (holding "[w]here the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the cost of defending the uncovered claims in order to prevent the insured from receiving a windfall); *see also* Ranger Ins. Co. v. Kovach, 3:96CV02421, 1999 U.S. Dist. LEXIS 18937, at *7 (D. Conn. Dec. 3, 1999).

In Lumbermens Mutual Casualty Co. and Kovach, the Connecticut Supreme Court and the District Court followed the holding of the California Supreme Court in Buss v. Superior Court, 16 Cal. 4th 35 (1997). In Buss, the California Supreme Court held that an insurer may be reimbursed for attorney's fees and other expenses paid in defending an insured against claims for which there was no obligation to defend. Id. at 776. The court, considering a general liability policy, held that an insurer has a right to reimbursement for costs solely allocable to non-covered claims only if the insurer specifically reserved its right to seek reimbursement of defense costs at or before the time it provided a defense. Id. The court emphasized that "the insurer has a right to reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual." Id. Thus, an insurer has the right to

reimbursement after a reservation of the right to do so in order to prevent unjust enrichment of the insured for claims not covered under the policy. Id. at 776.

Other jurisdictions have similarly held that an insurer, after a reservation of rights, has the right to be reimbursed by the insured for attorney's fees and other expenses paid in defending insureds when there was no obligation to defend. United National Insurance Co. v. SST Fitness Corp., 309 F.3d 914 (6th Cir. 2002) (holding that an insurer is entitled to reimbursement of defense costs when the insurer did not have a duty to defend any of the asserted claims where the insurer: (1) explicitly reserved its right to recoup the costs and (2) provides specific and adequate notice of the possibility of reimbursement); Colony Insurance Co. v. G & E Tires & Service, 777 So. 2d 1034 (Fla. Ct. App. 2000); Grinnel Mutual Reinsurance Co. v. Shierk, 996 F. Supp. 836 (S.D. Ill. 1998); Resure, Inc. v. Chemical Distributors, Inc., 927 F. Supp. 190 (M.D. La. 1996). These cases emphasize that an insurer, after reservation, has the right to reimbursement of defense costs from the insured after it is determined that there was no duty to defend.

Significantly, courts have applied the general rule regarding an insured's right to reimbursement equally to cases involving title insurance policies. First Fed. Sav. & Loan of Fargo, North Dakota v. Transamerica Title Insurance Co., 793 F. Supp. 265 (D. Colo. 1992), *aff'd*, 19 F.3d 528 (10th Cir. 1994); Knapp v. Commonwealth Land Title Insurance Co., 932 F. Supp. 1169 (D. Minn. 1996).

In First Federal Savings & Loan of Fargo, the court rejected the insured's argument that the title insurer's reservation of rights was a denial of its duty to defend. 793 F. Supp. at 269. The court generally noted that "[a]n insurance company may also reserve its right to deny its duty to defend and later recover for any attorney fees paid." Id. The court determined because the insured did not object to the title insurer's reservation of rights, the insurer was entitled to reimbursement. Id.

In Knapp, the title insurer stated in a reservation of rights letter that it would pay defense costs in a land title dispute and reserved the right to seek attorney's fees and costs later. 932 F. Supp. at 1170. The court found that an insurer has a right to recover defense costs, stating: "[w]here an insurer has properly met its duty and subsequently successfully challenges policy coverage, it should be entitled to the full benefit of such a challenge and be reimbursed for the benefits it bestowed, in good faith, to its insured." Id. at 1172. Moreover, the court emphasized that "[the insured's] silence in response to [the insurer's] reservations [*sic*] of rights letter, and subsequent acceptance of the defense provided by [the insurer], constitutes an implied agreement to the reservation of rights." Id. Thus, the title insurer was entitled to reimbursement from the insured. Id.

In this matter, when Chicago Title paid defense costs after tendering the policy amount, it clearly stated through its counsel that it reserved the right to recover those defense costs:

> Moreover, should it be determined that Kent School was not entitled to payment of these legal fees under the title insurance policy because Chicago Title expressly or constructively tendered the policy limits to Kent School, then Chicago Title may, to the extent permitted by the policy and existing law, seek reimbursement from your client for attorneys fees expended in its defense.

(Woods Aff., ¶8.) Under the general rule followed in Connecticut, if the court determines that Chicago Title was not under a duty to defend after the tender of the policy amount, Chicago Title is entitled to reimbursement from Kent School for the defense costs. Without reimbursement, Kent School will be unjustly enriched by the Chicago Title's payments made when Chicago Title was no longer under obligation to defend the title claim.

## III. CONCLUSION

For the foregoing reasons, Chicago Title respectfully requests that its motion for summary judgment on its declaratory judgment action and on Kent School's counterclaims be granted.

PLAINTIFF,
CHICAGO TITLE INSURANCE
COMPANY

Lawrence P. Heffernan (ct 22567)
lheffernan@rc.com
Frank F. Coulom, Jr. (ct 05230)
fcoulom@rc.com,
Marion B. Manzo (ct 22068)
mmanzo@rc.com
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8240
Fax No.: (860) 275-8299

**CERTIFICATION**

This is to certify that on this 17th day of March 2004, a copy of the foregoing was hand delivered to Francis Brady, Esq., Murtha Cullina LLP, CityPlace I, 185 Asylum Street, Hartford, CT 06103-3469.

Marion Manzo