UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY | : | |
| | : | CIVIL NO. 3 02 CV 1095 (CFD) |
| Plaintiff, | : | |
| V. | : | |
| | : | |
| KENT SCHOOL CORPORATION | : | |
| | : | |
| Defendant. | : | |
| | : | JULY 2, 2004 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO KENT SCHOOL'S MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Chicago Title Insurance Company ("Chicago Title"), respectfully submits the following memorandum of law in opposition to Kent School Corporation's ("Kent School's") motion for summary judgment and reply in support of its motion for summary judgment. Both parties have moved for summary judgment on the issue of whether Chicago Title may terminate its obligation to defend Kent School pursuant to the title insurance policy. In its effort to show Chicago Title may not terminate its obligation to defend by tendering the policy limits, Kent School offers a strained interpretation of the title policy, ignores key policy provisions and renders sections of the policy meaningless. A review of the policy which gives effect to all its provisions leads to the

conclusion that Chicago Title may terminate its liability by tendering the policy limits to Kent School. Accordingly, Chicago Title respectfully requests that the court grant its motion for summary judgment and deny Kent School's cross motion for summary judgment.

1. **Kent School Ignores A Key Provision In The Policy Which States That The Duty To Defend Is Subject To The Terms And Conditions Of The Policy.**

There is a deafening silence in Kent School's memorandum regarding conditions imposed on Chicago Title's duty to defend. Chicago Title stated in its memorandum in support of summary judgment that there were two key provisions in the policy regarding termination of the duty to defend: the cover sheet and Section Five(b) of the Conditions. Pl. Memo, at 9. The cover sheet[1] provides that Chicago Title will indemnify and pay defense costs *subject to the conditions of the policy*. (See Exhibit A, Policy Cover Sheet.)[2] Kent School does not address this section of the cover sheet, nor does it provide any argument contrary to Chicago Title's interpretation of the section. Instead, Kent School ignores the section of the cover sheet which does not support its interpretation of the policy. However, every provision of an insurance contract "'is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative,

---

[1] Chicago Title does not seek to minimize the importance of the cover sheet by labeling it a "Cover Sheet" rather than the "Insuring Agreement" as Kent School contends in its brief. Chicago Title agrees with Kent School that the "Cover Sheet" defines and grants the scope of coverage – subject to the conditions of the policy.
[2] All exhibits have been submitted by Chicago Title in conjunction with its motion for summary judgment which was filed with the court on March 17, 2004.

if any reasonable meaning consistent with the other parts of the policy can be given to it.'" A.M. Larson Co. v. Lawlor Ins. Agency, 153 Conn. 618, 622, 220 A.2d 32, 34 (1966).

Chicago Title invites the court to compare page 9 of Chicago Title's memorandum in support of summary judgment to page 9 of Kent School's memorandum in support of summary judgment. Both pages quote the Cover Sheet of the policy. However, Kent School omits the part of the cover sheet which provides that indemnification and the duty to defend are subject to the conditions contained in the policy. Def. Memo, at 9. Kent School then boldly claims that while the insuring agreement sets out the twin duties of indemnity and defense, "[t]he Insuring Agreement does not set out any mechanism for the insurance carrier to avoid the costs of defense." Id. Such a statement clearly ignores the remainder of the cover sheet which provides that Chicago Title insures against loss or damage, including the costs of defending title, "excepting all loss and damage by reason of the estates, interests, defects, objections, liens, encumbrances and other matters set forth in Schedule B, or by the conditions of this policy hereby incorporated into this contract, the loss and the amount to be ascertained in the manner provided in said conditions . . ." (Emphasis added)(Ex. A, Cover Sheet.)

This limitation on the duty to indemnify and the duty to defend incorporates all the conditions of the policy, including Section Five(b) of the Conditions which allows

Chicago Title to terminate its liability under the policy. Accordingly, Section Five(b) of the Conditions is applicable to both the duty to indemnify and the duty to defend.

**2. Kent School Advocates Illogical Interpretations Of Policy Terms.**

Kent School engages in creative interpretation of the words "full amount of this policy", "amount of insurance", "loss", "damage" and "founded on a claim of title" in its effort to show that Chicago Title may not terminate its liability under the policy. Kent School claims that Chicago Title can only terminate its liability by tendering the "full amount of the policy" which allegedly means the $100,000 indemnity plus all the costs incurred and to be incurred in defense of the Schaghticoke suit. It also claims that Section Five(b) only applies to claims for "loss" or "damage", but not to claims "founded on a claim of title." Notwithstanding the fact that Kent School's two interpretations are inconsistent, the interpretations fall apart when the cover sheet is analyzed and the plain meanings of "loss", "damage" and "amount" are clear.

The cover sheet defines what is loss or damage under the policy and how the amount to be provided to Kent School is to be calculated. The cover sheet provides:

> Chicago Title insures the within named insured against all loss or damage *not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending the title, estate or interest insured*, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A or affecting the interest of the insured therein as herein set forth . . . excepting all loss and damage by reason of the estates, interests, defects, objections, liens, encumbrances and other matters set forth in Schedule B, or by the conditions of this policy hereby incorporated into this contract, the loss and the amount to be ascertained in

> the manner provided in said conditions and to be payable upon compliance by the insured with the stipulations of said conditions, and not otherwise.

