UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 3:02-CV-1095 (CFD) |
| v. | : | |
| THE KENT SCHOOL CORPORATION, | : | |
| Defendant. | : | AUGUST 2, 2004 |

**DEFENDANT THE KENT SCHOOL CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Memorandum in Opposition to Kent School's Motion for Summary Judgment and Reply Brief in Support of Its Motion for Summary Judgment dated July 2, 2004 ("Chicago Title Memorandum") fails to directly address the most significant positions raised by The Kent School Corporation ("Kent School") in its Cross-Motion for Summary Judgment. When attention is re-focused onto the language of the insurance policy and the issues are addressed directly, the gaps in Chicago Title's logic become apparent.

## I. THE TERMS OF THE POLICY IN ITS ENTIRETY FAVOR KENT SCHOOL

Chicago Title attempts to convince the Court that Kent School is unwilling to address the portion of the Insuring Agreement that incorporates the Policy Conditions. See Chicago Title Memorandum at page 3, comparing the quote on page 9 of the initial Chicago Title brief with the quote on page 9 of Kent School's Memorandum in Opposition to Chicago

Title's Motion for Summary Judgment and In Support of Cross-Motion for Summary Judgment (the "Kent School Memorandum"). However, Chicago Title's assertion is at best mistaken, since on page 4 of its Memorandum Kent School quotes in full the precise language that Chicago Title claims is ignored. Moreover, Kent School has presented the Court with an interpretation of the policy that gives meaning to that language in the context of all of the relevant provisions of the contract. See Kent School Memorandum at pp. 9-13.

In contrast, Chicago Title presents a policy interpretation that relies solely on the portion of the Insuring Agreement that references the Policy Conditions, and on Section Five(b) of those Conditions. Chicago Title's Memorandum at p. 2. Nowhere in its Memorandum does Chicago Title provide any analysis or explanation of the meaning of Section Two(a) of the Conditions, which is a simple straightforward statement of Chicago Title's unequivocal duty to defend claims made against the insured title. See Insurance Policy, Exhibit 1 to Kent School Memorandum at p. 1. Chicago Title's inability to reconcile all of the portions of the Policy is fatal to its claim. See Chicago Title Memorandum at pp. 2-3 quoting A.M. Larson v. Lawler Ins. Agency, 153 Conn. 618, 622 (1966). By comparison, Chicago Title ignores the fact that Kent School's interpretation of the Policy does reconcile the Insuring Agreement with Section Two(a), Section Three(b) and Section Five(b) of the Policy Conditions. See Kent School Memorandum at pp. 9-13.

Chicago Title next sets up the strawman that, if the duty to defend were an independent duty, it would lead to the "absurd" result of the insurer having to defend against the liens and other claims listed in Schedule B of the Policy. Chicago Title Memorandum at pp. 6-7. Yet, Kent School has never maintained that Chicago Title would be required to

provide such a defense. Certainly, the fundamental claim by the Schaghticokes involves no such Schedule B type liens.

Instead, Kent School's position tracks the language of the Policy. The Insuring Agreement provides that the duty to defend includes "the costs and expenses of defending the title, estate or interest insured" (emphasis added). Section Two(a) of the Policy Conditions states that Chicago Title "will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or incumbrances not excepted in this policy." See Exhibit 1 to Kent School's Memorandum at p. 2. The liens and incumbrances listed in Schedule B are excepted from coverage. Id. at p. 2: "SCHEDULE B The following estates, interests, defects, objections to title, liens, and incumbrances and other matters are excepted from the coverage of this policy:" (emphasis added). Thus, under the Kent School reading of the Policy, the insurer would not be required to provide a defense with respect to the liens and claims set out in Schedule B. The Schaghticoke claims are not so "excepted" from coverage. Rather, "Chicago Title has admitted there is coverage under the policy." Chicago Title Memorandum at p.20. See also, May 10, 1977 letter from Lawrence Kuder of Chicago Title to Mr. Richard Rockwell of Day, Berry & Howard appended to the David Elliott Affidavit at ¶ 4.[1] Accordingly, Chicago Title must defend.

