UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY<br><br>Plaintiff,<br>V.<br><br>KENT SCHOOL CORPORATION<br><br>Defendant. | : | CIVIL NO. 3 02 CV 1095 (CFD)<br><br><br><br><br><br><br>OCTOBER 27, 2006 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule of Procedure 56(a)(1), the plaintiff, Chicago Title Insurance Company ("Chicago Title"), hereby submits the following memorandum of law in support of its motion for summary judgment, on defendant Kent School Corporation's ("Kent School") second count of its counterclaim in this declaratory judgment action. Kent School's second count involves allegations of breach of contract based upon Chicago Title's commencement of the instant declaratory judgment action and Chicago Title's refusal to pay Kent School's attorneys' fees related to this matter. Neither the law nor the insurance policy at issue in this case support an award of attorneys' fees related to Kent School's defense of the present declaratory

judgment action. Accordingly, there is no basis for an award of attorneys' fees in this case and the court should enter judgment for Chicago Title as a matter of law.

## I. FACTUAL BACKGROUND

In September of 1966, Chicago Title Insurance Company issued a policy of title insurance, bearing number EC-16344 ("Policy"),[1] to Kent School as the named insured in the amount of $100,000 for property located in Kent, Connecticut. (Parties' Joint Stipulation of Facts, dated October 27, 2006 ("Stipulation") at ¶ 1).

In 1975, representatives of the Schaghticoke Tribal Nation ("Schaghticoke"), commenced a lawsuit against Kent School, claiming an interest in the title to the insured premises. (Id. at ¶ 2). Kent School employed the firm of Day, Berry and Howard, LLP, to represent it in the action. (Id. at ¶ 3). Chicago Title paid Kent School's defense costs in the action pursuant to the policy. (Id. at ¶ 5). In 1993, the United States District Court for the District of Connecticut dismissed without prejudice the Schaghticoke's lawsuit. (Id. at ¶ 4).

In June 1998, the Schaghticoke reinstituted the lawsuit and asserted a Non-Intercourse claim against Kent School. (Id. at ¶ 6). Kent School again retained Day, Berry and Howard, LLP to defend it and also employed the firm of Perkins Coie to represent it in the reinstituted action. (Id. at ¶¶ 7,8). Again, Chicago Title paid Kent

[1] The policy was previously provided to the Court as part of Chicago Title's first motion for summary judgment and accompanying Local Rule 56 (a) (1) Statement, which were filed on March 17, 2004, and is incorporated by reference herein.

School's defense costs pursuant to the terms of the policy. (Id. at ¶ 9). As of October 19, 2006, Chicago Title has spent a total of $1,094,795.89 for Kent School's legal fees in defending the two lawsuits by the Schaghticoke. (Stipulation at ¶ 10; Affidavit of Stephanie Lackey, dated October 24, 2006 ("Lackey Aff."), at ¶ 5, attached to Plaintiff's Rule 56 (a) (1) Statement of Facts at Exhibit A). These fees include experts' fees as well as defense attorneys' fees. (Stipulation at ¶ 10; Lackey Aff. at ¶5).

Over the course of three decades, Chicago Title has paid Kent School's defense costs pursuant to its duty to defend contained in the title policy. While continuing to pay Kent School's defense costs, Chicago Title instituted this action against Kent School, seeking a declaratory judgment that it is not under a duty to defend Kent School after Chicago Title tendered the policy limits of the title insurance policy. Kent School counterclaimed, seeking a declaratory judgment that Chicago Title is obligated to pay its defense costs and also by asserting a claim for breach of contract against Chicago Title, claiming that Chicago Title has breached or will breach its contractual obligation by its failure or refusal to pay Kent School's defense costs in the present action.

Both parties filed motions for summary judgment related to the declaratory judgment counts. The Court, Droney, J., ruled that Chicago Title could not terminate its liability by tendering the policy limits. The Court has not yet ruled on the second count of Kent School's counterclaim.

The question before the court on this motion for summary judgment is whether Chicago Title, by bringing the present action to terminate its liability after faithfully paying defense costs for more than two decades, has breached its contractual obligations set forth in the title policy, thereby entitling Kent School to an award of attorneys' fees for its defense of the present declaratory judgment action.

