# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY, Plaintiff, | : | |
| v. | : | Civil Action No. 3:02 CV 1095 (CFD) |
| THE KENT SCHOOL CORPORATION Defendant. | : | |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The plaintiff, Chicago Title Insurance Company ("Chicago Title") brought this action seeking declaratory relief against its insured, the Kent School Corporation ("Kent School"), concerning a title insurance policy. Both parties have moved for summary judgment. For the following reasons, Chicago Title's motion for summary judgment **[Doc. #29 ]** is **DENIED** and Kent School's motion for summary judgment **[Doc. # 38]** is **GRANTED.**

## I Facts[1]

In 1966, Chicago Title issued a policy of title insurance to Kent School, an independent boarding school, in the amount of $100,000 for real property that Kent School recently had acquired and added to its campus. Kent School made a one time payment for the policy, which included a premium component and a fee for Chicago Title's examination of title.

In 1975, the Schaghticoke Tribal Nation ("the Schaghticoke Tribe") brought suit against Kent School in the U.S. District Court for the District of Connecticut, claiming an interest in the insured property. Kent School arranged for the law firm of Day Berry & Howard to defend the

[1] The facts are taken from the Local Rule 56(a) statements filed by both parties and are undisputed.

school's title. In 1993, the district court dismissed the Schaghticoke Tribe's suit on the ground that it had not been granted tribal status by the United States Bureau of Indian Affairs. Chicago Title paid all of the legal fees incurred by Day, Berry & Howard in the defense of Kent School in that action.

In 1998, the Schaghticoke Tribe reinstated its suit against Kent School. Once again, Kent School employed Day, Berry & Howard, and that action is still pending.[2] As of March 12, 2004, Chicago Title has paid over $695,844 in legal fees on behalf of Kent School in the actions brought by the Schagticoke Tribe. These fees include defense attorney's fees and expert witness fees.

In October 2001, Chicago Title first raised that it wished to terminate its obligation to defend Kent School in the Schaghticoke Tribe's suit pursuant to the terms of the title policy. Specifically, in a telephone conversation with Kent School's counsel, a senior vice president of Chicago Title indicated that it wished to tender the $100,000 indemnity component of the policy, expecting to thus also terminate its defense obligation.[3]

On June 24, 2002, Chicago Title brought this action seeking a declaratory judgment that, pursuant to the terms of the policy, it tendered the total indemnity amount of $100,000 to the school and, therefore, it no longer has an obligation to defend Kent School against the Schaghticokes' suit. Kent School disputes Chicago Title's right to terminate its liability under

---

[2]It appears that Kent School also employed the law firm of Perkins Coie to represent its interests in the reinstated action.

[3]The parties dispute whether Chicago Title actually tendered the indemnity component to Kent School. It is undisputed, however, that Chicago Title has not paid that amount to Kent School.

the policy by tendering the policy limit, and has cross claimed, seeking a declaration from this Court that Chicago Title has an ongoing duty to defend pursuant to the terms of the policy.[4] Both parties have moved for summary judgment, claiming that the language of the policy is dispositive. Kent School also maintains that, if there is any ambiguity in the language of the policy, it is entitled to summary judgment because that ambiguity must be construed in its favor.

## II Summary Judgment Standard

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-1061 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When addressing a motion for summary judgment, a court must resolve "all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Therefore, summary

[4]Since filing this action, Chicago Title has continued to pay the defense costs incurred by Kent School in the ongoing Schaghticoke litigation.

judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

______ "When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. . . . 'Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting Schwabenbauer v. Board of Educ. of Olean, 667 F.2d 305 (2d Cir. 1981)); see also 11 Moore's Federal Practice 3d § 56.10[6] (Matthew Bender Ed.) (citing cases).

## IV Analysis

The sole issue here is whether the terms of the title insurance policy between the parties permits Chicago Title to tender the $100,000 indemnity payment to Kent School, thereby terminating its obligation to pay further defense costs incurred by the school in the ongoing Schaghticoke litigation.

Under Connecticut law, "[i]t is the function of the court to construe the provisions of the contract of insurance." Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 418 A.2d 944 (1979).[5] As the Connecticut Supreme Court has stated:

> An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy.... The determinative question is the intent of the parties, that is, what coverage the ...

---

[5]Both parties agree that the policy should be construed pursuant to Connecticut law. Jurisdiction here is based on diversity of citizenship.

> [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy.... If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties.

O'Brien v. United States Fidelity & Guaranty Co., 235 Conn. 837, 842, 669 A.2d 1221 (1996) (quoting Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 583-84, 573 A.2d 699 (1990)). Therefore, a court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." Id. (citing Tremaine v. Tremaine, 235 Conn. 45, 57, 663 A.2d 387 (1995)); see also Smedley Co. v. Employers Mutual Liability Ins. Co., 143 Conn. 510, 515, 123 A.2d 755 (1956) (the meaning of words in insurance policies are "revealed by their association with other words," that is, that words "are known by the company they keep").

Moreover, "[i]t is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." Ceci v. National Indemnity Co., 225 Conn. 165, 173-74, 622 A.2d 545 (1993); accord Israel v. State Farm Mutual Automobile Ins. Co., 259 Conn. 503, 508-509, 789 A.2d 974 (2002); Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 80 Conn.App. 364, 371-72, 835 A.2d 91 (2003).[6]

---

[6]The Connecticut Supreme Court has explained that:

> The premise behind the rule is simple. The party who actually does the writing of

As a threshold consideration, the parties do not appear to dispute that Chicago Title has a duty to defend Kent School in an action implicating its title to the insured property. See Imperial Casualty And Indemnity Co. v. State, 246 Conn. 313, 323-24, 714 A.2d 1230 (1998) (discussing the duty to defend); DaCruz v. State Farm Fire & Casualty Co., 268 Conn. 675, 688, 846 A.2d 849 (2004) ("As we repeatedly have stated, the duty to defend is considerably broader than the duty to indemnify"). Indeed, the policy specifically provides that Chicago Title "will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or incumbrances not excepted in this policy." The question therefore is whether, pursuant to additional terms in the policy, Chicago Title can terminate its duty to defend by tendering the full amount of the indemnity coverage. To answer that question, the Court must review all relevant portions of the policy. O'Brien, 235 Conn. at 842 (court "must look at contract as a whole").

The cover sheet to the policy, titled "Policy of Title Insurance," provides:

> [Chicago Title] in consideration of the payment of its charges for the examination of title and its premium for insurance, insures [Kent School] against all loss or damage not exceeding the amount of insurance stated herein *and in addition* the costs and expenses of defending the title, estate or interest insured, which the insured shall sustain by reason of any defect or defects of title affecting the premises . . . excepting all loss and damage by reason of the estates, interests, defected, objections, liens, incumbrances and other matters set forth in Schedule B, or by the conditions of this policy hereby incorporated into this contract . . . . (emphasis added)

---

> an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests.... A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter.

Ceci, 225 Conn. at 175.