# EXHIBIT F

LEXSEE 2005 U.S. DIST. LEXIS 35864

**GENERAL INSURANCE COMPANY OF AMERICA, Plaintiff, - against - THE CITY OF NEW YORK, ADMINISTRATION FOR CHILDREN'S, SERVICES, NEW ALTERNATIVES FOR CHILDREN, INC., TALBOT-PERKINS AGENCY and BARBARA FINCH, Defendants.**

**04 Civ. 8946 (JCF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

***2005 U.S. Dist. LEXIS 35864***

**December 23, 2005, Decided**
**December 23, 2005, Filed**

**COUNSEL:** [*1] For General Insurance Company of America, Plaintiff: Ewan Marcus Clark, Bonner, Kiernan, Trebach & Criciata, New York, NY.

For City of New York, Administration for Children's Services of the City of New York, Defendants: Alan H. Kleinman, New York City Law Depart. Office of the Corporation Counsel, New York, NY.

For Barbara Finch, Defendant: Thomas Hoffman, Law Offices of Thomas Hoffman,PC, New York, NY.

For Administration for Children's Services of the City of New York, City of New York, Counter Claimants: Alan H. Kleinman, New York City Law Depart. Office of the Corporation Counsel, New York, NY; Valerie Ann Phillips, New York City Law Department, New York, NY.

For City of New York, ThirdParty Plaintiff: Alan H. Kleinman, New York City Law Depart. Office of the Corporation Counsel, New York, NY; Valerie Ann Phillips, New York City Law Department, New York, NY.

Lexington Insurance Company, ThirdParty Defendant, Pro se, New York, NY.

For Lexington Insurance Company, ThirdParty Defendant: Norman Robert Ferren, Lester, Schwab, Katz and Dwyer LLP, New York, NY.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION:**

MEMORANDUM [*2] AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

General Insurance Company of America ("GICA") seeks a judicial declaration that it is not obligated to defend or indemnify the City of New York (the "City") or the City's Administration for Children's Services ("ACS") in a separate lawsuit in this Court. Two motions for summary judgment are now pending. The City has moved for partial summary judgment declaring that GICA must defend it, and it has also requested an award of attorneys' fees. CIGA has cross-moved for a determination that it has no duty either to defend or to indemnify.

The parties consented to referral of the action to me for all proceedings including determination of dispositive motions pursuant to *28 U.S.C. § 636(c)*. For reasons that follow, the City's motion is granted and GICA's motion is denied.

Background

A. Underlying Action

In June 2004, Barbara Finch filed a complaint in this Court on behalf of herself and her grandson Manny Moe against the City, ACS, the Talbot-Perkins Agency ("Talbot"), and New Alternatives for Children, Inc. Ms. Finch alleged that the defendants violated her and her grandson's constitutional [*3] rights and state law by, among other things, improperly placing Manny in non-kinship foster care at birth; failing to provide federally mandated preventive and reunification services; arbitrarily restricting visits between Ms. Finch and Manny; and failing to

provide Manny with treatment for deafness in his left ear. (First Amended Complaint, Finch v. City of New York, No. 04 Civ. 4434 ("Finch FAC"), PP33-35, 53-55, 57-60, 64-65, 68-70, 82-83, attached as Exh. F to Declaration of Alan H. Kleinman dated July 14, 2005 ("Kleinman Decl.")).

Manny was born in June 2001 with cocaine in his bloodstream and infected with syphilis. (Finch FAC, P24). His mother, Ms. Finch's daughter, had already lost parental rights to Manny's older sister Kaylee. (Finch FAC, PP22-23). Ms. Finch, a certified foster care provider, was raising Kaylee and four other children who had come to her through the New York City foster care system. (Finch FAC, PP21, 51). Without informing Ms. Finch, ACS removed Manny from the hospital and placed him in the custody of Talbot, a foster care agency. (Finch FAC, P26). Manny remained in non-kinship foster care for almost two years until May 2003, when the New York Family [*4] Court placed him with Ms. Finch. (Finch FAC, PP26, 44).

Private foster care agencies such as Talbot provide a range of services for children the City has removed from their families, from foster care beds to therapeutic, medical, and adoption services. Talbot's contract with the City obligated the agency to provide such services. (Finch FAC, P6; foster care contract between ACS and Talbot, excerpts attached as Exh. A to Kleinman Decl.; GICA insurance policy, attached as Exh. B to Kleinman Decl. at 58). At some point before the current action was commenced, Talbot went out of business. (Kleinman Decl., Exh. H).

