UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY | x : | |
| Plaintiff, | : | CIVIL NO. 3 02 CV 1095 (CFD) |
| v. | : | |
| KENT SCHOOL CORPORATION | : | |
| Defendant. | : | |
| | : x | NOVEMBER 21, 2006 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO KENT SCHOOL'S MOTION FOR SUMMARY JUDGMENT**

The Connecticut Supreme Court has not addressed the issue of whether an insured who prevails in a declaratory judgment action brought by an insurer to determine coverage is entitled to recover attorneys' fees incurred in defending that action where the insurer did not breach its duty to defend in the underlying action. The issue, therefore, is an open one. Accordingly, this Court's duty in reviewing the parties' cross-motions for summary judgment is not to blindly apply the law of a few isolated decisions as the defendant, Kent School Corporation ("Kent School"), asks it to do, but to predict how the Connecticut Supreme Court would rule if presented with the issue.

The plaintiff, Chicago Title Insurance Company ("Chicago Title"), respectfully submits that the available authority, from Connecticut and other jurisdictions, as well as the Constitutional principles underlying equal access to the courts suggest that the Connecticut

Supreme Court would likely hold that Kent School is not entitled to an award of attorneys' fees on the second count of its counterclaim. For the reasons set forth more fully herein, Kent School's motion for summary judgment must be denied.

## I. STATEMENT OF FACTS

Chicago Title hereby incorporates by reference the Statement of Facts set forth in its Memorandum of Law in Support of Motion for Summary Judgment filed on October 27, 2006.

## II. LEGAL ARGUMENT

### A. The Connecticut Cases Cited by the Plaintiff are Premised on a Breach of the Duty to Defend.

Although Connecticut's appellate courts have not addressed the issue, trial courts considering whether an insured who prevails in a declaratory judgment action brought by an insurer to determine coverage is entitled to recover attorneys' fees incurred in defending that action have awarded attorneys' fees **only** when the insurer breached its duty to defend or otherwise acted in bad faith. In arguing that every time a Connecticut court has addressed the issue it has concluded that the policyholder is entitled to attorneys' fees, Kent School overlooks the critical fact that, in each case cited, the insurer breached its contract of insurance by failing to provide a defense to the insured in the underlying action and the insured was forced to sue in order to recoup the defense fees it was entitled to under contract. See Defendant's Memorandum in Support of its Motion for Partial Summary Judgment on Its Counterclaim for Attorneys' Fees ("Kent School's Memorandum"), dated October 27, 2006, at 8.

For instance, in Spaziani v. Harleysville Worcester Ins.Co., No. CV044000309S, 2005 Conn. Super. LEXIS 2999 (Conn. Super. Ct. Oct. 31, 2005) (Attached hereto at Exhibit A), the plaintiff insured was forced to file suit against the defendant insurer because the insurer breached

its duty to defend by failing to provide a defense in the underlying action. In awarding attorneys' fees to the insured, the court observed that, "the insurer is liable for reasonable legal fees and costs expended by the plaintiff in an effort to recover defense costs that should have been incurred by the insurer in the first instance under a contractual duty to defend." Id. at * 2 (Emphasis added.)

Likewise, in City of West Haven v. Liberty Mutual Ins. Co., 639 F. Supp. 1012 (D. Conn. 1986) (Attached hereto at Exhibit B), the plaintiff municipality was also forced to file suit against the defendant insurer alleging breach of contract and bad faith arising out of the insurer's failure to defend the city against a workers' compensation claim by city employees. Although the court found in favor of the defendant on the bad faith claim, it concluded that the defendant insurer breached its contract of insurance by failing to provide a defense. Id. at 1017. In awarding attorneys' fees to the plaintiff, the court noted that "the claims were unquestionably at least potentially within the policy coverage" and the defendant insurer "came under a clear duty to defend West Haven."[1] Id.

While Connecticut's trial courts have awarded attorneys' fees to insureds prevailing in declaratory judgment actions, those awards were in cases in which the insured was forced to take legal action against an insurer to compel the insurer to fulfill its obligation to provide a defense. Thus, in the cases cited by the plaintiff, the award of attorneys' fees was conditioned on the

[1] Kent School also relies on First American Title Ins. Co. v. Jaworoski, 3 Conn. Super. Ct. Rep. 207 (Jan. 15, 1988) (Cioffi, J.) (Attached hereto at Exhibit C.) Although Jaworoksi does not expressly state whether or not the plaintiff insurer breached its duty to defend, it implied that the insurer did not pay the underlying attorney's fees. In Jaworoksi, the court observed that "[t]he majority rule is that an insurer is not liable for the insured attorneys' fees in a declaratory judgment action to establish insurance coverage unless it is shown that the insurer has acted in bad faith or fraudulently or was stubbornly litigious." Id., citing 22 Am. Jur. 2d, Declaratory Judgments, § 101 (Supp.) (1987). The court then quoted from Appleman, Insurance Law and Practice§ 4691 (1979), which criticizes the majority rule as unfair when "the insurer had contracted to defend the insured, and it failed to do so." Id.

