# Exhibit A

LEXSEE 2005 CONN. SUPER. LEXIS 2999

**John J. Spaziani, Jr. dba P-J's Auto Service, Inc. v. Harleysville Worcester Ins. Co.**

**CV044000309S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF LITCHFIELD, AT LITCHFIELD**

***2005 Conn. Super. LEXIS 2999***

**October 31, 2005, Decided**
**October 31, 2005, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**JUDGES:** John W. Pickard, J.

**OPINION BY:** John W. Pickard

**OPINION:**

*MEMORANDUM OF DECISION RE MOTION FOR JUDGMENT # 117.00*

I. Facts

The plaintiff, John J. Spaziani, Jr., d/b/a P-J's Auto Service, Inc., commenced the present action against the defendant, Harleysville Worcester Insurance Company, alleging that the defendant breached its duty to defend the plaintiff in an underlying action. The plaintiff seeks money damages, costs, legal fees, interest and any other relief that the court deems proper. The parties filed cross-motions for summary judgment and this court granted the plaintiff's motion on May 4, 2005. The plaintiff now moves for judgment against the defendant in the amount of $ 71,604.43. The amount includes attorneys fees and costs incurred in the defense of the underlying suit in the amount of $ 35,811.23, attorneys fees and costs incurred in the present breach of contract action in the amount of $ 22,484.43, interest pursuant to *General Statutes § 37-3a* and interest pursuant to *General Statutes § 52-192a* [*2] .

On June 29, 2005 the defendant conceded that it was liable for the attorneys fees and costs incurred in the underlying suit and issued a check to the plaintiff in the amount of $ 35,811.23 in full payment. n1 Thus, the issues before the court are whether the defendant should also be liable for the attorneys fees and costs incurred in the present action as well as interest pursuant to the aforementioned statutes.

n1 The parties agree that the check was issued without condition of any kind; there was no demand for a release of liability for other claims or for a withdrawal of this action. Despite the unconditional nature of the payment, the parties agree that the plaintiff refused to accept the funds as partial payment but is holding the check in escrow.

II. Legal Fees and Costs in this Action

The first issue is whether an insurer that breaches a duty to defend its insured under the terms of a general liability policy may be liable for the legal fees and costs incurred by the insured in a separate action to [*3] recover the defense costs from the insurer. For the reasons given, I find that the insurer is liable for reasonable legal fees and costs expended by the plaintiff in an effort to recover defense costs that should have been incurred by the insurer in the first instance under a contractual duty to defend.

Although there does not seem to be any appellate authority which is directly on point, this question was previously addressed in the Superior Court in the case of *General Plasma, Inc. v. Reliance Insurance Company, 2000 Conn. Super. LEXIS 68, Superior Court, judicial district of Hartford (January 11, 2000, Peck, J.) (26 Conn. L. Rptr. 189)*. There, the plaintiff entered into a contract of insurance with the defendant. *Id.* The plaintiff was subsequently sued by one of its customers and the defendant refused to defend or indemnify the plaintiff. *Id.* The plaintiff retained defense counsel on its own and incurred expenses incident thereto, ultimately entering

into a settlement agreement with the customer. *Id.* The plaintiff then brought an action for reimbursement of the funds it paid to settle the case as well as attorneys fees and costs. *Id.* Relevant to the present case, the plaintiff also sought [*4] attorneys fees and costs for the reimbursement action. See *id.*

In *General Plasma*, as in the present case, the court found that the defendant had a duty to defend and indemnify the plaintiff pursuant to the insurance contract in passing upon cross-motions for summary judgment. See *id.* The court then assessed the plaintiff's claim that the defendant's "failure to defend in breach of its obligation under the policy also rendered [the defendant] liable to [the plaintiff] for the expenses, including attorneys fees, incurred by [the plaintiff] in the instant action." (Internal quotation marks omitted.) *Id.* In considering the question, the court noted that Connecticut follows the American rule that "attorneys fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) *Id.*, citing *Rizzo v. Grosso, 240 Conn. 58, 72, 689 A.2d 1097 (1997).* Nevertheless, relying on the policy reasons set forth in *Missionaries of the Company of Mary, Inc. v. Aetna Casualty and Surety Co., 155 Conn. 104, 230 A.2d 21 (1967)* and *Aetna Life* [*5] *& Casualty v. Gentile, 1995 Conn. Super. LEXIS 3444, Superior Court, judicial district of Waterbury, Docket No. CV 93 0122259 (Dec. 12, 1995, Sullivan J.) (15 Conn. L. Rptr. 451)*, n2 the court found that, "since the expenses incurred in a subsequent action to enforce the underlying contractual obligation also appear to be 'reasonably incurred,' under all the circumstances, [the defendant insurer] should reimburse [the plaintiff] for its legal expenses in the instant action." *General Plasma, Inc. v. Reliance Insurance Company, 2000 Conn. Super. LEXIS 68 at *17, Superior Court, Docket No. CV 97 05758995, 26 Conn. L. Rptr. 189.* I find myself in agreement with Judge Peck.

n2 The question of whether attorneys fees and costs should be allowed in a subsequent reimbursement action was not before the court in *Missionaries of the Company of Mary, Inc. v. Aetna Casualty and Surety Co., supra, 155 Conn. 104*, or *Aetna Life & Casualty v. Gentile, 1995 Conn. Super. LEXIS 3444, 15 Conn. L. Rptr. 451.* Accordingly, in *General Plasma, Inc. v. Reliance Insurance Company, 2000 Conn. Super. LEXIS 68, Superior Court, Docket No. CV 97 05758995, 26 Conn. L. Rptr. 189*, the court explicitly relied on the policy reasons set forth in those cases.

[*6]

Here, it appears that the attorneys fees and costs that the plaintiff seeks were reasonably incurred in an attempt to obtain reimbursement for the attorneys fees and costs expended by the plaintiff in the underlying action. The defendant has not contested the reasonableness of the amount of the fees. Accordingly, I find that the defendant is liable to the plaintiff for the attorneys fees and costs incurred in this action in the amount of $ 22,484.43.

II. Interest Pursuant to *C.G.S. § 37-3a*

The second issue is whether the defendant should be liable to the plaintiff for interest pursuant to *General Statutes § § 37-3a.* Under the facts and circumstances of this case the answer is no.

The plaintiff seeks pre-judgment and post-judgment interest, pursuant to *General Statutes § 37-3a*, on the sums expended by the plaintiff in the defense of the underlying action. The plaintiff claims that the defendant wrongfully detained such sums from the date it received notice that the plaintiff had arranged for his own defense and requested that the defendant pay the costs.

*General Statutes § 37-3a(a)* [*7] provides in relevant part: "Except as provided in *sections 37-3b, 37-3c* and *52-192a*, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." "The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than though the application of any arbitrary rule . . . The real question in each case is whether the detention of the money is or is not wrongful under the circumstances." (Citation omitted; internal quotation marks omitted.) *Cecio Brothers, Inc. v. Feldmann, 161 Conn. 265, 275, 287 A.2d 374 (1971)*; see *Spearhead Construction Corp. v. Bianco, 39 Conn.App. 122, 134-35, 665 A.2d 86*, cert. denied, *235 Conn. 928, 667 A.2d 554 (1995)*. "Prejudgment interest pursuant to *§ § 37-3a* is appropriate only where the essence of the action itself involves the wrongful withholding of money due and payable to the plaintiff. The prejudgment interest statute does not apply when the essence of the action is the recovery of damages to compensate a plaintiff [*8] for injury, damage or costs incurred as a result of a defendant's negligence. It ordinarily does not apply to contract actions in which the plaintiff is not seeking the recovery of liquidated damages or the recovery of money advanced under a contract and wrongfully withheld after a breach of that contract." *Tang v. Bou-Fakhreddine, 75 Conn.App. 334, 349, 815 A.2d 1276 (2003).* The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court." *O'Hara v. State, 218 Conn. 628, 643, 590 A.2d 948 (1991).*

Here, the demands of justice do not dictate that interest be awarded under *§ 37-3a*. The essence of the plaintiff's action does not involve a wrongful withholding of money due. The essence of the plaintiff's action is the recovery of damages for the defendant's failure to provide a defense in the prior action. The court has found that the defendant was wrong in not providing the plaintiff with a defense in the underlying case, not in withholding money due and payable. The equities do not weigh in favor of an exercise of discretion to award interest pursuant to *§* [*9] *37-3a*.

III. Interest Pursuant to *C.G.S. § 52-192a*

Additionally, the plaintiff claims that he is entitled to offer-of-judgment interest pursuant to *General Statutes § 52-192a* n3 because he recovered an amount greater than the offer of judgment that he filed. "*Section 52-192a(b)* requires a trial court to award interest to the prevailing plaintiff from the date of the filing of a complaint to the date of judgment whenever: (1) a plaintiff files a valid offer of judgment within eighteen months of the filing of the complaint in a civil complaint for money damages; (2) the defendant rejects the offer of judgment; and (3) the plaintiff ultimately recovers an amount greater than or equal to the offer of judgment." *Loomis Institute v. Windsor, 234 Conn. 169, 180, 661 A.2d 1001 (1995)*. "*General Statutes § § 52-192a* provides for *mandatory* imposition of interest at a set rate, unlike *§ § 37-3a* . . . and affords no allowance for the discretion of the court." *Ceci Brothers, Inc. v. Five Twenty-One Corp., 81 Conn.App. 419, 430, 840 A.2d 578*, cert. denied, *268 Conn. 922, 846 A.2d 881 (2004)*. [*10] Interest pursuant to *General Statutes § 52-192a* "should be imposed only after a judgment or award has been granted by the trial court." *Tureck v. George, 44 Conn.App. 154, 158, 687 A.2d 1309*, cert. denied, *240 Conn. 914, 691 A.2d 1080 (1997)*.

n3 "After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in the plaintiff's "offer of judgment," the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the "offer of judgment" was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. The court may award reasonable attorneys fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorneys fees in accordance with the provisions of any written contract between the parties to the action." *General Statutes § 52-192a(b)*.

[*11]

Here, the summons and complaint were filed with the court on August 3, 2004. The court entered summary judgment in favor of the plaintiff as to liability on May 4, 2004. The plaintiff filed an offer of judgment on May 6, 2005, in the amount of $ 55,000.00. This date is less than eighteen months from the filing date of the complaint. On June 29, 2005 the defendant paid the full amount of the attorneys fees in the prior action. They were paid without condition. This tender was in the nature of a payment on account rather than as an offer of settlement. Therefore, after June 29, 2005 the defendant no longer owed the plaintiff for the attorneys fees in the prior action despite the plaintiff's attempt to avoid receipt by holding them in escrow. The plaintiff filed this motion for judgment as to damages on August 8, 2005.

