# Exhibit G

LEXSEE

**Chicago Title Insurance Company, a Missouri Corporation, Appellant, v. Federal Deposit Insurance Corporation, Appellee.**

**No. 97-4367**

**UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT**

**172 F.3d 601; 1999 U.S. App. LEXIS 6054**

**December 16, 1998, Submitted**
**April 5, 1999, Filed**

**PRIOR HISTORY:** [**1]

Appeal from the United States District Court for the District of Minnesota. CIV 4-92-129. Honorable James M. Rosenbaum.

**DISPOSITION:**

District court's grant of attorneys' fees and costs affirmed. Remanded to district court to award $ 280,968.97 in fees and costs.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant insurer sought review of a judgment from the United States District Court for the District of Minnesota, which granted attorney fees and costs in favor of appellee insured federal agency in appellant's declaratory judgment action.

**OVERVIEW:** Although appellant insurer initially refused to defend lien actions against appellee insured federal agency, it subsequently agreed to reimburse appellee for the attorney fees and costs incurred in a defense. Appellant ultimately refused reimbursement, claiming it was unreasonable, and brought a declaratory action to recover an amount it had contributed to appellee pursuant to a settlement agreement. After a jury determined that appellant owed a contractual duty to defend appellee and that the district court awarded reasonable attorney fees and costs to appellee, appellee moved to recover attorney fees and costs expended in the declaratory judgment action. The appellate court affirmed the judgment of the district court, which granted appellee's motion on the ground that appellant had breached its duty to defend. The court held that appellant's refusal to pay fees and costs was a breach of the contractual duty to defend, thereby authorizing the award of fees and costs in the declaratory judgment action. Appellant's argument that appellee claimed an unreasonable amount of fees and costs did not vitiate the duty to pay the amount that appellant considered reasonable.

**OUTCOME:** The court affirmed a judgment that granted attorney fees and costs to appellee insured in appellant insurer's declaratory judgment action. Appellant's refusal to pay fees and costs expended by appellee in an underlying action was a breach of the contractual duty to defend, thereby authorizing the award of fees and costs to appellee in appellant's subsequent declaratory action. The court remanded the action to award the fees and costs.

**CORE TERMS:** duty to defend, title insurance policy, insured, insurer, declaratory judgment action, mechanics', tender of defense, settlement, mortgage, reservation, reimburse, duty, contractual duty, reimbursement, breached, coverage, receiver, reasonableness, apartment building, unreasonably high, refused to pay, insurance contract, special master, general rule, de novo, contributed, defending, defended, fulfills, contest

**LexisNexis(R) Headnotes**

***Civil Procedure > Declaratory Judgment Actions > State Judgments > Appellate Review***
***Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review***
***Civil Procedure > Appeals > Standards of Review > De Novo Review***

[HN1] The court reviews questions of fact under the clearly erroneous standard and conclusions of law de novo.

*Insurance Law > Bad Faith & Extracontractual Liability > Refusals to Defend*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN2] The general rule is that attorney fees and costs are awarded only when authorized by statute or provided for in the contract. However, a limited exception to the general rule provides that attorney fees and costs can be awarded when an insurer has breached the insurance contract in some respect. One such breach of the insurance contract is a breach of the duty to defend.

*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Declaratory Judgments*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
[HN3] A breach of the contractual duty to defend usually occurs by wrongfully refusing to defend the insured. This does not mean that the insurer cannot contest coverage. If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend. Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorney fees and costs in the declaratory judgment action to determine coverage. Attorney fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation.

*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Pay Claims*
*Insurance Law > Claims & Contracts > Reservation of Rights > General Overview*
[HN4] When a conflict of interest arises - such as accepting the tender of defense while denying coverage - the duty to defend transforms into a duty to reimburse the insured for reasonable attorney fees incurred in defending the lawsuit.

*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN5] In Minnesota, the duty to defend is read broadly. For example, it requires insurers to defend an entire action and not just to the extent of the insurer's own interests in the litigation.

*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Declaratory Judgments*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Pay Claims*
[HN6] When a breach of the duty to defend occurs, the insured is entitled to be reimbursed for attorney fees and costs expended to force the insurer to pay for the defense.

**COUNSEL:**

Counsel who presented argument on behalf of the appellant was Michael Joseph Orme of Minneapolis, Minnesota. Also appearing on the brief was Louis W. Brenner, Sr.

Counsel who presented argument on behalf of the appellee was Barbara S. Woodall of Washington, D.C. Also appearing on the brief were Ann S. DuRoss, Robert McGillicuddy, and Jerome A. Miranowski.

**JUDGES:**

Before BEAM, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

**OPINION BY:**

BEAM

**OPINION:** [*603] BEAM, Circuit Judge.

Chicago Title Insurance Company (Chicago Title) appeals the grant of attorneys' fees and costs in favor of the Federal Deposit Insurance Corporation (the FDIC). The district court n1 granted the FDIC's motion for attorneys' fees and costs because Chicago Title breached its contractual duty to defend its insured--the FDIC. Chicago Title argues that there was no breach. We affirm and remand.

n1 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

[**2]

## I. BACKGROUND

In 1987, Murray Savings Association (Murray), provided a loan for the construction of an apartment building. As security for the loan, Murray took a mortgage on the apartment building and property. Murray also obtained a title insurance policy, issued by Chicago Title, that insured, among other things, the priority of the mortgage. The title insurance policy required that Chicago Title provide a defense, "at its own cost and without undue delay," for any claims covered by the policy. Construction of the apartment building began, but the builder eventually experienced financial difficulties and abandoned the unfinished project. Murray also fell upon hard times and was declared insolvent. Murray was placed in receivership, and a real estate development company was retained to complete the project. The mortgage, along with the title insurance policy, was assigned to the FDIC as receiver. n2

n2 Originally the mortgage was transferred to the Murray Federal Savings & Loan Association with the Resolution Trust Corporation acting as receiver. The FDIC is now acting as receiver and holds the mortgage and title insurance policy. For simplicity, the actions of the receiver will simply be referred to as those by the FDIC, although in some instances, the actions were taken by the Resolution Trust Corporation.

