LEXSEE

**American Standard Insurance Company, Appellant, vs. Dang Van Le, Respondent, Truong Huu Do, et al., Defendants, Huong Thi Nguyen, Respondent.**

**CX-95-1239**

**SUPREME COURT OF MINNESOTA**

**551 N.W.2d 923; 1996 Minn. LEXIS 504**

**August 8, 1996, Filed**

**SUBSEQUENT HISTORY:** [**1] As Corrected July 14, 2003.

**PRIOR HISTORY:** Court of Appeals.

**DISPOSITION:** Reversed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer filed a declaratory action to resolve the issue of whether it was required to provide coverage to defendant insured in an underlying personal injury action. The lower court held that the insured was entitled to recover reasonable attorney fees for its defense of the declaratory judgment action. The insurer objected and filed post-trial motions. The court of appeals (Minnesota) affirmed the dismissal of the insurer's action.

**OVERVIEW:** The court reviewed the record and determined that the insurer's post-trial motions were not properly dismissed as untimely. Under Minn. R. Civ. P. 59.03, the insurer's motion for new trial had to be heard within 30 days after notice of filing the motion. The motion was not heard within 30 days because the court administrator changed the hearing date. It was determined that neither the court nor either party requested the hearing extension. Rather, the extension was entered on the volition of the court administrator. Thus, the court held that because the change in hearing date was not brought about by either party, the post-trial motions were timely filed. Additionally, because legal fees were only recoverable where there was a contractual agreement or statute, the insured was not entitled to recover attorney fees incurred in maintaining or defending the declaratory action to determine coverage.

**OUTCOME:** The court reversed the judgment of the appellate court, which affirmed the award of attorney fees to the insured. The insurer was not required to pay attorney fees because the declaratory judgment action did not involve a breach of the insurance contract. Further, the insured's post-trial motions were timely and therefore should not have been dismissed.

**CORE TERMS:** insurer, insured, post-trial, declaratory judgment action, van, administrator, notice, declaratory action, fees incurred, contractual duty, tort action, untimely, good cause, intentionally, rescheduled, truck, statutory authority, breach of contract, duty to defend, recoverable, award of attorney, disbursements, reservation, court of appeals, proof of service, general rule, legal fees, dissenters, entitled to recover, indemnify

**LexisNexis(R) Headnotes**

***Civil Procedure > Pleading & Practice > Pleadings > General Overview***
***Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials***
***Governments > Legislation > Statutes of Limitations > Time Limitations***
[HN1] Minn. R. Civ. P. 59.03 provides that a motion for a new trial must be served within 15 days after service of notice by a party of the filing of the decision or order. Rule 59.03 also provides that the motion is to be heard within 30 days after such notice of filing, unless the time for hearing is extended by the court within the 30-day period for good cause shown.

***Civil Procedure > Pleading & Practice > Motion Practice > Content & Form***
[HN2] Minn. R. Civ. P. 59.03 does not prescribe the form an extension is to take.

***Civil Procedure > Remedies > Costs & Attorney Fees > General Overview***
***Insurance Law > Claims & Contracts > Declaratory Relief > General Overview***
[HN3] Legal fees are ordinarily not recoverable unless there is statutory authority for it.

***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > American Rule***
***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards***
[HN4] Absent a contractual agreement or statute, a party cannot collect attorney fees.

***Civil Procedure > Declaratory Judgment Actions > State Judgments > General Overview***
***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards***
[HN5] Attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty or statutory authority exists to support such recovery.

***Civil Procedure > Declaratory Judgment Actions > General Overview***
***Contracts Law > Breach > General Overview***
***Criminal Law & Procedure > Counsel > Right to Counsel > General Overview***
[HN6] The insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some respect--usually by wrongfully refusing to defend the insured.

**SYLLABUS:** An insured is not entitled to recover attorney fees incurred in maintaining or defending an action for declaratory judgment to determine the question of insurance coverage unless the insurer has breached the insurance contract in some respect--usually by wrongfully refusing to defend the insured.

**JUDGES:** Considered and decided by the court without oral argument. COYNE, Justice.

**OPINION BY:** COYNE

**OPINION:** [*923] Considered and decided by the court en banc without oral argument.

OPINION

COYNE, Justice.

Plaintiff American Standard Insurance Company issued its auto policy to defendant Le. Defendants Le, Do, and Do's wife Tran all worked at Monfort Packing Plant in Worthington. As Le and his girlfriend Diep left the plant on November 30, 1993, Do cursed at Le and made an obscene gesture. The two men argued, and Tran began an argument with Diep. Do's tenant and rider, Ms. Nguyen, broke up the altercation, but as the five left the parking lot, Do said he would meet Le later to finish the fight.

[*924] Do, Tran and Nguyen left in Do's pickup truck. Le and Diep followed in Le's van. Whenever Le attempted to pass, Do swerved in front of him until Do stopped on the highway, forcing Le to stop behind him. Tran and Nguyen pulled Le out of [**2] the van and the two men fought until Le sustained a deep stab wound in his right hand. Le leaped back into his van and drove right into Do's pickup. Nguyen, who was standing between the two vehicles, was crushed between them. The impact was sufficient to drive Do's truck forward about 20 feet. Le then backed up, swerved to the right of the pickup, running over Nguyen before he once again hit Do's truck.

A police officer testified that Le had told him at the scene of the collision that he had intentionally struck the pickup and that he had seen Nguyen in front of his van. The officer also stated that the acceleration marks left at the scene "do not show up until the van actually makes contact with the back of the pickup truck and the acceleration marks are still continuing after contact is made." A witness said Nguyen spoke to Le and Le said he told her to move or he might hit her. Le told another officer that he had intended to run into the truck the second time. As a result of these collisions the box of the truck was shoved into the cab.

About a month after the incident, Nguyen told a police investigator that Le told her after he reentered the van that he wanted "to hit [her] with [**3] his van." Le ultimately pled guilty to criminal vehicular operation resulting in great bodily harm.

Huong Thi Nguyen brought an action against Dang Van Le and Truong Huu Do to recover damages for her injuries. American Standard assumed Le's defense in that action pursuant to a reservation of its right to assert that Nguyen's claim was not within the residual liability coverage afforded by its policy. Subsequently, American Standard commenced a declaratory judgment action to resolve the coverage question.

Of course, at the trial of the declaratory action, Le testified that he had not intended to strike Do's truck and that he had not seen Nguyen standing in front of his van. The jury found that Le had not intentionally injured Nguyen when he struck her with his van. On March 10,

1995, the court issued findings of fact, conclusions of law, and order for judgment. Included in the court's findings of fact were the findings that American Standard had "refused to defend or indemnify Defendant Dang Van Le in the personal injury action" and that Le did not intentionally injure Huong Thi Nguyen when he struck her with his van. On the basis of those facts, the court concluded that American Standard [**4] owed Le the duties to defend and indemnify him pursuant to its insurance policy for the claims asserted in Nguyen's action and also that Le was entitled to recover reasonable attorney fees incurred in defense of the declaratory judgment action.

