UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 3:02-CV-1095 (CFD) |
| v. | : | |
| | : | |
| THE KENT SCHOOL CORPORATION | : | |
| | : | |
| | : | |
| Defendant. | : | NOVEMBER 21, 2006 |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

DEFENDANT – THE KENT SCHOOL CORPORATION

Francis J. Brady – ct 04296
Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone: (860) 240-6000
Facsimile: (860) 240-6150
Email: fbrady@murthalaw.com

## Table of Contents

I. INTRODUCTION .......... 1

II. THE AMERICAN RULE DOES NOT APPLY BECAUSE CHICAGO TITLE HAS A CONTRACTUAL DUTY TO DEFEND KENT SCHOOL .......... 1

A. This Action Falls Within Chicago Title's Contractual Duty to Defend Kent School. .......... 2

1. Chicago Title Could Have Limited Its Duty to Defend, But Failed to Do So. .......... 5

2. The Principles of Insurance Contract Construction Support the Conclusion that the Duty to Defend Extends to this Action. .......... 8

a. The Plain Meaning of "Founded On." .......... 8

b. Any Ambiguity Concerning the Scope of the Policy Must be Construed in Favor of Coverage. .......... 9

c. The Broad Nature of the Duty to Defend. .......... 10

III. KENT SCHOOL NEED NOT ESTABLISH A BREACH OF THE DUTY TO DEFEND IN THE UNDERLYING SUIT .......... 10

A. Connecticut Law Does Not Condition The Recovery Of Attorneys' Fees .......... 11

1. Whether Chicago Title Breached Its Duty To Defend In The Underlying Case Is Irrelevant. .......... 13

2. Cases In Which The Policyholder Brought The Declaratory Judgment Action Are Not Directly Relevant. .......... 15

B. Other Relevant Authority Does Not Condition The Recovery Of Attorneys' Fees .......... 16

1. The Highest Courts Of New York And Massachusetts Have Recently Decided This Precise Issue In Favor Of The Policyholder. .......... 16

2. The Decisions Of Other High Courts Support The Award Of Attorneys' Fees. .......... 18

3. The Cases Cited By Chicago Title Are Distinguishable From This Matter. .......... 18

IV. AN AWARD OF ATTORNEYS' FEES DOES NOT DENY CARRIERS EQUAL ACCESS TO THE COURTS.................................................. 20

V. CONCLUSION ........................................................................ 21

# I. INTRODUCTION

Plaintiff Chicago Title Insurance Company ("Chicago Title") sold a policy of title insurance to the Kent School Corporation ("Kent School"). That policy requires Chicago Title to provide a defense to Kent School "in all actions or proceedings founded on a claim of title or encumbrance not excepted in this policy." (See Policy of Title Ins. at p. 5, attached at Ex. A). Yet, after recognizing that obligation for more than two decades, Chicago Title sought to escape its duty to defend by filing this declaratory judgment action. In so doing, Chicago Title cast Kent School in a defensive posture, forcing it to defend itself in order to preserve its continuing right to a defense in the underlying action brought by the Schaghticoke Tribal Nation ("the Schaghticoke litigation").

This Court ruled that Chicago Title has a "continuing duty" to defend Kent School in the Schaghticoke litigation. (Ruling on Cross-Motions for Summary Judgment at p. 11, attached at Ex. B). This declaratory judgment action falls within that continuing duty. Thus, Kent School has a contractual right to a defense in this action and the "American Rule" does not apply. That contractual right extends to this action regardless of whether Chicago Title provided a defense in the Schaghticoke litigation while attempting to cut off its obligation by seeking a declaratory judgment. Accordingly, Kent School is entitled to the attorneys' fees it has incurred in defending this action.

# II. THE AMERICAN RULE DOES NOT APPLY BECAUSE CHICAGO TITLE HAS A CONTRACTUAL DUTY TO DEFEND KENT SCHOOL.

Chicago Title invokes the "American Rule" in an effort to avoid its obligation to pay Kent School's defense costs. "[A]ttorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception."

Rizzo Pool Co. v. Del Grosso, 240 Conn. 58, 72 (1997). (See Chicago Title's Memorandum of Law in Support of Motions for Summary Judgment, dated October 27, 2006 at p. 7). Kent School does not contest this rule, but rather relies on its contractual exception. Because this declaratory judgment action falls within its contractual right to a defense, Kent School's counterclaim for attorneys' fees has nothing to do with the "American Rule" and everything to do with Chicago Title's contractual obligation to defend Kent School.

