# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
- - - - - - - - - - - - - x
CHICAGO TITLE INSURANCE :
COMPANY, :
Plaintiff, : Civil Action No.
vs. : 3:02CV1095
KENT SCHOOL CORPORATION, : (CFD)
Defendant. :
- - - - - - - - - - - - - x

Deposition of PHILIP J. FANNING, taken pursuant to the Federal Rules of Civil Procedure at the law offices of Murtha Cullina LLP, CityPlace, Hartford, Connecticut, before Elizabeth A. Zawacki, LSR #00087, a Registered Merit Reporter and Notary Public in and for the State of Connecticut, on Friday, January 9, 2004, at 12:30 p.m.

I'm not sure. I would have to go through it.
Q. Let's focus on question number 4 which appears on page number 3. Take a moment to read that question and the response to yourself, sir.
A. Yes, I see that.
Q. Have you read that response before today?
A. No.
Q. You have not?
A. I have read this response just now.
Q. Let me say the question again so I listen more attentively to your answer. Have you read the response number 4 on page 3 before today?
A. I may have, because I was furnished with a copy of this.
Q. Did you participate in the preparation of the response?
A. What I recall is that we were asked to furnish copies of ALTA policies. As to whether it was with respect to item 4 on this interrogatory I really can't recall.
Q. You're familiar with the ALTA policies that are listed there, correct?
A. Right.
Q. Is this a correct answer, that the policy number EC 1633 -- I beg your pardon -- policy number

EC 16344 has a form that is no longer used by Chicago Title?

A. Right.

Q. Am I correct that the successor forms are listed there as ALTA 101770, ALTA 11784, ALTA 102187, ALTA 4690, and ALTA 101792?

A. Correct.

Q. Are there any other ALTA forms that are successor forms to the EC 16344 form?

A. Not that I'm aware of.

MR. BRADY: Now I would like to have marked as exhibits these forms.

(Fanning Deposition Exhibits 4 through 8 marked for identification.)

MR. BRADY: I'm going to identify these for the record.

Exhibit 4 is the American Land Title Association owners policy form B 1970, parentheses, amended 10/17/70.

Number 5 is a document entitled, "Formerly American Land Title Association owners policy form B 1970," parentheses, "revision 10-17-70 and 10-17-84."

Number 6 is a document entitled, "Formerly American Land Title Association owners

policy," parentheses, "10-21-87."

Exhibit 7 is a document entitled, "American Land Title Association Owners Policy," in parentheses, "4-6/90."

Exhibit 8 is a document entitled, "American Land Title Association Owners Policy," parentheses "10-17/92," close parentheses; and all of these exhibits, 4, 5, 6, 7, 8, are Chicago Title Insurance Company policies.

Do you agree, Mr. Heffernan?

MR. HEFFERNAN: Yes. You should say policy forms.

MR. BRADY: I agree, policy forms.

BY MR. BRADY:

Q. Now, Mr. Fanning, you've got these 4, 5, 6, 7 and 8 policy forms in front of you. Have you reviewed these before today?

A. I've seen them before, yes.

Q. And indeed, these are the documents that you referred to as having gathered in connection with the response to question number 4 on exhibit number 3?

A. Right.

Q. So we have it clear, Exhibit 4, is this a successor form of policy to the form of Exhibit 2?

A. I don't know that it's considered a successor. It's just that one policy stopped being used, in favor of a more national policy. I don't know if there was a successor to the NYBTU, for example, promulgated by the NYBTU.

Q. But as far as Chicago Title is concerned, the form of policy used after they discontinued the form contained in Exhibit 2 was a form contained in Exhibit 4?

A. For Connecticut.

Q. Is that correct, sir?

A. For Connecticut, correct, for Connecticut.

Q. Then at some point -- withdrawn.

If you take a look at the Exhibit 4, it says it's amended 10/17/70. Do you see that right in the caption?

A. Right.

Q. Looking at that date and looking at the entire form which you now have in front of you, and which you did not have before, can you tell me with a little more precision as to when Chicago Title started utilizing the American Land Title Association policy in Connecticut?

A. The only information I was able to discover in that regard is with respect to

statements from a few of the gentlemen that I spoke to, suggesting that it was sometime in the '70s. I believe one said perhaps '72, another may have said perhaps '78. They were not sure, but they did say sometime in the '70s.

Q. You're here as a spokesperson for Chicago Title on this subject? You agree with that? On the subject of the successor policies? If you look at item number 3 on your deposition notice.

A. I'm here trying to speak to the history of the form at issue, which I think is the New York NYBTU form because it says, "the policy at issue"; and then including reasons for making changes to the policy form over time. I think that's all I'm here for.

