# EXHIBIT F

LEXSEE 1995 CONN SUPER LEXIS 3444

**AETNA LIFE & CASUALTY CO. v. JOSEPH GENTILE, JR. ET AL**

**NO. 0122259**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF WATERBURY**

***1995 Conn. Super. LEXIS 3444***

**December 12, 1995, Decided**
**December 12, 1995, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**JUDGES:** L. PAUL SULLIVAN, J.

**OPINION BY:** L. PAUL SULLIVAN

**OPINION:**

MEMORANDUM OF DECISION

This is an action for a declaratory judgment to determine whether the Aetna Life and Casualty Company has a duty to defend Joseph Gentile and John Gentile, d/b/a Lakewood Auto Parts against certain claims by ITT Hartford Insurance Group in a subrogation action against Gentile for damage to the truck of ITT's insured Mattatuck Scrap Company caused by a fire at Gentile's premises.

The matter is submitted to this court on a stipulation of facts submitted by the parties on October 10, 1995.

The facts are not complicated. Gentile is in the business of repairing body damage and painting motor vehicles. At a given time, during the policy period, a fire broke out at Gentile's premises. At the time eleven vehicles of customers were at the premises, and they sustained damage by virtue of said fire. Included therein was a certain 1980 Mack truck owned by one Mattatuck Industrial Scrap Metal, Inc., which was insured for fire casualty [*2] loss by ITT Hartford Insurance Group.

The plaintiff in this action, Aetna, has settled with apparent finality all of the claims of the vehicle owners, except for the possibility of additional claims of loss to Mattatuck's Mack Truck as asserted by an action brought through Mattatuck's first party insurer ITT Hartford.

On January 4, 1991 the Aetna, through its claim's representative, sent a two page letter to Mattatuck, enclosing a copy of its appraisal of the damage to the truck (appraisal of Frank J. Haiko, Inc. Automobile Appraisal Service) reflecting damage in the amount of $ 8,183.29. The only open item in the appraisal was "possible additional electrical damage from heat unknown at this time".

The Aetna adjuster, Ms. Saracino further informed Mattatuck, by this letter, that the total coverage for all vehicles in this loss was $ 50,000 single limit for all vehicles. The letter further informed Mattatuck that if there was presently a claim for sums in addition to the appraisal amount, "that I be notified by January 30, 1991". The letter informed Mattatuck that if the total claims for all vehicles exceed the $ 50,000 coverage, a proportionate distribution of the proceeds of the [*3] policy would be made to the claimants. By letter of direction of December 28, 1992 Mattatuck, through one Pete Tatalias had signed a "direction of payment" letter directing that all payments be paid directly to Lakewood, who as repairer was undertaking the repairs of the vehicle.

The Haiko appraisal enclosed in the Aetna letter is dated November 30, 1990. Mattatuck did not respond to

the Aetna's letter, which invited Mattatuck to submit any claim for additional sums above and beyond the amount of the Haiko appraisal.

Thereafter, on February 4, 1991 Aetna forwarded to Lakewood Auto Painting and Body Work, a check in the amount of $ 49,029.98 bearing the specific caption "all seven vehicles full and payment and release of all claims". None of the individual claimants, including Mattatuck, were made payees on the check, nor were any releases obtained by Aetna from Mattatuck, or from any of the other claimants apparently. A check for $ 970.22 was also paid to one Cynthia Noti for "rental reimbursement". The sum of the two checks is $ 50,000.

On March 30, 1992 ITT Hartford, claiming to be the subrogatee of "Mattatuck", commenced suit against Gentile in the Superior Court, J.D. Waterbury, [*4] claiming damages in the amount of $ 28,000 arising out of the damage to Mattatuck's truck. There is nothing in the stipulation of facts to indicate that either the Aetna or Gentile had any idea that there was such additional loss, or that ITT Hartford had paid anything to Mattatuck, or that it had any subrogation claim whatsoever.

The Aetna seeks a declaratory judgment from this court determining that the Aetna has no duty to defend Gentile in the ITT Hartford action, and further that it has no duty to indemnify Gentile for any loss to Gentile for the ITT Hartford claim. Gentile conversely seeks, in response, "reasonable attorney's fees".

