# EXHIBIT I

LEXSEE 2000 CONN SUPER LEXIS 68

**General Plasma, Inc. v. Reliance Insurance Company**

**CV 970575899S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF HARTFORD - NEW BRITAIN, AT HARTFORD**

***2000 Conn. Super. LEXIS 68***

**January 11, 2000, Decided**
**January 11, 2000, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Plaintiff General Plasma's motion for summary judgement granted. Defendant Reliance's motion for summary judgment denied.

**JUDGES:** Peck, J.

**OPINION BY:** PECK

**OPINION:** MEMORANDUM OF DECISION CROSS MOTIONS FOR SUMMARY JUDGMENT

Presently before the court are the plaintiff General Plasma, Inc.'s (General Plasma) and the defendant Reliance Insurance Company's (Reliance) cross motions for summary judgment. The parties have stipulated to the following essential facts: General Plasma was insured by Reliance under a comprehensive general liability policy (policy). The effective dates of the policy were from October 31, 1991 through October 31, 1992. In November 1991, General Plasma contracted with United Technologies Corporation (UTC) to provide services on a drum rotor assembly, which was furnished and owned by UTC. n1 General Plasma completed the work and returned the assembly to UTC on or about November 21, 1991. (See Joint Trial Management Conference Report, 7/8/99, pp. 1-3.)

n1 Under the contract, General Plasma stripped and recoated four of five rows of teeth on the drum rotor assembly.

[*2]

On November 3, 1993, UTC commenced a civil action against General Plasma; *United Technologies Corporation v. General Plasma,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93-0532569 (withdrawn, December 27, 1997); in which UTC sought damages for General Plasma's allegedly negligent servicing of the assembly. General Plasma soon thereafter notified Reliance of the UTC action, and demanded that Reliance defend and indemnify pursuant to the policy. Reliance denied coverage and refused to defend General Plasma in the UTC action. Consequently, General Plasma retained legal counsel and incurred expenses associated with its defense at a cost to General Plasma of $ 179,234.19. General Plasma and UTC settled the UTC action in the amount of $ 200,000, which Reliance agrees was a reasonable settlement. n2

n2 The parties also have stipulated that General Plasma is pursuing the present action against Reliance pursuant to a contingent fee agreement with its counsel.

General [*3] Plasma brings this lawsuit against Reliance seeking reimbursement for funds paid to settle the UTC

action and for attorney's fees and costs incurred in the UTC action as well as in the present action. Pursuant to *Practice Book 17-44* et seq., General Plasma and Reliance filed cross motions for summary judgment with accompanying documentation. General Plasma moves for summary judgment on the ground that Reliance had a duty, pursuant to the policy, to defend and indemnify it against UTC's claims. Reliance moves for summary judgment, however, on the ground that the aircraft product exclusion contained in the policy excludes coverage.

"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989).* "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Practice Book 17-49.* Since the "construction of a contract of insurance presents a question of [*4] law"; (internal quotation marks omitted) *Imperial Casualty & Indemnity Co. v. State, 246 Conn. 313, 325, 714 A.2d 1230 (1998);* the court may decide the issue on a motion for summary judgment.

The issues presented in the parties' respective motions for summary judgment are whether Reliance had a duty to defend General Plasma in the UTC action; whether Reliance had a duty to indemnify General Plasma for the amount paid in settlement of that action; and whether General Plasma is entitled to recover expenses, including attorney's fees, that it has incurred in bringing the present action against Reliance.