(Emphasis added)(Ex. A.) According to the cover sheet, Chicago Title insures Kent School "against all loss or damage" which Kent School sustains by reason of any defect of title affecting the premises or "affecting the interest of the insured therein as herein set forth." Id. The "loss or damage" which is insured is limited to an amount "not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending the title, estate or interest insured." Id. This means that payment of defenses costs and expenses does not reduce the $100,000 amount of insurance. See, infra at 6-9. The cover sheet further excludes from coverage "all loss and damage" due to defects, interests or liens set forth in Schedule B. (Ex. A.) Furthermore, "all loss and damage" is limited "by the conditions of this policy hereby incorporated into this contract, the loss and amount to be ascertained in the manner provided in said conditions." Id.

Kent School claims in its brief that "loss or damage" does not include defense costs incurred from a claim of title because the policy's cover sheet provides Chicago Title insures against loss or damage "and in addition the costs and expenses of defending the title, estate or interest insured." In its memorandum in support of summary judgment, Chicago Title cited case precedent regarding its argument that the "and in addition" language on the cover sheet simply meant that payment of defense costs would not reduce the limit of liability. Pl. Memo, at 16. Kent School responds to this by distinguishing the

cases on irrelevant points. Def. Memo, at 21. In Zurich Ins. Co. v. Raymark Indus., Inc., 514 N.E.2d 150, 163 (1987), the policies provided that the insurers undertook to pay defense costs and expenses "in addition to the applicable limit of liability" of their policies. The insured in Zurich, like Kent School in this case, argued that the provision created an independent and continuing obligation to pay defense costs ad infinitum. Id. The court, however, held that this provision was included so that defense costs and expenses which the insurer agreed to pay under the insuring agreement would not reduce the limits of liability available for payment of judgments or settlements. Id. The court noted that "if this provision were not included, then any payments made under Insuring Agreement II, just as amounts paid in settlement of claims and suits, could properly be charged against the indemnity limits of the policy." Id.; see also Pareti v. Sentry Ind. Co., 536 So.2d 417, 421 (1988) ("This standard policy provision simply means that defense costs will be paid separately by the insurer and will not be applied against its policy limits.")

If Kent School were correct in its assertions that the cover sheet language "and in addition the costs and expenses of defending the title, estate or interest insured" creates an independent duty to defend, rather than indicating that the limits of liability are not reduced by payments of defense costs, then the duty to defend would not be subject to the Schedule B or the conditions of the policy. This is an absurd and illogical reading of the insuring agreement. Under Kent School's reading of the cover sheet, the "and in

addition" language creates an independent duty separate from the duty to indemnify which is encompassed by the "loss or damage" language. However, the insuring agreement thereafter limits the "loss and damage" by excepting "loss and damage" related to the items listed in Schedule B. If Kent School were correct that "loss or damage" does not relate to coverage of defense costs, then Chicago Title would have to pay for defense costs also related to the items listed in Schedule B. The same logic applies to the language in the insuring agreement which incorporates the conditions of the policy. The conditions of the policy only apply to "loss and damage". Following Kent School's analysis, the conditions would only apply to "loss and damage" but not to defense costs. Kent School's interpretation simply leads to an absurd result. Chicago Title did not undertake an unlimited duty to defend. Rather, that duty to defend is subject to Schedule B and the conditions of the policy.

Section Five(b) of the Conditions, which is incorporated into the insuring agreement contained in the cover sheet, provides that "in every case where a claim is made for loss or damage this company . . . may terminate its liability hereunder by paying or tendering the full amount of this policy." Kent School tries to avoid Section Five(b) by drawing an artificial distinction between a "claim of loss" and "a claim of title." It is unclear how a claim of loss or damage under a title insurance policy is not perforce a claim of title but, a claim "made for loss or damage" includes a claim for defense costs, as the cover sheet refers to defense costs in insuring against "loss or damage." Id. Thus,

when Kent School made a claim for defense of the Schaghticoke land claim, it made a claim for loss or damage.

Kent School draws an artificial distinction between the "amount of insurance" and the "amount of the policy," asserting that they are two different amounts. In Batdorf v. Transamerica Title Ins. Co., 41 Wash. App. 254 (1985)—a case in which the policy language parallels the policy at hand—the Washington Court of Appeals drew no such distinction and allowed the title insurer to terminate its obligations by tendering the face amount of the policy. The Batdorf policy cover sheet provided that: "The total liability is limited to the amount shown in Schedule A, exclusive of costs incurred by the Company as an incident to defense or settlement of claims hereunder." Id. at 256. Likewise, the cover sheet at issue also provides Chicago Title insures against all loss or damage "not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending the title, estate or interest insured." Both policies contained a paragraph in the "Conditions" section which provided that the title insurer will defend the insured on all claims founded on title. Furthermore, both policies contained a paragraph in the conditions section which allows the insurer to terminate liability. The policy at issue provides that Chicago Title "may terminate its liability hereunder by paying or tendering *the full amount of this policy*." (Emphasis added) (Section Five(b).) The Batdorf policy provided that "The Company may at any time *pay this policy in full*, whereupon all liability of the Company shall terminate." Id. Interpreting and applying this parallel

language, the Batdorf, court allowed the title insurer to terminate its obligations, including its defense obligation, by tendering the amount of insurance. The language of the policy at hand should be interpreted in the same fashion.