Chicago Title also contends that Kent School is setting up "an artificial distinction" between a "claim of loss" as used in Section Five(b)(2) of the Policy Conditions and a "claim of title" as used in Section Two(a), and argues that the terms are identical. Chicago Title's Memorandum at p. 7. Tellingly, however, Chicago Title provides no explanation as

[1] The Elliott Affidavit accompanied the Kent School Memorandum.

to why it chose to use different terms in various sections of the Policy, if the terms are to mean the same thing.

Similarly, Chicago Title contends that the terms "amount of insurance" and "full amount of this policy" have identical meanings without endeavoring to explain why it chose to use these different terms in various sections of the Policy, if the terms are meant to convey the same meaning. Id. at pp. 8-9. Instead, Chicago Title cites to Batdorf v. Transamerica Title Ins. Co., 41 Wash. App. 254 (1985), as support for its claim that the terms "amount of insurance" and "full amount of this policy" should not be distinguished. Id. This citation does not help Chicago Title's cause. First, the Batdorf court never addressed the distinctions in the policy language in reaching its decision. More importantly, however, the key language in the two policies is not parallel, despite Chicago Title's claim to the contrary. The policy condition that sets forth the duty to defend in Batdorf expressly qualifies its applicability:

> The Company shall have the right to, and will, at its own expense, defend the Insured with respect to all demands and legal proceedings founded upon a claim of title, encumbrance or defect which existed or is claimed to have existed prior to the date hereof and is not set forth or excepted herein; *reserving however the option at any time of settling the claim or paying the amount of this policy in full.*

Batdorf, 41 Wash. App. at 256-257 (Italics provided by the Batdorf court). The parallel provision in the Chicago Title Policy is Section Two(a) which addresses the defense owed as to claims of title. It reads as follows:

> This company [Chicago Title] will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or incumbrances not excepted in this policy.

Exhibit 1 to Kent School Memorandum at p. 4. This provision contains no reservation whatsoever with respect to the duty to defend.

While the Chicago Title Policy contains payment language similar (but not identical) to that in Batdorf, the provision in which this language is found (Section Five(b)(2)) does not address Chicago Title's duty to defend a claim of title brought by third parties. Rather, it addresses the company's rights and duties when the insured makes a claim of loss. See Kent School Memorandum at p. 11.[2]

Although Kent School's interpretation of the entire Policy reconciles each of the relevant provisions, it is not unusual for an insurance policy to contain a variety of terms which set forth rights and duties that appear to conflict. As one court has noted, insurance policies are akin to the "Tower of Babel," containing numerous inconsistencies and conflicting provisions that are not always susceptible to reconciliation:

> Unfortunately the insurance industry has become addicted to the practice of building into policies one condition or exception upon another in the shape of a linguistic Tower of Babel. We join other courts in decrying a trend which both plunges the insured into a state of uncertainty and burdens the judiciary with the task of resolving it.

Insurance Co. of N. Am. v. Electronic Purification Co., 63 Cal. Rptr. 382, 390 (Cal. 1967). There the insurance company was not permitted to benefit from such uncertainty - - nor

---

[2] Moreover, the insuring provision of the Chicago Title Policy is considerably stronger than that of Batdorf in that it is specifically inclusive of the defense obligation. Here, the Policy directly and affirmatively provides coverage for "all loss or damage . . . and in addition the costs and expenses of defending the title . . . ." Kent School Memorandum, Exhibit 1 at p.1 (emphasis added). By comparison, the Policy reported by the Batdorf court provides: "The total liability is limited to the amount shown in Schedule A, exclusive of costs *incurred by the Company* as an incident to defense or settlement of claims hereunder." Batdorf, 41 Wash. App. at 256. (Italics included in Batdorf decision).

should the insurance company here so benefit. Since the title insurance policy is a contract of adhesion, conflicting or ambiguous terms must be construed in favor of the policyholder. Imperial Cas. & Indem. Co. v. Connecticut, 246 Conn. 313, 325 (1998).