Under the policy, Chicago Title insures Kent School against loss and promises to pay defense costs relating to defects of title in Kent School's property:

> Chicago Title . . . insures the within named insured against all loss or damage not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending the title, estate or interest insured, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A or affecting the interest of the insured therein as herein set forth, or by reason of unmarketability of the title of the insured to or in the premises, or by reason of liens or incumbrances affecting title at the date hereof, or by reason of any statutory lien for labor or material furnished prior to the date hereof which has now gained or which may hereafter gain priority over the interest insured hereby, or by reason of a lack of access to and from the premises, excepting all loss and damage by reason of the estates, interests, defects, objections, liens, incumbrances and other matters set forth in Schedule B, or by the conditions of this policy hereby incorporated into this contract, the loss and the amount to be ascertained in the manner provided in said conditions . . .

(See Policy, Policy Cover Sheet.) (Emphasis added.) The "Conditions of This Policy" section provides in Section Two(a) that "This company will, at its own cost, defend the insured in all action or proceedings founded on a claim of title or encumbrances not excepted in this policy." (Emphasis added.) This declaratory judgment action, initiated

in good faith by Chicago Title, is not a lawsuit "founded on a claim of title" nor does it affect Kent School's claim of title in any way. Moreover, Chicago Title has been paying Kent School's defense costs for the past several decades and continues to do so. Accordingly, Chicago Title is not in breach, is not obligated to pay Kent School's defense costs in this action and is entitled to summary judgment on the second count of Kent School's counterclaim.

## II. ARGUMENT

### A. Legal Standard

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Kinsella v. Rumsfeld, 320 F.3d 309, 311 (2d Cir. 2003), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248.)

The moving party must make a prima facie showing that there are no genuine issues of material fact for trial by demonstrating an absence of evidence in support of the opponent's claims. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir. 2003),

cert. denied 540 U.S. 823, 157 L. Ed. 2d 44, 124 S. Ct. 153 (2003); see also Celotex, 477 U.S. at 325. Once this initial burden has been satisfied, the burden shifts to the party opposing summary judgment to demonstrate that a genuine issue of material fact exists. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993) (citing Anderson, 477 U.S. at 250). The "mere possibility that a factual dispute may exist, without more, is not sufficient." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (citations omitted). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

There are no genuine issues of material fact here. Analysis of the unambiguous terms of the title policy and the applicable law leads to the irrefutable conclusion that Chicago Title is not obligated to pay Kent School's defense costs in this matter. Accordingly, Chicago Title is entitled to summary judgment on the second count of Kent School's counterclaim.

**B. Chicago Title's Motion For Summary Judgment Should Be Granted.**

**1. Attorneys' Fees Are Not Available As A Matter of Law In A Declaratory Judgment Action Absent A Breach of Contract.**

Chicago Title is entitled to judgment as a matter of law because attorneys' fees are not available to insureds litigating declaratory judgment actions where the insurer has not breached its duty to defend. Pursuant to its insurance contract, Chicago Title has

faithfully paid Kent School's legal fees in the underlying action for over twenty years. It is not, however, obligated by contract to assume the defendant's legal fees in the instant matter. Accordingly, Chicago Title is not in breach and cannot, therefore, be liable to Kent School for attorneys' fees in the present action.

a. The Majority of Jurisdictions Do Not Permit Attorneys' Fees Where There Has Been No Breach of Contract.

Although there is a paucity of Connecticut case law on this precise issue, the available cases, in addition to a well developed body of law from other jurisdictions, establish that attorneys' fees are available only to successful litigants to a declaratory judgment action in the limited situation where a court finds that an insurer has breached its duty to defend or provide coverage under the terms of the relevant contract of insurance.

It is well entrenched in our jurisprudence that Connecticut follows the American rule, whereby "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." Rizzo Pool Co. v. DelGrosso, 240 Conn. 58, 72, 689 A.2d 1097 (1997). See also Marsh, Day & Calhoun v. Solomon, 204 Conn. 639, 653 (1987). Moreover, as the Connecticut Supreme Court has repeatedly opined, "[t]here are few exceptions" to this rule. Broadnax v. City of New Haven, 270 Conn. 133, 178, 851 A.2d 1113 (2004). The American rule applies with equal force to attorneys' fees in declaratory judgment actions. "[A]ttorney fees are recoverable in a declaratory judgment action only if there is a breach

of a contractual duty or statutory authority exists to support such an award." Amer. Std. Ins. Co. v. Le, 551 N.W. 2d 923, 927 (Minn. 1996).