B. Instant Action

At the center of the dispute between GICA and the City is a GICA liability policy obtained by Talbot. Pursuant to its foster care contract with New York City, Talbot purchased the GICA policy, a standard commercial general liability policy, with an endorsement covering the City as an additional insured. The endorsement did not name the City specifically. Rather, it designated as additional insureds "any and all funding sources." (Kleinman Decl., Exh. A at 34; Declaration of Alan G. White dated Aug. 19, 2005 ("White Decl."), Exh. F at 1B, 1C). The policy [*5] covered the liability of both Talbot and the City for any bodily injury arising out of Talbot's operations and obligated GICA to pay for the insured's defense in the event of a related lawsuit. (Kleinman Decl., Exh. B at 59, 75). Under the policy, coverage was limited to injuries caused by an occurrence, defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Kleinman Decl., Exh. B at 59, 71).

The policy contained a significant exclusion: it "does not apply to 'bodily injury,' 'property damage' or 'personal and advertising injury' due to the rendering of or failure to render any professional services." (White Decl., Exh. F at 1A). For liability arising from its professional services, Talbot purchased a professional liability policy from GICA, but New York City was not insured under that policy.

On June 28, 2004, a few days after Ms. Finch filed suit, the City sent a copy of her complaint to Acordia, an insurance broker handling Talbot's GICA policy. (Kleinman Decl., Exh. G). Acordia faxed the complaint to GICA's agent on August 17, 2004, which faxed it on to GICA the same day. (Affidavit of James Klouse dated Aug. 17, 2005 ("Klouse [*6] Aff."), PP4, 6). Because the endorsement adding all funders as additional insureds did not name the City specifically, GICA sought verification from the City of its relationship as a funder of Talbot. The City sent verification in mid-September. On September 24, James Klouse, a GICA claims specialist, sent a letter to the City's lawyer informing him that GICA had doubts about its obligations to the City and that GICA was submitting the documents to a lawyer for a legal opinion. (White Decl., Exh. D). On November 8, 2004, Mr. Klouse informed the City that GICA declined to defend and indemnify the City. (Klouse Aff., P15).

In it's complaint, GICA argues that the allegations in the Finch lawsuit fall entirely within the professional services exclusion of the general liability policy. The company also asserts that the City and ACS are not covered because any injuries arose out of the City's operations, not Talbot's, and because the actions alleged in the suit were not accidents, as required under the terms of the policy. Finally, GICA denies coverage on the ground that the injuries claimed by Ms. Finch are not bodily injuries.

C. The Summary Judgment Motions

1. New York City's [*7] Motion

The City asserts that GICA must defend it in the Finch action and that summary judgment is warranted for three reasons. First, it argues that the acts are covered by Talbot's commercial general liability policy. The City rejects GICA's conclusion that all of the acts alleged by Ms. Finch involved professional judgment, contending instead that the injuries could have been caused by a clerk, by a general administrative failure, or by a variety of negligent acts that would be covered by general liability insurance. Second, the City maintains that under controlling New York law, an insurer's duty to defend is exceedingly broad and encompasses parties in its position. Third, the City argues that GICA waived whatever right it had to disclaim coverage by failing to convey its disclaimer promptly, in violation of *New York Insurance Law § 3420(d)*, which provides:

> If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of . . . any type of accident occurring within this state, it shall give written notice as soon as is reasonably possible [*8] of such disclaimer of liability or denial of coverage to the insure and the injured person or any other claimant.

New York City also asserts a right to recoup the costs incurred to date in defending the Finch action as well as attorneys' fees for defending against this coverage action.

2. GICA'S Cross-Motion

GICA cross-moves for summary judgment on all of the claims in its complaint except the claim that the injuries alleged are not bodily injuries. GICA contends, first, that it does not have a duty to defend the City because a fair reading of Ms. Finch's complaint demonstrates that all of her allegations concern actions undertaken by social workers in their professional capacities and thus fit completely within the professional services exclusion of the general liability policy.

Second, GICA maintains that Manny's alleged injuries did not arise out of Talbot's operations. In GICA's view, the City, not Talbot, initiated the course of action leading to alleged injuries when it placed Manny with Talbot instead of with Ms. Finch. GICA maintains that under this circumstance the City cannot claim coverage under the endorsement, which expressly limits the City's coverage to [*9] damages arising out of Talbot's operation.

Third, GICA argues that the events at issue in Ms. Finch's complaint do not constitute occurrences. The policy defines an occurrence as an accident. GICA urges that under the standard test of whether an occurrence is an accident -- namely, whether loss was unexpected from the standpoint of the insured -- the acts alleged in the Finch complaint were not occurrences.