insurers' breach of their duty to defend, specifically, the insurers' failure to provide a defense under the terms of the policy. See also General Plasma, Inc. v. Reliance Ins. Co., CV970575899S, 2000 Conn. Super. LEXIS 68 (Conn. Super. Ct. Jan. 11, 2000) (Awarding attorneys' fees to successful insured where insurer "refused to defend and indemnify General Plasma in violation of the clear and unambiguous language of the policy.")(Attached hereto at Exhibit D); Aetna Life & Cas. Co. v. Gentile, No. 0122259, 1995 Conn. Super. LEXIS 3444 (Conn. Super. Ct. Dec. 12, 1995) (Awarding attorneys' fees to successful insured based on finding that the insured had filed the declaratory judgment action for an unlawful purpose.) (Attached hereto at Exhibit E.)[2] In short, Connecticut courts have only imposed attorneys' fees where the insurer breached its duty to defend or acted in bad faith, leaving the insured without a defense.

This is not the case here. Chicago Title has provided a defense to Kent School in the underlying actions since 1977. See Joint Stipulation of Facts, ¶ 5. It has paid a total of $1,094,795.89 for Kent School's legal fees in defending the two lawsuits brought by the Schaghticoke Tribal Nation. See Plaintiff's Local Rule 56 (A) (1) Statement, ¶ 3. It simply cannot be said that Chicago Title has failed to meet its duty to Kent School. Indeed, even after Chicago Title sought to tender the policy limits in fulfillment of its obligations, it continued to provide a defense. Id., at ¶¶1-3. Clearly, Chicago Title has fulfilled its duty to its insured. Because Chicago Title has paid and continues to pay Kent School's defense costs in the underlying action, it is not in breach and should not be responsible for paying Kent School's

---

[2] Both Gentile and General Plasma are discussed at length in Chicago Title's Memorandum of Law in Support of Summary Judgment at pages 8-10.

legal fees in the instant declaratory judgment action. See Parties' Joint Stipulation of Facts, at ¶ 9.

**B. The Connecticut Supreme Court Would Likely Conclude That Attorneys' Fees are Only Available Where an Insurer is in Breach or Has Acted in Bad Faith.**

The Connecticut Supreme Court has yet to determine whether attorneys' fees are available to insureds successfully litigating declaratory judgment actions where the insurer has not breached its duty to defend. This Court, therefore, must predict how the state's highest court would rule on this state law issue of first impression and is not bound by the decisions of the Court of Appeals for the Second Circuit[3] or the decisions of New York's or Massachusetts' highest courts, as Kent School seems to suggest. Based on the available lower court authority, the decisions of sister states, and the Connecticut Supreme Court's well established policy of analyzing all sides of an issue of first impression to determine the better rule of law, Chicago Title submits that the court would conclude that attorneys' fees are available only when an insurer has breached its duty to defend or otherwise acted in bad faith.

It is well established that "[a]bsent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law. Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 399 (2d Cir. 2001), citing Michalski v. Home Depot, Inc., 225 F.3d 113, 116 (2d Cir. 2000). The holding of "an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

---

[3] This Court is not bound by the decisions of the Second Circuit on substantive issues of state law that have not been addressed by that state's highest court. See Desiano v. Warner-Lambert & Co., Docket Nos. 05-1705-cv(L), 05-1743-cv(CON), 05-1745-cv(CON), 2006 U.S. App. LEXIS 25108, *9 (2d Cir. 2006) ("the ultimate source for state law adjudication in diversity cases is the law as established by the constitution, statutes, or authoritative court decisions of the state.") (Attached hereto at Exhibit F.)

Fieger, 251 F.3d at 399, citing West v. AT&T, 311 U.S. 223, 237, 61 S. Ct. 179, 85 L. Ed. 139 (1940). Additionally, the court "must give proper regard to the decisions of a state's lower courts." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 199 (2d Cir. 2003) (internal quotation marks omitted). "Other data include relevant case law from other jurisdictions on the same or analogous issues, scholarly writings in the field, and any other resources available to the state's highest court." Fieger, 251 F.3d at 399.

When trying to predict how the Connecticut Supreme Court would rule on this issue, it is important to note that, when presented with a split of authority the Connecticut Supreme Court endeavors to determine the better rule of law. See, e.g., Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745, 905 A.2d 623 (2006) (analyzing minority and majority positions to determine whether, under Connecticut law, a forfeiture provision in a contract is an invalid anti-competitive covenant); Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 837 A.2d 759 (2004) (weighing rationale underlying competing rules of law to determine whether Connecticut recognizes a cause of action based on compelled self-publication).