Based on the foregoing discussion, the court cannot enter judgment for fees that have already been paid. Therefore, the court must deny the request for judgment for fees incurred in the prior action. As to the attorneys fees and costs incurred in the present action, an additional $ 22,484.43 is owed to the plaintiff. Judgment is entering today for this sum. This sum is [*12] less than the offer of judgment filed on May 6, 2005 for $ 55,000. Accordingly, the plaintiff is not entitled to interest pursuant to the offer of judgment.

Judgment shall enter for the plaintiff in the amount of $ 22,484.43.

BY THE COURT,

John W. Pickard

# Exhibit B

LEXSEE 639 F. SUPP. 1012

**City of West Haven, Plaintiff v. Liberty Mutual Insurance Company, Defendant**

**Civil Action Nos. N-82-570 (TFGD), N-83-253 (TFGD) (CONSOLIDATED)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*639 F. Supp. 1012; 1986 U.S. Dist. LEXIS 23243*

**July 2, 1986, Decided**
**July 2, 1986, Filed**

**COUNSEL:** [**1]

Peter F. Culver, Keith Bradoc Gallant, Steven G. Mednick of Gallant, Gallant & Culver, for Plaintiffs.

Harold C. Donegan, Sperandeo, Weinstein & Donegan, Barry P. Beletsky, for Defendants.

**JUDGES:**

T. F. Gilroy Daly, Ch. U.S.D.J.

**OPINION BY:**

DALY

**OPINION:**

[*1013] MEMORANDUM OF DECISION

T. F. GILROY DALY, CH. U.S.D.J.

Plaintiff City of West Haven filed a suit docketed as civil number N-82-570, alleging breach of contract by the defendant insurance company as a result of its failure to defend the city against workmen's compensation and related claims brought against the city by police officers who were city employees. The complaint also alleged breach of contract by failure to indemnify the city for its payments of the awards in the underlying claims. The second count of the complaint sounds in tort, alleging bad faith on the part of the insurance company.

The complaint in civil action number N-83-253 (TFGD), involving identical parties, alleges, as in civ. no. N-82-570 (TFGD), breach of contract by failure to defend and by failure to indemnify. The Court granted a joint motion to consolidate the two cases for trial. The cases were tried to the [*1014] Court, sitting without a [**2] jury, on November 13, 1985. Having reviewed the parties' proposed findings of fact and conclusions of law and the evidence presented at trial, the Court finds that plaintiff is entitled to recovery on the claim alleging breach of contract by failure to defend in both complaints. In all other respects, the Court finds in favor of the defendant. The Court enters the following findings of fact and conclusions of law.

FINDINGS OF FACT

1. The City of West Haven ("West Haven") is a municipal corporation incorporated under the laws of the State of Connecticut and has its principal place of business in the State of Connecticut. At all times relevant to this action, West Haven was an employer within the meaning of the provisions of Connecticut General Statutes ("Conn. Gen. Stat.") Chapter 568 (Workmen's Compensation). West Haven is both a municipality and a municipal employer within the provisions of Conn. Gen. Stat. Ch. 113, sec. 7-433a (Disability and death benefits for policemen and firemen resulting from heart disease or hypertension). Liberty Mutual Insurance Company ("Liberty Mutual") is a Massachusetts corporation with its principal place of business in a state other than Connecticut. [**3]

2. Liberty Mutual issued a workmen's compensation liability insurance policy to West Haven. The policy was in effect at the time the underlying claims by city police officers arose.

3. The policy contains the following relevant provisions:

> [The] company agrees with the insured . . .
>
> *Coverage A -- WORKMEN'S COMPENSATION* To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.
> *Coverage B -- EMPLOYER'S LIABILITY* To pay on behalf of the insured all sums which the insured shall become legally

obligated to pay as damages because of bodily injury by accident or disease. . . sustained by any employee of the insured arising out of and in the course of his employment by the insured. EXCLUSIONS This policy does not apply: . . . (f) under coverage B, to any obligation for which the insured . . . may be held liable under the workmen's compensation or occupational disease law. . . .

*DEFENSE* As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking [**4] damages on account thereof, even if such proceeding or suit is groundless, false, or fraudulent. . . .

*NOTICE OF CLAIM OR SUIT* If claim is made or suit or other proceeding is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

4. During the policy period or during the renewal period, seven West Haven police officers suffered disability as a result of heart disease or hypertension. All the police officers filed claims with the Workmen's Compensation Commission (the "Commission") alleging injuries covered under the Workmen's Compensation Act, Ch. 568. Some of the claims also alleged recovery under either or both of two sections of Chapter 113, section 7-433a and section 7-433c. All seven of the claims were filed with the Commission prior to August 21, 1979.

5. West Haven has been paying medical expenses or compensation to or for the benefit of each of the seven police officer claimants pursuant to awards made to six of the seven claimants by the Workmen's Compensation Commission. The Court is unaware of the legal basis for the payments made by the city on behalf [**5] of the seventh claimant, Officer Speers, whose case had apparently not been acted upon by the Commission at the time of trial.

[*1015] West Haven also incurred legal expenses for its defense of the underlying claims before the Commission and in the present litigation.

6. West Haven contends that Liberty Mutual refused to defend it in the underlying Workmen's Compensation Commission hearings on the issue of the city's liability to the police officer claimants. Liberty Mutual admitted that it did not defend West Haven. Answer to Plaintiff's Request for Admissions, answer 2(N) (filed June 15, 1983; civ. no. N-82-570 (TFGD)); Answer to Plaintiff's Request for Admissions, answer 2(N) (filed June 6, 1984; civ. no. N-83-253 (TFGD)). Liberty Mutual claims, however, that West Haven never asked for a defense, and that West Haven chose to use its own counsel.

Since neither party offered evidence on this issue, the record does not disclose whether Liberty Mutual refused to defend or whether West Haven failed to ask for a defense, waived its right to a defense, or chose to use its own counsel. The Court cannot conclude that West Haven chose to use its own counsel merely because it was represented [**6] by its corporation counsel at the Commission hearings. Corporation counsel would also have represented West Haven if Liberty Mutual had refused to defend.

7. The Court finds that West Haven gave Liberty Mutual timely and sufficient notice of the Commission hearings. Liberty Mutual's witness, attorney Paul Flynn, testified that Liberty Mutual was represented at some of the Commission hearings by attorney Frank Moran and, after his death, by attorney Robert Moran, who is now also deceased. Liberty Mutual is a named party in the captions on at least four of the seven Commission awards. Receipt of the city's timely and sufficient notice by the company is evident from the correspondence between the city's assistant corporation counsel and both the insurance company and the insurance company counsel. Plaintiff's Exhibit 25, Defendant's Exhibits 508, 509. Perhaps most significantly, Liberty Mutual has raised no objection either to the timeliness or the sufficiency of the notice it received from West Haven.

8. Liberty Mutual has not reimbursed West Haven for any payment made to or on behalf of the police officers pursuant to the Commission awards.

9. The stipulations and awards in the [**7] underlying Commission hearings do not reveal whether the statutory basis of the awards is Ch. 113 or Ch. 568 or some combination of these two chapters. As stated above, all the claims filed with the Commission alleged at least one alternative theory of recovery in addition to Ch. 568. None of the awards contains an express statement of its statutory basis, although the awards and the incorporated stipulations do occasionally refer to Chapter 568 and to secs. 7-433a and 7-433c of Ch. 113.

10. No evidence was introduced at the trial by either party as to whether or not Liberty Mutual investigated the police officers' claims or attempted to settle them prior to the Commission awards. No evidence was introduced as to when Liberty Mutual first sought legal advice with respect to the claims.

CONCLUSIONS OF LAW

I. BREACH OF CONTRACT BY FAILURE TO INDEMNIFY UNDER COVERAGE A

West Haven first asks the Court to hold as a matter of law that the Commission awards were made pursuant to Ch. 568 and are therefore within the workmen's compensation part of the policy, Coverage A. West Haven argues that, even though each claim requested the benefits of both Chs. 113 and 568, no award states that [**8] it was made pursuant to either Ch. 113 or to a section of Ch. 113. The stipulations accompanying each claim contain references to the presence or absence of minor children, a fact which is relevant only to awards under Chapter 568. West Haven argues that the eligibility of the claimants for an award under sec. 7-433c does not preclude awards under Ch. 568, allowing the conclusion that the awards were made [*1016] pursuant to Ch. 568. Plaintiff's Post-Trial Memorandum at 24-5.

The Court is not persuaded by West Haven's arguments. The absence in the awards of any statement of their legal basis leaves open the possibility that the awards were made pursuant to either Ch. 113 or Ch. 568 or some combination of the two chapters. The presence in the stipulations of an item relevant only to Chapter 568 claims is easily explained because the stipulations were drafted before the awards were made, at a time when, presumably, the claimants were operating alternatively under several theories, each of which would justify an award.

West Haven cites *Bakelaar v. West Haven, 193 Conn. 59, 475 A.2d 283 (1984),* for the proposition that a claimant's eligibility for a sec. 7-433c award does not [**9] preclude his receiving an award under Ch. 568. The question in *Bakelaar*, however, was whether a qualified claimant could *elect* recovery under sec. 7-433c when his claim was potentially also compensable under Ch. 568. Section 7-433c grants compensation without requiring the claimant to prove, as he must under Ch. 568, that his disease or disability arose out of his employment. *Bakelaar* held that to require claimants to proceed under Ch. 568 if at all possible would be to engraft the Ch. 568 proof requirement upon sec. 7-433c contrary to the express intent of the Connecticut legislature. Although *Bakelaar* allows for a recovery under either section, the ruling does not advance plaintiff's contention that the Commission awards at issue here were made under Chapter 568.

Alternatively, West Haven argues that Liberty Mutual would be in breach of contract for failure to indemnify under Coverage A in those cases where the underlying claims alleged sec. 7-433a as a basis for recovery. West Haven argues that the Commission awards must have been made pursuant to Chapter 568 in those cases where the underlying claims alleged sec. 7-433a as a basis for recovery.