[**3]

Beginning in 1989, a series of legal proceedings were commenced to foreclose mechanics' liens filed against the apartment property for work done on the project (hereinafter the lien actions). The lien actions asserted that the mechanics' liens had priority over the mortgage. On the belief that the title insurance policy covered mechanics' liens and thereby required Chicago Title to defend against the lien actions, the FDIC tendered the defense to Chicago Title. A defense was requested for the first time in May 1989, but was promptly refused by Chicago Title. The FDIC retained independent counsel to defend against the lien actions but persisted in seeking a defense from Chicago Title. Chicago Title finally accepted the tender of defense for all the lien actions in April 1991, subject to a reservation of rights. Chicago Title agreed to defend the FDIC but reserved the right to dispute whether the insurance policy provided coverage for the mechanics' liens. The reservation of rights on coverage created a conflict of interest for Chicago Title in providing the defense, thus it agreed that the FDIC would defend against the lien actions, and Chicago Title would reimburse FDIC for the attorneys' [**4] fees and costs incurred.

The FDIC paid their counsel for defense fees and costs, and sought reimbursement [*604] for the first time in August 1991. Chicago Title informed the FDIC that the requested fees and costs were unreasonably high and refused to pay any amount. Settlement negotiations between the parties to the lien actions were then underway. Because insurance coverage was uncertain, Chicago Title also participated with the FDIC in the settlement negotiations. In September 1991, a settlement was reached with the FDIC and Chicago Title each contributing one-half of the $ 498,000 agreed upon amount. After the settlement, the FDIC submitted its final attorneys' fees and costs, amounting to $ 280,584.06, to Chicago Title. Chicago Title deemed the requested sum to be unreasonably high and again refused to pay any amount.

Chicago Title brought this declaratory judgment action to recover the amount it had contributed to the settlement ( $ 249,000) from the FDIC. Chicago Title alleged that the title insurance policy did not cover the mechanics' liens that were the subject of the lien actions. The FDIC counterclaimed for the amount it had contributed towards the settlement and [**5] the fees and costs it incurred in defending against the lien actions. On appeal from the results of a jury trial, we concluded that the title insurance policy covered the mechanics' liens. See Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 903 & 908 (8th Cir. 1995). Consistent with the title insurance policy, we affirmed the jury's express finding that Chicago Title owed a contractual duty to defend the FDIC in the lien actions. We then remanded to the district court. The district court referred the matter to a special master, for a determination of reasonable attorneys' fees and costs required to defend the FDIC. The district court reduced the FDIC's requested fees and costs from $ 280,584.06 to an amount it considered reasonable-- $ 197,559.54.

Ordinarily, when the coverage issue is concluded, that is the end of the matter. However, the FDIC filed a motion to recover the $ 434,384.24 in fees and costs it had expended in this declaratory judgment action. The FDIC argued that because Chicago Title had not reimbursed the FDIC for defense fees and costs until forced to do so by the district court, that this refusal to pay was a breach of the duty to [**6] defend which, in turn, authorized an award of attorneys' fees and costs in this litigation. The district court concluded that, because Chicago Title had breached its duty to defend the FDIC in the lien actions, Chicago Title should be liable for the fees and costs required to enforce that duty. However, the district court reduced the requested amount by 30% and awarded $ 304,068.97. Chicago Title appeals.

**II. DISCUSSION**

Chicago Title argues on appeal that it did not breach a duty to defend the FDIC in the lien actions because it accepted the tender of defense and only refused to reimburse the FDIC for excessive and unreasonable charges. In contrast, the FDIC argues that the refusal to pay attorneys' fees and costs was a breach of the contractual duty to defend, thereby authorizing the award of fees and costs in this declaratory judgment action. Applying Minnesota law, which the parties agree controls, see Chicago Title, 53 F.3d at 904, [HN1] we review questions of fact under the "clearly erroneous" standard and conclusions of law de novo. n3 Fed. R. Civ. P. 52(a) (review [**7] of factual findings); see Hawkins Chem., Inc. v. Westchester Fire Ins. Co., 159 F.3d 348, 352 (8th Cir, 1998) (de novo review for legal questions).

n3 Chicago Title would have us review de novo the legal question of whether a failure to pay an unreasonable amount of attorneys' fees constitutes a breach of the duty to defend. We do not reach this issue, as the subsequent analysis will demonstrate, because Chicago Title failed to pay what it considered to be a reasonable sum.