Le served notice of making and filing of the order on American Standard by mail on March 13, 1995, n1 together with his application for costs and disbursements. On March 23rd American Standard objected to Le's taxation of costs and disbursements, and a hearing was set for April 4th but was changed to April 6, 1995 because of counsel's conflicting schedule.

n1 Although notice of the making and filing of the March 10, 1995 order was served, neither the notice nor affidavit of service was filed with the court administrator.

On March 27, 1995, American Standard served and filed motions for amended findings, judgment notwithstanding the verdict or, in the alternative, a new trial. The motions were unaccompanied by a notice of motion, but it appears that the parties anticipated that the post-trial motions were to be heard with the objections to costs and disbursements. On the same day, March 27, the district court administrator issued a notice [**5] of hearing informing counsel that the court had rescheduled the matter previously set for hearing on April 6, 1995 to April 18, 1995 at 11:00 a.m. Counsel for both American Standard and Le were present at the appointed time prepared to argue the post-trial motions as well as the objection to costs and disbursements.

At the hearing counsel for Le and for Nguyen both attacked the post-trial motions on the ground the hearing was untimely. On [*925] May 3, 1995 the court issued its order dismissing American Standard's post-trial motions as untimely heard. In the alternative, the motions were denied except for amendment of the findings of fact to acknowledge that American Standard had undertaken the defense of Nguyen's action subject to a reservation of rights and had retained counsel to represent Le in that action. Despite the dismissal of the motion to amend the findings and conclusions, the court went on to deny the motion, relying on Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824, 827 (Minn. 1989), for its decision that American Standard was obliged to pay the cost of Le's defense of the declaratory action. On appeal the court of appeals affirmed.

Our review here is limited to the question [**6] of the propriety of the award of attorney fees in this declaratory action, but prefatory to addressing that issue we must decide whether American Standard's post-trial motions were properly dismissed as untimely.

Rule 59.03, Minn. R. Civ. P., [HN1] provides that a motion for a new trial must be served within 15 days after service of notice by a party of the filing of the decision or order. It is undisputed that the post-trial motions were served timely. Rule 59.03 also provides, however, that the motion is to be heard within 30 days after such notice of filing, unless the time for hearing is extended by the court within the 30-day period for good cause shown. Inasmuch as the notice of filing was served by mail on March 13, 1995, Monday, April 17, 1995 was the last day on which the motions could be heard absent an extension granted by the court for good cause on or before April 17.

None of the parties requested an extension of the time for hearing, and, according to the trial judge, he did not extend the time. Apparently the hearing was rescheduled by the court administrator without consulting either the judge or any of the parties although the court administrator's notice represented to [**7] the parties that the matter had been "rescheduled by the court." n2

n2 We trust it is not necessary to remind any court administrator that he or she is not the court but only the court's clerk.

The disposition of the problems resulting from the series of post-trial technical defects clearly demonstrates the necessity for counsel--and the court administrator as well--to acquaint themselves with the Rules of Civil Procedure and the General Rules of Practice and to conduct themselves accordingly.

At the hearing on April 18, counsel for Le and Nguyen questioned the court's jurisdiction to hear the post-trial motions, complaining that the hearing was untimely. n3 Apparently, those counsel then proffered the notice of making and filing of the order with proof of service by mail because the court noted that it had not been filed with the court administrator's office. Citing Woodrow v. Tobler, 269 N.W.2d 910 (Minn. 1978), American Standard argued that the hearing was timely because it had been reset to April 18 by the court. Distinguishing Woodrow on the ground that there the judge's unavailability constituted good cause, the judge dismissed the post-trial motions as untimely because [**8] he had been available within the 30-day period for

hearing, and there was, therefore, no good cause for an extension of which the judge was not even aware.

n3 We are constrained to comment that "trial by ambush" fell out of favor more than 50 years ago and that not so long ago professional courtesy prompted a lawyer to notify opposing counsel of an intention to attack a proceeding on technical grounds--a custom respectful not only of opposing counsel but also of the financial resources of one's own client.

In the particular circumstances of this case, it seems to us unreasonable to penalize one party for the benefit of another who is also at fault. The setting of the hearing date resulted not merely from the failure of American Standard's counsel to include a notice of motion with his post-trial motion papers but depended as well on the failure of Le's or Nguyen's counsel to file the notice of making and filing order with proof of service. n4 Moreover, although there surely was no judicial determination of good cause, neither [*926] was the setting of the hearing date the product of counsel's unilateral action. United States Leasing Corp. v. Biba Information Processing Servs., Inc., [**9] 489 N.W.2d 231, 232 (Minn. 1992). Rather the hearing was rescheduled beyond the 30-day limitation by the court administrator's unilateral action, and counsel were notified in writing that the hearing had been "rescheduled by the court." Undoubtedly, the defect in the proceeding would have come to light had counsel queried the court about the reason for the resetting, [HN2] but Rule 59.03 does not prescribe the form an extension is to take and it seems to us that counsel for American Standard was justified in assuming that the court had good cause to reschedule the hearing. As a practical matter, a lawyer ought not to be required to initiate an inquiry that might be considered disrespectful of the judge. Therefore, we are of the opinion that American Standard's post-trial motions were improperly dismissed.

n4 Filing the notice and proof of service would have served to advise the court and the administrator's office that the 30-day period for hearing had started to run.

Apparently concerned over the propriety of the dismissal, the district court ruled, in the alternative, that the post-trial motions should be denied, except for the amendment of the findings of fact to reflect American [**10] Standard's assumption of Le's defense in the main action pursuant to a reservation of rights. Unfortunately, the district court refused to amend the conclusion of law awarding Le attorney fees in the defense of the declaratory action, and the court of appeals affirmed.

The seminal case in the recurring skirmishes over liability for attorney fees in declaratory actions to determine questions with respect to insurance coverage is Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966). In Morrison, after Arrow Insurance Company had denied that its policy was in force at the time of the accident and had wrongfully refused to defend its insured, the insured brought a declaratory action against the insurer to determine whether the insurer was bound by the representations of its apparent agent with respect to the reinstatement of an insurance policy. After ruling that the insurer was bound by the representation that the policy had been reinstated, the court addressed the question whether the insured should recover his legal fees incurred in the declaratory judgment action. First the court set out the general rule: [HN3] "Legal fees are ordinarily not recoverable unless there is statutory authority [**11] for it.

> However, this action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory judgment action were damages arising directly as a result of the breach. We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.

Id. at 137-38, 142 N.W.2d at 647 (citations omitted).