The proscription of the "American Rule" simply does not apply where, as here, the parties have a contractual relationship providing for the payment of a defense. See e.g., 24 Leggett St. Ltd. P'ship. v. Beacon Indus., 239 Conn. 284 (1996). In 24 Leggett St., the Connecticut Supreme Court ruled that the American Rule did not bar the recovery of attorneys' fees because the parties had such a contractual relationship. Id. Given the contractual relationship here, Chicago Title's invocation of the "American Rule" is irrelevant.

**A. This Action Falls Within Chicago Title's Contractual Duty to Defend Kent School.**

Following this Court's determination that Chicago Title has a continuing duty to defend Kent School in the underlying Schaghticoke litigation, it is undisputable that the parties have a contractual relationship. Chicago Title mistakenly claims, however, that its duty to defend Kent School does not extend to this declaratory judgment action. On the contrary, Kent School is entitled to its attorneys' fees because this action falls squarely within its right to a defense under its Policy of Title Insurance. This Court has determined "that the policy places Chicago Title under a continuing duty to defend Kent School" in the Schaghticoke litigation. (Ruling on Cross-Motions for Summary Judgment at p. 11). Because this

declaratory judgment action arose out of Chicago Title's attempt to elude that duty, it also is within the scope of the policy.

The New York Court of Appeals acknowledged the "American Rule" and its corresponding exception when it determined that a carrier must pay its policyholder's defense costs in a declaratory judgment action regardless of whether the carrier provided a defense in the underlying action. U.S. Underwriters Ins. Co. v. City Club Hotel, LLC., 3 N.Y. 3d 592 (2004). After stating the rule, the court reasoned:

> However, an insured who is cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations, and who prevails on the merits, may recover attorneys' fees incurred in defending against the insurer's action. The reasoning behind Mighty Midgets is that an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action.

Id. at 597-598 (internal quotation marks omitted) (emphasis added); see also U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 395 F.3d 24 (2d Cir. 2005) (endorsing the holding of the N.Y. Court of Appeals). In Liberty Surplus Insurance Corp. v. Segal Co., the Second Circuit reiterated this interpretation, noting that "an insurer's duty to defend extends to any action arising out of a covered event, including an action brought by the insurer to free itself from covering the event." 420 F.3d 65, 67 (2d Cir. 2005) (emphasis added).

Here, as in City Club, the contractual exception to the American Rule controls. That exception is based on the following provision of the Chicago Title policy:

> This Company [Chicago Title] will, at its own cost, defend the insured [Kent School] in all actions or proceedings founded on a claim of title or encumbrances not excepted in this policy.

(Policy of Title Ins. at p. 5) (emphasis added).

Chicago Title's declaratory judgment action is so founded because it sought relief from the very obligation to defend Kent School in an action challenging its title. As in City Club, the attorneys' fees incurred in defending this declaratory judgment action "arose as a direct consequence" of Chicago Title's attempts to free itself from its continuing contractual obligation to defend Kent School in the Schaghticoke litigation. See City Club, 3 N.Y.3d at 598. Therefore, this declaratory judgment action is "founded on" just such a claim of title—the Schaghticoke litigation.

By comparison, the Connecticut Superior Court reached the same conclusion based upon analogous contractual language in another title policy:

> 3(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured . . . to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.

First Am. Title Ins. Co. v. Jaworoski, No. CV87-0085495S, 3 Conn. Super. Ct. Rep. 207, 208 (Conn. Super. Ct. Jan. 15, 1988) (emphasis added) (attached at Ex. C). That same term ("founded") resulted in the court denying the Jaworoski carrier's motion to strike its policyholder's counterclaim for expenses incurred in defending the carrier's declaratory judgment action as to coverage. After describing the general rule that each party must pay its own attorneys' fees, the court recognized a contractual exception and held that "when an insured wrongfully defends a declaratory judgment action regarding the issue of coverage, the insured is entitled to reasonable attorneys' fees." Id.

**1. Chicago Title Could Have Limited Its Duty to Defend, But Failed to Do So.**

The fact that Chicago Title's contractual obligation extends to this action is supported by the recognition that different circumstances may not require such a defense. Quite simply, the carrier's defense obligation would not apply to every suit brought by the carrier. For example, if the carrier sued to collect its premium from the policyholder, the carrier would not have to pay for the policyholder's defense there. That follows because such a suit would not be one "founded on a claim of title or encumbrance," but rather would be a simple collection action.