Q. But there have been changes made to the policy over time, and so we are in agreement, I think you've told us we are not talking about the changes to NYBTU forms. We are talking about the changes in the forms that Chicago Title utilized; is that fair?

A. That could be, although it's hard to tell from the way this is written as to the reasons for making changes to the policy. I don't know if they are referring to the NYBTU policy, which I don't

know if it was ever changed, or if they are talking about the ALTA.

Q. Notwithstanding the clarity or lack thereafter in draftsmanship, with respect to what you are here to testify about, you agree that documents 4 through 8 are successor iterations of policies that Chicago Title used after it stopped using Exhibit 2, right?

A. Correct.

Q. You're here to speak to that issue, and the best knowledge that you have as a spokesperson for Chicago Title is that Exhibit 4 was utilized for the first time in Connecticut on what date approximately?

A. In the '70s.

Q. We'll stay with that, in the '70s.

Now, take a look at Exhibit 5. Do I understand your testimony to be that Exhibit 5 became the standard form replacing Exhibit 4 at some point in time?

A. At some point in time, correct.

Q. You can look at the top where it says revision 10-17-70 and 10-17-84. Do you see that note at the very top?

A. Yes.

Q. Does that assist in any way in responding to my question, which is going to be, at what point did Exhibit 5 as a form replace the form Exhibit 4?

A. It would be sometime after 10/17/84.

Q. Based upon your spokesperson status as a Chicago Title emissary, would you tell me that it became active in the 1980s?

A. Yes.

Q. Then take a look at Exhibit 6, and I'm going to direct your attention, if you wish, to the very top where it says, parentheses, 10-21-87. Do you see that reference, sir?

A. Right.

Q. Is it fair to say that form number 6 replaced form number 5 as the standard form utilized by Chicago Title?

A. Correct.

Q. Do you have an approximate date as to when Chicago Title may have used Exhibit 6?

A. Sometime after 10/21/87.

Q. Then we'll turn to Exhibit 7. Do you see number 7?

A. Yes.

Q. On the top of that document there's a parenthesis, 4-6-90. Do you see that?

A. Yes.
Q. Based upon your research and the documents you have in front of you, do you, as a spokesperson for Chicago Title, have an approximate date as to when number 7 form replaced number 6 form?
A. It would be sometime after April 6 of 1990.
Q. Would it be fair to say that number 5 and number 6 were utilized in the 1980s?
A. Number 5 and number 6 were used in the 1980s. That would be fair.
Q. Would it be fair to say that item number 7, Exhibit 7, was utilized in the '90s?
A. Yes.
Q. Turn the page, turn to the next document. That's Exhibit 8. Do you see that, sir?
A. Yes.
Q. At the top there's a parenthesis, 10-17-92. Do you see that?
A. Yes.
Q. As a spokesperson for Chicago Title, can you tell us when Exhibit 8 form replaced Exhibit Number 7 form as utilized by Chicago Title?
A. It would have been sometime after October 17 of '92.

Q. To the best of your knowledge, as a spokesperson for Chicago Title, is form number 8 utilized today?

A. Yes.

Q. Just so we are -- go back to the beginning to make sure I have this clear. Exhibit 4, this is the form that replaced the Exhibit 2 form?

A. Again, I don't mean to be difficult, but if you're saying -- if you notice, Exhibit 4 does not say American Land Title Association policy owner's form B1970, amended 10-17-70, formerly NYBTU form, as these other ones say "formerly," so I don't think that there was a relationship between NYBTU and American Land Title. I just think that one stopped being used and the other one began being used.

Q. So I'm absolutely clear, Exhibit 4 was the form that Chicago Title utilized when it stopped using the NYBTU form as reflected in Exhibit 2?

A. Right.

Q. I think you told us before, but I want to be clear. NYBTU is a completely different organization than ALTA, correct?

A. Right; although it may have had cross-membership.

Q. It's possible, I suppose, but it's a different organization, just like General Motors is different than Ford?

A. Sure.

Q. Am I right?

A. It is.

Q. It's not, what I'm saying, ALTA is not a successor to NYBTU, to the best of your knowledge?

A. To the best of my knowledge, it's not a successor organization, no.

Q. Now, do you have any knowledge, based upon your research and your status as a spokesperson for Chicago Title, as to why the Chicago Title changed from the Exhibit 2 form to the Exhibit 4 form?

A. I don't have any actual reason for the change that I could find in my research, but in conversations with the gentlemen who I had given you earlier, their opinion was that the marketplace demanded uniformity and a national form, as opposed to what would be considered more of a provincial form.