The issues presented by this action are quite narrow. The Aetna's policy with Gentile provides "Garage Keepers Coverage" for claims of this nature in the amount of $ 50,000.00. The policy covers the insured's liability for damages arising out of injury or loss to the property of others which are in the insured's care while attending, servicing, repairing, parking or storing in garage operations.

The Aetna has paid out a total of fifty thousand dollars in response to these claims.

The policy provides that the Aetna has "the right and duty to defend [*5] any 'suit' asking for these damages". The policy further states "Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgment or settlements". (emphasis added). The policy further reserves to the insurer Aetna the sole determination as to the negotiation and payment of claims. Section V, General Conditions provides, in paragraph 2b "Additionally, you and any other involved 'insured' must (1) assume no obligation, make no payment or incur no expense without our consent, except at the 'insured's' own cost". The policy gives to the insured no authority or decision making prerogative as to the payment of claims.

The Aetna paid to the benefit of the claimant Mattatuck Industrial Scrap Metal, Inc. a sum of money. Although the amount of the payment is not set forth in the stipulation of the parties, the transmittal letter from the Aetna to Mattatuck enclosed its appraisal of "Frank J. Haiko, Inc., Appraisers", in the amount of $ 8,183.24, leaving open only the question of "possible additional electrical damage from heat unknown at this time". The amount paid for Mattatuck is admittedly part of the $ 50,000 total [*6] payment.

The Aetna did not obtain a written release from Mattatuck. There is nothing to indicate that an oral agreement of release and settlement was obtained from Mattatuck. It may be argued, at the appropriate time, in Mattatuck's suit through ITT Hartford, that Mattatuck's failure to respond to Aetna's letter prior to acceptance of payment, constitutes an accord and satisfaction i.e. an acceptance of a settlement offer by accepting payment of the amount offered. This court cannot so conclude merely on the status of the facts before this court. The existence of the ITT-Mattatuck suit versus the insured Gentile precludes an inference that Aetna has in fact "settled" the Mattatuck claim.

Aetna did send a check in the amount of $ 49,029.78 to Lakewood Auto Body, marked "all seven vehicles, full and final payment and release of all claims". It must be understood that though Lakewood was the insured, it was in fact the actual repair shop for the vehicles, per the notation on the Haiko appraisal. The direction of the claimants to pay the funds to Lakewood must be understood in that context. There is nothing in the factual context of this case to indicate that Lakewood was given the authority [*7] by Mattatuck to act on its behalf to settle its claim. Nor that Lakewood was given the authority by Aetna to settle any claims by Mattatuck on behalf of Aetna. The release of Aetna by Lakewood can only be interpreted to be a release by the repairer Lakewood for the parts auto be furnished and labor to be performed in the specific repairs which it was to actually accomplished on these vehicles.

Hence the issue becomes focused. Was the payment to Lakewood made for the benefit of Mattatuck, a "settlement". If so, the policy limits are exhausted and there is no further duty to defend. If not, the payment must be subtracted from the fifty thousand dollar coverage for the purposes of this issue, and the duty to defend would then continue.

The law in this state is quite clear as to what is a "settlement", and has been so determined at an early time in the jurisprudence of this state:

"The word 'settle' when applied to an unliquidated claim or demand means its mutual adjustment between the parties and an agreement upon the balance". *State v. Staub, 61 Conn. 553, 568, 23 A. 924 (1892).*

"When applied to an unliquidated demand, the word means to effect a mutual adjustment between [*8] the parties and to agree upon the balance." Ballentine's Law Dictionary, Third Edition, p. 1165, 1166, citing *State v. Staub, 61 Conn. 553, 568, 23 A. 924.*

"...release of a tortfeasor in any cause of action involves what fairly and euphemistically are called 'settlements'". *Peck v. Jacquemin, 196 Conn. 53, 59, 491 A.2d 1043 (1985).*

Settlement means "...to fix the amount due a claimant...". See *Dowe v. Egan, 133 Conn. 112, 127, 48 A.2d 735 (1946)* citing *State v. Staub, supra.*

It is quite clear, in the instant case, that there is a continuing claim, asserted by Mattatuck, through its assignee and subrogee ITT Hartford, as to the damages sustained by Mattatuck. There is no written release signed by on or behalf of Mattatuck, nor is there any evidence or assertion that there is an oral agreement between Mattatuck and Aetna, an oral accord and satisfaction, in settlement of this claim.