I

DUTY TO DEFEND AND DUTY TO INDEMNIFY

General Plasma argues that, pursuant to the policy, Reliance had a duty to defend and indemnify it against UTC's claims. Reliance argues, on the other hand, that the aircraft products exclusion in endorsement number 4 to the policy excludes coverage of UTC's claims. Whether Reliance had a duty to defend and indemnify General Plasma is determined by the language of the policy in question. See *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, 247 Conn. 801, 805-806, 724 A.2d 1117 (1999).* [*5]

"It is the function of the court to construe the provisions of the contract of insurance. *Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 418 A.2d 944 (1979).* The interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. *Aetna Life & Casualty Co. v. Bulaong, 218 Conn. 51, 58, 588 A.2d 138 (1991).* The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy . . . *Imperial Casualty & Indemnity Co. v. State, 246 Conn. 313, 324-25, 714 A.2d 1230 (1998).* A necessary [*6] predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous . . . *Kelly v. Figueiredo, 223 Conn. 31, 37, 610 A.2d 1296 (1992).*" (Internal quotation marks omitted.) *Springdale Donuts, Inc. v. Aetna Casualty Surely Co. of Illinois, supra, 247 Conn. 805-06.*

The court notes "at the outset that it is well settled that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . ." (Citations omitted; internal quotation marks omitted. [*7] ) *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, supra, 247 Conn. 807,* quoting *Flint v. Universal Machine, 238 Conn. 637, 646-47, 679 A.2d 929 (1996).* Since the parties to the present action have stipulated to the governing facts, the court is limited to determining whether, in the absence of a policy

exclusion, the claimed injuries alleged in the UTC action are covered under the policy at issue, and whether Reliance had a duty to defend and indemnify General Plasma in the UTC action.

The policy at issue is a comprehensive general liability policy. The effective policy period was from October 31, 1991 through October 31, 1992. Under the policy, Reliance agreed "to pay on behalf of the insured all sums which [General Plasma] became legally obligated to pay as compensatory damages by reason of liability imposed upon [General Plasma] by law, or assumed by [General Plasma] under written contract, because of damage to, or destruction of, or loss of use of tangible property resulting from an occurrence n3 during the Policy Period." Reliance also agreed ". . . if claim is made or suit brought within Canada or the United States [*8] of America, [to] defend such claim or suit against the insured, even if such claim or suit is groundless, false or fraudulent, provided the company's liability with respect to such damages has not been exhausted by payment of judgment or settlements." Reliance further agreed to "pay all expenses incurred by [General Plasma], all legal costs or any other costs taxed against [General Plasma] in any such suit or appeal or judgment and all interest accruing before and after entry of judgment until [Reliance] has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of [Reliance's] liability thereon."

n3 The policy defines an occurrence as "an accident or happening or event or a continuous or repeated exposure to conditions during the policy period which unexpectedly and unintentionally results in personal injury or property damage. All such exposure to substantially the same general conditions shall be deemed one occurrence."

The language of the policy is clear [*9] and unambiguous as to Reliance's duty to defend and indemnify General Plasma against suits, such as the UTC action, alleging property damage. Nevertheless, Reliance argues that endorsement number 4, titled "Aircraft Products and Grounding Liability Exclusion," excludes coverage of UTC's claims against General Plasma because the drum rotor assembly is an aircraft product as defined in the referenced exclusion.

For the reasons that follow, this court finds that endorsement number 4 does not apply to UTC's claims brought against General Plasma in *United Technologies Corporation v. General Plasma, supra*, Docket No. 532569, because the drum rotor assembly is not an aircraft product as the term is defined in the policy. Therefore, pursuant to the policy, Reliance had a duty to defend and indemnify General Plasma against UTC's claims. Further, Reliance's refusal to defend and indemnify General Plasma constituted a breach of the policy.

The court rejects Reliance's claim that the drum rotor assembly is an aircraft product as the term is defined in endorsement number 4. Endorsement number 4 provides in relevant part "that the insurance afforded by this policy shall not apply with [*10] respect to liability arising out of aircraft products . . . [or] to personal injury or property damage included within the 'Completed Operations Hazard' or the 'Product Hazard' with respect to 'Aircraft Products." n4 Aircraft products are defined as: "(1) Aircraft, including missiles or spacecraft and any ground support or control equipment used therewith; (2) Any article furnished by or on behalf of the Insured and installed in aircraft or used in connection with aircraft or for spare or replacement parts for aircraft, including ground handling tools and equipment; (3) Training aids, instructions, manuals, blueprints, engineering or other advice or services and labour relating to such aircraft or articles."

n4 The "Completed Product Hazard" or "Product Hazard" sections of the policy are not material to the issues presently before the court.