**3. Case Law Cited By Kent School Is Distinguishable From The Language Of The Policy And Facts At Issue In This Case.**

Cases cited by Kent School in the "Relevant Case Law" section of its memorandum do not assist the court in interpretation of the policy at issue in this case. None of the cited cases contain policy language similar to that at issue in this case. Accordingly, the cases analyzing very different policy language are inapposite.

For instance, Kent School first cites Costagliola v. Lawyers Title Ins. Corp., 560 A.2d 1285 (N.J. Super 1989) for the proposition that a title insurer may not terminate its liability by tendering the indemnity amount of the policy. Def. Memo, at 16. However, the insurer never tried to tender the policy limits to terminate liability. Indeed, the insurer denied coverage and denied that there was any duty to defend. Costagliola, 560 A.2d at 1288. This is not similar to the situation at bar, where Chicago Title has not denied coverage. The court found in Costagliola that the title insurer wrongfully denied coverage of defense costs. Id. The insurer argued in the alternative that its liability was limited to the face amount of the policy because the policy provided: "In every case where the liability of the Company to pay loss or damage has been definitely fixed . . . the Company shall . . . pay at its option (a) the loss or damage or (b) the amount of this policy

. . ." Id. at 1287. The court rejected the argument in a three sentence analysis, stating that the duty to defend was separate from the duty to indemnify. Id. The court thereafter cited two cases which held that the duty to defend was broader than the duty to pay. Id.

The Costagliola court's scant analysis does not help Kent School. First, Chicago Title has never denied coverage under the policy. Chicago Title has been paying defense costs, unlike the insurer in Costagliola. Moreover, the language of the policies in the two cases is different as well. The Costagliola policy does not explicitly provide that the insurer may terminate its liability under the policy by tendering policy limits, unlike the policy at bar. The court's analysis is confusing at best, and is not useful for interpreting the policy at issue which contemplates tendering the policy limits before the case is lost.

Kent School's reliance on Aetna Cas. & Sur. Co. v. Sullivan, 597 N.E.2d 62 (Mass. 1992) is similarly unavailing. The policy in that case provided that "Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy." Id. at 63. The court held that the insurer could not use this language to terminate its liability before judgment or settlement. Id. Kent School uses the court holding to assert that a title insurer cannot terminate its duty to defend until the policy's indemnity limits are paid in settlement or satisfaction of judgment. However, the court in Sullivan expressly stated that the policy language was ambiguous because the meaning of "paid" was not clear. Id. at 66. The court likened the language to other policies which provided that "the duty to defend ends when the limit of liability has been exhausted", and the

meaning of "exhausted" was not clear. Id. at 65-66. The limit of liability normally would not be reached by payment of defense costs because such payments did not reduce the limit of liability. Accordingly, the only way the limit could be exhausted was by settlement or judgment.

There is a fundamental difference between Sullivan and the other cases cited by Kent School which analyze policies which end the duty to defend upon exhaustion of policy limits: the policy at hand does not have any such language. Stanley v. Cobb, 624 F.Supp. 536 (Tenn. 1986) provides a good analysis of this distinction. In Stanley the court was faced with policy language which stated: "Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted." Id. at 537. The court concluded that the insurer could not terminate its duty to defend by tendering the policy limits because the policy did not provide this option. Id. In reaching this conclusion, the court cited Batdorf v. Transamerica, 41 Wash. App. at 1213, for the proposition that other insurance policies may allow an insurer to terminate liability by tendering policy limits, so long as the policy so provides. Stanley, 624 F.Supp. at 537. The court stated:

> In [the Batdorf] case, the court interpreted a policy in which the company was obligated to defend the insured but which policy specifically reserved the option of either settling the claim or paying the amount of the policy in full. That court held, "The policy clearly gave Transamerica the *option* to settle adverse claims, pay its insured the policy limits or defend to judgment." *Id.*, at 1213 (emphasis in original). Unlike the policy in *Batdorf*, there are no provisions in American's policy in this case which give the insurer the right to avoid the obligation of defense by paying into court any definite sum of money. In the absence of a clause specifically

> granting the insurer that option, the contract of insurance in the case *sub judice* must be interpreted by its plain meaning, and any ambiguity must be resolved against the drafter of the contract.

Stanley, 624 F.Supp. at 537. Like the policy in Batdorf, and unlike the policies which refer to "exhaustion" of limits, the policy at issue in this case provides Chicago Title the option to settle, pay policy limits or defend. See Pl. Memo, at 9-10. Accordingly, the cases cited by Kent School which reference similar "exhaustion" language, including Sullivan, Samply v. Integrity Ins. Co., 476 So.2d 79 (Ala. 1985), Continental Ins. Co. v. Burr, 706 A.2d 499 (Del. 1998) and Douglas v. Allied Am. Ins., 727 N.E.2d 376 (Ill. 2000), are unavailing.