## II. THE FACT THAT THE CASES CITED BY KENT SCHOOL INVOLVE A DENIAL OF THE DUTY TO DEFEND IS A DISTINCTION WITHOUT A DIFFERENCE

As part of its argument concerning the waiver and estoppel issues, Chicago Title notes that the authorities relied on by Kent School involve either denial of coverage or denial of the duty to defend.[3] Chicago Title Memorandum at pp. 15, 21. That reliance should not be surprising, since the facts of this case are both unique and extraordinary. There is simply no reported factual precedent where an insurer has defended litigation without reservation for over two decades before seeking to withdraw the defense.

More importantly, from the policyholder's perspective there is no meaningful difference between withdrawing the defense and denying the defense. The effect is the same. If Chicago Title is permitted to tender the indemnity portion of its Policy and thereby terminate the defense, Kent School will have lost the value of a defense as to a claim of title. Since Section Two(a) of the Policy Conditions provide the right to a defense as part of the insurance contract, there is no difference to Kent School between coverage being terminated and coverage being denied.

Chicago Title implies that waiver is not available where something other than a denial of coverage is at issue. Chicago Title Memorandum at p. 15. However, to the extent that

---

[3] Chicago Title's efforts to distinguish the authorities cited by Kent School with respect to the duty to defend are to no avail. See Chicago Title Memorandum at pp. 9-12. Accordingly, Kent School sees no need to reply and continues to rely on those authorities cited in its Memorandum at pp. 16-22.

there is an option to tender the policy,[4] it can exist only for the benefit of the insurer. Therefore, as with all such provisions, any option to tender is subject to waiver. 2 Holmes' Appleman on Insurance 2d § 8.1 ("An insurer may waive any provision in an insurance policy inserted for its benefit.")

In making its argument, Chicago Title notes that "[i]t makes little sense, for instance, for Chicago Title to not be able to exercise its option to settle the case just because it undertook the defense of Kent School." Chicago Title Memorandum at p. 15. It does not follow, however, that Chicago Title has not waived any such perceived right to tender the policy limits. In fact, it has so waived by defending for 24 years without reservation.

Chicago Title also raises the issue of settlement in connection with the estoppel argument. Id. at 20. In doing so, however, it suggests a misunderstanding of the Policy. Chicago Title contends that there is no prejudice resulting from the fact that it waited 24 years before modifying its coverage position in part because "Kent School has controlled the Schaghticoke litigation from its inception and it has been well aware of the $100,000 limit on the title policy. If there were an opportunity to settle utilizing the $100,000 policy limit, Kent School could have taken advantage of it." Id. Putting aside the question of whether this statement operates as an admission by Chicago Title that it has breached the contract by failing to "defend the insured" pursuant to Section Two(a) of the Policy Conditions, and putting aside Chicago Title's involvement in the defense of the underlying litigation, Kent

---

4 As addressed in connection with Chicago Title's Motion for Summary Judgment, the right to tender does not apply to claims of title. See e.g., Kent School Memorandum at pp. 9-13.

School could not simply settle the Schaghticoke case using the Policy proceeds. The final paragraph in Section Three of the Policy Conditions provides as follows:

> No claim for damages shall arise or be sustainable under this policy …(2) for liability voluntarily assumed by the insured without the written consent of this company [Chicago Title].

Kent School could not have settled the Schaghticoke claim itself. Chicago Title's involvement in any settlement would have been essential - - as has been its involvement in the oversight of the litigation.

## III. CHICAGO TITLE IS NOT ENTITLED TO REIMBURSEMENT

Even if the Court were to determine that Chicago Title is permitted to terminate coverage, its cited authority does not lead to a right of reimbursement for the fees paid. Chicago Title quotes from the portion of Security Insurance that it contends is applicable.

> A cause of action for reimbursement is cognizable to the extent required to ensure that the insured not reap a benefit for which is [sic] has not paid and thus be unjustly enriched. Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the costs of defending the uncovered claims in order to prevent the insured from seeking a windfall.