Connecticut courts have addressed this issue only twice, and both times, concluded that the insurers' breach of the insurance contract, namely, their failure to provide a defense, entitled the insureds to an award of attorneys' fees. In Aetna Life & Cas. Co. v. Gentile, No. 0122259, 1995 Conn. Super. LEXIS 3444 (Conn. Super. Ct. Dec. 12, 1995), the defendant insured counterclaimed for attorneys' fees in a declaratory judgment action brought by the plaintiff insurer to determine whether it had a duty to defend. Notably, the insurer had not defended the insured in the underlying action. Although the court recognized that "[i]t may be argued that Gentile is entitled to payment of attorney's fees incurred solely in the defense of the underlying action. . . and would be entitled to no attorney's fees in defending this declaratory judgment action;" id. at *15; it ultimately concluded that, in this case, the purpose of the action was to "foreclose the insured's right to assert an eventual claim for which indemnity and attorney's fees for defense of the underlying action may in the future be brought by the insured." Id. Based on this unlawful purpose, the court concluded that "[t]he insurer cannot condition the insured's continuing right to a defense by imposing upon the insured, as a condition precedent, the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit." Id. at *16.

Similarly, in General Plasma, Inc. v. Reliance Ins. Co., CV970575899S, 2000 Conn. Super. LEXIS 68 (Conn. Super. Ct. Jan. 11, 2000), the plaintiff insured brought suit against the defendant insurer seeking a determination as to whether the insurer had a duty to defend the insured in the underlying action and whether the insured was entitled to recover attorneys' fees incurred in bringing the declaratory judgment action. Significantly, the defendant insurer did not provide a defense in the underlying action. Citing a decision from the United States Court of Appeals for the Eighth Circuit, the court stated:

> If an insurer faithfully fulfills its duty to defend its insured and also bring a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend. . . Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorneys fees and costs on the declaratory judgment action to determine coverage. Attorneys' fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation.

Id. at *19 (citing Chicago Title Ins. Co. v. FDIC, 172 F.3d 601, 605 (8th Cir. 1999) (emphasis added). The court distinguished this scenario from the case before it, noting that this was not a case in which the insurer had fulfilled its duty and then contested coverage. Rather, the insurer "refused to defend and indemnify General Plasma in violation of the clear and unambiguous language of the policy." Id. at *19-20. Accordingly, the court ordered payment of attorneys' fees for the declaratory judgment action. Id. at *20.

Although the courts in Gentile and General Plasma awarded attorneys' fees to the insureds, in both instances, the award was conditioned on the insurers' breach of its duty to defend, specifically, the insurers' failure to provide a defense under the terms of the policy. As will be discussed in greater detail below, the present case is easily distinguished from Gentile and General Plasma because here, Chicago Title continued to provide a defense in the underlying action during the pendency of the instant declaratory judgment action.

Despite the scant Connecticut precedent, other federal and state courts considering the issue have also required a breach as a predicate to awarding attorneys fees in declaratory judgment actions.[2] For instance, in Chicago Title Ins., Co. v. FDIC, on which the General Plasma court relied, the Eighth Circuit observed that, while the title insurance policy at issue did not provide for defense costs in a declaratory judgment action, "attorneys fees and costs can be awarded where an insurer has breached the insurance contract in some respect." Id. at 605 (internal quotation marks omitted.) This does not mean, however, that the insurer cannot contest coverage. As was stated in General Plasma, an insurer that fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage will not breach its duty to defend. Id. The Fifth Circuit has also concluded that "ordinarily an insurer is not liable for attorney's fees and expenses incurred by an insured in a declaratory judgment action instituted by

the insurer to determine its liability under the policy." Milwaukee Mechanics Ins. Co. v. Davis, 198 F. 2d 441 (5th Cir. 1952) (applying Georgia law). See also West Amer. Ins. Co. v. AV&S, 145 F. 3d 1224 (10th Cir. 1998) (applying Utah law) (affirming district court's denial of attorneys' fees in declaratory judgment action brought by insurer where insurer was found to have duty to defend).