Finally, GICA disputes the City's claim that GICA waived its right to disclaim coverage. The company contends that it acted promptly to investigate the City's request for coverage and complied with *section 3420(d)* of the Insurance Law by giving written notice of its disclaimer as soon as its lawyer had conducted an investigation and rendered a legal opinion.

Discussion

A. Standard for Summary Judgment

A motion for summary judgment may be granted only if there is no genuine issue of material fact remaining before trial and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. See *Fagan v. New York State Electric and Gas Corp., 186 F.3d 127, 132 (2d Cir. 1999)*. The burden of showing [*10] the absence of a factual dispute rests on the party seeking summary judgment. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*; *Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)*.

To determine whether a case presents a triable issue of fact, courts "must resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party." *Peck ex rel. Peck v. Baldwinsville Central School District, 426 F.3d 617, 625 (2d Cir. 2005)*. However, a non-moving party "may not rest on mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997)* (internal quotations and citations omitted); accord *Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*; *Jeffreys, 426 F.3d at 554* (nonmovant "may not rely on conclusory allegations or unsubstantiated speculation") (internal quotations and citations omitted). In sum, if the court determines that "the record taken as a whole could not lead [*11] a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita, 475 U.S. at 587* (quoting *First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)*).

B. Timeliness of the Disclaimer

The City raises a threshold question: did GICA waive its right to disclaim coverage by delaying its notification to the City of its decision to deny coverage? Under *section 3420(d) of the New York Insurance Law*, insurers must give insureds written notice of a disclaimer "as soon as is reasonably possible." GICA notified the City in writing of its decision to disclaim coverage on November 8, 2004, 81 days after receiving a notice of claim from the City.

The City urges the Court to apply the rule announced in *First Financial Insurance Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 65, 801 N.E.2d 835, 769 N.Y.S.2d 459, 461 (2003)*, a New York State Court of Appeals decision that held that an insurer's 48-day delay was unreasonable as a matter of law. Such an application is unsound. In Jetco, the United States Court of Appeals for the Second Circuit asked the State Court of Appeals to clarify whether [*12] an insurer's 48-day delay was unreasonable as a matter of law, when the reason for the

delay was the insurer's effort to find other, third-party sources of insurance. The District Court had ruled that the insurer's delay was acceptable, reasoning that the investigations were intended to benefit the insured and should be encouraged even if the insurer had already decided to deny coverage regardless of whether it could locate alternative sources of insurance. *Id. at 67, 769 N.Y.S.2d at 461*. The State Court of Appeals explained that the District Court had gotten it wrong: a delay to investigate issues affecting an insurer's decision to disclaim is excusable, but a delay unrelated to the insurer's decision is not. *Id. at 69, 769 N.Y.S.2d at 463*.

As James Klouse, GICA's claim specialist, explained to the City's lawyer in a letter on September 24, 2004, before issuing a formal disclaimer, GICA needed time to investigate its legal obligations to New York City in light of the professional services exclusion in Talbot's policy. (White Decl., Exh. D at 1). This is an excusable delay: the investigation was solely to determine whether GICA had a duty to defend [*13] and indemnify the City.

The question remains whether, given that GICA's investigation was made to determine its obligations, its delay was unreasonable. Timeliness "is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." In re Arbitration between *Allcity Insurance Co. and Jimenez, 78 N.Y.2d 1054, 1056, 581 N.E.2d 1342, 576 N.Y.S.2d 87, 88 (1991)*. GICA was not in a position to evaluate the City's claim when it first received a copy of Ms. Finch's complaint on August 17, 2004, because at that point GICA did not know of Talbot's connection to the City. (Klouse Aff., P9). The endorsement on Talbot's policy extending coverage to "any and all funding sources" as additional insureds did not mention New York City. Despite two requests from Mr. Klouse for copies of the foster care contract between the City and Talbot and any other evidence that the City had been added as an additional insured under any Talbot policy issued by GICA, the City did not get the complete materials to GICA until mid-September. (Klouse Aff., PP10, 11). GICA's actions after that were reasonably prompt. On September 24th, Mr. Klouse wrote to [*14] the City to say that there might be grounds to disclaim coverage. GICA was not prepared that day to disclaim coverage because the company still saw a possibility of a duty to cover the City. (White Decl., Exh. D at 1). To reach a decision, the company needed legal advice. It viewed the issues presented by the professional services exclusion in Talbot's general liability policy as complicated in light of Talbot's separate professional services liability policy. Once Mr. Klouse obtained counsel's opinion letter, he issued a written disclaimer to the City. (Letter of James Klouse dated November 8, 2004, attached as Exh. E to White Decl.). Given the need to investigate and the time involved in obtaining information from the City, GICA's disclaimer was timely.