In the present case, this Court does not have the benefit of any Connecticut appellate authority on point but may be aided by the decisions of several lower courts as well as the courts of other jurisdictions. As discussed in Part II A, Connecticut trial courts have awarded attorneys' fees only when an insurer has breached its duty to defend or acted in bad faith. Indeed, as discussed in detail in Chicago Title's Memorandum of Law in Support of its Motion for Summary Judgment, the majority of jurisdictions require such a showing.[4] See Chicago Title's

---

[4] See, e.g., Chicago Title Ins. Co. v. FDIC, 172 F.3d 601, 605 (8th Cir. 1999); West Amer. Ins. Co. v. AV&S, 145 F. 3d 1224 (10th Cir. 1998) (applying Utah law); Milwaukee Mechanics Ins. Co. v. Davis, 198 F. 2d 441 (5th Cir. 1952) (applying Georgia law); Allstate Ins. Co. v. Vasquez, 74 Ohio App. 3d 564 (Ohio 1991); Clark v. Exchange Ins. Association, 276 Ala. 334 (Ala. 1964); American Standard Ins. Co. v. Le, 551 N.W.2d 923 (Minn. 1996); Carter v.

Memorandum, at 10-13. Thus, despite Kent School's argument to the contrary, although Massachusetts and New York courts have concluded that attorneys' may be available absent a breach or show of bad faith, neither this Court, nor the Connecticut Supreme Court, is bound by those rulings. Rather, the rulings, and their underlying rationale, must be examined in relation to the decisions of a majority of jurisdictions as well as existing Connecticut case law to determine the better rule of law. For the reasons discussed in Part II C, Chicago Title claims that the better rule of law is that employed by Connecticut trial courts and the majority of jurisdictions.

**C. The Policy Implicated is Chicago Title's Constitutional Right to Have Disputes Adjudicated.**

Kent School, in its motion for summary judgment, makes much of the importance of an insurer's duty to defend. See Kent School's Memorandum, at 14. The significance of this duty is undisputed. Chicago Title has recognized and acknowledged the societal import of the duty to defend by virtue of its continued payment of Kent School's legal fees in the underlying action for the past three decades.[5] Joint Stipulation of Facts, at ¶ 5. The policy implicated by the issues presented in the parties' cross-motions for summary judgment, rather, is Chicago Title's undeniable constitutional right to have its disputes adjudicated by a court of law.

As discussed more fully in Chicago Title's Memorandum of Law in Support of its Motion for Summary Judgment, to impose payment of attorneys' fees on Chicago Title would

---

Virginia Surety Co., 187 Tenn. 595 (Tenn. 1948); Rocky Mountain Fire & Cas. Co. v. Rose, 62 Wn. 2d 896 (Wash. 1963) (Attached hereto at Exhibit G.)

[5] Chicago Title disagrees with the contention that it acted "in a somewhat cavalier fashion" by seeking a declaratory judgment as to its duty to defend. See Kent School's Memorandum, at 19 n.5. Chicago Title has provided Kent School with a defense since 1977 and expended over a million dollars in the process. Joint Stipulation of Facts, ¶¶ 5, 9. It was not unreasonable or "cavalier" for Chicago Title to seek guidance from the court as to its ongoing duty.

deprive it of its fundamental right to equal access to the courts guaranteed by the Equal Protection Clause. See Chicago Title's Memorandum, at 23-26.

After paying Kent School's legal fees for nearly thirty years, Chicago Title has availed itself of the courts, as it is entitled to under the Declaratory Judgment Act, seeking a determination of its obligations going forward. This Court has already determined that Chicago Title's obligation to provide a defense is ongoing. Accordingly, Chicago Title continues to pay Kent School's legal fees. See Joint Stipulation of Facts, ¶13.

Chicago Title, as an insurer and an unsuccessful litigant, should not be forced to assume the heavy burden of paying attorneys' fees to the imposing party when non-insurer unsuccessful litigants do not. Rather, the principles of Equal Protection demand that Chicago Title be subject to the same standards as non-insurer litigants. If an insured is denied its right to a defense, it has recourse through the courts. If an insurer challenges its duty to provide a defense, it should be afforded the same constitutional protections. This is especially true where an insurer takes the responsible course of action by providing a defense and then asking the court to determine whether it is obligated to. Indeed, the case law is replete with examples of insurers who, rather than seek a determination from the court, simply refuse to provide a defense, leaving insureds to fend for themselves. See Part II (A). Insureds are not punished for resorting the courts and insurers should not be either. To hold insurers to a heightened standard absent justification is fundamentally unfair and potentially injurious. Accordingly, Chicago Title's right to access the courts should not be tempered by the imposition of Kent School's attorneys' fees incurred in defending this declaratory judgment action.

## III. CONCLUSION

For the foregoing reasons, Kent School's motion for summary judgment must be denied.

PLAINTIFF,
CHICAGO TITLE INSURANCE
COMPANY

/s/

Lawrence P. Heffernan (ct 22567)
lheffernan@rc.com
Frank F. Coulom, Jr. (ct 05230)
fcoulom@rc.com,
Andrea Donovan Napp (ct 26637)
anapp@rc.com
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

**CERTIFICATION**

I hereby certify that on November 21st, 2006, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Francis Brady, Esq.
Murtha Cullina LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103-3469

/s/ ______________________
Andrea Donovan Napp