In *DuCharme v.* [**10] *Putnam, 161 Conn. 135, 285 A.2d 318 (1971),* the Connecticut Supreme Court struck down as unconstitutional *Conn. Gen. Stat. sec. 7-433a*, which raised a conclusive presumption that heart disease and hypertension in police officers is work-related for purposes of Ch. 568 awards. West Haven argues that the Supreme Court's action in *DuCharme* resurrected the previous version of sec. 7-433a, which had merely raised a rebuttable presumption that heart disease and hypertension in police officers is work-related. According to West Haven, the resurrected rebuttable presumption should lead this Court to hold as a matter of law that the Commission awards were made under Chapter 568, and that the awards are therefore within Coverage A.

The Court rejects plaintiff's argument that the rebuttable presumption version of section 7-433a was resurrected as a result of *DuCharme.* In *Bakelaar, 193 Conn. at 67, 475 A.2d at 287, n. 6,* West Haven raised the identical resurrection argument and the Connecticut Supreme Court rejected it. The Court follows the *Bakelaar* ruling and finds that the rebuttable presumption was not resurrected. Plaintiff is thus not entitled to the presumption that [**11] heart disease and hypertension in police officers is work-related, and therefore has failed to establish that the awards were made pursuant to Ch. 568, requiring indemnification under Coverage A.

In sum, the Court finds that plaintiff has failed to prove by a preponderance of the evidence that the awards were made pursuant to Ch. 568 and the Court finds plaintiff's theories of liability under Coverage A unpersuasive.

II. BREACH OF CONTRACT BY FAILURE TO INDEMNIFY UNDER COVERAGE B

West Haven next argues that the company is in breach of contract because the payments made by the city pursuant to the Commission awards fall within Coverage B of the policy, where Liberty Mutual agreed to pay "all sums which the insured shall become *legally obligated* to pay as *damages* because of bodily injury by . . . [*1017] disease. . . ." (emphasis added). West Haven argues that if the Commission awards were not made pursuant to Ch. 568 (either directly or through a sec. 7-433a presumption) then the awards must have been made pursuant to Ch. 113, sec. 7-433c. Because West Haven is "legally obligated" to pay the sec. 7-433c awards, West Haven contends that the awards fall under Coverage [**12] B. Coverage B contains an exclusion for "obligations [under] the workmen's compensation or occupational disease law." West Haven argues, however, that this exclusion is inapplicable because *Plainville v. Trav-*

*elers Indemnity Co., 178 Conn. 664, 425 A.2d 131 (1979),* held that awards under sec. 7-433c are not benefits under the workmen's compensation or occupational disease law of Connecticut.

The city is correct in its contention that, according to *Plainville*, sec. 7-433c claims are not "occupational disease law" claims. Coverage B, however, is restricted to "damages" by the language of the policy, and awards under sec. 7-433c do not become "damages" just because West Haven is "legally obligated" to pay them. Instead of damages, sec. 7-433c awards "'provid[e] special compensation, or even an outright bonus, to qualifying policemen and firemen.' *Grover v. Manchester, 168 Conn. 84, 88, 357 A.2d 922," as quoted in Plainville, 178 Conn. at 674, 425 A.2d at 134.*

Since 7-433c awards are not damages, they do not fall within Coverage B, and Liberty Mutual is not in breach of contract for failure to indemnify under Coverage B. The Court finds, therefore, that Liberty Mutual [**13] is not required to indemnify plaintiff under either Coverage A or Coverage B.

III. BREACH OF CONTRACT BY FAILURE TO DEFEND

West Haven next argues that Liberty Mutual breached the policy contract by refusing to defend West Haven in the underlying workmen's compensation hearings. Liberty Mutual denies that it refused to defend, and alleges instead that West Haven chose to be represented by its own counsel.

When an insurance policy contains a defense provision like the one in the policy at issue here, it is well settled that the duty of the insurance company to defend the insured depends exclusively upon the allegations in the underlying complaint against the insured. If an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured. *Lee v. Aetna Casualty and Surety Co., 178 F.2d 750 (1949)* (Hand, J.); *Schurgast v. Schumann, 156 Conn. 471, 489, 242 A.2d 695, 704 (1968); Missionaries of the Company of Mary, Inc. v. Aetna Casualty and Surety Co., 155 Conn. 104, 110, 230 A.2d 21, 24 (1967).*

Liberty Mutual argues that the allegations in the Commission claims could not possibly fall within the policy coverage [**14] relying on the *Plainville* holding that sec. 7-433c awards are not part of the workmen's compensation or occupational disease law. This argument fails, however, because all of the claims in this case were filed with the Commission before *Plainville* was decided on August 21, 1979. Prior to the *Plainville* decision, the claims at issue here were unquestionably at least potentially within the policy coverage.

Liberty Mutual's argument also fails because the awards might not have been made under sec. 7-433c, and coverage for the awards might not have been affected in any way by *Plainville.*

Because the claims were unquestionably at least potentially within the policy coverage, Liberty Mutual came under a clear duty to defend West Haven at the time West Haven tendered notice of the claims pending before the Commission. Liberty Mutual has admitted that it did not defend West Haven.

West Haven having established a breach of contract, Liberty Mutual raises the affirmative defense that it was released from its duty to defend because West Haven allegedly chose to use its own counsel, and because West Haven allegedly failed to ask for a defense. There is no question that the burden [**15] of proof of these defenses rests [*1018] upon Liberty Mutual. ". . . If the defendant relies upon the existence of some discharging factor, the burden of proceeding to establish it is on him -- he must allege and offer respectable evidence of its existence." A. Corbin, *Contracts, one volume edition,* secs. 1228 at 979, 1238 at 993.

As discussed in the findings of fact, there is insufficient evidence in the record to ascertain whether, as a matter of fact, West Haven chose to use its own counsel. Liberty Mutual introduced no evidence whatsoever that West Haven had in fact released it from its commitment to defend. Accordingly, Liberty Mutual has not proven that it was in fact released by West Haven. The Court finds nothing in the record in this case to permit the conclusion that West Haven released Liberty Mutual from its commitment to defend.

Liberty Mutual alleges that West Haven failed to request a defense. Liberty Mutual, however, has not offered any argument showing why a failure explicitly to request a defense should deprive West Haven of the defense that Liberty Mutual was otherwise obligated to provide. For the following reasons, the Court finds that West Haven [**16] was not required to have expressly asked Liberty Mutual for a defense.

Initially, the policy contract itself contains no requirement that West Haven expressly ask Liberty Mutual to defend. The policy contains only the requirement that the insured immediately forward to the insurance company any notice or process which begins a suit or other proceeding brought against the insured. The Court has found that West Haven met this requirement by providing Liberty Mutual with timely and sufficient notice of the underlying workmen's compensation claims in this case. Finding of Fact No. 7, *supra*, at 6. The policy contains no additional condition precedent to Liberty Mutual's duty to defend. n1 Since West Haven fulfilled all its obligations under the terms of the policy, Liberty Mu-

tual became obligated to defend West Haven upon receipt of West Haven's notice. Absent proof by Liberty Mutual of a release of its duty to defend West Haven, the only remaining element in West Haven's case for breach of contract is provided by Liberty Mutual's admission that it did not defend.

n1 The "no action" clause, which provides that no action shall lie against the insurance company unless the insured fulfills all of its obligations under the policy, does not impose any additional substantive duty upon the insured.

[**17]

Because the policy is sufficient in and of itself to control the issue at bar, the Court declines to place the burden of proof that it asked for a defense upon West Haven. The Court will not add additional implied terms to a contract where the contract itself is clear.

Moreover, Connecticut law does not require that an insured ask for a defense. The Court is unaware of any Connecticut case holding that an insured must expressly ask for a defense in addition to satisfying the conditions precedent to receiving a defense under the applicable policy language.

In view of the absence of Connecticut case law on this issue, the Court has reviewed case law from other jurisdictions on the issue of whether an express request to defend is required. *Detroit Auto Inter-Insurance Exchange v. Higginbotham, 95 Mich. App. 213, 290 N.W.2d 414 (1980)* has been cited by Couch for the proposition that "absent a request for a defense, the insurer has no duty to defend." 14 Couch, *Insurance*, sec. 51:48 at 705. In addition to the fact that *Higginbotham* is not binding on the Court, the facts in *Higginbotham* clearly distinguish it from the case at bar.

In *Higginbotham*, an insured refused [**18] to sign a reservation of rights agreement so that the insurance company could defend him in a civil action. The court denied the insurance company's request for an order substituting for the reservation of rights agreement. The insurance company brought a declaratory action on its own behalf obtaining a determination that it was not liable under the policy. The Court of Appeals of Michigan found that the insurance [*1019] company's failure to defend did not result in liability for the default judgment entered in the underlying civil action because the defendant insured had not requested a defense.

*Higginbotham* is unlike the case at bar because the insurance company there asked for the reservation of rights order in the underlying action and filed the declaratory action. No further action by the insurance company could reasonably have been expected in the circumstances of that case (in the absence of a specific request to defend).

In *Hartford Accident and Indemnity Co. v. Gulf Insurance Co., 776 F.2d 1380 (7th Cir. 1985)* (*en banc*), the Seventh Circuit Court of Appeals considered the question of what is required to constitute adequate "tender" of defense by an insured. [**19] In *Gulf*, the City of Peoria and the Park District were sued as the result of an accident. Gulf insured the City and the Park District for certain perils, and was given due notice of the suit. Although Gulf defended the Park District, Gulf claimed that a provision of an agreement between the City and the Park District relieved Gulf of any liability under the policy on behalf of the city of Peoria. Peoria then asked its primary liability carrier, Hartford, to defend.

Ten months after the accident litigation began, Hartford's attorney wrote to Gulf in an attempt to transfer Peoria's defense to Gulf because one of the claims in the accident complaint potentially fell within Gulfs liability. Gulf refused to take over the defense from Hartford. The City of Peoria never attempted to transfer its defense to Gulf. Hartford settled and sued Gulf for refusing to defend, winning in the trial court. The Seventh Circuit reversed, using the following language:

> While we need not decide what the appropriate procedure for tender, if any, should be for unschooled laymen (who may be excused from any sort of active tender), clearly tender by a sophisticated city requires something more than [**20] a letter from a rival insurance company ten months after the process of litigation has begun.
>
> Nor can the tender requirement be said to be satisfied because Gulf knew of the suit at the outset as the Park District's insurer. Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired. *See Solo Cup v. Federal Insurance Co., 619 F.2d 1178, 1183 (7th Cir. 1980)*. An insurance company is not required to intermeddle officiously where its services have not been requested. *Cf. Oda v. Highway Insurance Co., 44 Ill. App. 2d 235, 253, 194 N.E.2d 489, 499 (1963)* (insurance company need not become "intermeddler in the contests of others").