[HN2] The general rule is that attorneys' fees and costs are awarded only when authorized by statute or provided for [*605] in the contract. See Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co., 285 Minn. 264, 173 N.W.2d 9, 12 (Minn. 1969). While the title insurance policy required Chicago Title to pay attorneys' fees and costs in the lien actions, it did not authorize fees and costs for this declaratory [**8] judgment action. However, a limited exception to the general rule was developed in Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640, 647 (Minn. 1966). The exception provides that attorneys fees and costs can be awarded when an "insurer has breached the insurance contract in some respect." American Standard Ins. Co. v. Le, 551 N.W.2d 923, 927 (Minn. 1996). One such breach of the insurance contract is a breach of the duty to defend. See Domtar, Inc. v. Niagara Fire Ins. Co., 563 N.W.2d 724, 737-38 (Minn. 1997).

There is no question that Chicago Title had a duty to defend the FDIC against the lien actions. "'That is, the insured has a contract right to have actions against him defended by the insurer, at its expense.'" Security Mut. Cas. Co. v. Luthi, 303 Minn. 161, 226 N.W.2d 878, 884 (Minn. 1975) (quoting 7C John Alan Appleman, Insurance Law and Practice § 4691, at 283 (Walter F. Berdal rev. 1979)). The title insurance policy provides, as indicated, that for covered claims, Chicago Title "at its own cost and without undue delay, shall provide for the defense of an insured." Appellee's Appendix at 41. And, [**9] as noted, the jury expressly found, and we affirmed, a duty to defend. The only question remaining is whether Chicago Title breached that duty.

[HN3] A breach of the contractual duty to defend usually occurs by "wrongfully refusing to defend the insured" Le, 551 N.W.2d at 927. This does not mean that the insurer cannot contest coverage, If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend. See id. Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorneys' fees and costs in the declaratory judgment action to determine coverage. Attorneys' fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation. See id.

Chicago Title refused the tender of defense in the lien actions for nearly two years, then grudgingly accepted the tender with an extensive reservation of rights that continued [**10] to deny that Chicago Title had a duty to defend or that the title insurance policy covered the mechanics' liens. n4 [HN4] When a conflict of interest such as this arises--accepting the tender of defense while denying coverage--the duty to defend transforms into a "duty to reimburse [the FDIC] for reasonable attorneys' fees incurred in defending the lawsuit." Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 391 (Minn. 1979). Therefore, Chicago Title authorized reimbursement for "all action [deemed] necessary to defend such claims." Appellee's Appendix at 71. This would have fulfilled Chicago Title's duty to defend, but Chicago Title then refused to pay any amount of the invoices for attorneys' fees and costs because it considered the requested amount unreasonable.

n4 The reservation of rights document reserved "the right to seek reimbursement for defense costs advanced" to the FDIC in the event that the mechanics' liens were not covered by the title insurance policy. Appellant's appendix at 33 (letter explaining Chicago Title's acceptance of the tender of defense and reservation of rights). A right of reimbursement would not have arisen since the jury found that Chicago Title had a duty to defend. See Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp. 1169, 1171-72 (D. Minn. 1996).

[**11]

Chicago Title argues that the law, as stated in Prahm, only imposes a duty to reimburse for *"reason-*

*able"* attorneys' fees. Prahm, 277 N.W.2d at 391 (emphasis added). That is true. However, the district court found that at least $ 80,000 to $ 120,000 of the invoices were [*606] not disputed by Chicago Title as unreasonable, and Chicago Title did not pay or, apparently, even offer to pay a portion of them. [HN5] In Minnesota, the duty to defend is read broadly. See Brown v. State Auto. & Cas. Underwriters, 293 N.W.2d 822, 825 (Minn. 1980). For example, it requires insurers to defend an entire action and not just "to the extent of [the insurer's] own interests in the litigation." Mannheimer Bros. v. Kansas Cas. & Sur. Co., 149 Minn. 482, 184 N.W. 189, 190 (Minn. 1921). Furthermore, payment of the undisputed amount is consistent with the Minnesota policy of "encouraging insurance companies to properly meet their duty to defend [the] insured against third party claims and minimize unnecessary claims to enforce policy coverage." [**12] Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp. 1169, 1172 (D. Minn. 1996).

Our opinion in Continental Casualty Co. v. Employers Commercial Union Insurance Co., 476 F.2d 782 (8th Cir. 1973), provides a useful analogy in this case. In Continental, two insurance companies were disputing which one was obligated to the insured and therefore had a duty to defend. The Continental court stated that one of the insurance companies should have defended the suit and then subsequently taken up legal action to determine which company had the obligations. See id. at 784.

Chicago Title had a duty to defend the FDIC by providing the defense or reimbursing the defense fees and costs. Despite Chicago Title's nominal acceptance of the duty, the FDIC was in fact required to defend itself in the lien actions. Chicago Title was then forced by litigation to reimburse the defense costs. This is a breach of the duty to defend. See Brown, 293 N.W.2d at 826. [HN6] When a breach of the duty to defend occurs, the insured "is entitled to [**13] be reimbursed for attorneys fees and costs expended" to force the insurer to pay for the defense. Independent Sch. Dist. No. 697 v. St. Paul Fire and Marine Ins. Co., 515 N.W.2d 576, 581 (Minn. 1994). Pursuant to the finding of breach, the FDIC requested $ 434,384.24 in attorneys' fees and costs for litigating this declaratory judgment action. The district court reduced that amount by 30% to $ 304,068.97. We affirm the district court's discretionary reduction. See Domtar, 563 N.W.2d at 740-41. We also think it is appropriate to further reduce the award by $ 23,100, equaling 70% of the time expended to establish the reasonableness of the lien action fees before the special master. Appellee's Appendix at 59. This amount should not be recoverable since the sole purpose of the hearing was to establish the reasonableness of the fees, which fees were found to have been unreasonably high.