That the limited exception to the general rule which was carved out in Morrison "is in fact limited to damages resulting from breach of contract by the insurer's failure to defend" was made quite clear in Abbey v. Farmers Ins. Exch., 281 Minn. 113, 119, 160 N.W.2d 709, 712 (1968). And with a single exception, this court has consistently resisted efforts to expand the Morrison holding to allow collection of attorney fees in actions which do not involve the insurer's breach of contract by failure to assume the duty to defend. E.g., SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 319 (Minn. 1995); Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49, 54 (Minn. 1979); Rent-A-Scooter, Inc. v. Universal [**12] Underwriters Ins. Co., 285 Minn. 264, 268, 173 N.W.2d 9, 11 (1969).

The sole exception is Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824 (Minn. 1989), which had assumed a very curious posture by the time it reached this court. Iverson, the insured, shot a person who had threatened to kill him. The victim commenced a tort action

against Iverson and Iverson tendered defense of the action to his insurer under the terms of his homeowner's policy. The complaint alleged one count of negligence which, if proven, would fall within the scope of Iverson's policy coverage, so there was no question that the insurer had a duty to defend. Id. at 825. The insurer defended the tort action in which the jury ultimately found that Iverson had intentionally [*927] caused bodily injury to the victim but that he was acting in self-defense. The insurer initiated a declaratory judgment action alleging that it had no obligation to defend or indemnify Iverson and asking to be released from any duty to defend. Id.

This court treated the declaratory action as one in which the insurer sought to be excused from any obligation to defend. Having decided that the insurer was obliged to defend up to the time the tort [**13] action was settled, the court saw no reason to reach the coverage issue. Without any articulation of a reason for departing from the rule established in Morrison and, indeed, indicating that it was following Morrison, the court held that the insurer was required to pay the insured's attorney fees incurred in the declaratory judgment action. Id. at 826-27.

The almost cavalier disposition of the attorney fee issue in the majority opinion is, perhaps, explained in the dissent of Justice Simonett, in which two other justices joined. The dissenters were of the opinion that the court should reach the coverage issue. The dissenters would have held that if an insured in self-defense intentionally injures the person threatening his life or property and does so expecting or intending to cause bodily injury to that person, the intentional act exclusion applies to bar insurance coverage for the injury. Id. at 828-29 (Simonett, J., dissenting in part).

With respect to the attorney fee issue, however, the dissenters agreed that the insured should recover his attorney fees under the particular circumstances of Economy Fire. The declaratory judgment action in the Economy Fire case was brought to decide [**14] coverage, but that question necessarily and effectively resolved the issues of underlying tort liability. In those circumstances, the insurer should pay the insured's legal fees "because it would have paid [those same] attorney fees if the tort action which involved the same dispositive fact issue had been tried first; it should pay because it is satisfying its duty to defend on the negligence count in the tort action by litigating that count in the declaratory judgment action." Id. at 830-31 (Simonett, J., dissenting in part).

Subsequent to the Economy Fire decision, this court has twice refused to extend the exception for fees incurred as a direct loss incident to the breach of a contractual duty to defend beyond the facts which prompted recognition of the Morrison v. Swenson exception. As the court commented in Garrick v. Northland Ins. Co., 469 N.W.2d 709, 714 (Minn. 1991), "For over 100 years, the law in Minnesota has been that, [HN4] absent a contractual agreement or statute, a party cannot collect attorney fees." Ruling that Minn. Stat. § 555.08 (1990) could not be extended to provide for attorney fees absent a breach of the contractual duty to defend, we reversed the court of [**15] appeals' award of attorney fees. Most recently, in SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 319 (Minn. 1995), this court once again stated that:

> [HN5] Attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty or statutory authority exists to support such recovery. Morrison v. Swenson, 274 Minn. 127, 137-38, 142 N.W.2d 640, 647 (1966). In this case, recovery is premised on Allied's breach of its contractual duty to defend.

Once again we reiterate that attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty or statutory authority exists to support such an award. Neither Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824 (Minn. 1989), nor Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49 (Minn. 1979), stand for the proposition that the insured is entitled to recover from the insurer the financial burden of defending an action to determine the existence of coverage. [HN6] The insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some [**16] respect--usually by wrongfully refusing to defend the insured. To the extent that prior cases, such as Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824 (Minn. 1989), or Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49 (Minn. 1979), are or can be interpreted as inconsistent with the foregoing rule adopted in Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966), as a limited exception to [*928] the general rule that legal fees are not recoverable absent statutory authority therefor, they are hereby overruled.

Here the trial court found as fact that American Standard had undertaken the defense of Nguyen's action subject to a reservation of rights and had retained counsel to represent Le, its insured, in that action but incorrectly concluded that American Standard was obliged to pay Le's attorney fees incurred in defense of the declaratory action. We reverse the decision of the court of appeals affirming the award of attorney fees and direct the entry of judgment denying Le an award of attorney fees.

Reversed.

LEXSEE

**Carter v. Virginia Surety Co.**

**[NO NUMBER IN ORIGINAL]**

**Supreme Court of Tennessee, at Knoxville**

**187 Tenn. 595; 216 S.W.2d 324; 1948 Tenn. LEXIS 472**

**December 11, 1948, Opinion Filed**

**PRIOR HISTORY:** [***1]

FROM WASHINGTON. Appeal from Chancery Court of Washington County (Johnson City). -- Hon. Joe. W. Worley, Chancellor.

**DISPOSITION:**

Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant insured sought review of an order of the Chancery Court of Washington County (Johnson City) (Tennessee), sustaining appellee surety's demurrer to insured's suit for damages arising from an alleged violation of the fiduciary relationship.

**OVERVIEW:** The court adopted the opinion of the chancellor, who stated that the parties entered into a contract of indemnity insurance upon his tractor-trailer. The insured was involved in automobile accident; the automobile was insured by another company. The tractor-trailer insurer denied liability in a federal court lawsuit, seeking declaratory judgment. The district court declined to exercise its to some extent discretionary jurisdiction in declaratory judgment suits and dismissed the proceeding without prejudice. The insured's action was settled by the company that insured the automobile. The insured then sought district court attorney fees on the ground that the tractor-trailer insurer had violated its fiduciary relationship by filing the declaratory judgment action; the insured termed it "premature, vexatious, and useless." The district court, however, did not intimate that the insurer's defense was frivolous, or that the federal court was not a proper tribunal to determine disputed coverage by declaratory judgment. The insured did not charge that the declaratory suit was fraudulent or in bad faith. He was not damnified by judgment at the hands of a third party.

**OUTCOME:** The court affirmed the sustaining of the demurrer to the complaint.

**CORE TERMS:** insurer, insured, declaratory judgment, declaratory, defending, cause of action, declaration, expenses incurred, fiduciary relationship, declaratory action, collision, demurrer, reasonable expense, refused to defend, fees incurred, frivolous, coverage, intimate, contracting parties, insurance contract, third party, bill filed, set forth, policyholder, fraudulent, stubbornly, litigious, demurred, driver, joined

**LexisNexis(R) Headnotes**

***Civil Procedure > Remedies > Costs & Attorney Fees > General Overview***
***Criminal Law & Procedure > Counsel > Right to Counsel > General Overview***
[HN1] In the absence of contract, statute, or recognized ground of equity, there is no inherent right to have attorneys' fees paid by opposing side.