Nor would the carrier's contractual obligation apply if its policy language were different. The English language allows for a clear statement of Chicago Title's position that the duty to defend under the policy does not extend to declaratory judgment actions brought by the carrier. Indeed, such language has been utilized in later iterations of the Chicago Title policy. That fact is illustrated by a comparison of the language in the policy that Chicago Title sold to Kent School with the language of subsequent policy forms used by Chicago Title. Put simply, Chicago Title arguably could have limited its duty to defend to the underlying claim, but clearly did not do so in this case.

The policy sold to Kent School in 1966 was derived from a form prepared by the New York Board of Title Underwriters("N.Y.B.T.U."). (See Ex. A at top left hand corner of first page). According to the deposition testimony of Chicago Title's underwriting designee, Phillip J. Fanning, this N.Y.B.T.U. policy was considered more of a "provincial" policy in comparison to subsequent policy forms. (Fanning Deposition at p. 77, relevant portions attached at Ex. D).

In the 1970's, Chicago Title departed entirely from the N.Y.B.T.U. form, and adopted the American Land Title Association ("ALTA") policy form. Mr. Fanning characterized the ALTA policies as having a "national" scope. (Fanning Deposition at p. 77). Mr. Fanning authenticated the current ALTA policy as bearing a 10-17-92 revision date and as being in the form attached as Ex. E. (See Fanning Deposition at p. 70, 75-76; 1992 Insurance Form, attached at Ex. E). Chicago Title currently uses the 1992 ALTA form. (Fanning Deposition at p. 76).

A comparison of the N.Y.B.T.U. form applicable here and the current ALTA form demonstrates that Chicago Title could have sold Kent School a policy that excluded declaratory judgment actions brought by the carrier from the duty to defend, but failed to do so. Whereas Kent School's policy promises a defense to "all actions or proceedings founded on a claim of title or encumbrances not excepted in this policy," the current ALTA policy is much narrower in scope. The current policy form provides that, "the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy." (1992 Title Insurance Form at p. 3) (emphasis added).

The 1992 ALTA policy eliminates the phrase "founded on a claim" contained in Kent School's policy and substitutes the narrower "asserts a claim." More importantly, the 1992 policy explicitly limits the duty to defend to actions brought by a third party. Finally, the 1992 policy only applies to actions "alleging a defect, lien or encumbrance. . . ." By comparison, Kent School's policy contains the much broader language "founded on a claim," and contains

no provision restricting the defense obligation to claims brought by a third party. (See Policy of Title Ins. at p. 5).

The 1992 ALTA language, however, is not the language in issue here. Chicago Title's policy addresses the carrier's defense obligation in the context of the much broader promise: Chicago Title "will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or encumbrance." (See Policy of Title Ins. at p. 5). As the court concluded in Jaworoski, a declaratory judgment action brought by a carrier in an attempt to deny its defense obligation is "founded on" such a claim, specifically the underlying litigation. See also Aetna Life & Cas. Co. v. Gentile, No. 0122259, 1995 Conn. Super. LEXIS 3444 at *16 (Conn. Super. Ct. Dec. 12, 1995) (attached at Ex. F) (holding that "the right to be furnished a defense to this declaratory judgment action is a part and parcel of the continuing right to be furnished a defense to the underlying action."). This Court ruled that "the policy places Chicago Title under a continuing duty to defend Kent School in all actions found on a claim of title not excepted to in the policy; [and] the Schagticoke suit against Kent School is such a claim." (Ruling on Cross-Motions for Summary Judgment at p. 11). As this declaratory judgment action is founded on the Schaghticoke litigation, Chicago Title's continuing duty to defend Kent School extends to this matter as well. That point is confirmed by the fact that Chicago Title could have selected policy language that clearly stated the interpretation that it now argues is appropriate, but it chose not to do so.

### 2. The Principles of Insurance Contract Construction Support the Conclusion that the Duty to Defend Extends to this Action.

#### a. The Plain Meaning of "Founded On."

Webster's Dictionary provides a number of definitions for the verb "found," most notably "to serve as a basis for." Webster's Third New Intern'l Dictionary of the English Language, Unabridged 897-98 (1993) (attached at Ex. G). Black's Law Dictionary provides a nearly identical definition for the phrase "founded on:" "having as a basis." Black's Law Dictionary 692 (8th ed. 2004) (attached at Ex. H). The Connecticut courts have consistently drawn upon dictionary definitions in the construction of insurance policy language. See, e.g., R.T. Vanderbilt Co. v. Cont'l Cas. Co., 273 Conn. 448, 463 (2005) ("We are assisted in our interpretation of the term suit by reference to the dictionary."); Buell Indus. v. Greater N.Y. Mut. Ins. Co., 259 Conn. 527, 539 (2002) ("To ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term. . . .") (citation omitted); Middlesex Mut. Assurance Co. v. Walsh, 218 Conn. 681, 695 n.7 (1991) ("Connecticut courts have consistently referred to dictionary definitions to interpret words used in insurance contracts.").