Q. The provincial form would be the NYBTU form?

A. The provincial form would be more of the NYBTU form.

Q. Again, so we have this clear, focusing on Exhibit 4 for a moment, this is a form that is prepared by an organization called the American Land Title Association, correct?

A. Right.

Q. There's an aspect to it, which is page 3 and 4, where there are a number of paragraphs under the caption, "Conditions and Stipulations." Do you see that?

A. Right.

Q. This is all, for lack of a better word, boilerplate, is it not?

A. Boilerplate.

Q. Correct?

A. Correct.

Q. When Chicago Title issues a policy, using Exhibit 4, it doesn't change the conditions and stipulations, does it?

A. It adds a schedule B that takes exceptions to items in the land records that encumber the title.

Q. So I'm clear, it does not change, either by adding a schedule or by crossing out or modifying in any other way, the conditions and stipulations, does it?

A. Right.

Q. That goes for Exhibit 5, Exhibit 6, Exhibit 7, and Exhibit 8?

A. Right.

Q. All of the conditions and stipulations which constitute the boilerplate that we talked about remain the same in virtually every Chicago Title Insurance Company policy?

A. Correct.

Q. That's also true as to Exhibit 2; am I right?

A. (No response.)

Q. I'm going to focus now on particularly it has different captions?

MR. HEFFERNAN: I don't think you gave him a chance to answer your question.

MR. BRADY: I'm continuing the question.

Q. If you take a look at Exhibit 2, on the second to last page of the exhibit there's a caption that says, "Conditions of This Policy." Do you see that?

A. Okay.

Q. "Conditions of This Policy." So it's captioned a little different than the caption

associated with the ALTA policy?

A. Right.

Q. So my question is: The conditions of this policy that's in the NYBTU policy, those conditions remained the same when Chicago Title issued policies to its policyholders; is that correct?

A. With this particular one I can say yes.

Q. As a standard practice, the form of policy did not change, based upon any information you have, when Chicago Title issued a policy throughout all these years; isn't that correct?

A. (No response.)

Q. Let me restate that because I see you're troubled by my question. The conditions of this policy or the conditions and stipulations, however you want to refer to it, either Exhibit 4 or Exhibit 5, those paragraphs which I think we described as boilerplate -- is that correct?

A. We did for the ALTA.

Q. Would it be fair to describe the conditions in this policy as boilerplate?

A. I don't have independent confirmation of that, but if the practice was the same back then as it is now, yes.

Q. Do you have any reason to believe that the

practice was any different in the 1960s as compared to the 1970s in terms of dealing with the boilerplate?

A. I don't have any reason to believe that it was different or the same.

Q. If you look at the policy that was issued to Kent School, which is Exhibit 2, you would agree with me that the, quote, conditions of this policy, close quote, page was not changed by any other aspect of the document, correct?

A. I don't see anything that modifies the conditions of this policy in the copy that I have.

Q. Would you agree with me, would you not, that the purpose of the standard form, whether it's NYBTU or ALTA, is to provide some uniformity from policy to policy, correct?

A. I would say that's a fair statement.

Q. That would apply both to Exhibit 2 and to Exhibit 4 through 8, correct?

A. I would say that's a fair assumption.

Q. Now, sir, you understand that Chicago Title has brought a lawsuit against Kent School, correct?

A. Yes.

Q. You understand that, correct me if I'm

Q. For example, is it Chicago Title's policy that there has to be a title search completed before a title policy is issued, either completed or on file?

A. The practice in terms of issuing the title policy is to perform an accurate title search first to get the raw data from the land records which would disclose what the encumbrances may or may not be on a particular piece of property. Whether an attorney does that him or herself or farms out the abstracting part of that to a title searcher, abstracter, or through the title company to farm it out to an abstracter and they review that title, depends on the individual circumstances.

MR. BRADY: Mr. Heffernan, can we get a stipulation that Exhibits 4, 5, 6, 7 and 8 are appropriate business records of Chicago Title?

MR. HEFFERNAN: They are accurate records of the policy forms that Chicago Title used as testified by Mr. Fanning.

MR. BRADY: I could go through some of the predicates just to make the record a little more complete.

MR. HEFFERNAN: I went through the predicates in my head. I think we can stipulate

that they are business records.

MR. BRADY: I think we already have a request for admission, and it's been admitted. So Exhibit 2 --

MR. HEFFERNAN: I think we both propounded that request for admission.

MR. BRADY: Has either one of us admitted it?

MR. HEFFERNAN: Yes, both.

MR. BRADY: This concludes the deposition from my perspective.

MR. HEFFERNAN: No questions.

(Deposition concluded: 3:05 p.m.)