This contract of insurance contains no specific definition of the word "settlement" so as to describe that word in a fashion different then as has been interpreted by the common law of this state. If there were to be ambiguity in the word "settlement" as utilized in this contract of [*9] insurance, the law is clear that the interpretation favoring the insured would be applicable.

"When, however, the words of an insurance contract are, without violence, susceptible to two or more interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." *Griffith v. Security Ins. Co., 167 Conn. 450, 460, 356 A.2d 94 (1975).* (Internal Citations omitted).

It is clear that partial payment, without an agreement of accord and satisfaction, written or oral, is not a "settlement". The payment of funds which do not constitute "payment of judgments or settlements" (the terms articulated in this contract) are not sums which can be mathematically utilized to conclude an exhaustion of the policy limits. This court concludes that what appears to be a partial payment made to Mattatuck is not a "settlement". When deducted from the fifty thousand dollar coverage, this compels the conclusion that the limit of insurance had not been exhausted of payment of "judgments or settlements". The duty of the plaintiff Aetna to defend John Gentile/and or Joseph Gentile Jr. hence does continue.

It is conceivable that the defendant, through counsel furnished [*10] by Aetna, may prevail in the defense of the underlying subrogation claim by ITT Hartford. The trial court, in that action, could conceivably conclude that there was in fact an accord and satisfaction, though the facts presented to this court and the arguments in the brief do not compel that conclusion.

The court further notes that Mattatuck and ITT Hartford apparently did not follow what is at least the customary practice of the ITT-insured Mattatuck assigning the entire claim to its first party carrier ITT, who would then assert the entire claim, and, after payment, then dividing the proceeds between insured and insurer according to their respective equitable interests. See Corpus Juris Decorundum, Assignments, § 65, p. 699; Corbin on Contracts, One Volume Edition, § 889 "Partial Assignments", p. 837; see also *Rock v. Adley Express Co. Inc., 130 Conn. 274, 282, 33 A.2d 329 (1943)* and *Smith v. Waterbury & Milldale Transway Co., 99 Conn. 446, 451, 121 A. 873 (1923)* giving sanction to the assignment of an entire claim as a unit, but not determining the viability of partial assignments, which have the obvious effect of attempting to divide single claim into multiple causes [*11] of action.

This court, and properly so, is not asked to determine whether Mattatuck's acceptance of the payment made to it by Aetna, in light of the invitation by Aetna to Mattatuck to present "a claim for anything in excess of the enclosed appraisal", constitutes the acceptance of an

offer of full and final settlement. These matters may well be determined by the litigation now pending in the case ITT Hartford Insurance Group v. John Gentile, CV92-0108452S. It should appear obvious that even if the Aetna were to succeed in defending that litigation, reflecting a retrospective conclusion that it had settled the claim by Mattatuck, the Aetna could not surcharge its insured Gentile for the cost of defense. The Aetna, having reserved total control of settlement of the claim, must assume the duty of defending the viability of any settlement which it may claim to have accomplished.

The first question presented to this court, to wit a determination that Aetna has no duty to defend John Gentile and/or Joseph Gentile, is answered in the negative. Aetna does in fact have a duty to defend the case of ITT Hartford Insurance Group v. Joseph Gentile et al, No. CV92-0108452S (J.D. Waterbury). [*12]

The second request is for "a determination from this court that it has no duty to indemnify these defendants for the subject loss under the terms of the subject insurance contract".

The relationship between insurer and insured is extremely complex in dealing with incidents involving multi-claimants wherein the total amount of the claims asserted have the prospect of exceeding the policy limits. It may be argued, from a simplistic standpoint, that the mere payment of the policy limits, in whatever fashion and in whatever amount the insurer may choose, in accordance with its sole discretion under the terms of the policy, satisfies the requirements of the policy. When, however, it is understood that the exhaustion of the policy exposes the insured to the financial jeopardy of payment of any excess sums from the insured's own funds, and bearing in mind the implications of unsatisfied judgments, the relationship between insurer and insured assumes a different complexion.