In keeping with the rule that "the policy words must be accorded their natural and ordinary meaning"; *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, supra, 247 Conn. 805-06;* [*11] the court holds that the drum rotor assembly is not an aircraft product as defined in endorsement number 4. Examining the complaint in

the UTC action, it is clear that the motor rotor assembly is a component of a jet engine. (See Plaintiff's Complaint, 11/03/93, 4-7, in *United Technologies Corporation v. General Plasma, supra,* Docket No. 532569.) It is not an aircraft, missile, spacecraft or ground or control equipment used therewith, as aircraft products are defined in the first definition provided in endorsement number 4.

Secondly, the drum rotor assembly is not an aircraft product as the term is defined in the second definition. In order to be considered an aircraft product under the second definition, the article must have been (1) furnished by or on behalf of General Plasma and (2) installed in aircraft or used in connection with aircraft or for spare or replacement parts for aircraft. Although the article at issue clearly was installed in an aircraft, it is equally clear that it was neither furnished by nor on behalf of General Plasma. Rather, "the Drum Motor Assembly itself was furnished and at all times owned by UTC." (Joint Trial Management Conference Report, 7/08/99, p. [*12] 2.)

Furthermore, the drum motor assembly cannot be considered an aircraft product under the third definition because it is neither a training aid, instruction manual, blueprint, or engineering or other advice and services, nor was the labor performed on the assembly related to such aircraft or articles as defined in the first and second definitions of aircraft products. Finally, to the extent that there is ambiguity in the terms of the exclusion provision, it must be interpreted in favor of coverage because Reliance drafted the policy. *Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, supra, 247 Conn. 806.* The motion for summary judgment filed by General Plasma as to the obligation of Reliance to defend and indemnify it against UTC's claims is therefore granted. Accordingly, Reliance's motion for summary judgment is denied. Since the parties stipulated that the expenses associated with the defense of the UTC action of $ 179,234.19 and the settlement amount of $ 200,000 were reasonable, Reliance is liable to General Plasma for those amounts.

II

ATTORNEYS FEES AND COSTS IN THE PRESENT ACTION

General Plasma argues that Reliance's failure [*13] to defend in breach of its obligation under the policy "also rendered Reliance liable to General Plasma for the expenses, including attorneys fees, incurred by General Plasma in the instant action." (Plaintiff's Memorandum of Law, 8/06/99, p. 11.) Relying on the general rule that parties to an action must shoulder their respective economic burdens of litigation, Reliance argues that there is no basis in Connecticut statutory law or in the language of the policy at issue for awarding General Plasma attorneys fees incurred in the present action.

Connecticut follows the American rule. *Rizzo v. Grosso, 240 Conn. 58, 72, 689 A.2d 1097 (1997).* Under this rule, "attorneys fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *Id.* "There are few exceptions. For example, a specific contractual term may provide for the recovery of attorneys fees and costs . . . or a statute may confer such rights." (Citations omitted.) *Id., 72.*

General Plasma has not identified any specific policy language or statutory authority under which this court could grant the requested relief. [*14] General Plasma has cited, however, several cases for the proposition that attorneys fees incurred in a declaratory action may be recovered against an insurer who breaches its obligations under an insurance policy. See *Chicago Title Ins. Co. v. F.D.I.C., 172 F.3d 601, 602-04 (8th Cir. 1999); Preferred Mutual Ins. Co. v. Gamache, 426 Mass. 93, 95-98, 686 N.E.2d 989 (Mass. 1997); City of West Haven v. Liberty Mutual Ins. Co., 639 F. Supp. 1012, 1020 (D.Conn. 1986).* n5 In addition, there is one Connecticut Superior Court decision, in which attorneys fees were awarded in a declaratory judgment action to determine whether an insurer had a duty to defend. See *Aetna Life & Casualty Co. v. Gentile, 1995 Conn. Super. LEXIS 3444,* Superior Court, judicial district of Waterbury, Docket No. 122259 (December 12, 1995) (Sullivan, J.) (15 CONN. L. RPTR. 451).