Kent School attempts to distinguish the Batdorf case by claiming that "unlike Batdorf, there is no reservation whatsoever as to Chicago Title's duty to defend." Def. Memo, at 25. Kent School also implies that had Chicago Title made such a reservation, it would have had the same "escape hatch" available to the insurer in Batdorf. Id. at 24. In fact, Chicago Title *did* make a reservation of its duty to defend. In the cover sheet, Chicago Title clearly limits its obligation to pay loss and damage (which by definition includes defense costs incurred) by incorporating the policy's Conditions. The Conditions of the policy provide Chicago Title the option of tendering the policy limits to terminate its liability. Therefore, like the insurer in Batdorf, Chicago Title did limit its duty to defend.

**4. Kent School May Not Argue That Chicago Title Waived Its Right To Terminate By Tendering The Policy Limits Because It Never Asserted Waiver As An Affirmative Defense.**

Federal Rules of Civil Procedure 8(c) requires a party to "set forth affirmatively . . . estoppel . . . waiver, and any other matter constituting an avoidance or affirmative defense." The rule is intended to notify a party of the existence of certain issues, and its mandatory language has impelled courts to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation. See Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984). Kent School did not assert waiver as an affirmative defense. Accordingly, it cannot now invoke the affirmative defense of waiver.[3]

**5. Chicago Title Has Not Waived Its Right To Terminate Liability By Providing A Defense To Kent School.**

Notwithstanding the fact that Kent School failed to raise waiver as an affirmative defense, Chicago Title did not waive its right to tender the policy limits and terminate its liability under the policy. Kent School claims Chicago Title waived its right to tender the policy limits because Chicago Title accepted coverage without issuing a reservation of rights. However, by undertaking its duty of defending Kent School, Chicago Title did not waive its right to terminate liability. Moreover, unlike Kent School suggests, Chicago

[3] While Kent School has filed a motion to amend its affirmative defenses to add waiver, Chicago Title has objected to the amendment. As of the date of submission of this memo, the Court has not yet ruled on the motion to amend the affirmative defenses.

Title is not now denying coverage. Rather, Chicago Title is exercising an option available to it under the policy.

"Waiver is the intentional relinquishment of a known right." Novella v. Hartford Accident and Ind. Co., 163 Conn. 552, 561 (1972). "To constitute waiver there must be both knowledge of the existence of the right and intention to relinquish it." Id. Kent School does not claim that Chicago Title expressly waived its right to terminate liability. Rather, Kent School claims that Chicago Title impliedly waived its right to terminate its liability because "Chicago Title accepted its defense obligation as to the insured parcel 'without reservation.'" Def. Memo, at 26. However, "to establish an implied waiver, there must be a clear, unequivocal and decisive act of a party showing such a purpose." Lamborn v. Dittmer, 873 F.2d 522, 529 (2d Cir. 1989). Kent School has not demonstrated that Chicago Title acted in any way which indicated a purpose to provide unlimited defense cost reimbursement. Kent School's argument fails because Chicago Title accepted its defense obligation in accordance with the policy.

Kent School states Chicago Title accepted its defense obligation without reservation. In support thereof, it cites a letter from Lawrence Kuder of Chicago Title to Kent School's attorney. Def. Memo, at 26. However, that letter provides: "Chicago Title desires to retain you and your firm to represent Kent School in the defense of this suit, *pursuant to and in accordance with the subject owner's policy.*" (Emphasis added.) See May 10, 1977 letter from Kuder to Rockwell appended to Elliott Affidavit at ¶ 4. By

referring to the policy, and making the retention of the law firm in accordance with the policy, Chicago Title expressly retained all the provisions of the policy applicable to the duty to defend. Chicago Title did not need to thereafter list all of the options available to it under the policy because the policy's obligations and options speak for themselves.

Kent School's citation to a treatise regarding waiver of coverage denial is also unavailing. Kent School cites a treatise which notes that an insurer waives any ground for denying coverage other than that set forth in the reservation of rights letter. Def. Brief, at 26-27. Chicago Title is not denying coverage, rather, it is choosing to exercise an option contained in the policy to terminate liability. Here, Chicago Title does not seek to avoid the policy or to deny coverage under the policy. Chicago Title is not raising an exception or exclusion which it failed to reserve. Rather, it is exercising an option available to it under the policy. Accordingly, it did not waive the right to tender the policy limits by accepting coverage and providing a defense.

Notably, Kent School has not provided any citation to cases or treatises which do not involve denial of coverage or the denial of the duty to defend. Kent School has also not provided any precedent for the proposition that an insurer must issue a reservation of rights letter to invoke options (aside from denial of coverage) available to the insurer under the policy. It makes little sense, for instance, for Chicago Title to not be able to exercise its option to settle the case just because it undertook the defense of Kent School.

Just as Chicago Title can opt to settle the case after it undertook the defense, it can also terminate its liability by tendering the policy limits.