Security Insurance Co. v. Lumbermens Casualty Co., 264 Conn. 688, 716-718 (2003) (emphasis added), Chicago Title Memorandum at p. 22.

Here, however, there is no question but that the claims are at least "potentially covered" by the Policy. In fact, Chicago Title has provided a defense for over two decades, and has repeatedly acknowledged that "there is coverage under the policy." Chicago Title Memorandum at p. 20. Thus, there is no "windfall" for Kent School, and Chicago Title is not entitled to reimbursement.

Chicago Title next cites Colony Ins. Co. v. G & E Tires & Service, Inc., 777 So. 2d 1034 (2000), in support of its claim that, because Kent School accepted payment of its legal fees after October 2001, it subjected itself to some obligation for reimbursement. That authority is significant because it illustrates what Chicago Title failed to do here. The Colony case involved an insurer which, at the same time that it accepted the initial defense of its insured, explicitly conditioned the acceptance on the right to seek reimbursement of defense payments. Id. at 1036. At the same time, the Colony insurer commenced an action seeking a declaratory judgment with respect to its duty to defend. Id.[5]

The Colony situation is not the circumstance before this Court. Here, Chicago Title provided a defense for some 24 years, without any reservation of rights. As a result, any attempt to condition its continued compliance with its duty to defend under the contract must fail for lack of consideration. See discussion in Kent School Memorandum at pp. 30-33.

## IV. THERE IS NO EVIDENCE THAT CHICAGO TITLE HAS EVER TENDERED THE AMOUNT OF THE POLICY

As Kent School pointed out in its initial brief, the rules construing tender are strictly construed. Kent School Memorandum at pp. 33-34. According to its own witness, Chicago Title never made an unconditional, unambiguous tender of the $100,000 indemnity amount. Woods Deposition appended to Kent School Memorandum at Exhibit 4 at p. 111. Moreover, that $100,000 amount would not constitute a sufficient tender even under Chicago Title's contention, which would require tender of the indemnity amount plus the costs of defense incurred to the date of the tender. Woods Deposition at pp. 152-54.

5 Interestingly, this is precisely the kind of case that Chicago Title insisted had no relevance when the issue was waiver or estoppel. Chicago Title Memorandum at p. 21.

Nonetheless, Chicago Title attempts to impugn Kent School's Amended Reply to one of Chicago Title's interrogatories, perhaps in an attempt to draw attention away from its failure to present any evidence of an unequivocal tender of the full amount of the policy. Chicago Title Memorandum at 24-25. However, answers to interrogatories are not binding admissions, and the responding party is free to introduce other evidence on the matter. 7 Moore's Federal Practice § 33.160. Here, Kent School timely amended its response to the interrogatory in issue (prior to the commencement of depositions and prior to the filing of summary judgment motions) and presented additional evidence to the effect that Chicago Title has never made an effective tender. At the very least, this circumstance raises a triable issue, precluding summary judgment against Kent School. See Kent School Memorandum at pp. 33-34.

**CONCLUSION**

For the foregoing reasons, Chicago Title's Motion for Summary Judgment should be denied, and Kent School's Cross-Motion for Summary Judgment should be granted.

DEFENDANT - THE KENT SCHOOL CORPORATION

By: /s/ Francis J. Brady
Francis J. Brady - ct04296
Michael J. Donnelly - ct07974

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone: (860) 240-6000
Facsimile: (860) 240-6150
Its Attorneys

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the Defendant The Kent School Corporation's Reply Memorandum In Support Of Its Cross-Motion For Summary Judgment was mailed first-class, postage prepaid, on this 2nd day of August, 2004 to:

Frank P. Coulom, Jr., Esq.
Marion Manzo, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-34597

Lawrence Heffernan, Esq.
Robinson & Cole LLP
One Boston Place
Boston, Massachusetts 02108-4404

/s/ Francis J. Brady
Francis J. Brady