While the Connecticut Supreme Court has yet to address the issue, the appellate courts of numerous states have concluded that, if attorneys' fees are to be allowed at all, a breach of the insurance contract is a perquisite. The case of Allstate Ins. Co. v. Vasquez, 74 Ohio App. 3d 564 (Ohio 1991), is instructive. In this case, the plaintiff insurer filed suit against the insured seeking a declaration as to whether, pursuant to the relevant homeowner's policy, the insurer owed the insureds a duty to defend and indemnify them in an underlying tort claim. Id. at 565. The court stated "the rationale behind allowing attorney fees to the insureds in a declaratory judgment action is to put the insureds in the same position they would have occupied if the insured had performed its duty to defend under the policy." Id. at 566. Thus, "[a]s a precursor to the award of attorney fees, the insurance company must breach the contract by wrongfully of unjustifiably refusing to defend the insureds. . . ." Id. at 567 (emphasis added). The court further observed that the facts "clearly indicate [that] Allstate did undertake the defense of the Vazquezes in the [underlying] tort action in spite of the fact that their written policy precluded liability

---

[2] Although some jurisdictions have concluded that an insurer is liable for fees in the absence of a breach; see e.g., U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592 (NY 2004); Hanover Ins. C. v. Golden, 436

coverage. . . ." Id (emphasis added.) Accordingly, the court concluded that "Allstate did not breach the contract but in good faith undertook to defend the [underlying] tort claim. We fail to see how Allstate has done anything wrong or violated any of its insureds' rights in seeking to define its liability by filing a declaratory judgment action." Id.

Other state courts have agreed with this rationale. For example, in Clark v. Exchange Ins. Association, 276 Ala. 334 (Ala. 1964), an insurer unsuccessfully brought a declaratory judgment action in an effort to clarify its liability under an automobile insurance policy. In rejecting the insured's bid to collect attorneys' fees for the declaratory judgment proceedings, that Alabama Supreme Court stated: "We have accepted the principle in this State that, in the absence of contract, statute, or recognized ground of equity, there is no right to have attorney's fees paid by the opposing party. . . . We know of no statute or recognized ground of equity which authorizes payment of an attorney's fees for prosecuting a declaratory proceeding." Id. at 337 (internal citations omitted).

Similarly, in American Standard Ins. Co. v. Le, 551 N.W.2d 923 (Minn. 1996), the Minnesota Supreme Court unequivocally stated that "[t]he insured is not entitled to recover attorneys fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some respect—usually by wrongfully refusing to defendant the insured." Id. at 927 (emphasis added). See also Carter v. Virginia Surety Co., 187 Tenn. 595 (Tenn. 1948)

---

Mass. 584 (Mass. 2002); the majority of jurisdictions have held to the contrary.

(affirming denial of attorneys' fees where insurer filed suit seeking a determination as to whether coverage was required under relevant automobile insurance policy.); Rocky Mountain Fire & Cas. Co. v. Rose, 62 Wn. 2d 896 (Wash. 1963) (reversing lower court's award of attorneys' fees where insurer did not refuse to defend under policy but initiated declaratory judgment action to determine rights).

The foregoing cases, both those denying attorneys' fees, as well as those awarding attorneys' fees, clearly establish that a breach of the underlying contract of insurance is the linchpin of the issue. In other words, the existence, or non-existence, of a breach is dispositive on the issue of attorneys' fees. Breach of contract is a necessary precursor to the award of attorneys' fees in a declaratory judgment action seeking a determination as to coverage. Thus, absent a finding of breach of contract, attorneys' fees cannot be awarded.

b. Chicago Title Has Not Breached Its Obligation To Defend.

In the present case, the material facts unequivocally establish that Chicago Title did not breach its duty to provide a defense and, therefore, is not responsible for Kent School's attorneys' fees in this declaratory judgment action. Chicago Title's obligation to pay Kent School's defense costs is defined in the title policy. As will be further discussed, the policy requires Chicago Title to assume the cost of all litigation relating to title to the insured property. Chicago Title has fulfilled this duty by paying Kent School's attorneys' fees in the underlying action. While Kent School claims that

Chicago Title has breached its contractual obligations in the title policy by failing to pay Kent School's defense costs in instant declaratory judgment action, the policy itself does not oblige Chicago Title to pay such costs. Accordingly, Chicago Title is entitled to summary judgment on the second count of Kent School's counterclaim.