C. The Professional Services Exclusion

GICA claims that the professional services exclusion in Talbot's general liability policy relieves GICA of any obligation to defend and indemnify New York City. The pivotal issue here is whether individuals involved in Manny's care acted with the special acumen and training of professionals when they engaged in the acts challenged by Ms. Finch. See *Reliance Insurance Co. v. National Union Fire Insurance Co., 262 A.D.2d 64, 65, 691 N.Y.S.2d 458, 460* [*15] *(1st Dep't 1999)* (to fall within exclusion, task must involve professional's special acumen, not just normal powers of supervision); *Atlantic Lloyd's Insurance Co. of Texas v. Susman Godfrey, LLP, 982 S.W.2d 472, 476-77 (Tex. Ct. App. 1998)*(act is not deemed professional merely because it is done by professional; rather, individual must be using specialized knowledge or training).

GICA has not met its burden of showing that Manny's caregivers acted as professionals when they undertook actions about which Ms. Finch complains. GICA and the City decided to submit summary judgment motions before taking discovery in the hope that Ms. Finch's complaint, the language of the policy, and the law itself would supply all that was needed for the Court to reach judgment. (Memorandum of Law in Support of Plaintiff, General Insurance Company of America's Cross-Motion for Summary Judgment in Opposition to Defendant, City of New York's Motion for Summary Judgment ("GICA Memo") at v). However, the determination of how to characterize the caregivers' actions is fact-sensitive and cannot be settled by GICA's summary statements in its pleadings. There is no way of knowing whether the [*16] individuals involved in the alleged improper care of Manny performed their acts drawing on specialized training and knowledge, made their decisions using ordinary supervisory powers, or were clerks following mandated procedures.

In contrast, the City's motion for summary judgment can be determined without knowing definitively whether the caregivers acted as professionals because, under New York law, an insurer's duty to defend is far broader than its duty to indemnify and arises when there is even a potential for the conduct in question to fall within the coverage of the policy. See *McCostis v. Home Insurance Co. of Indiana, 31 F.3d 110, 112 (2d Cir. 1994)* ("An insurer's duty to defend is 'exceedingly broad' and is separate from and more expansive than the covenant to indemnify.") (quoting *Colon v. Aetna Life and Casualty Insurance Co., 66 N.Y.2d 6, 8-9, 484 N.E.2d 1040, 494 N.Y.S.2d 688, 689 (1985))*; *Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co., 91 N.Y.2d*

*169, 175, 690 N.E.2d 866, 667 N.Y.S.2d 982, 985 (1997)* ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action. [*17] "); *City of New York v. Certain Underwriters at Lloyd's of London, England, 15 A.D.3d 228, 230, 790 N.Y.S.2d 82, 84 (1st Dep't 2005)* ("'If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased,' a duty to defend exists.") (quoting *Technicon Electronics Corp. V. American Home Assurance Co., 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 532, 542 N.E.2d 1048 (1989))*. Where an insurer seeks to escape coverage by virtue of an exclusion, moreover, the insurer will be relieved only where it can "demonstrate that the allegations of the [underlying] complaint cast the pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." *International Paper Co. v. Continental Casualty Co., 35 N.Y.2d 322, 325, 320 N.E.2d 619, 361 N.Y.S.2d 873, 875 (1974)*.

The City successfully identifies acts that are at least arguably covered by the commercial general liability policy. It notes that the complaint charges foster care workers with ignoring requests by Manny's mother to place the baby with Ms. Finch, failing to set up home care services for Ms. Finch, [*18] and failing to check into leads of other suitable family members who might take Manny in. (Reply Memorandum of Law of the City of New York in Support of its Motion for Partial Summary Judgment and in Opposition to the Cross Motion for Summary Judgment at 2-3). Clerks with no specialized training may have carried out these acts. The conduct, even if undertaken by social workers or supervisors, may have been so routine as to have been reflexive, and may not have involved any specialized professional training or judgment. Under New York law, a showing that conduct challenged in a lawsuit potentially falls outside an exclusion is sufficient to trigger an insurer's duty to defend, and the City has made such a showing.