*Gulf, 776 F.2d at 1383.*

*Gulf* held that an attempt by one insurance company to transfer the insured's defense to another insurance company was insufficient to activate the defense obligation in the second company's policy because adequate tender of defense requires "knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's [**21] assistance is desired." The Seventh Circuit found that Peoria's defense had not been adequately tendered to Gulf. Nevertheless, a careful reading of *Gulf* discloses no specific requirement that an insured must *expressly* request a defense in addition to giving notice of a claim brought against him. The instant case is distinguishable in that West Haven did not tender its defense to another insurance company besides Liberty Mutual or take similar action inconsistent with a desire to be defended by Liberty Mutual.

Absent special circumstances like the insured's refusal to sign a reservation of rights agreement in *Higginbotham* and the insured's voluntary tender of the defense to another insurance company as in *Gulf*, an insured's providing notice of a proceeding begun against him should be sufficient to indicate to the insurer that its assistance [*1020] is desired. Generally, the insured's giving notice of a proceeding begun against him will satisfy both of the *Gulf* criteria for adequate tender of a defense, because the insurance company will have knowledge of the suit and knowledge that the assistance of a defense from the insurance company is desired.

An insured [**22] pays part of his premium in consideration for the defense provision of his policy. "Liability insurance carries 'an aspect of 'litigation insurance.'" *Schulman Inv. Co. v. Olin Corp., 514 F. Supp. 572 (S.D.N.Y. 1981), quoting Spoor-Lasher Co. v. Aetna Cas. and Sur. Co., 39 N.Y.2d 875, 386 N.Y.S.2d 221, 352 N.E.2d 139 (1976).* One of the basic purposes of the defense provision is protection of the insured from the expenses of litigation. *Solo Cup v. Federal Insurance Co., 619 F.2d 1178, 1185 (7th Cir. 1980).*

Any doubt remaining after the above analysis, should be resolved against Liberty Mutual: ". . . if there be an ambiguity in the language of the policy . . . the canon *contra proferentum* must prevail. . . ." *Lee, 178 F.2d at 753.*

## IV. RECOVERY IN TORT FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

West Haven also contends that Liberty Mutual's conduct in this case rises to the level of a tort because Liberty Mutual allegedly failed to make a good faith investigation of the underlying claims, did not make a good faith effort to settle the officers' claims, and did not seek the advice of counsel before refusing to defend West Haven.

The State [**23] of Connecticut recognizes a tort cause of action against an insurance company for breach of an implied covenant of good faith and fair dealing. *Magnan v. Anaconda Indus., Inc., 193 Conn. 558, 566, 479 A.2d 781, 785 (1984). See Doyle v. St. Paul Fire and Marine Ins. Co., Inc., 583 F. Supp. 554 (D. Conn. 1984)* (Dorsey, J.) (applying Connecticut law); *Grand Sheet Metal Products Company v. Protection Mutual Insurance Company, 34 Conn. Supp. 46, 375 A.2d 428 (1977); Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 575, 108 Cal. Rptr. 480, 486, 510 P.2d 1032, 1038 (1973)* (". . . In every insurance contract there is an implied covenant of good faith and fair dealing.").

Although West Haven discusses its claim for tortious breach of implied covenant of good faith and fair dealing in its memorandum, Plaintiff's Post-trial Memorandum, at 30, it introduced no evidence to support its tort claim. The Court therefore finds in favor of the defendant on these claims based on an insufficiency of evidence.

## V. DAMAGES

Under Connecticut law, damages for breach of duty to defend in an insurance contract are the sum of any settlement or judgment, plus counsel fees in both the underlying [**24] action and the action for failure to defend, plus interest. *Missionaries of the Company of Mary, Inc. v. Aetna Casualty and Surety Co., 155 Conn. 104, 230 A.2d 21 (1967); Schurgast v. Schumann, 156 Conn. 471, 242 A.2d 695 (1968)* (applying *Missionaries*).

The damages requested by West Haven do not take into account future payments by the city pursuant to the Workmen's Compensation Commission awards obtained by the claimants. *F.R. Civ. P. Rule 54(c)* requires that ". . . every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Accordingly, the Court directs that West Haven prepare and submit, on or before July 18, 1986, a revised computation of damages in these consolidated cases and a proposed judgment consistent with this opinion. Liberty Mutual shall file any objections to the revised computation of damages on or before August 1, 1986.

It is SO ORDERED.

Dated at Bridgeport, Connecticut, this 2d day of July, 1986.

# Exhibit C

which time an extensive hearing was held during which both parties testified.

The court found the defendant to be in arrears on the order in the sum of $14,417.21, being the amount of college expenses due for the parties' daughter Hayley, who is enrolled as a freshman at the University of Rochester. At the request of the plaintiff, the defendant was not found to be in contempt, but was given 30 days in which to pay the present amount due on these expenses. It should be noted that the court found sufficient credible evidence to find the defendant's conduct sufficient to rise to the level of contempt. See *Mays v. Mays*, 193 Conn. 261 (1984).

The defendant's motion for modification was denied.

The defendant has appealed from these orders and pursuant to Practice Book §4051 has filed a motion for articulation.

The issues in this matter are as follows:

I. Is the defendant excused from performing under the terms of the decree concerning college education because there was no mutual agreement between the parties as to which college the parties' daughter Hayley was to attend?

II. Is the defendant entitled to a modification of the college education payment order contained in the decree because of a substantial change of circumstances as alleged by the defendant?

I. Is the defendant excused from performing because of no mutual agreement?

The court finds that the defendant is not excused from performing on two grounds.

A. There was ample credible evidence to find that the plaintiff did in fact attempt to reach an agreement with the defendant concerning the college their daughter was to attend. Through the daughter, the plaintiff wrote the defendant a letter on October 29, 1986 detailing her choice of colleges and again on December 24, 1986 through her attorney another letter was sent to the defendant. None of the responses from the defendant indicated any intention on his part to discuss or negotiate the college the daughter was to attend. The court finds that the plaintiff complied with the terms of this clause and the defendant did not.

B. Inasmuch as the terms of the dissolution decree embody those of the settlement agreement of the parties, the terms should be interpreted consistently with accepted contract principles. *Marisco v. Marisco*, 195 Conn. 491, 493 (1985).

It is clear to the court that the defendant's defense under this paragraph must fail because under the principle of contract law the defendant's breach of this portion of the agreement constituted an anticipatory breach. See *Gilman v. Pedersen*, 182 Conn. 582, 584 (1981).

The defendant's responses to the plaintiff's overtures were simply that he could not afford college for the daughter (Tr. pp. 11, 12, 13, 20, 22, 24). In view of his outright refusal to sanction the daughter's attendance at college, there was nothing further for the plaintiff to negotiate.

II. Is the defendant entitled to a modification of the decree with respect to the college education portion?

The defendant asserts that the court should terminate his obligation to pay college expenses because he now is unemployed and virtually unable to work because of illness except at certain occupations such as managing a general store. He also alleges that he now has no liquid or available assets to enable him to pay the order.

The background of the defendant's employment is as follows: At the time of the decree, the defendant was a self-employed dentist earning, by his own admission, a net income in excess of $62,000 annually, plus an unspecified amount which he was contributing to his pension and profit sharing plans. In 1985, the defendant asserts that he became a victim of "burn out" and voluntarily gave up the practice of dentistry. He thereupon moved to Vermont where he and his new wife acquired and ran a general store. The defendant claims that he has a mental illness which requires him to take lithium. He acknowledges, however, that he has been taking this drug for at least 13 years (Tr. p. 51). He further asserts that he is under the care of a psychiatrist although he has not seen him for 6 or 8 months (Tr. p. 51).

The court finds that the defendant voluntarily reduced his income from a net of at least $62,000 per year to zero, except for approximately $30,000 net which he receives from monies due him from the sale of assets. The court finds that the defendant has an earning capacity of at least $62,000 net annually and has exhibited to the court no valid reason why he cannot earn this amount of income. See *Schmidt v. Schmidt*, 180 Conn. 184, 189 (1980); *Miller v. Miller*, 181 Conn. 610, 612 (1980).

The court also finds that despite the defendant's becoming unemployed, his assets have in fact increased. At the time of the decree in 1978, the defendant's assets and liabilities as stated in his financial affidavit indicated a net liability of $94,138.

In 1985, the defendant sold his dental practice, the building housing his dental office, and his residence. The defendant received cash and notes for these assets approximately $577,000 less certain expenses (Tr., p. 84, 52). He claims he paid debts out of this totalling approximately $250,000. He nevertheless now acknowledges net assets of at least $403,000 (see defendant's financial affidavit of October 13, 1987).

The defendant claims that he is unable to meet the college expense order because although he has borrowed from his pension and profit sharing plan for the purchase of his house and general store, he cannot reach this resource of $350,000 for the payment of the order and should therefore be excused from paying it.

The court finds that there is no substantial change of circumstances warranting a modification of the present order. The court specifically finds that the defendant's assets have in fact increased substantially. The court finds further that the defendant's assets may be reasonably reached by him to enable payment to be made on the order in question. Defendant, in addition to having income from the various loans outstanding to him, has the ability to borrow on his home and if necessary to borrow from his pension plan. If this cannot be done without the imposition of a tax or penalty, the tax or penalty should be paid. ■

## First American Title Insurance Co. v. Frank T. Jaworoski

**INSURANCE, TITLE, COVERAGE - DECLARATORY JUDGMENT - ATTORNEYS' FEES**

[Case of first impression] Plaintiff's motion to strike counterclaim for attorneys' fees in declaratory judgment action concerning coverage of title insurance policy. Held, denied. When an insured defends a declaratory judgment action regarding the issue of coverage, the insured is entitled to reasonable attorneys' fees.

**COURT:** Stamford-Norwalk, at Stamford
**DATE:** January 15, 1988
**DOCKET NO.:** CV87-0085495
**JUDGE:** Cioffi

This is a declaratory judgment action initiated by plaintiff First American Title Insurance Company to determine whether it is obligated to defend an action brought by a third party against its insured, defendant Frank Jaworoski. First American asserts that it is not obligated to defend because at the time defendant purchased the policy he was aware of a possible defect in title, but did not

reveal this to First American. Exclusion number three of the policy states that any potential defects known by the insured and not revealed to the insurer are excluded from coverage.