Chicago Title's argument that it is relieved from its breach because the FDIC claimed an unreasonable amount of attorneys' fees and costs--relying on the implied covenant of good faith and fair dealing--is of no avail. It does not, in any event, vitiate the duty to pay [**14] at least what Chicago Title itself considered an unquestionably reasonable amount. Cf. Gopher, 588 N.W.2d 756, 770 (concluding that "an insurer's ability to dispute the reasonableness of attorney fees is diminished when it has improperly declined a tender of defense").

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of attorneys' fees and costs resulting from Chicago Title's breach of its duty to defend. We remand to the district court to award $ 280,968.97 in fees and costs.

LEXSEE

**WEST AMERICAN INSURANCE COMPANY, Plaintiff-Appellee-Cross-Appellant, v. AV&S, AM&S, LSK, AS&S and AMBASSADOR PIZZA, INC., Defendants-Appellees-Cross-Appellants, and BARRY HARPER, as conservator for James Harper, Intervenor-Appellant-Cross-Appellee.**

**Nos. 96-4094, 96-4096, 96-4097, 96-4138, 96-4151**

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

**145 F.3d 1224; 1998 U.S. App. LEXIS 16097; 1998 Colo. J. C.A.R. 3809**

**July 14, 1998, Filed**

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the District of Utah. (D.C. No. 2:95CV254S). D.C. Judge Campbell.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer challenged a judgment of the United States District Court for the District of Utah, which found that it had a duty to defend defendant franchisor and defendant other franchisees under an insurance contract. The franchisor and other franchisees cross-appealed the district court's denial of a motion for attorney fees incurred in litigating the declaratory judgment action.

**OVERVIEW:** Defendant employee hit intervenor pedestrian while delivering a pizza for defendant franchisee. The insurer claimed it did not have to defend in the intervenor's action, because of an auto exclusion clause contained in the policy. The court found that the relationship between a separation of insureds clause and the auto exclusion clause to be ambiguous and construed the exclusion against the insurer. The court found that because the separation of insureds clause treated each named insured separately as the only insured, the term "any insured" in the auto exclusion clause only applied to the single insured that actually owned the vehicle or whose employee operated the vehicle. As a result, the court concluded that the policy only excluded from coverage claims for bodily injury against either the franchisee or the employee, and did not exclude claims against the franchisor and the other franchisees. The court concluded that the insurer did not file the declaratory action in bad faith or was not stubbornly litigious, so there was no basis for awarding the franchisor and the other franchisees attorney fees.

**OUTCOME:** The court affirmed the judgment of the district court.

**CORE TERMS:** insured, coverage, severability clause, named insured, duty to defend, franchisee, insurer, exclusion clause, co-insured, insurance policy, innocent, declaratory judgment action, separately, defending, ambiguous, fees incurred, summary judgment, insurable interest, declaratory judgment, unquestionably, entrustment, entrusted, consequential damages, exclusionary clause, exclude coverage, de novo, intentionally, unambiguously, interpreting, excludable

**LexisNexis(R) Headnotes**

***Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview***

[HN1] In a diversity case, the court applies the forum state's choice of law rules.

***Civil Procedure > Summary Judgment > Appellate Review > Standards of Review***
***Civil Procedure > Appeals > Standards of Review > De Novo Review***
***Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > General Overview***

[HN2] The court reviews a grant of summary judgment de novo, taking the evidence in the light most favorable to the non-moving party. Whether an exclusion in an insurance policy is clear and unambiguous is a question of law that may be resolved by the court in the context of a motion for summary judgment under Utah law.

***Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > Construction Against Insurers***

[HN3] Under Utah law, an ambiguous clause in an insurance policy is construed in favor of the insured. Moreover, Utah law requires that exclusions in an insurance policy must be strictly construed against the insurer.

***Insurance Law > Claims & Contracts > Policy Interpretation > Exclusions***
***Insurance Law > General Liability Insurance > Exclusions > Intentional Acts***
***Insurance Law > General Liability Insurance > Exclusions > Motor Vehicles***

[HN4] The term "any insured" in an exclusion clause in a policy that also contains a severability clause does not exclude coverage for all insureds when only one insured is at fault.

***Insurance Law > General Liability Insurance > Obligations > Defense***

[HN5] The duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts that give rise to the potential of liability under the policy.

***Civil Procedure > Appeals > Standards of Review > De Novo Review***
***Contracts Law > Remedies > Compensatory Damages > Consequential Damages***
***Insurance Law > Claims & Contracts > Costs & Attorney Fees > General Overview***

[HN6] The court reviews de novo the legal analysis providing the basis for the award or denial of attorney fees.

***Criminal Law & Procedure > Counsel > Right to Counsel > General Overview***
***Insurance Law > Claims & Contracts > Costs & Attorney Fees > Declaratory Judgments***
***Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend***

[HN7] When faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights. An award of attorney fees is not warranted where plaintiff merely stated its position and initiated the action for determination of what appears to be a justiciable controversy.