**COUNSEL:**

W. J. Carter and Geo. N. Barnes, both of Johnson City, for appellant.

Kilgo & Armstrong, of Greenville, for appellee.

**JUDGES:**

Mr. Justice Burnett delivered the opinion of the Court. All concur.

**OPINION BY:**

BURNETT

**OPINION:**

[*596] [**325] The Virgina Surety Company demurred to a bill filed against it by Carter in the Chancery Court at Johnson [*597] City, Tennessee. The Chancellor sustained this demurrer. Carter has duly perfected his appeal to this Court.

We find in the record an excellent memorandum opinion of the cause by the learned Chancellor, Joe W. Worley. We adopt both the reasoning and conclusion therein set forth. His opinion reads as follows:

"Complainant and defendant are insured and insurer under a contract of indemnity insurance issued August 1, 1946, to be effective for one year, covering the insured's liability for personal injury and property damage arising out of the 'ownership maintenance and use' of a 1946 Studebaker tractor, with trailer, and subject to conditions and provisions therein set out.

"This suit has [***2] been brought for $ 1500 damages occasioned the complainant by reason of facts said to constitute a 'violation of the fiduciary relationship' arising between the parties to this insurance contract. The defendant has demurred, in that the bill shows no basis for liability assertible in this Court. The cause was taken under advisement after able argument and brief, and appears to be one of first instance in this state.

"After alleging the execution of the insurance contract the bill proceeds to show that on October 12, 1946 the vehicle described, 'while said policy was in full force and effect,' was involved in a collision near Greeneville, Tennessee, wherein four persons in the automobile struck were seriously injured, the automobile practically destroyed. There resulted, on March 10, 1947, four actions for damage by these persons in the Law Court at Johnson City, their claims aggregating $ 100,000. It seems that complainant's vehicle was then being operated under an agreement with E. T. & W. N. C. Transportation Co., the effect of which has previously been in dispute, [**326] and the [*598] Transportation Company was joined with our complainant as co-defendant inthe Law [***3] Court actions.

"After investigating the collision, and making preparations to defend the Law Court actions, the defendant Virginia Surety Company on March 20, 1947 filed suit in the Federal Court at Greeneville, denying liability under its policy, and asserting violations of certain policy provisions, and exclusions, as grounds for relief. Joined as defendants in the Federal proceeding were complainant here, the Transportation Company and its insurer, the drivers involved, and the four Law Court plaintiffs. A Declaratory Judgment was sought, exonerating the Surety Company from liability, and declaring it free from the duty of defending the actions in the State Court. After what is here stated to have been vigorously contested and expensive litigation the District Court declined to exercise its to some extent discretionary jurisdiction in declaratory judgment suits and dismissed the proceeding without prejudice. From the District Court opinion filed as an Exhibit to the bill it is apparent that our complainant had there moved for summary judgment against his insurer, and others of the Federal Court defendants had asked affirmative relief, but none was granted.

"When the State [***4] Court actions came on to be tried they were settled by compromise for $ 17,000, the Transportation Company and its insurer making the settlement.

"Of complainants' claim for damage $ 1000 is for his attorney's fees in the Federal proceeding, $ 500 for other expense and loss of time in that connection. It is alleged that this declaratory suit by the defendant was 'premature, vexatious, and useless' and as stated, a violation of 'fiduciary relationship.' It is not alleged that the [*599] defendant failed to defend the State Court proceedings as by provision of its policy required, or that damage resulted purely from delay in defense. The District Court opinion recites:

"'The Surety Company, reserving its disclaimer of liability, has declared its intention nevertheless to defend the insured and the driver, pending the outcome of its suit for declaratory judgment.'

"Nor is it shown to have been determined whether the insurance policy 'covered' the collision that occurred, hence whether any fiduciary relationship then or thereafter existed by reason of the relationship of insurer and insured. Apparently complainant would have this suit make such determination as basic to the [***5] relief prayed for alleged violation of such relationship. The District Court did not intimate that the insurer's defense was frivolous, or that the Federal Court was not a proper tribunal to determine disputed coverage by declaratory judgment. On the contrary, both its opinion and a number of cases cited in Title 28 U. S. C. A. Sec. 400 [now sections 2201, 2202] indicate that the Federal Courts, jurisdictional requirements present, have often decided the question of coverage between insurer and insured in declaratory judgment proceedings, before the tort liability of the insured has been fixed by judgment. The stated reason for refusing to exercise jurisdiction was that such exercise probably involved a construction of a declaration as to the agreement between Wade H. Carter and the Transportation Company under which the vehicle was being operated, which declaration might confuse or radically affect the rights of the state court plaintiffs, thus permitting the declaratory judgment proceeding to become, 'a device for a piece meal removal of non-removable [*600] causes.' This opinion is a part of the bill and complainant presumably bound by its findings, but assuming that the [***6] federal suit was frivolous,

even malicious, the remedy would sound in personal tort, which this Court has no jurisdiction to redress.

"The suit which occasioned complainant's damage was the defendant's effort to obtain a declaration that, on the facts, it owed him no duty. To hold that such a suit may not be brought without liability for damage in event of failure to prevail, even though in good faith, would go far, and place a penalty on the insurer's access to adjudication of rights not common to other contracting parties or to litigants [**327] generally. No case has been cited in support of the proposition. Public policy might lead the legislature to place this extra duty on an insurer, assuming its power present, but a Court must find sound legal principle, or at least precedent, and neither is here shown or has been discovered.

"One Federal District Court decision cited by complainant ( *State Farm Mutual Automobile Insurance Co. v. Brooks*, D. C., 43 F. Supp. 870) tends to show that the attorneys' fees incurred by an insured in sucessfully resisting his insurer's suit for declaratory judgment might be allowed as costs in the Federal Court though does not expressly [***7] so decide. Another, cited by defendant ( *Ocean Accident & Guarantee Corp. Heald, D. C.*, 30 F. Supp. 991), expressly refuses to allow attorney's fees as *costs*, in similar situation, though reopens the cause to determine whether such may be a part of the insurer's liability *under the policy*. I do not clearly understand complainant's solicitors to insist that this his alleged cause of action can be related to any policy provision. Section 11 (A) obligates the insurer:

[*601] "'to defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent.'

"This provision may be limited to tort claims, as defendant insists, or may include some other types of action arising in connection with the alleged tort, as complainant asserts, but plainly is not contemplated to cover actions brought by the *insurer* against the insured, but only those in which third persons are plaintiffs. A contract to defend for the obligee suits brought by the obligor would be against public policy, of dubious validity, certainly not reasonably to be *implied* as the intent [***8] of the contracting parties.