Since the Schaghticoke litigation provided the basis for the present action, it is "founded on a claim of title or incumbrance." As this Court ruled, "the Schaghticoke suit against Kent School is such a claim" of title or incumbrace. (Ruling on Cross-Motions for Summary Judgment at p. 11). Equally importantly, "the issue in this [declaratory judgment] case concerns the duty to defend" Kent School against that claim. (Id. at p. 10). As such, the Schaghticoke litigation is the "basis for" this declaratory judgment action. Thus, this action is "founded on a claim of title or incumbrance," namely the Schaghticoke litigation.

Accordingly, this declaratory judgment action falls within Chicago Title's continuing duty to defend Kent School pursuant to its policy.

**b. Any Ambiguity Concerning the Scope of the Policy Must be Construed in Favor of Coverage.**

The term "founded on" clearly implicates this declaratory judgment suit which is based upon the challenge to Kent School's title. Nevertheless, to the extent that there is any ambiguity in the provision it must be construed in favor of coverage. "When the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." Raffel v. Travelers Indem. Co., 141 Conn. 389, 392 (1954) (quoted approvingly in EDO Corp. v. Newark Ins. Co., 898 F. Supp. 952, 957 (D. Conn. 1995) (Nevas, J.)).

The Raffel principle has been consistently ratified and confirmed by the Connecticut Supreme Court. Indeed, the rules of insurance contract construction are well established in Connecticut.[1] Insurance policies in Connecticut are not to be interpreted from the viewpoint of an insurance underwriter or an attorney, but instead "will be construed as laymen would understand [them]." R.T. Vanderbilt Co., 273 Conn. at 462-63 (internal citation omitted); O'Brien v. U.S. Fid. & Guar. Co., 235 Conn. 837, 843 (1996) (internal citation omitted).

To the extent that the terms of the policy are ambiguous, those terms must be construed in favor of the policyholder, since the policy is a contract of adhesion. Indeed, to the extent that policy terms conflict, they are deemed ambiguous and are construed in favor of the

[1] While there is relatively little reported law in Connecticut regarding specific interpretation of title insurance policies, there is extensive law setting forth the fundamental principles of insurance contract construction. Those principles are directly applicable: "Generally in determining whether the insurer had an obligation to defend [under a title insurance policy], the courts have used the rules applicable in liability coverages." 9 Appleman, Ins. Law & Practice, § 5215, p. 96 (1981).

policyholder. Imperial Cas. & Indem. Co. v. Connecticut, 246 Conn. 313, 325 (1998). The premise of this rule is that the insurance carrier, as the party who drafted the contract, "will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . ." Israel v. State Farm Mut. Auto. Ins. Co., 259 Conn. 503, 508-509 (2002), citing Hansen v. Ohio Cas. Ins. Co., 239 Conn. 537, 544 (1996). If the policy provisions cannot be reconciled, Connecticut courts construe the policy "in a manner that affords coverage to the insured." Israel, 259 Conn. at 512.

**c. The Broad Nature of the Duty to Defend.**

Connecticut's principle of construing ambiguities in favor of the position that will "sustain the claim and cover the loss" is complemented by its corresponding principle in favor of a broad duty to defend. Indeed that principle was expressly recognized by this Court in a prior ruling in this very case:

> [T]he issue in this case concerns the duty to defend, which Connecticut courts consistently have construed broadly.

(Ruling on Cross-Motions for Summary Judgment at p. 10). See also Missionaries of the Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 155 Conn. 104, 110 (1967), and those other authorities cited at pages 14-15 of Kent School's opening brief on the pending issue dated October 27, 2006.