Appended to every contract is the implied covenant of "good faith and fair dealing". See cases such as *Carbone v. Atlantic Richfield Co., 204 Conn. 460, 528 A.2d 1137 (1987)*. Does the insurer assume a fiduciary [*13] relationship to the insured under circumstances presented by the potential of excess claims? Has the insurer utilized due care in paying each claim so as to guard against dissipation of the policy limits by payments which do not settle claims. Does the mandatory abrogation of the insured's right to settle the claims require of the insuror a high degree of care in undertaking that function? What level of coördination and dissemination of information, insurer to insured, is required under such circumstances? These questions have not been addressed in sufficient fashion by the parties in the facts presented to the court, or in the briefs submitted by the parties.

This court determines that the mere fact that payments have been made by the insurer which may equate to the extent of the policy limits does not in and of itself lead to the conclusion that the insurer has no duty to indemnify the insured. The court declines to grant declaratory judgment on this aspect of this action.

Lastly, the defendant Gentile et al seeks, by "claim for relief" in his answer of September 22, 1995 "Reasonable Attorney's fees". The court accepts this claim for relief as the defendant-insured's request [*14] for declaratory judgment as concerns attorney's fees for representing defendants Gentile, in both this declaratory judgment proceeding and in the underlying action.

As stated herein, this court has determined that the insurer Aetna has the duty to defend Gentile in the action pending in the Superior Court, "ITT Hartford Insurance Group v. John Gentile et al, Docket No. CV92-0108452S". "The breach in the terms of the policy made the defendant liable to pay the plaintiff his reasonable expenses in the defense of Patricia's suit against him". *Jenkins v. Indemnity Co., 152 Conn. 249, 261, 205 A.2d 780 (1964)*.

"Under all the circumstances the plaintiff is entitled to recover of the defendant the amount of the settlement in the Shuhi case, together with the expenses and attorney's fees incurred by it in defending the case..." *Missionaries of C of Mary, Inc. v. Aetna Casualty & Surety Co., 155 Conn. 104, 114, 230 A.2d 21 (1967)*.

"The general rule is that, in the absence of express contractual terms to the contrary, allowance of fees is limited to the defense of the claim which was indemnified and does not extend to services rendered in establishing the right to indemnification". [*15] *Burr v. Lichtenheim, 190 Conn. 351, 363, 460 A.2d 1290 (1983)*.

It may be argued that Gentile is entitled to payment of attorney's fees incurred solely in the defense of the underlying action, ITT Hartford v. Gentile, and would be entitled to no attorney's fees in defending this declaratory judgment action. However, once it is understood that this

is an action by the insurer seeking a declaratory judgment, the purpose of which is to foreclose Gentile, the insured, from eventually claiming attorney's fees for defending the underlying action, ITT Hartford v. Gentile, then this declaratory judgment is in no fashion an optional action by an insured seeking indemnity from a judgment, including attorney's fees for having defended the underlying claim. Rather, this action is an attempt by the plaintiff insuror to foreclose the insured's right to assert an eventual claim for which indemnity and attorney's fees for defense of the underlying action may in the future be brought by the insured.

A declaratory judgment is an extraordinary procedure. Though apparently well meaning, it is here legally unnecessary, is brought for the convenience of the insurer plaintiff, [*16] and thrusts upon the insured defendant the unnecessary expense of having to defend against this action so as to preserve his right to be furnished a defense of the underlying action, a right to which he is entitled under the specific provisions of the policy. Viewed accordingly, the right to be furnished a defense to this action is a part and parcel of the continuing right to be furnished a defense to the underlying action. The insuror cannot condition the insured's continuing right to a defense by imposing upon the insured, as a condition precedent, the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit.

Where an insurer perceives a conflict of interest between itself and its insured prior to or during the course of a trial it is customary, legally appropriate, and often legally necessary for the insurer to provide independent counsel to the insured so as to not jeopardize the insured's rights under the terms of the contract. Viewed in this additional light, it is appropriate that the insurer furnish to the insured a defense or reimburse to the insured the cost of defense of this declaratory judgment action which it thrust [*17] upon the insured.

The court determines that the defendant insured is entitled to be reimbursed by the insurer for the insured's reasonable attorney's fees and costs in defending the underlying action to date here of, and to be reimbursed his reasonable attorney's fees and costs in defending against this declaratory judgment action.

L. PAUL SULLIVAN, J.