n5 Although the federal court in *City of West Haven v. Liberty Mutual Ins. Co., 639 F. Supp. 1012 (D.Conn. 1996),* cited *Schurgast v. Schumann, 156 Conn. 471, 242 A.2d 695 (1968),* and *Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co., 155 Conn. 104, 230 A.2d 21 (1967),* for the proposition that "under Connecticut law, damages for

breach of duty to defend in an insurance contract are the sum of any settlement or judgment, plus counsel fees in both the underlying action and the action for failure to defend, plus interest"; *City of West Haven v. Liberty Mutual Ins. Co., supra, 639 F. Supp. 1020;* neither case dealt with the issue of whether an insured may recover attorneys fees in a subsequent action to determine the insurer's duty to defend and indemnify under an insurance policy. In Schurgast, the insured sought to determine whether his insurer had a duty to defend pursuant to a policy. The court held that the insurer had a duty to defend the insured, and was ordered to pay the judgment obtained against the insured. See *Schurgast v. Schumann, supra, 156 Conn. 491.*

In Missionaries of the Company of Mary, Inc., the insured's claim for attorneys fees for the subsequent action was withdrawn and, thus, the court did not rule on the issue. See *Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co., supra, 155 Conn. 106, 115.* Nevertheless, the court discussed the proper measure of the insured's recovery when the insurer refuses to defend. The court held that because the defendant insurer, "in effect, waived the opportunity which was open to it to perform its contractual duty to defend under a reservation of its right to contest the obligation to indemnify the plaintiff [insured], reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it." *Id., 113-14.* In so holding, the court reasoned that the insurer should not "be permitted, by its breach of the contract, to cast upon the plaintiff the burden of proving a causal relation between the defendant's breach of duty to defend and the results which are claimed to have flowed from it." *Id., 114;* see also *City of West Haven v. Liberty Mutual Ins. Co., supra, 639 F. Supp. 1012* (awarding the insured attorneys fees and costs incurred in a subsequent action to determine the insurer's duties).

[*15]

In *Aetna Life & Casualty Co. v. Gentile,* the court, Sullivan, J, awarded the defendant insured attorneys fees and costs when the insurer brought a declaratory judgment action to determine its duties under an insurance policy. *Aetna Life & Casualty Co. v. Gentile, supra, 1995 Conn. Super. LEXIS 3444,* 15 CONN. L. RPTR. 454. The court reasoned that the declaratory judgment action was brought for the "convenience of the insurer plaintiff" and that the right of the insured to be furnished a defense to the declaratory judgment action "is a part and parcel of the continuing right to be furnished a defense to the underlying action." The court concluded that "the insurer cannot condition the insured's continuing right to a defense by imposing upon the insured, *as a condition precedent,* the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit." (Emphasis in original.) *Id.*

For the policy reasons articulated by the court in *Missionaries of the Company of Mary, Inc., 155 Conn. 104, 230 A.2d 21 (1967)* and *Aetna Life & Casualty Co. v. Gentile, supra,* this court sees no reason to limit an insured's right to recover attorneys fees [*16] in a subsequent action for failure to defend merely to those where the insurer instituted the action. Whether Reliance attempted to foreclose on General Plasma's contractual right to a defense by instituting a declaratory action, or by merely refusing to defend and then waiting for General Plasma to institute the action is immaterial. General Plasma remains in the same position of expending extraordinary funds to preserve its right to a contractual benefit. The only condition precedent under the policy, which was issued to General Plasma, is that any claims against General Plasma must be covered under the policy. When General Plasma sought a defense to UTC's claims, Reliance made the conscious choice to refuse to defend, rather than defend under a reservation of its right to contest coverage. Although this precise claim was withdrawn and therefore left undecided by the *Missionaries* case, in awarding the plaintiffs the settlement amount, expenses, attorneys fees and interest incurred in the underlying action, the Supreme Court held, "reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation

reasonably incurred by it." (Emphasis added. [*17] ) *Missionaries, supra, 155 Conn. 114.* Since the expenses incurred in a subsequent action to enforce the underlying contractual obligation also appear to be "reasonably incurred," under all the circumstances, Reliance should reimburse General Plasma for its legal expenses incurred in the instant action. See also *Black v. Goodwin, Loomis & Britton, Inc., 239 Conn. 144, 152-53, 681 A.2d 293 (1996)* ("An insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured").

As one court noted, if the American rule were followed in breach of duty to defend cases, "it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually [*18] no better off financially than if he had never had the contract right mentioned above." *Preferred Mutual Ins. Co. v. Gamache, supra, 426 Mass. 93, 96-97.* "After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof." *Id. at 96.*

*Chicago Title Ins. Co. v. F.D.I.C., supra, 172 F.3d 601,* provides further support for awarding attorneys fees and costs to the insured in the present action. In that case, as in the case at bar, the insured requested attorneys fees and costs incurred in a subsequent declaratory judgment action. The insured argued that "because [the insurer] had not reimbursed the [insured] for defense fees and costs until forced to so by the district court that this refusal to pay was a breach of duty to defend which, in turn, authorized an award of attorneys fees and costs in this [subsequent] litigation." *Id. at 604.* In awarding the insured attorneys fees and costs incurred defending the subsequent action, the court concluded that "when a breach of the duty to defend occurs, the insured [*19] is entitled to be reimbursed for attorneys fees and costs expended to force the insurer to pay for the defense." (Internal quotation marks omitted.) *Id. at 606.* The court reasoned: "A breach of the contractual duty to defend usually occurs by wrongfully refusing to defend the insured . . . This does not mean that the insurer cannot contest coverage. If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend . . . Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorneys fees and costs in the declaratory judgment action to determine coverage. Attorneys fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation." (Citations omitted.) *Id. at 605.*

The present action is not a case in which the insurer fulfilled its duty to defend and then contested coverage. Reliance refused to defend and indemnify General Plasma in violation of the clear and unambiguous language [*20] of the policy. Because the court has found that Reliance breached its duty to defend and indemnify General Plasma, it must now bear the consequences of its decision. Therefore, General Plasma is entitled to reasonable attorneys fees and costs incurred in this action. Accordingly, General Plasma is hereby ordered to submit appropriate papers in support of its claim for attorneys fees incurred in the prosecution of this action within thirty days.

*CONCLUSION*

Pursuant to an insurance policy issued to General Plasma, Reliance had a duty to defend and indemnify General Plasma in the underlying UTC action, and it breached that duty when it refused to do so. Pursuant to its contractual duty to indemnify, Reliance is liable for the $ 200,000 that General Plasma paid to UTC in settlement *of United Technologies Corporation v. General Plasma, supra*, Docket No. 532569. Reliance is also liable for reasonable attorneys fees and costs that General Plasma incurred in defending the UTC action in the amount of $ 179,234.19 in accordance with the agreement of the parties. n6 Further, the court hereby orders that General Plasma is entitled to reasonable attorneys fees and costs incurred in [*21] bringing the present action.

n6 See Joint Trial Management Conference Report, 7/8/99, pp. 2-3.

The plaintiff General Plasma's motion for summary judgement is hereby granted. The defendant Reliance's motion for summary judgment is denied.

Peck, J.