**6. Chicago Title Is Not Estopped From Terminating Its Liability.**

Kent School has asserted the affirmative defense of estoppel to prevent Chicago Title from terminating its liability. However, Kent School has provided no legal analysis of its claim other than to refute Chicago Title's claim that Kent School has not been prejudiced. Moreover, the prejudice alleged by Kent School is highly speculative and not supported by any evidence.

"Estoppel rests on the misleading conduct of one party to the prejudice of the other. . . . In the absence of prejudice, estoppel does not exist." W. v. W., 256 Conn. 657, 661-62 (2001). "There are two essential elements to an estoppel -- the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." Tradesmens National Bank v. Minor, 122 Conn. 419, 424 (1937). "[T]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury." State v. American News Co., 152 Conn. 101, 113 (1964).

In its memorandum in support of summary judgment, Kent School does not claim that Chicago Title engaged in any misleading conduct which induced Kent School to act to its own detriment. Kent School's sole analysis of the merits of estoppel, aside from prejudice, is as follows: "Chicago Title has undertaken the defense, and Kent School has relied on that undertaking." Def. Memo, at 27. Kent School provides no further analysis of the necessary elements of estoppel and does not analyze any case precedent.[4] This lack of argument and analysis does not suffice to prove Kent School's affirmative defense.

Chicago Title did not induce Kent School into thinking it was providing an unlimited defense. Rather, Chicago Title notified Kent School that it was undertaking the defense "pursuant to and in accordance with" the policy. See May 10, 1977 letter from Kuder to Rockwell appended to Elliott Affidavit at ¶ 4. There is no evidence that Kent School was misled by Chicago Title regarding payment of defense costs. See Buell Ind., 256 Conn. at 548. Chicago Title did not state it would provide unlimited defense costs. Rather, it stated it was providing a defense pursuant to and in accordance with the policy. Kent School has always had the policy in its possession and could read for itself the section on Chicago Title's ability to terminate by tendering policy limits. "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth and that he not only did not know the true state of things, but

[4] Kent School does cite a New Jersey supreme court case, Griggs v. Bertram, 443 A.2d 163 (N.J. 1982), after claiming that estoppel precludes termination at this late date. However, Kent School provides no analysis of Griggs and does not explain why New Jersey law is relevant to this matter.

also lacked any reasonably available means of acquiring knowledge." Chotkowski v. Conn., 240 Conn. 246, 690 A.2d 368, 380 (Conn. 1997). Kent School has not claimed it lacked any reasonably available means to understand Chicago Title's duty to defend and its subsequent undertaking the defense "in accordance" with the policy. Because there was no misleading conduct by Chicago Title and because Kent School had the policy, Kent School's affirmative defense of estoppel fails. Id.

Furthermore, Kent School does not claim that it changed its position in reliance of the supposed unlimited defense. This is an essential element of estoppel which is not briefed or analyzed by Kent School in its memorandum. The Schaghticoke Tribal Nation sued Kent School in 1975. Kent School thereafter employed the firm of Day, Berry and Howard, LLP to represent and defend it in the action. (Sides Depo., 12:25; 42:5-8; Woods Depo., 79:2-6.) Chicago Title was not involved in Kent School's employment of an attorney or its initial defense. Indeed, Chicago Title was not even aware of the lawsuit until it received notice of the lawsuit two years later. (Complaint ¶¶8 and 9; Answer ¶¶8 and 9; Sides Depo., 63:19-65:16, 78:2-9 and Ex. 14; Woods Depo., 52:6-10.) Chicago Title then paid Kent School's defense costs pursuant to and in accordance with the policy. When the Schaghticokes reinstituted their suit in 1998, Kent School again retained Day, Berry and Howard, LLP to defend it and also employed the firm of Perkins Coie to represent it in the reinstituted action. As was the case with the retention of Day, Berry & Howard, Chicago Title did not know that Perkins Coie was retained to defend Kent

School until well after the fact. (Sides Depo., 66:10-13, 71:21-72:13; Woods Depo., 79:7-11.) Later, Kent School put Chicago Title on notice of the reinstituted suit by letter dated June 30, 1998 and Chicago Title once again paid defense costs. (Sides Depo., 78:2-9 and Ex. 15.)

In both the initial Schaghticoke lawsuit and the revival of that suit, Kent School employed attorneys to defend it independent of any notice to or acceptance of defense by Chicago Title. Kent School never changed its position on the basis of a supposed representation of unlimited defense resources. Buell Indus. v. Greater N.Y. Mut. Ins. Co., 259 Conn. at 549 ("a claim for estoppel would fail because the plaintiff cannot assert as *its* injury any change in position undertaken by insurance regulators purportedly as a result of industry misrepresentations.") It is clear from the record, specifically its late notice to Chicago Title, that Kent School retained counsel and undertook a defense of the Schaghticoke lawsuit without regard to the title insurance policy. Accordingly, Kent School's claim of estoppel cannot stand.