Insurance policies are interpreted in accordance with principles of contract law. See Heyman Assocs. No. 1 v. Ins. Co. of Pennsylvania, 231 Conn. 756, 769-70 (1995) ("Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction."). Under Connecticut law, the duty to defend is circumscribed by the language of the insurance contract. Stamford Wallpaper Co. v. TIG Ins., 138 F.3d 75, 79 (2d Cir. 1998). "The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the court are free to devise rules." Id. "'The determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy.'" Id., quoting O'Brien v. United States Fid. & Guar. Co., 235 Conn. 837, 842, 669 A.2d 1221 (1996).

"'The policy words must be accorded their natural and ordinary meaning.'" Imperial Cas. & Indem. Co. v. State, 246 Conn. 313, 325, 714 A.2d 1230, 1236 (1998), quoting Hansen v. Ohio Cas. Ins. Co., 239 Conn. 537, 542-43, 687 A.2d 1262 (1996). Indeed, "courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties."

Schilberg Integrated Metals Corp. v. Continental Cas. Co., 263 Conn. 245, 267-68, 819 A.2d 773 (2003). "If the complaint alleges a liability which the policy does not cover, the insurer is not required to defend." Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of Illinois, 247 Conn. 801, 806 (1999).

A breach of contract occurs when a party's conduct is inconsistent with a reasonable construction of the specific terms of the contract. John T. Brady & Co. v. City of Stamford, 220 Conn. 432, 444, 599 A.2d 370 (1991). To recover for breach of contract, the Kent School must prove the following elements: (1) that a contract exists, (2) that it was owed some performance under the contract, (3) Chicago Title failed to give them that performance and (4) that they suffered damages as a result of Chicago Title's breach of contract. Chem-Tek, Inc. v. General Motors Corp., 816 F. Supp. 123, 131 (D. Conn. 1993).

In this case, Kent School claims that Chicago Title must pay its defense costs in the declaratory judgment action pursuant to the title policy, and that Chicago Title's failure to pay such costs is a breach of the policy. See Second Count. However, the title policy does not set forth any obligation to pay defense costs in *this* action. First, the insuring provision provides that Chicago Title shall insure Kent School against all expenses "of defending the title, estate or interest insured, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A or affecting the interest of the insured therein as herein set forth, or by reason of

unmarketability of the title of the insured to or in the premises, or by reason of liens or incumbrances affecting title at the date hereof, or by reason of any statutory lien for labor or material furnished prior to the date hereof which has now gained or which may hereafter gain priority over the interest insured hereby, or by reason of a lack of access to and from the premises." (Emphasis added.) (See Policy, Cover Sheet.) Likewise, the "Conditions of This Policy" section provides in Section Two (a) that "This company will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or encumbrances not excepted in this policy." (Id.) (Emphasis added.) Viewed in its entirety, the policy language unequivocally indicates that the policy was intended to provide coverage only for claims directly related to the title.

The declaratory judgment action initiated by Chicago Title against Kent School related only to Chicago Title's ability to terminate its liability under the title policy by tendering the policy limits. The declaratory judgment action was in no way "founded on a claim of title" nor did it touch upon Kent School's right to title in any way. The action purely related to Chicago Title's ability to terminate its liability under the title policy by tendering the policy limits pursuant to the policy's terms. Because the title policy does not impose an obligation upon Chicago Title to pay Kent School's defense costs in an action not affecting title of the premises, Chicago Title has not breached the title policy by refusing to pay such defense costs.

2. **The Court Lacks Power To Invoke The Bad Faith Exception Absent A Showing Of Bad Faith.**

Kent School's claim that attorneys' fees should be awarded in the present case becomes even more attenuated when viewed in light of the American Rule's genesis and subsequent jurisprudential development, in particular, the inherent power of the federal courts to sanction obdurate parties acting in bad faith by awarding fees. That this power was to be exercised only in extraordinary situations, denoted by bad faith conduct, as a purely punitive measure supports Chicago Title's position that an award of fees is not justified where, as in the present case, a party rightfully exercises its rights under statute while continuing to fulfill its contractual obligations.