D. Liability Under Additional or Named Insurer's Operations

The endorsement adding New York City to Talbot's general liability policy states that the policy "is amended to include as an insured [the City] as an insured but only with respect to liability arising out of [Talbot's] operations . . . ." (White Decl., Exh. F at 1A, 1B) (emphasis added). GICA argues that the City is not an additional insured under the terms of the endorsement because the City initiated [*19] the course of events at issue by removing Manny from the hospital and placing him in Talbot's care. CIGA reasons that because of those actions, the alleged injuries do not arise out of Talbot's operations. (GICA Memo at 12-13). This argument is not persuasive: it ignores the independent conduct of Talbot employees who allegedly caused injuries. Talbot, for example, controlled visiting hours between Ms. Finch and Manny, and limited them to one two-hour visit every other week. (Finch FAC, P57).

GICA cites a single case, *Greater New York Mutual Insurance Co. v. Mutual Marine Office, Inc., 3 A.D.3d 44, 769 N.Y.S.2d 234 (1st Dep't 2003)*, in support of its argument. In that case, an insurer denied coverage to an additional insured for damage to automobiles that occurred when the roof of a building housing a parking garage collapsed. The named insured was the garage owner, a lessee in the building. The additional insured was the landlord, whose coverage was limited, as the City's is here, to damages arising out of named insured's operation. A structural defect in the building caused the roof to collapse, and the court ruled that the policy did not cover the landlord for [*20] damage to cars because the collapse plainly had nothing to do with garage operations. *Id. at 47, 769 N.Y.S.2d at 237*. As the court noted, the garage owner was in no position to control or minimize the risk of structural collapse: the lease agreement between the landlord and the garage operator specifically reserved to the landlord the duty to make structural repairs to the building, *Id. at 48, 50, 769 N.Y.S.2d at 237, 239*. None of the garage owner's independent actions -- parking and servicing cars -- contributed to the collapse. *Id. at 48, 769 N.Y.S.2d at 237*.

Unlike the garage owner in *Greater New York Mutual*, Talbot's independent actions are a central component of the alleged injuries. Moreover, as a frontline foster care provider, Talbot was in an excellent position -- perhaps the best position -- to avoid or reduce the risk that Manny would be harmed while out of his family's custody. Clearly, to the extent there is liability in this case, the City's liability stems from Talbot's operations as well as its own.

E. Occurrences Under The GICA Policy

According to GICA, Talbot's general liability policy does not cover the [*21] City because the Finches' injuries were not the result of occurrences. Under the terms of the policy, only injuries caused by occurrences, defined in the policy as accidents, are covered. Accidents include "continuous or repeated exposure to substantially the same general harmful conditions." (Kleinman Decl., Exh. B at 59, 71). The New York State Court of Appeals set forth the rule for determining whether a loss is the result of an accident in *Miller v. Continental Insurance Co., 40 N.Y.2d 675, 677, 358 N.E.2d 258, 389 N.Y.S.2d 565, 566 (1976)*: "In construing whether or not a certain result is accidental, it is customary to look at the casualty from the point of view of the insured, to see whether or not, from his point of view, it was unexpected, unusual and unforeseen." (internal quotation marks and citation

omitted). Plainly, the City did not expect Manny's development to be hampered by failures to treat his hearing loss or by arbitrary restrictions on visits between Manny and members of his family when it removed him from the hospital and placed him in foster care. To the contrary, the City acted expressly to prevent harm to Manny. The injuries alleged in Ms. Finch's complaint [*22] are therefore the result of occurrences.

In sum, GICA has not demonstrated that it is exempt from the obligation to indemnify the City, and it must defend the City in the underlying lawsuit.

F. Attorneys' Fees

The City requests an award of costs, including attorneys' fees, that it has incurred to date in defending itself in the Finch action, as well as the attorneys' fees incurred in this declaratory action. Both requests are granted. Under New York law, an insured who prevails in an action brought by an insurer seeking to free itself from a duty to defend is entitled to recover attorneys' fees. See *Liberty Surplus Insurance Corp. v. Segal Co., 420 F.3d 65, 67 (2d Cir. 2005)*; *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592, 597, 789 N.Y.2d 470, 473, 822 N.E.2d 777 (2004)*; *Mighty Midgets, Inc. v. Centennial Insurance Co., 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 416 N.Y.S.2d 559, 564 (1979)*. Further, since GICA has been found to have a duty to defend, it is obligated to reimburse the City for expenditures already made. The City may make an application to the Court for a determination of the amounts to be awarded.

Conclusion

For [*23] reasons discussed above, the City's motion for a declaration on summary judgment that GICA must defend it in the Finch lawsuit is granted, as is its request for recovery of costs incurred in the underlying Finch action and in this insurance action. GICA's cross-motion for summary judgment is denied.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

December 23, 2005