Defendant Jaworoski asserts by way of counterclaim that, pursuant to the contract of insurance, plaintiff is obligated to pay defendant's costs and attorneys' fees in the declaratory judgment proceeding. First American has moved to strike the counterclaim, asserting that the policy does not provide for the payment of attorneys' fees and that Connecticut law does not provide for an allowance for attorneys' fees in declaratory judgment actions.

A motion to strike challenges the legal sufficiency of the allegations of any complaint, counterclaim, or cross-complaint. Conn. Practice Bk. §152 (1978). In passing on a motion to strike, the court must take the facts alleged favorably to the pleader, *Schmidt v. Yardney Electric Corporation*, 4 Conn. App. 69, 74 (1985), and in so doing the court will consider the factual allegations of the pleading to be true. *Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc.*, 39 Conn. Sup. 129, 131 (1983).

The rule in Connecticut is that, absent contractual or statutory authorization, each party must pay its own attorneys' fees. *Gino's Pizza of East Hartford, Inc. v. Kaplan*, 193 Conn. 135, 140 (1984).

Those portions of the insurance policy which defendant cites as providing for the payment of costs and attorneys' fees read as follows:

3(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or a defense interposed against an insured in an action to enforce a contract for a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.

6(b) The Company will pay. . .all costs, attorneys' fees and expenses in litigation carried on by such insured with the written authorization of the Company.

"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction." *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, 512 (1982). "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." *Id.* at 512-13. However, when the words of the policy are susceptible of two interpretations, the construction most favorable to the insured should be adopted. *Id.* at 513.

In clause 3(a), First American agreed to provide a defense, at its own cost, in all litigation against defendant, "to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy." First American contends that the meaning of the clause is that First American would defend an action initiated by a third party challenging defendant's title. However, the defendant contends that the meaning of the clause is unclear, and that the construction most favorable to defendant should therefore be adopted.

Under clause 6(b) of the policy, First American agreed to pay attorneys' fees for any litigation which defendant carried on with the written authorization of the company. Defendant argues that the bringing of this declaratory judgment action by the company constitutes its written authorization. A number of courts would seem to agree with defendant's position. *See Accidental Fire & Cas. Co. v. Cook*, 435 P.2d 364 (Idaho, 1967); *Allstate Insurance Company v. Robins*, 597 P.2d 1052 (Col. App. 1979). In those cases the courts interpreted a standard policy provision requiring the company to reimburse the insured for all "reasonable expenses incurred by the insured at the Company's request." The courts ruled that, by bringing a declaratory judgment action against the insured, the insurer was in effect "requesting" him to incur reasonable expenses. *Occidental*, 435 P.2d at 368; *Allstate*, 597 P.2d at 1053. Such a construction was rejected by the Fifth Circuit as "a mere play upon words" in *Milwaukee Mechanics Ins. Co. v. Davis*, 198 F.2d 441, 445 (5th Cir. 1952).

Despite the general rule that each party must pay his own attorneys' fees, it is generally held that attorneys' fees are recoverable where such fees are incurred in defending an action which one's insurer was obligated by the terms of the policy to defend, and unjustifiably refused to do so. Annot., 87 A.L.R.3d 429, 433 (1978). Further, there is a split of authority as to whether the insurer is to be held liable for fees incurred in a declaratory judgment action brought to establish the existence of coverage under the policy in question. *Id.* at 434. "There are innumerable cases dealing with this specific issue, and the courts have resolved the issue in practically every conceivable way." *Crist v. Insurance Co. of North America*, 529 F. Supp. 601, 607 (D. Utah 1982).

There does not appear to be a Connecticut case which addresses this precise question. In *Peterson v. Norwalk*, 152 Conn. 77, 80 (1964), the court noted that "[n]either the statutes nor the rules provide for an allowance for counsel fees in declaratory judgment actions." However, this case did not involve the determination of coverage under an insurance policy.

The supreme courts of a number of states, including Idaho, Maryland, Minnesota, and Ohio, have held that an insured who has incurred attorneys' fees in successful declaratory judgment litigation with his insurer may recover them from the insurer. *Union Mutual Fire Insurance Co. v. Inhabitants of the Town of Topsham*, 441 A.2d 1012, 1018 (Me. 1982). The highest courts of other states, including Alabama, California, Iowa, New Jersey, Tennessee, and Washington have denied such recovery. *Id.* In New York the rule appears to be that the insured is entitled to recover his expenses when he defends such an action, but not when he brings it as plaintiff. *Id.*

The majority rule is that an insurer is not liable for the insured's attorneys' fees in a declaratory judgment action to establish insurance coverage unless it is shown that the insurer has acted in bad faith or fraudulently or was stubbornly litigious. 22 Am. Jur.2d *Declaratory Judgments* §101 (Supp.) (1987). The theory behind the rule appears to be that it would be unfair to force the company to choose between defending an action it may not be obligated to defend or suing for a declaratory judgment, with liability for the insured's attorneys' fees if the suit is unsuccessful. "It would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts." *Western Casualty & Surety Company v. Merchant*, 615 P.2d 423, 427 (Utah 1980).

Appleman, in his treatise on insurance law, argues that the majority rule is unfair:

After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. . . .[T]he insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off than if he had never had the contract right mentioned above.

Appleman, *Insurance Law and Practice* §4691 (1979). A number of courts have cited Appleman in finding that an insured is entitled to attorneys' fees in a successful declaratory judgment action with the insurer. *See Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156 (W. Va. 1986).

Realizing that there is a split of authority, this court adopts the reasoning of Appleman and holds that when an insured wrongfully defends a declaratory judgment action regarding the issue of coverage, the insured is entitled to reasonable attorneys' fees.

Accordingly, the motion to strike is denied. ■

# Exhibit D

LEXSEE 2000 CONN. SUPER. LEXIS 68

**General Plasma, Inc. v. Reliance Insurance Company**

**CV 970575899S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD - NEW BRITAIN, AT HARTFORD**

***2000 Conn. Super. LEXIS 68***

**January 11, 2000, Decided**
**January 11, 2000, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Plaintiff General Plasma's motion for summary judgement granted. Defendant Reliance's motion for summary judgment denied.

**JUDGES:** Peck, J.

**OPINION BY:** PECK

**OPINION:** MEMORANDUM OF DECISION CROSS MOTIONS FOR SUMMARY JUDGMENT

Presently before the court are the plaintiff General Plasma, Inc.'s (General Plasma) and the defendant Reliance Insurance Company's (Reliance) cross motions for summary judgment. The parties have stipulated to the following essential facts: General Plasma was insured by Reliance under a comprehensive general liability policy (policy). The effective dates of the policy were from October 31, 1991 through October 31, 1992. In November 1991, General Plasma contracted with United Technologies Corporation (UTC) to provide services on a drum rotor assembly, which was furnished and owned by UTC. n1 General Plasma completed the work and returned the assembly to UTC on or about November 21, 1991. (See Joint Trial Management Conference Report, 7/8/99, pp. 1-3.)

n1 Under the contract, General Plasma stripped and recoated four of five rows of teeth on the drum rotor assembly.

[*2]

On November 3, 1993, UTC commenced a civil action against General Plasma; *United Technologies Corporation v. General Plasma,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93-0532569 (withdrawn, December 27, 1997); in which UTC sought damages for General Plasma's allegedly negligent servicing of the assembly. General Plasma soon thereafter notified Reliance of the UTC action, and demanded that Reliance defend and indemnify pursuant to the policy. Reliance denied coverage and refused to defend General Plasma in the UTC action. Consequently, General Plasma retained legal counsel and incurred expenses associated with its defense at a cost to General Plasma of $ 179,234.19. General Plasma and UTC settled the UTC action in the amount of $ 200,000, which Reliance agrees was a reasonable settlement. n2

n2 The parties also have stipulated that General Plasma is pursuing the present action against Reliance pursuant to a contingent fee agreement with its counsel.

General [*3] Plasma brings this lawsuit against Reliance seeking reimbursement for funds paid to settle the UTC action and for attorney's fees and costs incurred in the UTC action as well as in the present action. Pursuant to *Practice Book 17-44* et seq., General Plasma and Reliance filed cross motions for summary judgment with accompanying documentation. General Plasma moves for summary judgment on the ground that Reliance had a duty, pursuant to the policy, to defend and indemnify it against UTC's claims. Reliance moves for summary judgment, however, on the ground that the aircraft product exclusion contained in the policy excludes coverage.

"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989).* "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Practice Book 17-49.* Since the "construction of a contract of insurance presents a question of [*4] law"; (internal quotation marks omitted) *Imperial Casualty & Indemnity Co. v. State, 246 Conn. 313, 325, 714 A.2d 1230 (1998);* the court may decide the issue on a motion for summary judgment.

The issues presented in the parties' respective motions for summary judgment are whether Reliance had a duty to defend General Plasma in the UTC action; whether Reliance had a duty to indemnify General Plasma for the amount paid in settlement of that action; and whether General Plasma is entitled to recover expenses, including attorney's fees, that it has incurred in bringing the present action against Reliance.

I

DUTY TO DEFEND AND DUTY TO INDEMNIFY

General Plasma argues that, pursuant to the policy, Reliance had a duty to defend and indemnify it against UTC's claims. Reliance argues, on the other hand, that the aircraft products exclusion in endorsement number 4 to the policy excludes coverage of UTC's claims. Whether Reliance had a duty to defend and indemnify General Plasma is determined by the language of the policy in question. See *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, 247 Conn. 801, 805-806, 724 A.2d 1117 (1999).* [*5]

"It is the function of the court to construe the provisions of the contract of insurance. *Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 418 A.2d 944 (1979).* The interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. *Aetna Life & Casualty Co. v. Bulaong, 218 Conn. 51, 58, 588 A.2d 138 (1991).* The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy . . . *Imperial Casualty & Indemnity Co. v. State, 246 Conn. 313, 324-25, 714 A.2d 1230 (1998).* A necessary [*6] predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous . . . *Kelly v. Figueiredo, 223 Conn. 31, 37, 610 A.2d 1296 (1992).*" (Internal quotation marks omitted.) *Springdale Donuts, Inc. v. Aetna Casualty Surely Co. of Illinois, supra, 247 Conn. 805-06.*

The court notes "at the outset that it is well settled that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . ." (Citations omitted; internal quotation marks omitted. [*7] ) *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, supra, 247 Conn. 807,* quoting *Flint v. Universal Machine, 238 Conn. 637, 646-47, 679 A.2d 929 (1996).* Since the parties to the present action have stipulated to the governing facts, the court is limited to determining whether, in the absence of a policy exclusion, the claimed injuries alleged in the UTC action are covered under the policy at issue, and whether Reliance had a duty to defend and indemnify General Plasma in the UTC action.