**COUNSEL:** Donald J. Purser and Rebecca L. Hill, Donald Joseph Purser & Associates, P.C., Salt Lake City, Utah, for Plaintiff-Appellee-Cross-Appellant, West American Insurance Company.

Andrew H. Stone and Scott D. Cheney, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for Defendants-Appellees-Cross-Appellants, Ambassador Pizza, Inc., AV&S, AM&S and LSK.

Joseph J. Joyce and Kristen A. VanOrman, Strong & Hanni, Salt Lake City, Utah, for Defendant-Appellee-Cross-Appellant AS&S, Inc.

Jeffrey D. Eisenberg, Alan W. Mortensen and Paul M. Simmons, Wilcox, Dewsnup & King, Salt Lake City, Utah, for Intervenor-Appellant-Cross-Appellee Barry Harper.

**JUDGES:** Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and HENRY, Circuit Judge.

**OPINION BY:** EBEL

**OPINION:** [*1226] **EBEL**, Circuit Judge.

West American Insurance Company appeals the district court's declaratory judgment that it had a duty to defend its insureds under an insurance contract. The insureds cross-appeal the district court's denial of a motion for attorney fees incurred [**2] by the insureds in litigating the declaratory judgment action. We affirm.

**BACKGROUND**

On November 11, 1993, high school student Bryce K. Morris ("Morris") hit James P. Harper ("Harper"), a pedestrian in a crosswalk, with his car while delivering a pizza for his employer, AS&S, Inc. ("AS&S"), in Riverton, Utah. AS&S is a corporation whose business is a franchisee of Ambassador Pizza, Inc. ("Ambassador"). Ambassador had several other franchisees, including AV&S, Inc., AM&S, Inc., and LSK, Inc. (collectively, the "Other Franchisees").

As a result of the accident, Harper suffered severe injuries to his brain, head, neck, legs, and back. Harper's brother Barry Harper, acting as Harper's conservator, filed suit against Ambassador, AS&S, the Other Franchisees, and Morris for negligence, negligent entrustment, and negligent hiring and training (the "Harper litigation"). Ambassador, AS&S, and the Other Franchisees tendered defense of the Harper litigation to their insurer, West American Insurance Company ("West American"), under Ambassador's Business Owner's Liability Insurance Policy ("the Policy"). The Policy covered Ambassador and all of its franchisees, including AS&S. West

American [**3] refused to defend Ambassador or any of its franchisees because the Policy contained an "Auto Exclusion" clause, which excluded from coverage under the Policy any claims for "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (emphasis added). An "insured" under the Policy included each named company and that company's employees for acts within the scope of their employment. However, the Policy also contained a "Separation of Insureds" clause that provided: "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies: a. As if each Named Insured were the only Named Insured; and b. Separately to each insured against whom claim is made or 'suit' is brought."

West American filed a complaint in the United States District Court for the District of Utah under 28 U.S.C. § 1332 (diversity jurisdiction) seeking a declaratory judgment that it did not have a duty to defend Ambassador, AS&S, the Other Franchisees, or Morris. [**4] Resolving the parties' motions for summary judgment, the district court found that AS&S and Morris were not covered under the Policy due to the Auto Exclusion clause. However, the district court concluded that the Policy only excluded Morris and AS&S as Morris' employer and did not exclude Ambassador, AV&S, AM&S, or LSK from insurance coverage. As a result, the district court ruled that West American had a duty to defend Ambassador and the Other Franchisees in the underlying Harper litigation and had to indemnify Ambassador and the Other Franchisees against any judgment entered against them. The district court also held West American liable for attorney fees incurred by Ambassador, AV&S, AM&S, and LSK in defending the Harper litigation. However, the district court denied Ambassador's and the Other Franchisees' [*1227] motions for attorney fees incurred defending against West American's declaratory judgment action. These appeals followed. In case 96-4097, West American appeals the determination that it had a duty to defend Ambassador and the Other Franchisees. In case 96-4138, Ambassador and the Other Franchisees appeal the denial of attorney fees. n1 We have jurisdiction under [**5] 28 U.S.C. § 1291. n2

n1 Barry Harper and AS&S also filed appeals numbered 96-4094, 96-4096, and 96-4151. However, pursuant to a stipulation entered into by the parties, we now dismiss those appeals as moot.

n2 At the time the parties filed their notices of appeal, it was unclear whether the district court's April 2, 1996, Order and April 8, 1996, Judgment constituted a final judgment disposing of all claims that could be appealed under 28 U.S.C. § 1291. This court directed the parties to secure from the district court either a certification under Federal Rule of Civil Procedure 54(b) or an order adjudicating all remaining claims. The district court then issued a series of further orders on August 8 and 9, 1996, disposing of all remaining claims. As a result, the appeal ripened as of August 9, 1996, and we have jurisdiction under F.R.A.P. 4(a). See Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645-46 (10th Cir. 1988).

**DISCUSSION**

[HN1] Because [**6] this is a diversity case, we apply the forum state's choice of law rules. See Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996). Here the parties agree that Utah courts would apply Utah substantive law to this dispute, and we agree. See American Nat'l Fire Ins. Co. v. Farmers Ins. Exchange, 927 P.2d 186, 188 (Utah 1996).