"Cases treating the right of the Federal Court to have allowed attorney's fees as costs in the declaratory action are here beside the point. If the remedy does exist there, and was not pursued, it does not aid complainant here. Defendant argues, on the contrary, that the failure to assert the claim in the Federal Court, best able to determine its merit, constitutes a bar to this proceeding, but that need not be decided.

"In only two other states have courts of last resort ruled on claims similar (one almost exactly so) to that of complainant here. In *O'Morrow* v. *Borad*, 27 Cal. 2d 794, 167 P.2d 483, 163 A. L. R. 894, it happened that the plaintiff and the defendant in the state court had the same insurer, whereupon the defendant O'Morrow, who also had a cross-action, brought suit for declaratory judgment to be relieved of his contract obligation to allow the insurer to defend for him, and for a declaration of its liability for his reasonable expense of independent defense. This relief was granted after contest. The California [*602] Court, however, denied plaintiff any recovery for attorney's fees incurred in the declaratory action, saying, [***9] 27 Cal.2d 794 at 801, 167 P.2d at 487, 163 A. L. R. 899:

"'. . . there is no basis for allowing O'Morrow the reasonable expense of counsel in the present suit for declaratory relief. He has not brought himself within any of the few exceptions to the general rule that, in the absence of contract or statutory provision, the services of an attorney must be paid for by the client who employs him. In re Estate of Marre, 18 Cal. (2d) 191, 192, 114 P. (2d) 591.'

"Complainant seeks to distinguish this case in that the insured was there the *plaintiff*, in the declaratory action. Yet he was in stronger position than complainant here, to the extent that he prevailed on the merits, while the declaratory proceeding here was inconclusive.

"'In *Maryland Casualty Co.* v. *Sammons*, 63 Ga. App. 323, 11 S. E. (2d) 89, 91, the insured brought suit in the state court to recover from his insurer (1) expenses incurred by the insured in defending tort action by a third person in the state court, during a time when the insurer had refused to defend, and (2) the expenses incurred by the insured in defending insurer's unsuccessful suit for declaratory judgment in the Federal Court, wherein it [***10] sought to avoid liability under the policy. As to item (1) the Court overruled demurrer, but [**328] sustained a special demurrer to the second item, saying:

"'The petition, however, does not set out a cause of action for expense incurred in the case in the Federal Court for the reason that it was in effect a suit against the insurance company on the policy, in which the liability of the company to Sammons on the policy was involved, and the policy does not provide for the payment [*603] of expenses or attorney's fees in such a case, and the petition is not predicated upon the idea that the case in the Federal Court was brought in bad faith or that the Insurance Company was stubbornly litigious. The situation is the same as if the petition for declaratory judgment had not been filed. If Crandall (the third party), had obtained a judgment against Sammons (the insured) and the insurance company had refused to pay it, Sammons would

have had a cause of action against it for the amount of the judgment, up to the amount contracted for, plus the costs incurred in defending the damage suit. He would not in such a case have a cause of action for expenses of the suit *against* [***11] *the insurance company* unless the insurance company had acted in bad faith, or fraudulently, or had been stubbornly litigious. (Citing Georgia cases.) Every person, natural or artificial, has a right to have his rights under a contract adjudicated, subject to the rule just stated, whether the issues are made affirmatively or defensively, without paying the attorney's fees of the opposite party in such a suit.' (Emphasis supplied.)

"The pertinent provision as to the insurer's defense of suits in the policy considered in the *Georgia Case* appears to be identical with that here involved, and diversities in the two fact situations not material. Complainant does not here charge that the declaratory suit was fraudulent or in bad faith, and on his inclusive judgment in the declaratory suit is, again, in weaker position than the Georgia plaintiff. He had not been damnified by judgment at the hands of a third party, and it is therefore unnecessary to decide whether the penalty provisions of our statute, sometimes applicable when the insurer wrongfully refuses to pay, have application to expenses [*604] incurred in defending declaratory suits of a character within *the spirit* [***12] of our penalty statute, which the Georgia Court seems to intimate as to is perhaps similar satute.

"It is true, as complainant's solicitors assert, that these cases are not controlling on this Court, but are respectable authority, based on clear reasoning, which the Court will not disregard unless a contrary result can be put on some sound basis, either overlooked or not applicable in the cited cases. After careful consideration no such basis has been found, and it results that the demurrer must be sustained, the cause dismissed at complainant's cost."

We have made a careful study of the authorities cited by the appellant, frankly said to be all that can be found, and think that the Chancellor's analysis of them is correct. The appellant relies primarily on the case of *State Farm Mut. Automobile Ins. Co.* v. *Brooks, supra.* This opinion is by a district court and is no doubt sound under the facts presented. The basis of this decision might be summed up in an excerpt from the opinion as follows [43 F. Supp. 870 at 873]:

"Based upon such inquiry and investigation it categorically denied liability and refused to defend the suits instituted against its policyholder. The [***13] result of this was that its policyholder was compelled to employ counsel in both suits."

Obviously this was the reverse of the factual situation in the instant cause.

[HN1] "In the absence of contract, statute, or recognized ground of equity, there is no inherent right to have attorneys' fees paid by opposing side." *Johnson* v. *Gerald,* [*605] 216 Ala. 581, 113 So. 447, 448, 59 A. L. R. 348. None of these requisites are set out in the bill filed in this cause.

For the reasons herein set forth the decree of the Chancellor must be affirmed.

All concur.

LEXSEE

**Rocky Mountain Fire & Casualty Company, Appellant, v. Ralph M. Rose et al., Respondents**

**No. 36668**

**Supreme Court of Washington, Department Two**

**62 Wn.2d 896; 385 P.2d 45; 1963 Wash. LEXIS 406; 1 A.L.R.3d 876**

**September 5, 1963**

**SUBSEQUENT HISTORY:** [***1]

Petition for Rehearing Denied October 3, 1963.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Respondent insured requested payment by appellant insurer under an automobile policy following an accident. The insurer sought a declaratory judgment to determine its liability or duty under the policy. The Superior Court for King County (Washington) held that the insurer was obligated to pay benefits under the policy and awarded the insured attorneys' fees. The insurer challenged the judgment.

**OVERVIEW:** The insured purchased automobile insurance from the insurer's predecessor for his adult daughter's car. The insurer's agent advised the insured how to set up the policy and also informed him when the daughter traded in the car for another that the second was also covered under the policy. The daughter got married and her husband was involved in an accident while driving the car. The agent advised the insured that he was covered under the policy. The trial court ordered that the policy be reformed to add the name of the daughter as an additional named insured and construed to cover her husband. The trial court awarded the insured attorneys' fees. The court affirmed in part and reversed in part and held that (1) the trial court properly found that the agent determined how the policy should be written and caused the insured, alone, to be named as the insured; (2) the trial court erred in awarding the insured attorneys' fees because they were not "costs" under the Uniform Declaratory Judgments Act and were neither statutory fees nor provided for in the policy; and (3) the insurer, as a principal, was bound by its agent's representation that the daughter was covered under the policy.