## III. KENT SCHOOL NEED NOT ESTABLISH A BREACH OF THE DUTY TO DEFEND IN THE UNDERLYING SUIT

Kent School is entitled to its attorneys' fees and costs irrespective of whether Chicago Title breached its duty to defend Kent School in the Schaghticoke litigation. Chicago Title contends that attorneys' fees are not available to a policyholder who successfully defends a

declaratory judgment action brought by its carrier when the carrier did not breach its duty to defend in the underlying action. This position is contrary to the law of both the State of Connecticut and the Second Circuit. Rather, a policyholder is entitled to attorneys' fees incurred in successfully defending a declaratory judgment action because the contractual duty to defend extends to the declaratory judgment action. The carrier brought the declaratory judgment action as a direct consequence of the underlying action. Therefore, whether the carrier provided a defense in the underlying action while wrongfully attempting to cut off its contractual duty is irrelevant to the policyholder's right to recover its attorneys' fees.

**A. Connecticut Law Does Not Condition The Recovery Of Attorneys' Fees.**

Chicago Title claims that, when awarding a policyholder its attorneys' fees, Connecticut courts have done so because the carrier failed to provide a defense in the underlying claim. This is not the case. The Connecticut courts that have awarded the policyholder its attorneys' fees following a failed declaratory judgment action brought by the carrier have done so on two grounds: (1) the carrier's contractual duty to defend extends to the declaratory judgment action; and (2) a contrary holding would deny the policyholder its contractual benefit. See Gentile, 1995 Conn. Super. LEXIS 3444 at *16; Jaworoski, 3 Conn. Super. Rep. at 208.

In Gentile, the court awarded the policyholder its attorneys' fees on the grounds that the unsuccessful declaratory judgment action, like the underlying action, falls within the carrier's contractual duty to defend its policyholder, and that imposing the costs of defending the declaratory judgment action on the policyholder would unjustly force it to incur "extraordinary" expenses to preserve its rights. Id. at *15-17. Having determined that the policyholder had a continuing right to a defense in the underlying action, the court held that

"the right to be furnished a defense to this action is a part and parcel of the continuing right to be furnished a defense in the underlying action." Id. at *16 (emphasis added). Furthermore, the court held that "[t]he insurer cannot condition the insured's continuing right to a defense by imposing upon the insured, as a condition precedent, the expenditure of extraordinary funds to preserve his right to an eventual contractual benefit." Id. (emphasis added).

On the other hand, the Gentile court did not relate the award of attorneys' fees to a breach of the duty to defend in the underlying action. Indeed, in its recitation of the background facts, the court made no mention of whether the carrier provided a defense in the underlying action. Id. at *1-11. In fact, that a defense was not provided in the underlying claim can only be deduced from the court's award of attorneys' fees incurred by the policyholder in that action. Id. at *14, *17. The court did note, however, that the carrier's declaratory judgment action was "apparently well meaning." Id. at *15. Nevertheless, the court awarded the policyholder its attorneys' fees, because, irrespective of the intentions underpinning the declaratory action, "it is here legally unnecessary, is brought for the convenience of the insurer plaintiff, and thrusts upon the insured defendant the unnecessary expense of having to defend this action so as to preserve his right to be furnished a defense in the underlying action, a right to which he is entitled under the specific provisions of the policy." Id. at *15-16.

Similarly, in First American Title Insurance Co. v. Jaworoski, the court denied a motion to strike a policyholder's counterclaim for attorneys' fees, holding that when an insured successfully defends a declaratory judgment action concerning coverage, the insured is entitled to reasonable attorneys' fees. 3 Conn. Super. Ct. Rep. at 208. In reaching that conclusion, however, the Jaworoski court made no mention of whether the carrier provided a

defense in the underlying action. Indeed, the court explicitly rejected the requirement of some jurisdictions that the policyholder must show that its carrier "has acted in bad faith or fraudulently or was stubbornly litigious." Id. Rather, as in Gentile, the Jaworoski court justified its holding on the grounds that it would be unjust to force the policyholder to incur substantial fees in order to preserve a contractual right to a defense:

> [T]he insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off than if he had never had the contract right mentioned above.

Id. (quoting Appleman, Ins. Law & Practice § 4691 (1979)).

**1. Whether Chicago Title Breached Its Duty To Defend In The Underlying Case Is Irrelevant.**

It is unsurprising that the Gentile and Jaworoski courts gave no weight to whether the carrier breached its duty to defend in the underlying action. Put simply, the existence of an underlying breach is irrelevant to the justifications underpinning the award of attorneys' fees to policyholders. Instead, the dispositive fact is whether the carrier wrongfully attempted to cut off its duty to defend, thereby forcing the policyholder to incur attorneys' fees and costs to preserve its rights. When a carrier wrongfully disclaims coverage, it deprives the policyholder of the benefit of its contractual bargain. The policyholder is forced to incur attorneys' fees and costs irrespective of whether the carrier provided a defense in the underlying suit. A policyholder purchases a policy not only to indemnify itself from potential liability, but also to protect itself from the cost of litigation. Indeed, "[o]ne of the basic purposes of the defense provision is protection of the insured from the expenses of litigation." City of West Haven v. Liberty Mut. Ins. Co., 639 F. Supp. 1012, 1020 (D. Conn. 1986).