Kent School alleges that it was prejudiced by its reliance on an unlimited defense. Kent School's claims of prejudice, however, are highly speculative and are not supported by any evidence. Kent School's first claim of prejudice is that if Chicago Title had tendered in 1977, "Kent School *may have* been able to purchase property to replace a substantial part of that which is the subject to the Schaghticoke claim." (Emphasis added.) Def. Memo, at 27. Kent School provides no evidence of an injury. It merely

speculates as to what it may have done. Kent School also claims that if Chicago Title tendered in 1977, "the underlying case *may have* been capable of being settled for the tendered amount. It is entirely *possible* that the Schaghticoke Tribal Nation would have accepted $100,000 to settle the claim in the pre-casino days of the late 1970s." (Emphasis added.) Id. Yet, Kent School has controlled the Schaghticoke litigation from its inception and it has been well aware of the $100,000 limit on the title policy. If there were an opportunity to settle utilizing the $100,000 policy limit, Kent School could have taken advantage of it. Kent School, however, provides no evidence that there was a "possibility" of settlement. It only speculates that the case *may have* settled.

In an effort to bypass its lack of evidence on the element of prejudice, Kent School claims there is a presumption of prejudice because Chicago Title did not tender the policy limits for two decades. In support of this claim, Kent School has cited a number of cases that hold that insurers are estopped from denying coverage based on their failures to assert their position in a timely fashion. The argument assumes what Kent School has failed to establish – that Chicago Title has denied coverage. Chicago Title has admitted there is coverage under the policy. That position still has not changed. However, the duty to defend flows from the policy, which contains a specific option to tender the policy limits. Chicago Title has tendered the policy limits, and there is no longer any liability under the policy. Chicago Title is not claiming Kent School's defense costs are not covered by the policy. It claims that it has exercised an option to terminate its liability.

This point serves to distinguish every case cited by Kent School regarding the element of prejudice for promissory estoppel. See Collins v. Grange Mut. Ins. Co., 706 N.E.2d 856 (Ohio 1997) (where insurer attempted to deny coverage based on a policy exclusion); Bouchard v. Travelers Indem. Co., 28 Conn. Supp. 122 (1969) (where insurer attempted to deny coverage and defense costs based on two policy exclusions); Griggs v. Bertram, 443 A.2d 163 (N.J. 1982) (where insurer denied coverage based on policy exclusion); Safesco Ins. Co. v. Longhouse, 725 P.2d 217 (Mont. 1986) (where insurer denied coverage based on completed operations exclusion); and Transamerica Ins. Group v. Chubb, 554 P.2d 1080 (Wash. 1976) (where insurer denied coverage based on exclusion). Here, Chicago Title admitted coverage and followed the contract by tendering the policy limits. Accordingly, the cases cited by Kent School are inapposite.

**7. Chicago Title Is Entitled to Reimbursement of Defense Costs Incurred After It Tendered the Policy Amount**

If it is determined that Chicago Title had no duty to defend after the tender of the policy limits, then Chicago Title has a right to reimbursement for defense costs incurred after the tender. However, Kent School argues that Chicago Title is not entitled to reimbursement of defense costs for two main reasons: (1) Kent School will not be unjustly enriched if it does not reimburse Chicago Title and (2) Chicago Title failed to sufficiently reserve its right to seek reimbursement. (See Kent School Memorandum at 30-33.) As set forth below, both arguments are without merit.

i. Kent School will be unjustly enriched if it does not reimburse Chicago Title.

Kent School argues that even if the Court finds that Chicago Title was not obligated to defend Kent School after it tendered the policy limits, Kent School would *not* be unjustly enriched by refusing to reimburse Chicago Title for the defense costs. Thus, according to Kent School, the Supreme Court ruling in Security Insurance Co. v. Lumbermens Mutual Casualty Co., 264 Conn. 688 (2003), is inapplicable in this case. However, this argument ignores the clear language of Lumbermens Mut. Ins. Co. and is therefore without merit.

In Lumbermens Mutual Casualty Co., the Connecticut Supreme Court emphasized that an insurer is entitled to reimbursement of defense costs in order to prevent unjust enrichment of the insured. Id. at 718. Specifically, the Court stated:

> A cause of action for reimbursement is cognizable to the extent required to ensure that the insured not reap a benefit for which is has not paid and thus be unjustly enriched. Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the costs of defending the uncovered claims in order to prevent the insured from receiving a windfall. Id. at 716-718.

In this case, Kent School agreed to the terms set forth in the title policy, including the language establishing Chicago Title's right to tender the policy limits to terminate coverage. (See Chicago Title Memorandum, at 3-4.) Without reimbursement, Kent School will unjustly benefit from the unbargained-for defense costs incurred by Chicago

Title after the tender. To allow Kent School to avoid reimbursement of costs incurred by Chicago Title after tender would be a clear "windfall" for Kent School and therefore improper under Connecticut law. Lumbermens Mutual Casualty Co., 264 Conn. at 718; see also Buss v. Superior Court, 16 Cal. 4th 35, 51 (1997) (finding "[t]he 'enrichment' of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed 'unjust.'")

ii. Chicago Title sufficiently reserved its right to reimbursement.