That attorneys' fees are to be borne by all parties to a lawsuit is a fundamental tenet of American jurisprudence dating back to the formation of this country. See *Court Awarded Attorney's Fees and Equal Access to the Courts*, 122 U. Pa. L. Rev. 636, 640-41 (1973-1974). The American Rule, as this principle is aptly named, unequivocally provides that, absent a statutory or contractual provision providing for the payment of fees, litigants are to bear their own litigation expenses, including attorneys' fees. See Rizzo v. Grosso, 240 Conn. at 72. See also Marsh, Day & Calhoun v. Solomon, 204 Conn. at 653. The exceptions to this rule are few. Broadnax v. City of New Haven, 270 Conn. at 178. Federal courts, however, retain the equitable power to grant attorneys' fees in the "extraordinary case" where it has been found that the bringing of an action was "unnecessary" or compelled by a litigant's "unreasonable, obdurate obstinacy or persistent defiance of the law." Bradley v. School Board of the City of Richmond, 472 F.

2d 318, 320 (4th Cir. 1972), vacated 416 U.S. 696, 40 L. Ed. 2d 476, 94 S. Ct. 2006 (1974) (internal quotation marks omitted). Despite this inherent power, "[s]upport for [a] district court's award of attorney's fees . . . can only be found, in the absence of an applicable statute, in the traditional equitable power to award fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Cordeco Dev. Corp. v. Vasquez, 539 F.2d 256, 262 (1st Cir. 1976), cert. denied 429 U.S. 978, 50 L. Ed. 2d 586, 97 S. Ct. 488(1976) (internal quotation marks omitted), (internal quotation marks omitted). Courts have hesitated to invoke this extreme sanction, however, absent "exceptionally vexatious" conduct or other unconscionable machinations. Byram Concretanks, Inc. v. Warren Concrete Products Co. of New Jersey, 374 F.2d 649, 650 (3d Cir. 1967). As the United States Court of Appeals for the First Circuit has stated, "fees should be awarded . . . only in extraordinary circumstances and for dominating reasons of justice." Cordeco Dev. Corp. v. Vasquez, 539 F.2d at 263 (emphasis added). Thus, those cases discussed, in Part B, in which courts have awarded fees to the prevailing party, are but judge made exceptions to the American Rule grounded in the courts' inherent power to punish bad faith conduct.

At the core of this "bad faith" exception to the American Rule is the institutionalized belief that a party should be punished for its wrongful conduct in attempt to deter it, and others, from future nefarious conduct. See e.g. Hall v. Cole, 412 U.S. 1, 5 (1973); Vaughan v. Atkinson, 369 U.S. 527, 531 (1961) ("As a result of that recalcitrance

libellant was forced to hire a lawyer and go to court to get what was plainly owed to him under laws that are centuries old.") The United States Supreme Court has opined that "the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." Hall v. Cole, 412 U.S. at 5. Traditionally, however, "punitive damages have been considered a more precise measure of defendant's wrongful conduct than an award of fees." Cordeco Dev. Corp. v. Vasquez, 539 F.2d at 263 (citing Vaughan v. Atkinson, 369 U.S. at 540 (Stewart, J., dissenting).

This overview of the American Rule's history and purpose reveals two critical points. First, although federal courts retain the inherent equitable power to award fees, exercise of this power is only appropriate in extreme circumstances of clear bad faith conduct. The fact that the bad faith exception derives from the federal judiciary's equitable power merits special attention. If bad faith conduct, i.e., obdurate behavior, persistent defiance of the law, vexatious conduct, is not present, equity does not call for the judiciary's intervention. In other words, bad faith conduct triggers the court's equitable powers. Absent a showing of bad faith, the court lacks the authority to impose attorneys' fees. Second, awarding fees to a prevailing party under these circumstances is a purely punitive measure. As stated unequivocally by the Supreme Court, attorneys' fees are intended to punish the wrongdoer and deter others from similar conduct in the future. Neither of these purposes is served by awarding attorneys' fees to Kent School.

In the present case, Chicago Title has not acted vexatiously, obdurately or in bad faith. After more than 20 years of dutifully defending Kent School in the underlying action, and with the promise of many more years of litigation to come, Chicago Title initiated the present suit pursuant to the Declaratory Judgment Act, 28 US.C § 2201, which authorizes a party to seek a declaration of its rights from the federal courts. Section 2201 of Title 28 provides in pertinent part: "(a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Simply put, Chicago Title sought from the court a declaration that it could lawfully terminate coverage under the title policy after tendering the policy limits. At all times relevant hereto Chicago Title has provided, and continues to provide, a defense to Kent School. As of this date, it has expended $1,094,795.89 in attorneys' fees. (Lackey Aff. at ¶ 5).