The policy at issue is a comprehensive general liability policy. The effective policy period was from October 31, 1991 through October 31, 1992. Under the policy, Reliance agreed "to pay on behalf of the insured all sums which [General Plasma] became legally obligated to pay as compensatory damages by reason of liability imposed upon [General Plasma] by law, or assumed by [General Plasma] under written contract, because of damage to, or destruction of, or loss of use of tangible property resulting from an occurrence n3 during the Policy Period." Reliance also agreed ". . . if claim is made or suit brought within Canada or the United States [*8] of America, [to] defend such claim or suit against the insured, even if such claim or suit is groundless, false or fraudulent, provided the company's liability with respect to such damages has not been exhausted by payment of judgment or settlements." Reliance further agreed to "pay all expenses

incurred by [General Plasma], all legal costs or any other costs taxed against [General Plasma] in any such suit or appeal or judgment and all interest accruing before and after entry of judgment until [Reliance] has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of [Reliance's] liability thereon."

n3 The policy defines an occurrence as "an accident or happening or event or a continuous or repeated exposure to conditions during the policy period which unexpectedly and unintentionally results in personal injury or property damage. All such exposure to substantially the same general conditions shall be deemed one occurrence."

The language of the policy is clear [*9] and unambiguous as to Reliance's duty to defend and indemnify General Plasma against suits, such as the UTC action, alleging property damage. Nevertheless, Reliance argues that endorsement number 4, titled "Aircraft Products and Grounding Liability Exclusion," excludes coverage of UTC's claims against General Plasma because the drum rotor assembly is an aircraft product as defined in the referenced exclusion.

For the reasons that follow, this court finds that endorsement number 4 does not apply to UTC's claims brought against General Plasma in *United Technologies Corporation v. General Plasma, supra*, Docket No. 532569, because the drum rotor assembly is not an aircraft product as the term is defined in the policy. Therefore, pursuant to the policy, Reliance had a duty to defend and indemnify General Plasma against UTC's claims. Further, Reliance's refusal to defend and indemnify General Plasma constituted a breach of the policy.

The court rejects Reliance's claim that the drum rotor assembly is an aircraft product as the term is defined in endorsement number 4. Endorsement number 4 provides in relevant part "that the insurance afforded by this policy shall not apply with [*10] respect to liability arising out of aircraft products . . . [or] to personal injury or property damage included within the 'Completed Operations Hazard' or the 'Product Hazard' with respect to 'Aircraft Products." n4 Aircraft products are defined as: "(1) Aircraft, including missiles or spacecraft and any ground support or control equipment used therewith; (2) Any article furnished by or on behalf of the Insured and installed in aircraft or used in connection with aircraft or for spare or replacement parts for aircraft, including ground handling tools and equipment; (3) Training aids, instructions, manuals, blueprints, engineering or other advice or services and labour relating to such aircraft or articles."

n4 The "Completed Product Hazard" or "Product Hazard" sections of the policy are not material to the issues presently before the court.

In keeping with the rule that "the policy words must be accorded their natural and ordinary meaning"; *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, supra, 247 Conn. 805-06;* [*11] the court holds that the drum rotor assembly is not an aircraft product as defined in endorsement number 4. Examining the complaint in the UTC action, it is clear that the motor rotor assembly is a component of a jet engine. (See Plaintiff's Complaint, 11/03/93, 4-7, in *United Technologies Corporation v. General Plasma, supra,* Docket No. 532569.) It is not an aircraft, missile, spacecraft or ground or control equipment used therewith, as aircraft products are defined in the first definition provided in endorsement number 4.

Secondly, the drum rotor assembly is not an aircraft product as the term is defined in the second definition. In order to be considered an aircraft product under the second definition, the article must have been (1) furnished by or on behalf of General Plasma and (2) installed in aircraft or used in connection with aircraft or for spare or replacement parts for aircraft. Although the article at issue clearly was installed in an aircraft, it is equally clear that it was neither furnished by nor on behalf of General Plasma. Rather, "the Drum Motor Assembly itself was furnished and at all times owned by UTC." (Joint Trial Management Conference Report, 7/08/99, p. [*12] 2.)

Furthermore, the drum motor assembly cannot be considered an aircraft product under the third definition because it is neither a training aid, instruction manual, blueprint, or engineering or other advice and services, nor was the labor performed on the assembly related to such aircraft or articles as defined in the first and second definitions of aircraft products. Finally, to the extent that there is ambiguity in the terms of the exclusion provision, it must be interpreted in favor of coverage because Reliance drafted the policy. *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, supra, 247 Conn. 806.* The motion for summary judgment filed by General Plasma as to the obligation of Reliance to defend and indemnify it against UTC's claims is therefore granted. Accordingly, Reliance's motion for summary

judgment is denied. Since the parties stipulated that the expenses associated with the defense of the UTC action of $ 179,234.19 and the settlement amount of $ 200,000 were reasonable, Reliance is liable to General Plasma for those amounts.

II

ATTORNEYS FEES AND COSTS IN THE PRESENT ACTION

General Plasma argues that Reliance's failure [*13] to defend in breach of its obligation under the policy "also rendered Reliance liable to General Plasma for the expenses, including attorneys fees, incurred by General Plasma in the instant action." (Plaintiff's Memorandum of Law, 8/06/99, p. 11.) Relying on the general rule that parties to an action must shoulder their respective economic burdens of litigation, Reliance argues that there is no basis in Connecticut statutory law or in the language of the policy at issue for awarding General Plasma attorneys fees incurred in the present action.

Connecticut follows the American rule. *Rizzo v. Grosso, 240 Conn. 58, 72, 689 A.2d 1097 (1997).* Under this rule, "attorneys fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *Id.* "There are few exceptions. For example, a specific contractual term may provide for the recovery of attorneys fees and costs . . . or a statute may confer such rights." (Citations omitted.) *Id., 72.*

General Plasma has not identified any specific policy language or statutory authority under which this court could grant the requested relief. [*14] General Plasma has cited, however, several cases for the proposition that attorneys fees incurred in a declaratory action may be recovered against an insurer who breaches its obligations under an insurance policy. See *Chicago Title Ins. Co. v. F.D.I.C., 172 F.3d 601, 602-04 (8th Cir. 1999); Preferred Mutual Ins. Co. v. Gamache, 426 Mass. 93, 95-98, 686 N.E.2d 989 (Mass. 1997); City of West Haven v. Liberty Mutual Ins. Co., 639 F. Supp. 1012, 1020 (D.Conn. 1986).* n5 In addition, there is one Connecticut Superior Court decision, in which attorneys fees were awarded in a declaratory judgment action to determine whether an insurer had a duty to defend. See *Aetna Life & Casualty Co. v. Gentile, 1995 Conn. Super. LEXIS 3444,* Superior Court, judicial district of Waterbury, Docket No. 122259 (December 12, 1995) (Sullivan, J.) (15 CONN. L. RPTR. 451).

n5 Although the federal court in *City of West Haven v. Liberty Mutual Ins. Co., 639 F. Supp. 1012 (D.Conn. 1996),* cited *Schurgast v. Schumann, 156 Conn. 471, 242 A.2d 695 (1968),* and *Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co., 155 Conn. 104, 230 A.2d 21 (1967),* for the proposition that "under Connecticut law, damages for breach of duty to defend in an insurance contract are the sum of any settlement or judgment, plus counsel fees in both the underlying action and the action for failure to defend, plus interest"; *City of West Haven v. Liberty Mutual Ins. Co., supra, 639 F. Supp. 1020;* neither case dealt with the issue of whether an insured may recover attorneys fees in a subsequent action to determine the insurer's duty to defend and indemnify under an insurance policy. In Schurgast, the insured sought to determine whether his insurer had a duty to defend pursuant to a policy. The court held that the insurer had a duty to defend the insured, and was ordered to pay the judgment obtained against the insured. See *Schurgast v. Schumann, supra, 156 Conn. 491.*

In Missionaries of the Company of Mary, Inc., the insured's claim for attorneys fees for the subsequent action was withdrawn and, thus, the court did not rule on the issue. See *Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co., supra, 155 Conn. 106, 115.* Nevertheless, the court discussed the proper measure of the insured's recovery when the insurer refuses to defend. The court held that because the defendant insurer, "in effect, waived the opportunity which was open to it to perform its contractual duty to defend under a reservation of its right to contest the obligation to indemnify the plaintiff [insured], reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it." *Id., 113-14.* In so holding, the court reasoned that the insurer should not "be permitted, by its breach of the contract, to cast upon the plaintiff the burden of proving a causal relation between the defendant's breach of duty to defend and the results which are claimed to have flowed from it." *Id., 114;* see also *City of West Haven v. Liberty Mutual Ins. Co., supra, 639 F. Supp. 1012* (awarding the insured attorneys fees and costs incurred in a subsequent action to determine the insurer's duties).

[*15]

In *Aetna Life & Casualty Co. v. Gentile,* the court, Sullivan, J, awarded the defendant insured attorneys fees and costs when the insurer brought a declaratory judgment action to determine its duties under an insurance policy.