**I. Coverage Under the Policy**

[HN2] We review a grant of summary judgment de novo, taking the evidence in the light most favorable to the non-moving party. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Whether an exclusion in an insurance policy is clear and unambiguous is a question of law that may be resolved by the court in the context of a motion for summary judgment" under Utah law. See Cyprus Plateau Mining Corp. v. Commonwealth Ins. Co., 972 F. Supp. 1379, 1382 (D. Utah 1997) (applying Utah law) (citations omitted).

The Policy's Auto Exclusion clause excluded from coverage bodily injury resulting from operation or entrustment of an automobile to "any" insured. AS&S was unquestionably a named insured and Morris was unquestionably an insured [**7] under the Policy. However, the Policy's Separation of Insureds clause provides that the Policy applies to each named insured under the policy as if that named insured were the only named insured, and unquestionably Ambassador, AV&S, AM&S, and LSK were named insureds. Thus, under the Separation of Insureds clause, Ambassador, AV&S, AM&S, and LSK were each entitled to have the Policy construed as to it as if the Policy were issued only as to it alone. Under that scenario, AS&S and Morris would not be regarded as "insureds" when considering the coverage available to Ambassador, AV&S, AM&S, and LSK. Of course, if AS&S and Morris were not insureds, then the Auto Ex-

clusion clause would not apply because it only excludes coverage for automobile accidents attributable to the operation or entrustment of an automobile to an "insured." Further, the Separation of Insureds clause provides that a complaint against any one insured should be applied "separately" as to each insured. The question before us is whether the use of the term "any insured" in the Auto Exclusion clause excludes from coverage all automobile accidents attributable to any of the named insureds, or whether the Separation of [**8] Insureds clause read in conjunction with the term "any insured" in the Auto Exclusion clause means only that the single named insured and its employees that actually operated or entrusted the automobile involved in the accident are excluded under the Policy.

West American argues that the district court erred as a matter of law in interpreting the Policy by ruling that West American had a duty to defend Ambassador, AV&S, AM&S, and LSK, noting the broad exclusionary language used in the Auto Exclusion clause. Relying on the majority rule, West American cites a number of cases in other jurisdictions that broadly interpret the term "any insured" [*1228] under an exclusion clause to negate coverage for all insureds, even innocent co-insureds, despite the inclusion of a severability clause similar to the Separation of Insureds clause at issue here. See Taryn E.F. by Grunewald v. Joshua M.C., 178 Wis. 2d 719, 505 N.W.2d 418, 420, 422 (Wis. Ct. App. 1993) (applying Wisconsin law and holding "The term 'any insured' unambiguously precludes coverage to all persons covered by the policy if any one of them engages in excludable conduct," notwithstanding a severability clause [**9] that provided, "Each person listed above is a separate insured under this policy."); see also Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1336 (11th Cir. 1997) (applying Florida law and holding that the phrase "the insured" permits an innocent co-insured to recover for loss attributable to a guilty co-insured, while contrasting that to a policy covering "any insured," which would preclude an innocent co-insured from recovery for the acts of a guilty co-insured; however, it is not clear that the policy under consideration had an explicit "Separation of Insureds" or "Severability of Insureds" clause); n3 American Family Mut. Ins. Co. v. Copeland-Williams, 941 S.W.2d 625, 627, 629 (Mo. Ct. App. 1997) (applying Missouri law in holding "the phrase 'any insured' unambiguously precludes coverage to all persons covered by the policy if any one of them engages in excludable conduct," notwithstanding a severability clause that "the liability coverage applies separately to each insured . . . .") (citations and quotations omitted); California Cas. Ins. Co. v. Northland Ins. Co., 48 Cal. App. 4th 1682, 56 Cal. Rptr. 2d 434, 442 (Cal. Ct. App. 1996) [**10] (same, applying California law); Michael Carbone, Inc. v. General Accident Ins. Co., 937 F. Supp. 413, 420 (E.D. Pa. 1996) (same, applying New Jersey law to essentially the same policy language as the West American policy); Oaks v. Dupuy, 653 So. 2d 165, 168-69 (La. Ct. App. 1995) (same, applying Louisiana law); Gorzen v. Westfield Ins. Co., 207 Mich. App. 575, 526 N.W.2d 43, 45 (Mich. Ct. App. 1994) (same, applying Michigan law); Chacon v. American Family Mut. Ins. Co., 788 P.2d 748, 752 (Colo. 1990) (same, applying Colorado law); Great Central Ins. Co. v. Roemmich, 291 N.W.2d 772, 774 (S.D. 1980) (same, applying South Dakota law).

n3 When the insurance contract does contain a severability clause providing that "this insurance applies separately to each insured," the Florida State District Court of Appeals has held that innocent co-insureds are covered, notwithstanding an exclusion clause which excludes coverage for any injury which is intended by "any insured." Premier Ins. Co. v. Adams, 632 So. 2d 1054, 1056-57 (Fla. Dist. Ct. App. 1994). Thus, notwithstanding dicta in Golden Door, we conclude that Florida law would provide coverage to an innocent co-insured under contract provisions similar to those in the West American policy. Golden Door failed to discuss or distinguish Premier Ins. Co..