**OUTCOME:** The court affirmed the trial court's order that the policy be reformed to include the insured's daughter as a named insured under the policy. The court reversed the trial court's award of attorneys' fees to the insured.

**CORE TERMS:** reformation, insured, coverage, insurer, reformed, mutual mistake, named insured, daughter, declaratory judgment, policy of insurance, predecessor, allowance, declaratory, decreed, insurance policy, imputed, traded, rules of law, accountants', automobile insurance, entitled to judgment, contracting parties, assignment of error, apparent authority, insurance contract, written agreement, insurance agent, settlement, prosecuting, instituted

**LexisNexis(R) Headnotes**

***Civil Procedure > Appeals > Standards of Review > General Overview***
[HN1] Where the findings of fact and the judgment of the trial court are supported by the record, the reviewing court will not disturb them.

***Civil Procedure > Declaratory Judgment Actions > State Judgments > Uniform Declaratory Judgment Act***
***Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview***
[HN2] The Uniform Declaratory Judgments Act provides in part as follows: In any proceeding under this chapter, the court may make such award of costs as may seem equitable and just. Wash. Rev. Code § 7.24.100.

***Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview***

[HN3] "Costs" do not include attorneys' fees (other than statutory) or accountants' fees. 'The term "costs" is synonymous with the term "expense." Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word "costs," in the absence of statute or agreement, does not include counsel fees; in other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.

***Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview***
[HN4] Allowances of attorneys' fees and other items of expense in preparation of trial, such as accountants' fees, will be allowed only in case of agreement between the parties or by virtue of specific authority.

***Civil Procedure > Declaratory Judgment Actions > State Judgments > Uniform Declaratory Judgment Act***
***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards***
***Governments > Courts > Authority to Adjudicate***
[HN5] The court is without power to award attorneys' fees, other than statutory fees, under the provisions of the Uniform Declaratory Judgments Act.

***Contracts Law > Defenses > Ambiguity & Mistake > Mutual Mistake***
***Insurance Law > Claims & Contracts > Contract Formation > Mutual Mistake***
***Insurance Law > Claims & Contracts > Contract Formation > Reformation***
[HN6] The rules of law governing the reformation of written agreements are applicable to the reformation of an insurance policy. An insurance contract is no different from any other contract, when the rules of law governing the reformation of written agreements are to be applied to it. To support a reformation of contract, there must be a showing of either fraud or mutual mistake.

***Contracts Law > Defenses > Ambiguity & Mistake > Mutual Mistake***
***Contracts Law > Formation > Ambiguity & Mistake > Mutual Mistake***
[HN7] If the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred.

***Business & Corporate Law > Agency Relationships > Types > Insurance Agent & Insurance Company***
***Insurance Law > Claims & Contracts > Contract Formation***
***Insurance Law > Industry Regulation > Insurance Company Operations > Representatives > General Overview***
[HN8] The knowledge which an agent acquires while acting as such and within the scope of his authority is imputed to his principal and an insurance company is bound by the acts, contracts, or representations of its agent, which are within the scope of his apparent authority.

***Business & Corporate Law > Agency Relationships > Duties & Liabilities > Authorized Acts of Agents > General Overview***
***Insurance Law > Claims & Contracts > Contract Formation***
[HN9] The principal, rather than the person with whom he deals through an agent, should be held accountable for mistake of the agent committed in the course of the very transaction entrusted to his performance. There is no sound principle, either of law or equity, upon which the insured may be punished for the mistakes of the insurer's agent, so as to relieve the insurer from the liability that he meant to undertake and for which he was paid.

**SUMMARY:**

Appeal from a judgment of the Superior Court for King County, No. 563844, Edward E. Henry, J., entered May 17, 1962. *Affirmed in part; reversed in part.*

Action for a declaratory judgment. Plaintiff appeals from a judgment in favor of the defendants.

**HEADNOTES: [1] Costs -- Attorneys' Fees -- Declaratory Judgments** The "costs" which may be awarded in declaratory judgment proceedings (RCW 7.24.100), do not include attorneys' fees other than statutory fees.

**[2] Insurance -- The Contract -- Agreement to Defend** The liability of an insurance company on that part of its contract requiring it to defend any suit against the insured within the policy's coverage, does not extend to declaratory judgment actions instituted by the insurance company so as to determine its rights and liabilities under the contract.

**[3] Same -- Contracts -- Reformation -- Grounds** An insurance contract is treated the same as other contracts for reformation purposes, and there must be a

showing of either fraud or mutual mistake to support a reformation of such a contract.

[4] **Same -- Agents -- Acts Binding Principal** An insurance company is bound by the acts, contracts or representations of its agent [***2] which are within the scope of his apparent authority; and any knowledge acquired by the agent in the course of such conduct is imputed to the principal.

[5] **Same -- Contracts -- Reformation -- Mutual Mistake** Where the intention of an insurance company, imputed from its agent's acts and representations, was identical with that of a parent and child, *viz.*, that an automobile policy issued by the company would protect both the parent and child as named insureds, the issuance of a policy naming only the parent as a named insured constituted a mutual mistake justifying a reformation of the contract, since the written agreement did not express the identical intentions of the contracting parties.

**COUNSEL:**

*Regal & McDonell*, by *John Patrick Cook*, for appellant.

*Whitmore, Vinton, Powers & Manion, Robert B. Johnson*, and *Brightman & Holm*, for respondents.

**JUDGES:**

Ryan, J. + Ott, C. J., Donworth, Finley, and Hamilton, JJ., concur.

+ Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[***3]

**OPINION BY:**

RYAN

**OPINION:**

[*897] [**46] The appellant, Rocky Mountain Fire & Casualty Company, brought this action for a declaratory judgment to determine its liability or duty under a policy of automobile insurance which had been issued to the respondent, Ralph M. Rose, by its predecessor, the Mayflower Insurance Exchange.

The trial court found that in 1958 respondent Ralph M. Rose consulted one Ronald Smith, an insurance agent for appellant's predecessor company, with offices in Snoqualmie, Washington. As a result of this conference, a policy of automobile insurance upon a 1956 Plymouth automobile, then owned by Mr. Rose, was issued by the company.