Forcing the policyholder to incur the costs of defending a declaratory judgment action would deprive it of a fundamental benefit of its policy—the right to a defense. The cost of defending the declaratory judgment action is forced on a policyholder irrespective of whether the carrier provided a defense in the underlying action. In fact, limiting the award of attorneys' fees to cases in which the carrier failed to provide a defense in the underlying action would result in a paradoxical inequity. Illogically, those policyholders whose carrier did not provide a defense would be made whole, while policyholders such as Kent School would suffer the burden of substantial fees.

Moreover, given the courts' policy goal of preserving the policyholder's contractual rights, the presence of a breach in the underlying matter is inconsequential. Instead, the dispositive fact is that the carrier sued its policyholder in an effort to curtail its policy obligations, thereby forcing the policyholder to defend its rights.

Here, the identical concerns on which Connecticut courts based an award of attorneys' fees in Gentile and Jaworoski are present. As this Court held, Chicago Title has a "continuing duty" to defend Kent School. (Ruling on Cross-Motions for Summary Judgment at p. 11). By seeking a declaratory judgment, Chicago Title attempted to cut off that duty, and forced Kent School to incur substantial fees and costs in order to preserve its policy rights. Had Kent School failed to defend itself, a default judgment would have entered. Therefore, had it not incurred the cost necessary to defend this action, Kent School would have forfeited its right to a defense in the Schaghticoke litigation. On the other hand, should Kent School be forced to bear the cost of preserving that right, it will be effectively denied the very benefit for which it purchased the policy. The cost of defending the Schaghticoke litigation will merely be substituted for the cost of defending this declaratory judgment action. Put simply, Kent

School would suffer the same injury if forced to bear the costs of defending this attempt by Chicago Title to elude its continuing duty to defend Kent School regardless of whether Chicago Title defended it in the Schaghticoke litigation while bringing this claim.

**2. Cases In Which The Policyholder Brought The Declaratory Judgment Action Are Not Directly Relevant.**

While Connecticut courts have alluded to the breach of the underlying duty to defend when awarding attorneys' fees incurred in a declaratory judgment action, they have done so only in actions brought by the policyholder to compel its carrier to provide coverage. Along with Gentile, Chicago Title cites General Plasma, Inc. v. Reliance Insurance Co., No. CV 970575899, 2000 Conn. Super. LEXIS 68 (Conn. Super. Ct. Jan. 11, 2000) (attached at Ex. I), in support of its claim that a policyholder may only recover attorneys' fees when its carrier failed to provide a defense in the underlying action. The reference by the General Plasma court to a breach of the duty to defend, however, is inapposite to this case. There, the court awarded attorneys' fees following a declaratory judgment action brought by the policyholder. Id. at *1. Unlike this case, the policyholder in General Plasma was not forced to incur fees to preserve a continuing right to a defense. Instead, the policyholder brought the declaratory judgment action, following the breach alluded to by the court. Here, Kent School did not choose to bring a suit on a claim of contractual rights; it was forced to defend this suit or forfeit those rights.

Nevertheless, the decision in General Plasma does have some ancillary relevance: as in every published Connecticut decision in which a policyholder sought its attorneys' fees after successfully establishing its right to a defense in a declaratory judgment action, the General Plasma court awarded the policyholder its attorneys' fees and costs. Id. at *20-21.

### B. Other Relevant Authority Does Not Condition The Recovery Of Attorneys' Fees

#### 1. The Highest Courts Of New York And Massachusetts Have Recently Decided This Precise Issue In Favor Of The Policyholder.

In support of the argument that Kent School is not entitled to attorneys' fees unless Chicago Title breached its duty to defend in the underlying Schaghticoke litigation, Chicago Title cites decisions from as early as 1952 and as far away as Washington state. One need not search nearly so far, however, to rebut that claim. Indeed, the issue has been addressed recently by the highest courts of two of Connecticut's neighbors, New York and Massachusetts. See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592 (2004); Hanover Ins. Co. v. Golden, 436 Mass. 584 (2002). Both courts concluded that a policyholder is entitled to recover its attorneys' fees irrespective of whether its carrier provided a defense in the underlying action.