Kent School also argues that Chicago Title failed to sufficiently reserve its right to reimbursement because it failed to do so at the initial stages of the underlying litigation. Kent School argues that it accepted Chicago Title's defense at the initial stages of the underlying litigation and it was not accompanied by a reservation of rights. According to Kent School, Chicago Title is therefore precluded from issuing a reservation of its right to reimbursement and must "unconditionally" defend Kent School. (Kent School Memorandum at 32.) However, this argument is without merit because Chicago Title is not seeking reimbursement for defense costs incurred prior to the tender of the policy limits.

Pursuant to the terms of the title policy, Chicago Title ended its obligation to cover defense costs of the underlying action by tendering the policy limits. After the tender and termination of coverage, Chicago Title specifically and clearly reserved its right relating

to seek reimbursement of defense costs incurred *after* the tender. (Woods Aff., ¶ 8, Ex. 3.) Significantly, Kent School accepted the post-tender defense and also the potential for reimbursement. See Colony Ins. Co. v. G & E Tires & Service, Inc., 777 So. 2d 1034, 1039 (2000). Accordingly, Chicago Title seeks reimbursement of only those defense costs incurred after the tender. Therefore, under Buss and its progeny, Chicago Title issued a sufficient reservation of rights as to the defense costs incurred after the tender of the policy limit.

Accordingly, the Court should find that Chicago Title is entitled to reimbursement of defense costs incurred after it tendered the policy limit to Kent School.

**8. There Are No Material Issues In Dispute That Chicago Title Tendered The Policy Limits To Kent School.**

Kent School now claims that Chicago Title did not tender the policy limits, despite its previous admission that "Chicago Title has attempted to tender the face amount of the policy." (Defendant's Responses to Plaintiff's First Set of Interrogatories, Ex. E.) Kent School cannot create a factual dispute now by contradicting what it previously admitted in its interrogatory response. See Armstead v. Stop & Shop Cos., 2002 U.S. Dist. LEXIS 7864, *11 (D. Conn, 2002) (Arterton, J.) (a party cannot create a factual dispute simply by contradicting his own previous testimony). Kent School, through its designee Thomas Sides, testified under oath that Chicago Title "attempted to tender the face amount of the policy." (Ex. E). Kent School cannot defeat a motion for summary judgment by

responding with affidavits recanting that earlier testimony. Margo v. Weiss, 213 F.3d 55, 61 (2d Cir. 2000). While Chicago Title did not physically deliver a check for $100,000, it attempted to do so, and Kent School refused to accept. Accordingly, Chicago Title did tender the policy limits.

Under the doctrine of excuse, Chicago Title terminated its obligation to pay defense costs in October 2001 even though a physical tender of the policy limits never occurred. In Connecticut, it is well settled that "a party is not required to go through the idle ceremony of making a physical tender" in order to gain the relief or benefit sought through the tender. (internal quotations omitted) Vachon v. Tomascak, 155 Conn. 52, 57 (1967). Rather, physical tender "may be excused where it 'would be a mere futility.'" Smith v. Hevro Realty Corp., 199 Conn. 330, 342 (1986) (quoting Vachon, 155 Conn. at 57). Physical tender is "futile" when the tendering party makes an offer and is notified that that physical tender will be refused. Vachon, 155 Conn. at 57. Thus, a party's contractual rights gained via tender cannot be denied simply because another party refuses to accept tender. Id.; see also Land O'Lakes Creameries, Inc. v. Commodity Credit Corp., 308 F.2d 604, 609 (8th Cir. 1962) (emphasizing "[i]f the tender is prevented through a contrivance of the person to whom it should be made, it will be . . . considered as if made."); O'Toole & Nedeau Co. v. Boelkins, 254 Mich. 44, 47 (1931) (same).

Under the doctrine of excuse, an insurer may terminate its liability through tender even though physical tender never occurs. Needy v. Sparks, 74 Ill. App. 3d 914 (1979);

Casciola v. Gardner, 101 Ill. App. 3d 852 (1981). In Needy, the plaintiff obtained a judgment against the insured on June 26, 1975. 74 Ill. App. 3d at 915. The judgment was in the amount of $125,000. Id. The insured was covered by a policy that limited exposure of the insurance company to $10,000 per person. Id. The policy also provided for the following payments:

> (a) all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or *tendered* or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon. (Emphasis added.) Id. at 915-916.

On June 27, 1975, pursuant to the terms of the insurance policy, the insurer offered the policy limits of $10,000, plus interest for one day. Id. at 916. However, the plaintiff informed the insurer that it would not accept such payment. Id. at 916-917. The insurer never physically tendered the policy limits. The plaintiff later brought suit against the insurer, arguing that the insurer had failed to tender the policy limits and was therefore liable for the full amount of interest after the judgment. Id. at 916.

The court held that the insurer terminated its liability for interest on June 27, 1975 even though there was no physical tender. Id. at 919-920. The court found that physical tender by the insured "would have been a vain, idle and useless act" thereby excusing physical tender. Id. Because physical tender was excused, the accrual of interest on the judgment ceased when the offer was made and refused. Id. at 920. Thus, the plaintiff

could not prevent the insurer from terminating liability under the policy simply by refusing tender.