To suggest, as Kent School has, that Chicago Title has acted in bad faith by asking this Court determine whether it could lawfully discontinue coverage is an affront to the Declaratory Judgment Act. Chicago Title's initiation of a declaratory judgment action was valid and done pursuant to its rights. Indeed, the Second Circuit Court of Appeals has stated that a "court must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and

controversy giving rise to the proceeding." Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969), cert. denied 397 U.S. 1064, 25 L. Ed. 2d 686, 90 S. Ct. 1502 (1970). Indeed, courts have encouraged insurance companies to utilize the act rather than face the often times expensive and complex issues created by an ill advised denial of coverage. See West Amer. Ins. Co. v. AV &S, 145 F.3d at 1230-31 ("When faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights. . . . An award of attorneys' fees is not warranted where the plaintiff merely stated its position and initiated this action for determination of what appears to be a justiciable controversy." [quoting Farms Ins. Exch. v. Call, 712 P. 2d 231, 237-38 (Utah 1985)]); Continental Cas. Co. v. Coastal Savings Bank, 977 F.2d 734, 738 (1992) (noting that "[t]he respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement. . . . Declaratory judgment relief was intended to avoid precisely the 'accrual of avoidable damages to one not certain of his rights.'") It is inconceivable, therefore, that Chicago Title's resort to its statutorily created right to seek the opinion of this Court constitutes bad faith conduct sufficient to merit the imposition of attorneys' fees. Such a ruling would obviate the purpose of the Declaratory Judgment Act.

Moreover, as Chicago Title's actions can hardly be considered extreme, outrageous or vexatious, an award of attorneys' fees as a punitive measure would be fruitless. Indeed, punishing Chicago Title for exercising its right to bring a declaratory judgment action pursuant to 28 U.S.C. 2201 is paradoxical. Rather than encouraging insurers to seek the advice of the court, the imposition of fees would deter Chicago Title, as well as insurers facing similar challenges, such action, forcing them to make unadvised decisions subject to future litigation. Not only is this contrary to public policy, but it is also contrary to well established principles of judicial economy. If coverage issues are not determined in declaratory judgment actions, courts down the road will be over burdened with more complicated, more acrimonious bad faith litigation. Thus, punishing an insurer for seeking a declaration of its rights, as it is allowed to do by statute and has been encouraged to do by the courts, is nonsensical.

Kent School seeks the drastic relief of attorneys' fees solely because Chicago Title initiated this declaratory judgment action, seeking to clarify its obligations under the title policy. Chicago Title commenced this declaratory judgment action to settle the question of whether it could terminate its liability by tendering policy limits pursuant to the terms of the policy. Chicago Title has never shirked its duty to defend Kent School in the underlying coverage action commenced by the Schaghticoke; it has continued to pay Kent School's defense costs in the lawsuit involving title to Kent School's property throughout the declaratory judgment action. Chicago Title's action was done in good

faith and is a valid way to settle its controversy with Kent School. The predicate bad faith required for the court to exercise its inherent power is simply not present in this case.

### 3. Awarding Attorneys' Fees Against Insurers Denies Insurers Equal Access to The Courts.

It should also be noted that Kent School's claim that Chicago Title, as an insurer, has an extra-contractual duty to assume the legal fees of its insured in a declaratory judgment action, runs afoul of the Equal Protection clause of the Connecticut and United States Constitution. Although the Declaratory Judgment Act is often utilized by insurers seeking a declaration of coverage under the terms of an insurance policy, its application is not limited as such. Rather, "any interested person seeking such a declaration" may petition the court so long as the case presents "an actual controversy." See 28 U.S.C. § 2201. In fact, the Declaratory Judgment Act is employed by a wide variety of litigants in a vast array of circumstances. See e.g., Natural White, Inc. v. Dentorium Prods. Co., No. 00-7173, 2000 U.S. App. LEXIS 7755 (2d Cir. 2000) (seeking declaratory judgment as to whether trademark infringed on that of competitor); PDK Labs v. Friedlander, 103 F.3d 1105, 1110 (2d Cir. 1997) (affirming declaratory judgment that plaintiff lacked standing to sue under the Lanham Act); Cable Television Ass'n v. Finneran, 954 F.2d 91, 95 (2d Cir. 1992) (In declaratory action, state regulation that established rates for downgrades to lower tiers of cable service was not preempted by federal law); Warner-Jenkinson Co. v.