*Aetna Life & Casualty Co. v. Gentile, supra, 1995 Conn. Super. LEXIS 3444,* 15 CONN. L. RPTR. 454. The court reasoned that the declaratory judgment action was brought for the "convenience of the insurer plaintiff" and that the right of the insured to be furnished a defense to the declaratory judgment action "is a part and parcel of the continuing right to be furnished a defense to the underlying action." The court concluded that "the insurer cannot condition the insured's continuing right to a defense by imposing upon the insured, *as a condition precedent,* the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit." (Emphasis in original.) *Id.*

For the policy reasons articulated by the court in *Missionaries of the Company of Mary, Inc., 155 Conn. 104, 230 A.2d 21 (1967)* and *Aetna Life & Casualty Co. v. Gentile, supra,* this court sees no reason to limit an insured's right to recover attorneys fees [*16] in a subsequent action for failure to defend merely to those where the insurer instituted the action. Whether Reliance attempted to foreclose on General Plasma's contractual right to a defense by instituting a declaratory action, or by merely refusing to defend and then waiting for General Plasma to institute the action is immaterial. General Plasma remains in the same position of expending extraordinary funds to preserve its right to a contractual benefit. The only condition precedent under the policy, which was issued to General Plasma, is that any claims against General Plasma must be covered under the policy. When General Plasma sought a defense to UTC's claims, Reliance made the conscious choice to refuse to defend, rather than defend under a reservation of its right to contest coverage. Although this precise claim was withdrawn and therefore left undecided by the *Missionaries* case, in awarding the plaintiffs the settlement amount, expenses, attorneys fees and interest incurred in the underlying action, the Supreme Court held, "reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it." (Emphasis added. [*17] ) *Missionaries, supra, 155 Conn. 114.* Since the expenses incurred in a subsequent action to enforce the underlying contractual obligation also appear to be "reasonably incurred," under all the circumstances, Reliance should reimburse General Plasma for its legal expenses incurred in the instant action. See also *Black v. Goodwin, Loomis & Britton, Inc., 239 Conn. 144, 152-53, 681 A.2d 293 (1996)* ("An insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured").

As one court noted, if the American rule were followed in breach of duty to defend cases, "it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually [*18] no better off financially than if he had never had the contract right mentioned above." *Preferred Mutual Ins. Co. v. Gamache, supra, 426 Mass. 93, 96-97.* "After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof." *Id. at 96.*

*Chicago Title Ins. Co. v. F.D.I.C., supra, 172 F.3d 601,* provides further support for awarding attorneys fees and costs to the insured in the present action. In that case, as in the case at bar, the insured requested attorneys fees and costs incurred in a subsequent declaratory judgment action. The insured argued that "because [the insurer] had not reimbursed the [insured] for defense fees and costs until forced to so by the district court that this refusal to pay was a breach of duty to defend which, in turn, authorized an award of attorneys fees and costs in this [subsequent] litigation." *Id. at 604.* In awarding the insured attorneys fees and costs incurred defending the subsequent action, the court concluded that "when a breach of the duty to defend occurs, the insured [*19] is entitled to be reimbursed for attorneys fees and costs expended to force the insurer to pay for the defense." (Internal quotation marks omitted.) *Id. at 606.* The court reasoned: "A breach of the contractual duty to defend usually occurs by wrongfully refusing to defend the insured . . . This does not mean that the insurer cannot contest coverage. If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend . . . Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorneys fees and costs in the declaratory judgment action to determine coverage. Attorneys fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation." (Citations omitted.) *Id. at 605.*

The present action is not a case in which the insurer fulfilled its duty to defend and then contested coverage. Reliance refused to defend and indemnify General Plasma in violation of the clear and unambiguous language [*20] of the policy. Because the court has found that Reliance breached its duty to defend and indemnify General Plasma, it must now bear the consequences of its

decision. Therefore, General Plasma is entitled to reasonable attorneys fees and costs incurred in this action. Accordingly, General Plasma is hereby ordered to submit appropriate papers in support of its claim for attorneys fees incurred in the prosecution of this action within thirty days.

*CONCLUSION*

Pursuant to an insurance policy issued to General Plasma, Reliance had a duty to defend and indemnify General Plasma in the underlying UTC action, and it breached that duty when it refused to do so. Pursuant to its contractual duty to indemnify, Reliance is liable for the $ 200,000 that General Plasma paid to UTC in settlement *of United Technologies Corporation v. General Plasma, supra,* Docket No. 532569. Reliance is also liable for reasonable attorneys fees and costs that General Plasma incurred in defending the UTC action in the amount of $ 179,234.19 in accordance with the agreement of the parties. n6 Further, the court hereby orders that General Plasma is entitled to reasonable attorneys fees and costs incurred in [*21] bringing the present action.

n6 See Joint Trial Management Conference Report, 7/8/99, pp. 2-3.

The plaintiff General Plasma's motion for summary judgement is hereby granted. The defendant Reliance's motion for summary judgment is denied.

Peck, J.

# Exhibit E

LEXSEE 1995 CONN. SUPER. LEXIS 3444

**AETNA LIFE & CASUALTY CO. v. JOSEPH GENTILE, JR. ET AL**

**NO. 0122259**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF WATERBURY**

***1995 Conn. Super. LEXIS 3444***

**December 12, 1995, Decided**
**December 12, 1995, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**JUDGES:** L. PAUL SULLIVAN, J.

**OPINION BY:** L. PAUL SULLIVAN

**OPINION:**

MEMORANDUM OF DECISION

This is an action for a declaratory judgment to determine whether the Aetna Life and Casualty Company has a duty to defend Joseph Gentile and John Gentile, d/b/a Lakewood Auto Parts against certain claims by ITT Hartford Insurance Group in a subrogation action against Gentile for damage to the truck of ITT's insured Mattatuck Scrap Company caused by a fire at Gentile's premises.

The matter is submitted to this court on a stipulation of facts submitted by the parties on October 10, 1995.

The facts are not complicated. Gentile is in the business of repairing body damage and painting motor vehicles. At a given time, during the policy period, a fire broke out at Gentile's premises. At the time eleven vehicles of customers were at the premises, and they sustained damage by virtue of said fire. Included therein was a certain 1980 Mack truck owned by one Mattatuck Industrial Scrap Metal, Inc., which was insured for fire casualty [*2] loss by ITT Hartford Insurance Group.

The plaintiff in this action, Aetna, has settled with apparent finality all of the claims of the vehicle owners, except for the possibility of additional claims of loss to Mattatuck's Mack Truck as asserted by an action brought through Mattatuck's first party insurer ITT Hartford.

On January 4, 1991 the Aetna, through its claim's representative, sent a two page letter to Mattatuck, enclosing a copy of its appraisal of the damage to the truck (appraisal of Frank J. Haiko, Inc. Automobile Appraisal Service) reflecting damage in the amount of $ 8,183.29. The only open item in the appraisal was "possible additional electrical damage from heat unknown at this time".

The Aetna adjuster, Ms. Saracino further informed Mattatuck, by this letter, that the total coverage for all vehicles in this loss was $ 50,000 single limit for all vehicles. The letter further informed Mattatuck that if there was presently a claim for sums in addition to the appraisal amount, "that I be notified by January 30, 1991". The letter informed Mattatuck that if the total claims for all vehicles exceed the $ 50,000 coverage, a proportionate distribution of the proceeds of the [*3] policy would be made to the claimants. By letter of direction of December 28, 1992 Mattatuck, through one Pete Tatalias had signed a "direction of payment" letter directing that all payments be paid directly to Lakewood, who as repairer was undertaking the repairs of the vehicle.

The Haiko appraisal enclosed in the Aetna letter is dated November 30, 1990. Mattatuck did not respond to the Aetna's letter, which invited Mattatuck to submit any claim for additional sums above and beyond the amount of the Haiko appraisal.

Thereafter, on February 4, 1991 Aetna forwarded to Lakewood Auto Painting and Body Work, a check in the amount of $ 49,029.98 bearing the specific caption "all seven vehicles full and payment and release of all claims". None of the individual claimants, including Mattatuck, were made payees on the check, nor were any releases obtained by Aetna from Mattatuck, or from any of the other claimants apparently. A check for $ 970.22

was also paid to one Cynthia Noti for "rental reimbursement". The sum of the two checks is $ 50,000.

On March 30, 1992 ITT Hartford, claiming to be the subrogatee of "Mattatuck", commenced suit against Gentile in the Superior Court, J.D. Waterbury, [*4] claiming damages in the amount of $ 28,000 arising out of the damage to Mattatuck's truck. There is nothing in the stipulation of facts to indicate that either the Aetna or Gentile had any idea that there was such additional loss, or that ITT Hartford had paid anything to Mattatuck, or that it had any subrogation claim whatsoever.

The Aetna seeks a declaratory judgment from this court determining that the Aetna has no duty to defend Gentile in the ITT Hartford action, and further that it has no duty to indemnify Gentile for any loss to Gentile for the ITT Hartford claim. Gentile conversely seeks, in response, "reasonable attorney's fees".

The issues presented by this action are quite narrow. The Aetna's policy with Gentile provides "Garage Keepers Coverage" for claims of this nature in the amount of $ 50,000.00. The policy covers the insured's liability for damages arising out of injury or loss to the property of others which are in the insured's care while attending, servicing, repairing, parking or storing in garage operations.

The Aetna has paid out a total of fifty thousand dollars in response to these claims.

The policy provides that the Aetna has "the right and duty to defend [*5] any 'suit' asking for these damages". The policy further states "Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgment or settlements". (emphasis added). The policy further reserves to the insurer Aetna the sole determination as to the negotiation and payment of claims. Section V, General Conditions provides, in paragraph 2b "Additionally, you and any other involved 'insured' must (1) assume no obligation, make no payment or incur no expense without our consent, except at the 'insured's' own cost". The policy gives to the insured no authority or decision making prerogative as to the payment of claims.

The Aetna paid to the benefit of the claimant Mattatuck Industrial Scrap Metal, Inc. a sum of money. Although the amount of the payment is not set forth in the stipulation of the parties, the transmittal letter from the Aetna to Mattatuck enclosed its appraisal of "Frank J. Haiko, Inc., Appraisers", in the amount of $ 8,183.24, leaving open only the question of "possible additional electrical damage from heat unknown at this time". The amount paid for Mattatuck is admittedly part of the $ 50,000 total [*6] payment.

The Aetna did not obtain a written release from Mattatuck. There is nothing to indicate that an oral agreement of release and settlement was obtained from Mattatuck. It may be argued, at the appropriate time, in Mattatuck's suit through ITT Hartford, that Mattatuck's failure to respond to Aetna's letter prior to acceptance of payment, constitutes an accord and satisfaction i.e. an acceptance of a settlement offer by accepting payment of the amount offered. This court cannot so conclude merely on the status of the facts before this court. The existence of the ITT-Mattatuck suit versus the insured Gentile precludes an inference that Aetna has in fact "settled" the Mattatuck claim.