[**11]

In contrast to the cases cited by West American, some jurisdictions have found that the term "any insured" in an exclusion clause only applied to a single named insured and its employees and did not exclude other named but innocent insureds or their employees from coverage when the insurance policy also included a severability clause similar to the Separation of Insureds clause in this case. See Premier Ins. Co. v. Adams, 632 So. 2d 1054, 1057 (Fla. Ct. App. 1994) (applying Florida law in holding that in order to give effect to all parts of the contract the court must construe the policy as excluding only coverage for separate insurable interest of insured who intentionally caused injury); American Nat'l Fire Ins. Co. v. Estate of Fournelle, 472 N.W.2d 292, 294 (Minn. 1991) (applying Minnesota law in holding, "the doctrine of severability limits application of the exclusion to the insured claiming coverage and those deriving their insured status from that insured claiming coverage"); Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 496 N.E.2d 158, 161 (Mass. 1986) (applying Massachusetts law in holding that the severability clause [**12] modifies the exclusionary clause). In addition, in cases interpreting exclusions for injuries to an employee in an insurance policy covering the employer and other named insureds that also includes a severability clause, a

number of courts have construed the severability clause to mean that each insured has a separate policy and, consequently, to require the insurer to cover the named insureds other than the employer for liability arising from the employee's injuries. [*1229] See Charles W. Benton, Annotation, Validity, Construction, and Application of Provision in Automobile Liability Policy Excluding from Coverage Injury to, or Death of, Employee of Insured, 43 A.L.R.5th 149 § 13(a) (1996) (citing cases).

We note that Utah has held that the term "any insured" in an exclusion is not necessarily ambiguous. See Allen v. Prudential Prop. & Cas. Ins. Co., 839 P.2d 798, 807 (Utah 1992). However, Utah courts have not addressed the interpretation of the term "any insured" directly in relation to a Separation of Insureds clause. Given the conflicting interpretations of the interplay between a severability clause and an exclusion clause using [**13] the term "any insured," we find the Policy in question in this case to be ambiguous. See also Cyprus Plateau Mining, 972 F. Supp. at 1382-86 (applying Utah law in holding that term "any insured" was ambiguous in light of other provisions of policy) (citing Pacific Indem. Co. v. Transport Indem. Co., 81 Cal. App. 3d 649, 146 Cal. Rptr. 648, 651 (Cal. Ct. App. 1978) and United States Steel Corp. v. Transport Indem. Co., 241 Cal. App. 2d 461, 50 Cal. Rptr. 576, 584-85 (Cal. Ct. App. 1966)); Transport Indem. Co. v. Wyatt, 417 So. 2d 568, 571 (Ala. 1982) ("The wording ['any insured' in an exclusion clause] could be interpreted either to mean only singularly 'any one of the insureds' or could apply collectively to the whole group of insureds.").

[HN3] Under Utah law, an ambiguous clause in an insurance policy is construed in favor of the insured. See Taylor v. American Fire & Cas. Co., 925 P.2d 1279, 1282 (Utah Ct. App. 1996) (citing Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993)), cert. denied, 936 P.2d 407 (Utah 1997). Moreover, Utah law requires [**14] that exclusions in an insurance policy must be strictly construed against the insurer. See id. Because we find the relationship between Separation of Insureds clause and the Auto Exclusion clause to be ambiguous at best and capable of two different interpretations, we believe that Utah would construe the exclusion against West American and adopt the interpretation most favorable to Ambassador and the Other Franchisees.

Under this rationale, we find that because the Separation of Insureds clause treats each named insured separately as the only insured, the term "any insured" in the Auto Exclusion clause only applies to the single insured that actually owned the vehicle or whose employee operated the vehicle and the employees claiming insurance through that named insured. As a result, the Policy only excludes from coverage claims for bodily injury against either AS&S, the single named insured that actually operated or entrusted the automobile, or Morris, its employee, and does not exclude claims against the Ambassador and the Other Franchisees, the other named insureds covered by the Policy.

Thus, we concur with the conclusion reached in those cases holding that [HN4] the term "any insured" [**15] in an exclusion clause in a policy that also contains a severability clause does not exclude coverage for all insureds when only one insured is at fault. See Premier Ins. Co., 632 So. 2d at 1057 ("The policy contains an exclusion for intentional acts of 'any insured' and contains a severability clause creating a separate insurable interest in each individual insured. . . . The most plausible interpretation is that the exclusionary clause is to exclude coverage for the separate insurable interest of that insured who intentionally causes the injury."); Worcester Mut. Ins. Co., 496 N.E.2d at 161 (severability clause provides that the policy "applies separately to each insured" and "requires that each insured be treated as having a separate insurance policy.").

West American further argues that the district court erred by finding that Morris was not an employee of Ambassador and the Other Franchisees. n4 West American [*1230] contends that the district court ignored the rule in Utah that an insurer must defend its insureds only if the allegations of the complaint, if proven, would result in liability for the insurer. See Deseret Fed. Sav. & Loan Ass'n v. United States Fidelity & Guar. Co., 714 P.2d 1143, 1147 (Utah 1986). [**16] West American notes that the complaint in the Harper litigation alleged that Ambassador and all the franchisees (including AS&S) are corporate alter egos. Thus, West American reasons that if Harper prevailed, Morris' negligence would be attributable to Ambassador and all the franchisees and West American would have no liability because the terms of the Auto Exclusion clause would then apply to Ambassador and the Other Franchisees as "any insured" who entrusted an automobile to Morris.

n4 Harper's complaint in the underlying litigation alleged that Morris was an employee of LSK, Inc., an entity separate from AS&S but one of Ambassador's franchisees. West American relies in part on that allegation in its attempt to link Morris to Ambassador and the Other Franchisees. However, the only evidence in the record regarding Morris' employment status clearly states that AS&S, not Ambassador or any of the Other Franchisees, employed Morris. West American presented no evidence to the contrary other than its reliance on the allegations in Harper's complaint. A party "may not rest upon its pleadings, but must set forth specific facts showing a genuine

issue for trial as to those dispositive matters for which it carries the burden of proof." Kaul, 83 F.3d at 1212. Therefore, summary judgment was appropriate on the issue of which company employed Morris.