On or about September 19, 1959, the respondent Clara Harden, then Clara Rose, daughter of Ralph M. Rose, who was 17 years old, employed full time, and residing in her parents' home, purchased a new 1959 Plymouth automobile on installment contract. Title to this car was taken in the name of Ralph M. Rose, for the purpose of obtaining financing of the balance of the purchase price. On the same day that the car was purchased, Mr. Rose and Clara went to the office of Mr. Smith and advised him of the purchase of this new automobile, and [***4] requested insurance coverage on it. The court made finding of fact No. 6, to which the appellant assigns error. It recites the following:

"That after full disclosure of the facts of the purchase of said automobile to said Ronald Smith, said agent of the plaintiff's predecessor advised defendant Ralph M. Rose and his daughter that said 1959 Plymouth automobile should be added to the existing policy of Ralph M. Rose, which decision was that of said Ronald Smith, and coverage upon said automobile was then entered with the defendant Ralph M. Rose as the only named insured thereon. Clara Rose was listed as a 60% driver of the said car on the policy. EH"

Some months later, Clara decided that she could not meet the payments on her car, because of her anticipated marriage to William Harden. Consequently, an agreement was made between her and Mr. Rose, whereby she traded her [*898] equity in the 1959 Plymouth for a 1953 Ford automobile, title to which was in her father's name and which was listed under the same policy of insurance. The court further found that Mr. Rose informed Mr. Smith of the trade of the two cars and was advised by him that this would make no difference and [***5] that no change was necessary in the policy of insurance.

William Harden and Clara Rose were married on October 17, 1960 and established their own residence a short distance from that of her parents in the city of Snoqualmie, taking the 1953 Ford automobile with them. Although there was testimony that the agent had been informed of Clara's marriage, the court found that neither the appellant nor the agent had been so advised.

On November 30, 1960, William Harden, while driving the 1953 Ford automobile, with the knowledge and consent of his wife, Clara Rose Harden, and with the knowledge of Ralph M. Rose, was involved in an accident resulting in injuries to some of the [**47] respondents, other than the Roses and the Hardens. The court found that within 2 or 3 days after the accident, the appellant was advised by Mr. Rose and Mr. Harden of the accident and the claim of coverage under the policy. Testimony was introduced that the agent then told them,

in effect, that they were covered by the policy. The trial judge, in his oral decision, referred to this acknowledgment by the agent as having been undenied.

The trial court entered a declaratory judgment decreeing that the policy [***6] of insurance be reformed to add the name of Clara Rose Harden as an additional named insured, and as so reformed, that it be interpreted and construed to include William Harden, as an additional insured, by reason of his operation of the automobile at the time of the accident, with the permission of a named insured under the policy. The court further awarded the respondents, Rose and Harden, attorneys' fees in the sum of $ 750.

Appellant's first assignment of error is directed to finding of fact No. 6, which is set forth above. A careful examination of the record discloses that this finding is amply supported by the evidence. The testimony of both parties was [*899] to the effect that the father and daughter approached Mr. Smith, the agent, explaining that *they* wanted liability and medical coverage on the 1959 Plymouth. They further disclosed all of the facts relative to ownership of the car. It was only natural that as laymen, uninitiated in the intricacies of insurance contracts, they relied entirely upon the agent to give them the coverage they requested, which was that they both be named as insureds.

The trial court found that the agent, Mr. Smith, determined how [***7] the policy should be written, and that it was he who caused Mr. Rose, alone, to be named as the insured.

". . . We have stated many times that [HN1] where the findings of fact and the judgment of the trial court are supported by the record, this court will not disturb them. *Cuillier v. Coffin*, 57 Wn. (2d) 624, 628, 358 P. (2d) 958 (1961); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454 (1958)." *Port of Seattle v. Blatz*, 59 Wn. (2d) 55, 57, 365 P. (2d) 779 (1961).

See, also, *Delegan v. White*, 59 Wn. (2d) 510, 368 P. (2d) 682 (1962).

Appellant's second and fourth assignments of error pertain to the court's finding and conclusion that the respondents Rose and Harden were entitled to judgment against the appellant in the sum of $ 750 for attorneys' fees. [HN2] The Uniform Declaratory Judgments Act provides in part as follows:

"In any proceeding under this chapter, the court may make such award of costs as may seem equitable and just." RCW 7.24.100.

**[1]** In *Chapin v. Collard*, 29 Wn. (2d) 788, 795, 189 P. (2d) 642 (1948), which was an action under the declaratory judgments act, this [***8] court said, in reference to the section of the act above quoted:

"We have repeatedly held that [HN3] 'costs' do not include attorneys' fees (other than statutory) or accountants' fees. In *Fiorito v. Goerig*, 27 Wn. (2d) 615, 179 P. (2d) 316, we said:

"'The term "costs" is synonymous with the term "expense." Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word [*900] "costs," in the absence of statute or agreement, does not include counsel fees; in other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.

"'We have consistently followed the general rule concerning [HN4] allowances of attorneys' fees and other items of expense in preparation of trial, such as accountants' fees, that such allowances will be allowed only in case of agreement between the parties or by virtue [**48] of specific authority. *State ex rel. Macri v. Bremerton*, 8 Wn. (2d) 93, 111 P. (2d) 612.'"

See, also, *Schoenwald v. Diamond K Packing Co.*, 192 Wash. 409, 421, 73 P. (2d) 748 (1937), and *Beadle v. Barta*, 13 Wn. (2d) 67, 74, 123 P. (2d) 761 (1942). [***9]

In another case brought under the declaratory judgments act, *Seattle First Nat. Bank v. Crosby*, 42 Wn. (2d) 234, 254 P. (2d) 732 (1953), we held that the trial court did not err in denying appellants a reasonable attorneys' fee, but that they were entitled to their statutory costs, citing *Chapin v. Collard, supra*. We must, therefore, conclude that [HN5] the court is without power to award attorneys' fees, other than statutory fees, under the provisions of the declaratory judgments act. Since such fees are not authorized by statute in the instant case, the only remaining question in this respect, then, is whether or not such fees can be based upon the contract of the parties.

The respondents urge that a reasonable attorneys' fee should be allowed because of the appellant's contractual obligation to defend the insured. The insurance policy with which we are here concerned provided in part as follows:

"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy for coverages A, D and E, the Exchange shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account [***10] thereof, even if such suit is groundless, false or fraudulent; but the Exchange may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"

[2] In support of their contention that they are entitled to judgment against the appellant for a reasonable attorneys' [*901] fee, by virtue of the above provision, the respondents cite several authorities which are not in point in the instant case. These cases are distinguishable in that they are based upon the insurer's refusal to defend actions instituted against the insureds. There is no showing in the record before us that the appellant has refused to defend an action against any of the respondents, but only that, by the present action, it is seeking to determine the rights and obligations between the parties. Although no Washington case directly in point has been cited to us, other jurisdictions, when confronted with the same question, have supported the right of an insurer to maintain an action for a declaratory judgment under circumstances comparable to those in the instant case, without subjecting itself to liability for the opposing party's attorneys' fees.