In City Club, the New York Court of Appeals held that "an insured who prevails in an action brought by an insurer seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured." 3 N.Y.3d at 598. As discussed more fully in Kent School's Memorandum in Support of its Motion for Partial Summary Judgment, the City Club court reached this conclusion in response to a question certified by the Second Circuit. Moreover, the Second Circuit has since endorsed the City Club holding that a policyholder may recover attorneys' fees regardless of whether the carrier provided a defense in the underlying action. See City Club Hotel, LLC, 395 F.3d at 24-25 (2d Cir. 2005); see also Liberty Surplus Ins. Corp. v. Segal Co., 420 F.3d 65, 68 (2d Cir. 2005).

Similarly, in Golden, the Supreme Judicial Court of Massachusetts held that a policyholder is entitled to attorneys' fees after establishing its right to a defense in a declaratory judgment action regardless of whether the carrier provided a defense in the underlying action. 436 Mass. at 586. There, as here, the carrier argued that Massachusetts precedent limited recovery of attorneys' fees to cases in which the carrier had somehow breached the terms of the policy, such as by failing or refusing to defend the policyholder in the underlying action. Id. The Golden Court utterly rejected that argument, however, and held that the carrier's breach of the underlying duty to defend was irrelevant to its prior decisions: "Although [two prior] cases each involved circumstances that amounted to a breach of the terms of the policy, the principle we articulated does not require the insured to prove the existence of a breach." Id.

In support its conclusion, the Golden court noted that Massachusetts courts (like the Connecticut Superior Court in Jaworoski) had previously rejected the requirement of some jurisdictions that a policyholder demonstrate its carrier acted in bad faith or fraudulently, or had been stubbornly litigious. Id. Instead, the Golden court concluded that "[i]t is immaterial whether the insurer proceeds in good faith or in bad faith to avoid the duty to defend under a liability insurance policy because to impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain." Id. at 587 (internal quotation marks omitted). As in Golden, this Court should reject the carrier's attempt to read a non-existent condition precedent into the Connecticut decisions supporting an award of attorneys' fees following an unsuccessful declaratory judgment action concerning the duty to defend.

**2. The Decisions Of Other High Courts Support The Award Of Attorneys' Fees.**

In addition to New York and Massachusetts, the highest courts of a number of other jurisdictions have awarded attorneys' fees to policyholders who prevail in declaratory judgment actions regardless of whether the carrier breached its duty to defend. See, e.g., Farm Bureau Mutual Ins. Co. v. Kurtenbach, 265 Kan. 465, 482-83 (Kan. 1998) (awarding attorneys' fees when a carrier defended the underlying action under a reservation of rights prior to bringing a declaratory judgment action); Hegler v. Gulf Ins. Co., 270 S.C. 548, 550 (S.C. 1978) (awarding attorneys' fees and holding that there is no fundamental difference between a carrier who refuses to defend and one who defends under a reservation of rights before bringing a declaratory judgment action); Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 232 (1997) (holding that a policyholder is contractually entitled to recover fees whether they arose from the underlying action or the declaratory judgment action concerning coverage).

**3. The Cases Cited By Chicago Title Are Distinguishable From This Matter.**

Chicago Title cites cases from other jurisdictions to support its claim that Kent School is not entitled to its attorneys' fees because the carrier provided a defense in the underlying action.[2] (See Chicago Title's Memo, p. 7-13). Only three of those cases, however, declined to

[2] Chicago Title's principal argument rests on its proclamation that, because it has continued to pay for the defense of the Schaghticoke litigation, it has no duty to pay for the defense of this declaratory judgment action. Chicago Title then cites a number of cases that have required the carrier to pay the defense of the declaratory judgment action because the carrier failed to pay the defense of the underlying case. E.g., Le, 551 N.W.2d 923; Vasquez, 599 N.E.2d 756; Carter, 216 S.W.2d 324. (See Chicago Title's Memo. at pp. 7-13). What Chicago fails to note, however, is that even its authorities necessarily recognize that there is a contractual right to a defense of the declaratory judgment. Otherwise, they would have no basis for awarding such

award attorneys' fees after a carrier unsuccessfully brought a declaratory judgment action while providing a defense in the underlying action. See Am. Stand. Ins. Co. v. Le, 551 N.W.2d 923 (Minn. 1996); Allstate Ins. Co. v. Vasquez, 599 N.E.2d 756 (Ohio App. Ct. 1991); Carter v. Va. Surety Co., 216 S.W.2d 324 (Tenn. 1948). All three are easily distinguished from this case.