In Casciola, the insurance policy at issue also allowed the insurer to terminate coverage upon tender of the policy limits. 101 Ill. App. 3d at 853. The plaintiff in Casciola obtained a judgment against the insured for $ 25,000 on August 3, 1979. Id. The insured was covered by a policy that limited exposure of the insurance company to $10,000. Id. The policy also required the insurer to pay interest on the judgment "which accrues after entry of the judgment and before the company has paid or *tendered* or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon." (internal quotation marks omitted) (Emphasis added.) Id. On August 6, 1979, the insurer offered to pay the policy limits, costs, and interest. Id. However, the plaintiff refused to accept this payment and later filed suit against the insurer, seeking payment for full interest on the judgment. Id. at 853-854.

The court held that the insurer was excused from physical tender due to the plaintiff's refusal to accept payment of the policy limits. Id. at 856. The court emphasized that physical tender would have been a "useless act, since it was clear such tender would be rejected." Id. The court concluded that "interest on the judgment ceased to accrue as of August 6, 1979, when actual tender was excused." Id. Thus, under the doctrine of excuse, the plaintiff could not prevent the insurer from terminating liability under the policy simply by refusing tender.

In this matter, physical tender by Chicago Title was excused by Kent School's refusal to accept payment of the policy limits. On October 2, 2001, Chicago Title offered to pay the policy limits to Kent School in an effort to terminate its liability under the policy. (See Letter from David Elliot, October 9, 2001, at 1; Sides Depo., 81:1-85:10.) However, Kent School refused to accept the offer, emphasizing that Chicago Title should continue payment of defense costs:

> We believe that the law is clear that Chicago Title may not proceed in this manner . . . In light of the clear legal authority and the terms of the title insurance policy issued to Kent School, we are confident that Chicago Title cannot escape its duty to defend Kent School under the policy by merely tendering or paying the face value of the policy. Thus, we would appreciate it if our current statements for attorneys' fees would be paid and that we discuss further a pro rata contribution by Chicago Title for the experts' fees. (Letter from David Elliot, October 9, 2001, at 4.)

Kent School seizes on the phrase "prepared to tender" in a January 2001 letter from Chicago Title's counsel and splits hairs and language in an attempt to create an issue of material fact where none exists. Despite this attempt and Kent School's belated "amendment" of its interrogatory answer, the record is clear that Chicago Title sought to pay the $100,000 policy limits to Kent School. Kent School's Chief Financial Officer and deposition designee, Thomas B. Sides, testified to this effect at his deposition:

> Q. Did you understand in October 2001 that Chicago Title was prepared to pay Kent School the $100,000 policy limits and then step away from the defense of Kent School and the Schaghticoke Tribal Nation litigation?

A. I believe sometime on or about late 2001, early 2002 I was made aware of the fact that that's what Chicago Title was seeking to do.

(Sides Depo., 85:6-12.)

If Chicago Title's willingness to pay the policy limits was not clear in 2001, it was certainly made clear when Chicago Title initiated this action. Indeed, Chicago Title is willing to pay $100,000 into the Court today. Kent School, however, has made it abundantly clear throughout this litigation, including its opposition to Chicago Title's motion for summary judgment and its interrogatory answers, that it does not consider tender of $100,000 alone as a discharge of Chicago Title's obligations and it will not accept such a payment. Again, Thomas B. Sides of Kent School made this plain at his deposition:

Q. Is it fair to say that Kent School will not accept a tender from Chicago Title of the $100,000 policy limit unless Chicago Title agrees to pay the cost of defending the Schaghticoke Tribal Nation suit?

A. No, I don't think that's an accurate representation.

Q. So if Chicago Title offered Kent School $100,000 today and stepped away from the defense of the Schaghticoke Tribal Nation lawsuit, Kent School would accept that?

A. No, but I also wasn't agreeing to the wording you presented earlier.

(Sides Depo., 83:12-22.)

Due to Kent School's refusal to accept payment, physical tender of the policy limits to Kent School would have been futile. Thus, under the doctrine of excuse,

physical tender was excused in October 2001 when Chicago Title's offer of the policy limits was refused by Kent School. As a result, Chicago Title terminated coverage for defense costs in October 2001 pursuant to the language of the title policy.

## CONCLUSION

For the foregoing reasons, Chicago Title respectfully requests that its motion for summary judgment on its declaratory judgment action and on Kent School's counterclaims be granted, and that Kent School's motion for summary judgment be denied.

PLAINTIFF,
CHICAGO TITLE INSURANCE COMPANY

Marion Manzo
Lawrence P. Heffernan (ct 22567)
lheffernan@rc.com
Frank F. Coulom, Jr. (ct 05230)
fcoulom@rc.com,
Marion B. Manzo (ct 22068)
mmanzo@rc.com
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8240
Fax No.: (860) 275-8299

**CERTIFICATION**

This is to certify that on this 2nd day of July, 2004, a copy of the foregoing was hand delivered to Francis Brady, Esq., Murtha Cullina LLP, CityPlace I, 185 Asylum Street, Hartford, CT 06103-3469.

Marion Manzo