Allied Chemical Corp., 567 F.2d 184 (2d Cir. 1977) (plaintiffs entitled to seek declaratory relief from royalty obligations on basis of patent invalidity). In none of these instances have courts ever awarded attorneys' fees to the prevailing party. It appears, therefore, that the practice of awarding attorneys' fees as a measure of damages to insureds prevailing in declaratory judgment actions is unique to insurers. Viewed in this light, assessing attorneys' fees against an unsuccessful insurer litigant imposes upon insurers an "extra duty" not applicable to non-insurer litigants in declaratory judgment actions See Carter v. Virginia Surety Co., 187 Tenn. at 600 (describing attorneys' fees as an "extra duty" upon insurers). Thus, this practice discriminates between similarly situated people, namely litigants to a declaratory judgment action, by imposing an additional burden upon one subclass of litigants, insurers, by denying them equal access to the courts. See, e.g., Harbor Ins. Co. v. Groppo, 208 Conn. 505, 506, 544 A.2d 1221 (1988) (describing equal protection as the principle that similarly situated persons should be treated alike).

Equal access to the courts is one of the cornerstones of our judicial system. See, e.g., Griffin v. Illinois, 351 U.S. 12, 16 (1956) (law requiring defendants to pay to obtain transcript necessary for appellate review violated equal protection as applied to indigent defendants.); Smith v. Bennett, 365 U.S. 708, 708-709 (1961) (filing fee to process state habeas corpus application must be waived for indigent prisoner); Boddie v. Connecticut, 401 U.S. 371 (1971) (state could not deny divorce to married couple based on inability to

pay court costs). Insurance companies, therefore, when cast in the role of parties to a declaratory judgment action, are constitutionally entitled to the same access afforded other litigants. "Every person, natural or artificial, has a right to have his rights under a contract adjudicated . . . whether the issues are made affirmatively or defensively, without paying the attorney's fees of the opposite party in such a suit." Maryland Cas. Co. v. Sammons, 63 Ga. App. 323, 327 (Ga. Ct. App. 1940) (emphasis in original). In Sammons, the court concluded that the insurer was liable for its failure to provide a defense under the policy but was not required to pay the insured's attorneys fees for the declaratory judgment action because they were not contemplated by the insurance contract and the insurer did not act in bad faith. Id. at 326.

In considering a case factually similar to the present case, the Tennessee Supreme Court observed that:

> The suit which occasioned complainant's damage was the defendant's effort to obtain a declaration that, on the facts, it owed him no duty. To hold that such a suit may not be brought without liability for damage in event of failure to prevail, even though in good faith, would go far, and place a penalty on the insurer's access to adjudication of rights not common to other contracting parties or to litigants generally.

Carter v. Virginia Surety Co., 187 Tenn. at 600 (emphasis added). Accord Rocky Mountain Fire & Casualty Co. v. Rose, 62 Wn. 2d at 901 (insurer entitled to maintain an action for a declaratory judgment without subjecting itself to liability for opposing party's attorneys' fees).

To impose payment of attorneys' fees on Chicago Title would deprive it of its fundamental right to equal access to the courts. Chicago Title, as an insurer and an unsuccessful litigant, should not be forced to assume the heavy burden of paying attorneys' fees to the imposing party when non-insurer unsuccessful litigants do not. Rather, the principles of Equal Protection demand that Chicago Title be subject to the same standards as non-insurer litigants. To hold insurers to a heightened standard absent justification is fundamentally unfair and potentially injurious. Accordingly, Chicago Title's right to access the courts should not be tempered by the imposition of Kent School's attorneys' fees incurred in defending this declaratory judgment action.

## III. CONCLUSION

For the foregoing reasons, Chicago Title respectfully requests that this Court grant its motion for summary judgment on Kent School's second counterclaim.

PLAINTIFF,
CHICAGO TITLE INSURANCE COMPANY
/s/______________________
Lawrence P. Heffernan (ct 22567)
lheffernan@rc.com
Frank F. Coulom, Jr. (ct 05230)
fcoulom@rc.com,
Andrea Donovan Napp (ct 26637)
mmanzo@rc.com
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8240
Fax No.: (860) 275-8299

## CERTIFICATION

I hereby certify that on October 27, 2006, a copy of the foregoing Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Francis Brady, Esq.
Murtha Cullina LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103-3469

/s/ ______________________
Andrea Donovan Napp