Aetna did send a check in the amount of $ 49,029.78 to Lakewood Auto Body, marked "all seven vehicles, full and final payment and release of all claims". It must be understood that though Lakewood was the insured, it was in fact the actual repair shop for the vehicles, per the notation on the Haiko appraisal. The direction of the claimants to pay the funds to Lakewood must be understood in that context. There is nothing in the factual context of this case to indicate that Lakewood was given the authority [*7] by Mattatuck to act on its behalf to settle its claim. Nor that Lakewood was given the authority by Aetna to settle any claims by Mattatuck on behalf of Aetna. The release of Aetna by Lakewood can only be interpreted to be a release by the repairer Lakewood for the parts auto be furnished and labor to be performed in the specific repairs which it was to actually accomplished on these vehicles.

Hence the issue becomes focused. Was the payment to Lakewood made for the benefit of Mattatuck, a "settlement". If so, the policy limits are exhausted and there is no further duty to defend. If not, the payment must be subtracted from the fifty thousand dollar coverage for the purposes of this issue, and the duty to defend would then continue.

The law in this state is quite clear as to what is a "settlement", and has been so determined at an early time in the jurisprudence of this state:

"The word 'settle' when applied to an unliquidated claim or demand means its mutual adjustment between the parties and an agreement upon the balance". *State v. Staub, 61 Conn. 553, 568, 23 A. 924 (1892).*

"When applied to an unliquidated demand, the word means to effect a mutual adjustment between [*8] the parties and to agree upon the balance." Ballentine's Law Dictionary, Third Edition, p. 1165, 1166, citing *State v. Staub, 61 Conn. 553, 568, 23 A. 924.*

"...release of a tortfeasor in any cause of action involves what fairly and euphemistically are called 'settle-

ments'". *Peck v. Jacquemin, 196 Conn. 53, 59, 491 A.2d 1043 (1985).*

Settlement means "...to fix the amount due a claimant...". See *Dowe v. Egan, 133 Conn. 112, 127, 48 A.2d 735 (1946)* citing *State v. Staub, supra.*

It is quite clear, in the instant case, that there is a continuing claim, asserted by Mattatuck, through its assignee and subrogee ITT Hartford, as to the damages sustained by Mattatuck. There is no written release signed by on or behalf of Mattatuck, nor is there any evidence or assertion that there is an oral agreement between Mattatuck and Aetna, an oral accord and satisfaction, in settlement of this claim.

This contract of insurance contains no specific definition of the word "settlement" so as to describe that word in a fashion different then as has been interpreted by the common law of this state. If there were to be ambiguity in the word "settlement" as utilized in this contract of [*9] insurance, the law is clear that the interpretation favoring the insured would be applicable.

"When, however, the words of an insurance contract are, without violence, susceptible to two or more interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." *Griffith v. Security Ins. Co., 167 Conn. 450, 460, 356 A.2d 94 (1975).* (Internal Citations omitted).

It is clear that partial payment, without an agreement of accord and satisfaction, written or oral, is not a "settlement". The payment of funds which do not constitute "payment of judgments or settlements" (the terms articulated in this contract) are not sums which can be mathematically utilized to conclude an exhaustion of the policy limits. This court concludes that what appears to be a partial payment made to Mattatuck is not a "settlement". When deducted from the fifty thousand dollar coverage, this compels the conclusion that the limit of insurance had not been exhausted of payment of "judgments or settlements". The duty of the plaintiff Aetna to defend John Gentile/and or Joseph Gentile Jr. hence does continue.

It is conceivable that the defendant, through counsel furnished [*10] by Aetna, may prevail in the defense of the underlying subrogation claim by ITT Hartford. The trial court, in that action, could conceivably conclude that there was in fact an accord and satisfaction, though the facts presented to this court and the arguments in the brief do not compel that conclusion.

The court further notes that Mattatuck and ITT Hartford apparently did not follow what is at least the customary practice of the ITT-insured Mattatuck assigning the entire claim to its first party carrier ITT, who would then assert the entire claim, and, after payment, then dividing the proceeds between insured and insurer according to their respective equitable interests. See Corpus Juris Decorundum, Assignments, § 65, p. 699; Corbin on Contracts, One Volume Edition, § 889 "Partial Assignments", p. 837; see also *Rock v. Adley Express Co. Inc., 130 Conn. 274, 282, 33 A.2d 329 (1943)* and *Smith v. Waterbury & Milldale Transway Co., 99 Conn. 446, 451, 121 A. 873 (1923)* giving sanction to the assignment of an entire claim as a unit, but not determining the viability of partial assignments, which have the obvious effect of attempting to divide single claim into multiple causes [*11] of action.

This court, and properly so, is not asked to determine whether Mattatuck's acceptance of the payment made to it by Aetna, in light of the invitation by Aetna to Mattatuck to present "a claim for anything in excess of the enclosed appraisal", constitutes the acceptance of an offer of full and final settlement. These matters may well be determined by the litigation now pending in the case ITT Hartford Insurance Group v. John Gentile, CV92-0108452S. It should appear obvious that even if the Aetna were to succeed in defending that litigation, reflecting a retrospective conclusion that it had settled the claim by Mattatuck, the Aetna could not surcharge its insured Gentile for the cost of defense. The Aetna, having reserved total control of settlement of the claim, must assume the duty of defending the viability of any settlement which it may claim to have accomplished.

The first question presented to this court, to wit a determination that Aetna has no duty to defend John Gentile and/or Joseph Gentile, is answered in the negative. Aetna does in fact have a duty to defend the case of ITT Hartford Insurance Group v. Joseph Gentile et al, No. CV92-0108452S (J.D. Waterbury). [*12]

The second request is for "a determination from this court that it has no duty to indemnify these defendants for the subject loss under the terms of the subject insurance contract".

The relationship between insurer and insured is extremely complex in dealing with incidents involving multi-claimants wherein the total amount of the claims asserted have the prospect of exceeding the policy limits. It may be argued, from a simplistic standpoint, that the mere payment of the policy limits, in whatever fashion and in whatever amount the insurer may choose, in accordance with its sole discretion under the terms of the policy, satisfies the requirements of the policy. When, however, it is understood that the exhaustion of the policy exposes the insured to the financial jeopardy of payment of any excess sums from the insured's own funds, and bearing in mind the implications of unsatisfied judgments, the relationship between insurer and insured assumes a different complexion.

Appended to every contract is the implied covenant of "good faith and fair dealing". See cases such as *Carbone v. Atlantic Richfield Co., 204 Conn. 460, 528 A.2d 1137 (1987).* Does the insurer assume a fiduciary [*13] relationship to the insured under circumstances presented by the potential of excess claims? Has the insurer utilized due care in paying each claim so as to guard against dissipation of the policy limits by payments which do not settle claims. Does the mandatory abrogation of the insured's right to settle the claims require of the insuror a high degree of care in undertaking that function? What level of coordination and dissemination of information, insurer to insured, is required under such circumstances? These questions have not been addressed in sufficient fashion by the parties in the facts presented to the court, or in the briefs submitted by the parties.

This court determines that the mere fact that payments have been made by the insurer which may equate to the extent of the policy limits does not in and of itself lead to the conclusion that the insurer has no duty to indemnify the insured. The court declines to grant declaratory judgment on this aspect of this action.

Lastly, the defendant Gentile et al seeks, by "claim for relief" in his answer of September 22, 1995 "Reasonable Attorney's fees". The court accepts this claim for relief as the defendant-insured's request [*14] for declaratory judgment as concerns attorney's fees for representing defendants Gentile, in both this declaratory judgment proceeding and in the underlying action.

As stated herein, this court has determined that the insurer Aetna has the duty to defend Gentile in the action pending in the Superior Court, "ITT Hartford Insurance Group v. John Gentile et al, Docket No. CV92-0108452S". "The breach in the terms of the policy made the defendant liable to pay the plaintiff his reasonable expenses in the defense of Patricia's suit against him". *Jenkins v. Indemnity Co., 152 Conn. 249, 261, 205 A.2d 780 (1964).*

"Under all the circumstances the plaintiff is entitled to recover of the defendant the amount of the settlement in the Shuhi case, together with the expenses and attorney's fees incurred by it in defending the case..." *Missionaries of C of Mary, Inc. v. Aetna Casualty & Surety Co., 155 Conn. 104, 114, 230 A.2d 21 (1967).*

"The general rule is that, in the absence of express contractual terms to the contrary, allowance of fees is limited to the defense of the claim which was indemnified and does not extend to services rendered in establishing the right to indemnification". [*15] *Burr v. Lichtenheim, 190 Conn. 351, 363, 460 A.2d 1290 (1983).*

It may be argued that Gentile is entitled to payment of attorney's fees incurred solely in the defense of the underlying action, ITT Hartford v. Gentile, and would be entitled to no attorney's fees in defending this declaratory judgment action. However, once it is understood that this is an action by the insurer seeking a declaratory judgment, the purpose of which is to foreclose Gentile, the insured, from eventually claiming attorney's fees for defending the underlying action, ITT Hartford v. Gentile, then this declaratory judgment is in no fashion an optional action by an insured seeking indemnity from a judgment, including attorney's fees for having defended the underlying claim. Rather, this action is an attempt by the plaintiff insuror to foreclose the insured's right to assert an eventual claim for which indemnity and attorney's fees for defense of the underlying action may in the future be brought by the insured.

A declaratory judgment is an extraordinary procedure. Though apparently well meaning, it is here legally unnecessary, is brought for the convenience of the insurer plaintiff, [*16] and thrusts upon the insured defendant the unnecessary expense of having to defend against this action so as to preserve his right to be furnished a defense of the underlying action, a right to which he is entitled under the specific provisions of the policy. Viewed accordingly, the right to be furnished a defense to this action is a part and parcel of the continuing right to be furnished a defense to the underlying action. The insuror cannot condition the insured's continuing right to a defense by imposing upon the insured, as a condition precedent, the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit.

Where an insurer perceives a conflict of interest between itself and its insured prior to or during the course of a trial it is customary, legally appropriate, and often legally necessary for the insurer to provide independent counsel to the insured so as to not jeopardize the insured's rights under the terms of the contract. Viewed in this additional light, it is appropriate that the insurer furnish to the insured a defense or reimburse to the insured the cost of defense of this declaratory judgment action which it thrust [*17] upon the insured.

The court determines that the defendant insured is entitled to be reimbursed by the insurer for the insured's reasonable attorney's fees and costs in defending the underlying action to date here of, and to be reimbursed his reasonable attorney's fees and costs in defending against this declaratory judgment action.

L. PAUL SULLIVAN, J.