[**17]

Deseret held that [HN5] "the duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy." Id. at 1146 (emphasis added). The court in Deseret found that the insurance company in that case did not have a duty to defend the insured because the plaintiff's allegations, which concerned only matters specifically excluded under the policy, "presented no potential liability" under the insurance policy. Id. at 1147 (emphasis added). In this case, West American faced the possibility of liability to Ambassador and the Other Franchisees for claims brought by Harper - such as lack of training - that did not depend on the existence of an employer-employee relationship between Morris and Ambassador or the Other Franchisees. Because not all of Harper's claims required the attribution of Morris' negligence to Ambassador and the Other Franchisees to impose liability on them, the Auto Exclusion clause as we have interpreted it would not have eliminated the possibility of West American's liability for all of Harper's claims under Deseret. Consequently, [**18] West American had a duty to defend Ambassador and the Franchisees under Utah law. Cf. Overthrust Constructors, Inc. v. Home Ins. Co., 676 F. Supp. 1086, 1091 (D. Utah 1987) ("Once an insurer has a duty to defend an insured under one claim brought against the insured, the insurer must defend all claims brought at the same time, even if some of the claims are not covered by the policy.").

**II. Attorney Fees**

The district court awarded Ambassador and the Other Franchisees $ 6,100 in attorney fees to compensate them for the attorney fees expended in defending the Harper litigation. On appeal, Ambassador and the Other Franchisees argue that the district court misapplied Utah law by denying them additional attorney fees incurred in litigating West American's declaratory judgment action. Although neither the Policy nor Utah statutory law provides for an award of "fees for fees" here, Ambassador and the Other Franchisees contend that Utah recognizes that "such fees may be recovered as foreseeable consequential damages flowing from West American's breach of its contractual obligation to extend coverage and a defense." [HN6] We review de novo the legal analysis providing [**19] the basis for the award or denial of attorney fees. See Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 765 (10th Cir. 1997).

The Utah case most analogous to the case at bar is Farmers Ins. Exch. v. Call, 712 P.2d 231 (Utah 1985), where an insurance company filed a declaratory judgment action to determine whether an exclusion clause negated its duty to defend the insured. The Supreme Court of Utah held that the company had a duty to defend the underlying action, see id. at 232, but refused to award the insured the fees the insured incurred in defending the declaratory judgment action, see id. at 237-38. The court stated:

> [HN7]
> When faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights. . . . An award of attorney fees is not warranted 'where the plaintiff merely stated its position [*1231] and initiated this action for determination of what appears to be a justiciable controversy.'

Id. (quoting Western Cas. & Sur. Co. v. Marchant, 615 P.2d 423, 427 (1980)); see also Overthrust, 676 F. Supp. at 1091 [**20] (applying Utah law); Crist v. Insurance Co. of North America, 529 F. Supp. 601, 607 (D. Utah 1982) (applying Utah law); American States Ins. Co. v. Walker, 26 Utah 2d 161, 486 P.2d 1042, 1044 (Utah 1971).

We acknowledge that the viability of the Farmers line of cases may be in some doubt, given recent decisions of the Utah courts which have allowed parties to collect attorney fees incurred in litigation brought to collect fees. See Salmon v. Davis County, 916 P.2d 890 (Utah 1996); James Constructors, Inc. v. Salt Lake City Corp., 888 P.2d 665 (Utah Ct. App. 1994). In addition, we note that since Farmers was decided Utah has held that attorney fees can be considered an item of consequential damages flowing from an insurer's breach of contract. See Canyon Country Store v. Bracey, 781 P.2d 414, 420 (Utah 1989). However, Canyon Country did not address awarding "fees for fees," and both of the recent Utah cases that do address that situation are distinguishable from the instant action. In Salmon, which allowed a party to recover attorney fees expended in an action to regain fees, [**21] the Supreme Court of Utah construed a Utah statute which authorized the recovery of fees in an opinion which commanded no clear majority. See 916 P.2d at 895-96, 900. In James Constructors, the award of fees was rooted in a specific provision in an indemnity agreement. See 888 P.2d at 673-74. By contrast, our case involves neither a statutory authorization for, nor a contractual agreement regarding, fees. More

importantly, however, none of these recent cases overruled or even cited the Farmers line of cases. Without clearer guidance that the Supreme Court of Utah would overrule Farmers, we feel compelled to follow it, particularly because it arises in a factual context so clearly analogous to this case.

There is no evidence in the record that West American did not file this action in good faith or was stubbornly litigious. Consequently, under Utah law, there is no basis for awarding Ambassador and the Other Franchisees the attorney fees they incurred in defending this declaratory judgment action. See Farmers, 712 P.2d at 237; Western Casualty, 615 P.2d at 427; cf. American States, 486 P.2d at 1044. [**22]

**CONCLUSION**

For the reasons discussed above, we AFFIRM the judgment of the district court.