In the case of [***11] Maryland Cas. Co. v. Sammons, 63 Ga. App. 323, 327, 11 S. E. (2d) 89 (1940), the court was faced with the same issue as the instant one. It determined that the insurance company was not liable for attorney's fees unless it had acted in bad faith, fraudulently or had been stubbornly litigious, stating:

". . . Every person, natural or artificial, has a right to have his rights under a contract adjudicated, subject to the rule just stated, whether the issues are made affirmatively or defensively, without paying the attorney's fees of the opposite party in such a suit. . . ."

In the case of Carter v. Virginia Surety Co., 187 Tenn. 595, 216 S. W. (2d) 324 (1948), the court said:

"'The suit which occasioned complainant's damage was the defendant's effort to obtain a declaration that, on the facts, it owed him no duty. To hold that such a suit may not be brought without liability for damage in event of failure to prevail, even though in good faith, would go far, and place a penalty on the insurer's access to adjudication of rights not common to other contracting parties or to litigants generally. No case has been cited in support of the proposition. Public policy might lead [***12] the legislature to place [**49] this extra duty on an insurer, assuming its power present, but a Court must find sound legal principle, or at least precedent, and neither is here shown or has been discovered.'"

[*902] See, also, Standard Surety & Cas. Co. of New York v. Perrin, 19 So. (2d) 783, (La. App. 1944), and O'Morrow v. Borad, 27 Cal. (2d) 794, 167 P. (2d) 483, 163 A.L.R. 894 (1946).

It is our opinion that the court was in error in granting attorneys' fees to the respondents, and this portion of the judgment is reversed, but without prejudice to an allowance of reasonable attorneys' fees in any further action under proper circumstances, and in conformity with the views herein expressed.

The appellant's third assignment of error is that the court erred in concluding that the contract of insurance should be reformed to conform with the objects and purposes for which it was purchased, and that, by such reformation, Clara Rose should be added as a named insured, thereby maintaining the policy in full force and effect and extending its coverage to protect Clara and the estate of her deceased husband against any claims of the other respondents.

[3] In [***13] the case of Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of America, 189 Wash. 329, 336, 65 P. (2d) 689 (1937), we stated:

[HN6] "The rules of law governing the reformation of written agreements are applicable to the reformation of an insurance policy. An insurance contract is no different from any other contract, when the rules of law governing the reformation of written agreements are to be applied to it. Bjorklund v. Continental Casualty Co., 161 Wash. 340, 297 Pac. 155. . . ."

To support a reformation of contract, there must be a showing of either fraud or mutual mistake. There is no suggestion of fraud in the instant case, so it must be conceded that the only ground for reformation is that of mutual mistake. In the case of Tenco, Inc. v. Manning, 59 Wn. (2d) 479, 483, 368 P. (2d) 372 (1962), we stated:

[HN7] ". . . If the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred. Bergstrom v. Olson (1951), 39 Wn. (2d) 536, 236 [*903] P. (2d) 1052; Keesling v. Pehling (1950), 35 Wn. (2d) 624, 214 P. (2d) 506."

[4] [5] The trial court found [***14] that it was the intention of the agent and of Mr. Rose and his daughter that the policy would cover and protect both the father and daughter, the same as if they were named insureds. That this is what the agent had in mind is clearly demonstrated by the fact that when the accident was reported to him, he assured Mr. Rose and Mr. Harden that they were protected by the policy as written. When Mr. Rose and his daughter traded the two cars, they were again advised by the agent that they were both protected by the policy, the agent then being fully aware of the fact that the 1953 Ford was Clara's property. Later, by letter dated February 10, 1961, the appellant advised Mr. Rose that it was cancelling the coverage on the 1953 Ford, effective March 1, 1960, for the reason that it had then learned of the trade of the car, and that by that exchange the interest and equity of Mr. Rose were entirely transferred to Clara, so that he was no longer entitled to insure the vehicle as owner. The position then taken by the

company was a direct contradiction of the agent's representation to Mr. Rose and Clara. It is the established rule of law that [HN8] the knowledge which an agent acquires while acting [***15] as such and within the scope of his authority is imputed to his principal and that an insurance company is bound by the acts, contracts, or representations of its agent, which are within the scope of his apparent authority. American Fidelity & Cas. Co. v. Backstrom, 47 Wn. (2d) 77, 287 P. (2d) 124 (1955); Fanning v. Guardian Life Ins. Co. of America, 59 Wn. (2d) 101, 366 P. (2d) 207 (1961).

[**50] In the case of Gaskill v. Northern Assur. Co., 73 Wash. 668, 674, 132 Pac. 643 (1913), this court said:

[HN9] ". . . The principal, rather than the person with whom he deals through an agent, should be held accountable for mistake of the agent committed in the course of the very transaction entrusted to his performance. There is no sound principle, either of law or equity, upon which the insured may be punished for the mistakes of the insurer's [*904] agent, so as to relieve the insurer from the liability which he meant to undertake and for which he was paid. . . ."

Although an exhaustive search has been made, we are unable to find any prior Washington case directly in point. The case of Miller v. United Pac. Cas. Ins. Co., 187 Wash. 629, 60 P. (2d) 714 (1936), wherein [***16] reformation was decreed, appears to be very similar in many respects, and yet it is not identical on its facts. Other cases in which we have approved reformation of insurance policies in order to conform them to the intention of the parties are Robbins v. Milwaukee Mechanics' Ins. Co., 102 Wash. 539, 173 Pac. 634 (1918); and Gaskill v. Northern Assur. Co., supra.

The case of Doyle v. Allstate Ins. Co., 4 Wis. (2d) 411, 90 N. W. (2d) 562 (1958), is almost identical with the instant case. The court there held that a policy of insurance should be reformed where the son purchased a car, but the father co-signed the conditional sale contract and the title to the car was placed in both names, although the son was the sole owner. The insurance agent was told that the son wanted insurance on his car and all facts were disclosed to him. The agent placed the insurance in the name of the father, only. Later the son traded this car for another one, following which he had an accident. Both the accident and exchange of automobiles were reported to the insurer which extended the coverage to the second car. The insurance company disclaimed responsibility, however, on the grounds [***17] that it had no knowledge that the son was the owner.

The court held that the agent's knowledge was that of the insurer, that the policy should be reformed to show the son as the owner of the second car at the time of the accident, although the agent had merely insured the son's first car as a second car under a policy already issued to the father.

See, also, Beach v. United States Fidelity & Guaranty Co., 205 Cal. App. (2d) 409, 23 Cal. Rptr. 73 (1962), and General Ins. Co. of America v. Western Fire & Cas. Co., 241 F. (2d) 289 (1957). These two cases are very similar [*905] on their facts to the instant case, and in each of them the court decreed that an insurance policy issued to a parent should be reformed to add a child as a named insured.

It is our conclusion that the policy of insurance issued by appellant's predecessor should be reformed as decreed by the trial court, and in this respect the judgment is affirmed. That portion of the judgment awarding attorneys' fees to the respondents is reversed. Respondents, having substantially prevailed upon this appeal, shall recover their costs.