In both the Le and Carter cases, the carriers contested coverage immediately upon the filing of the underlying claim, but provided a defense under a reservation of rights. Le, 551 N.W.2d at 924 ("American Standard assumed Le's defense in that action pursuant to a reservation of its right to assert that Nguyen's claim was not within the residual liability coverage afforded by its policy."); Carter, 216 S.W.2d at 326 ("The Surety Company, reserving its disclaimer of liability, has declared its intention nevertheless to defend the insured and the driver, pending the outcome of its suit for declaratory judgment.") (internal quotation marks omitted). Indeed, when reversing the award of attorneys' fees, the Le court explicitly noted that the carrier "had undertaken the defense of [the underlying] action subject to a reservation of rights and had retained counsel to represent [its policyholder]." Le, 551 N.W.2d at 928 (emphasis added).

By contrast, Chicago Title made no such reservation of rights here. Chicago Title did not immediately dispute whether the Schaghticoke litigation fell within Kent School's policy and provide a defense until a court could resolve the matter. Rather, Chicago Title tendered a

---

defense expenses under any circumstances. Those authorities suggest that that right is somehow predicated upon a breach of the defense obligation in the underlying case. While they are wrong as to the predicate, Chicago Title's authorities are correct in applying the basic defense duty to the declaratory judgment case.

defense without reservation for more than two decades, then suddenly did an about-face and brought suit to cut off its obligation. (Affidavit of Thomas B. Sides dated May 19, 2004, attached at Ex. K).

In Vasquez, the carrier provided a defense despite a claim that the underlying action was not covered due to the business exclusion of its homeowner's policy. 599 N.E.2d at 756-57. There, the carrier brought a successful declaratory judgment action, because the trial court ruled that that the underlying action was not covered by the policy as a matter of law. Id. at 757. The policyholder only prevailed because, pursuant to its counterclaim, the carrier's sales agent was held to have bound it to provide coverage through verbal misrepresentations at the time of sale. Id. The court then declined to award attorneys' fees because "a breach of contract must occur under the policy." Id. at 758. By comparison, Chicago Title's declaratory judgment action here was unsuccessful. Moreover, there was no policy exclusion barring coverage. Rather, Chicago Title coined a new argument in an effort to curtail coverage a full twenty-four years after the underlying action began.

## IV. AN AWARD OF ATTORNEYS' FEES DOES NOT DENY CARRIERS EQUAL ACCESS TO THE COURTS.

Because it has a contractual duty to defend Kent School in this action, Chicago Title's claim that an award of attorneys' fees would deny carriers equal access to courts must fail. The broad nature of the duty to defend establishes a special, contractual relationship between a policyholder and its carrier. It is for this reason that the policyholder is entitled to its fees. See Rubenstein v. Royal Ins. Co., 429 Mass. 355, 360 n. 4 (1999) ("An insurer must tread cautiously regarding its duty to defend an insured against third-party actions in view of the expansive interpretation given to that duty.").

Indeed, reason would dictate that, if an award of attorneys' fees denied the carrier equal access to the courts, attorneys' fees would be inappropriate following any "well meaning" declaratory judgment action, such as that in Gentile. Id. at *15. Such logic would dictate that the Second Circuit (City Club), the New York Court of Appeals (City Club), the Massachusetts Supreme Judicial Court (Golden), and the other noted authorities all would have acted in an unconstitutional manner. That is not the case, however, because the policyholder's right to a defense in the declaratory judgment action falls squarely within its contractual right to a defense in the underlying litigation.

## V. CONCLUSION

For the foregoing reasons, Kent School's motion for partial summary judgment on its counterclaim for attorneys' fees should be granted, and Chicago Title's motion for summary judgment should be denied.

DEFENDANT - THE KENT SCHOOL CORPORATION

By /s/ Francis J. Brady
Francis J. Brady – ct 04296

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone: (860) 240-6000
Facsimile: (860) 240-6150
Email: fbrady@murthalaw.com
Its Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendant's Reply Memorandum to Plaintiff's Motion for Summary Judgment was filed electronically this 21st day of November, 2006. Notice of this filing will be sent by e-mail to counsel of record noted below by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Frank P. Coulom, Jr., Esq.
Marion Manzo, Esq.
Andrea Donovan Napp, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-34597

Lawrence Heffernan, Esq.
Robinson & Cole LLP
One Boston Place
Boston, Massachusetts 02108-4404

/s/ Francis J. Brady
Francis J. Brady – ct 04296

917908