# Exhibit A

which time an extensive hearing was held during which both parties testified.

The court found the defendant to be in arrears on the order in the sum of $14,417.21, being the amount of college expenses due for the parties' daughter Hayley, who is enrolled as a freshman at the University of Rochester. At the request of the plaintiff, the defendant was not found to be in contempt, but was given 30 days in which to pay the present amount due on these expenses. It should be noted that the court found sufficient credible evidence to find the defendant's conduct sufficient to rise to the level of contempt. See *Mays v. Mays*, 193 Conn. 261 (1984).

The defendant's motion for modification was denied.

The defendant has appealed from these orders and pursuant to Practice Book §4051 has filed a motion for articulation.

The issues in this matter are as follows:

I. Is the defendant excused from performing under the terms of the decree concerning college education because there was no mutual agreement between the parties as to which college the parties' daughter Hayley was to attend?

II. Is the defendant entitled to a modification of the college education payment order contained in the decree because of a substantial change of circumstances as alleged by the defendant?

I. Is the defendant excused from performing because of no mutual agreement?

The court finds that the defendant is not excused from performing on two grounds.

A. There was ample credible evidence to find that the plaintiff did in fact attempt to reach an agreement with the defendant concerning the college their daughter was to attend. Through the daughter, the plaintiff wrote the defendant a letter on October 29, 1986 detailing her choice of colleges and again on December 24, 1986 through her attorney another letter was sent to the defendant. None of the responses from the defendant indicated any intention on his part to discuss or negotiate the college the daughter was to attend. The court finds that the plaintiff complied with the terms of this clause and the defendant did not.

B. Inasmuch as the terms of the dissolution decree embody those of the settlement agreement of the parties, the terms should be interpreted consistently with accepted contract principles. *Marisco v. Marisco*, 195 Conn. 491, 493 (1985).

It is clear to the court that the defendant's defense under this paragraph must fail because under the principle of contract law the defendant's breach of this portion of the agreement constituted an anticipatory breach. See *Gilman v. Pedersen*, 182 Conn. 582, 584 (1981).

The defendant's responses to the plaintiff's overtures were simply that he could not afford college for the daughter (Tr. pp. 11, 12, 13, 20, 22, 24). In view of his outright refusal to sanction the daughter's attendance at college, there was nothing further for the plaintiff to negotiate.

II. Is the defendant entitled to a modification of the decree with respect to the college education portion?

The defendant asserts that the court should terminate his obligation to pay college expenses because he now is unemployed and virtually unable to work because of illness except at certain occupations such as managing a general store. He also alleges that he now has no liquid or available assets to enable him to pay the order.

The background of the defendant's employment is as follows: At the time of the decree, the defendant was a self-employed dentist earning, by his own admission, a net income in excess of $62,000 annually, plus an unspecified amount which he was contributing to his pension and profit sharing plans. In 1985, the defendant asserts that he became a victim of "burn out" and voluntarily gave up the practice of dentistry. He thereupon moved to Vermont where he and his new wife acquired and ran a general store. The defendant claims that he has a mental illness which requires him to take lithium. He acknowledges, however, that he has been taking this drug for at least 13 years (Tr. p. 51). He further asserts that he is under the care of a psychiatrist although he has not seen him for 6 or 8 months (Tr. p. 51).

The court finds that the defendant voluntarily reduced his income from a net of at least $62,000 per year to zero, except for approximately $30,000 net which he receives from monies due him from the sale of assets. The court finds that the defendant has an earning capacity of at least $62,000 net annually and has exhibited to the court no valid reason why he cannot earn this amount of income. See *Schmidt v. Schmidt*, 180 Conn. 184, 189 (1980); *Miller v. Miller*, 181 Conn. 610, 612 (1980).

The court also finds that despite the defendant's becoming unemployed, his assets have in fact increased. At the time of the decree in 1978, the defendant's assets and liabilities as stated in his financial affidavit indicated a net liability of $94,138.

In 1985, the defendant sold his dental practice, the building housing his dental office, and his residence. The defendant received cash and notes for these assets approximately $577,000 less certain expenses (Tr., p. 84, 52). He claims he paid debts out of this totalling approximately $250,000. He nevertheless now acknowledges net assets of at least $403,000 (see defendant's financial affidavit of October 13, 1987).

The defendant claims that he is unable to meet the college expense order because although he has borrowed from his pension and profit sharing plan for the purchase of his house and general store, he cannot reach this resource of $350,000 for the payment of the order and should therefore be excused from paying it.

The court finds that there is no substantial change of circumstances warranting a modification of the present order. The court specifically finds that the defendant's assets have in fact increased substantially. The court finds further that the defendant's assets may be reasonably reached by him to enable payment to be made on the order in question. Defendant, in addition to having income from the various loans outstanding to him, has the ability to borrow on his home and if necessary to borrow from his pension plan. If this cannot be done without the imposition of a tax or penalty, the tax or penalty should be paid. ■

## First American Title Insurance Co. v. Frank T. Jaworoski

**INSURANCE, TITLE, COVERAGE - DECLARATORY JUDGMENT - ATTORNEYS' FEES**

[Case of first impression] Plaintiff's motion to strike counterclaim for attorneys' fees in declaratory judgment action concerning coverage of title insurance policy. Held, denied. When an insured defends a declaratory judgment action regarding the issue of coverage, the insured is entitled to reasonable attorneys' fees.

**COURT:** Stamford-Norwalk, at Stamford
**DATE:** January 15, 1988
**DOCKET NO.:** CV87-0085495
**JUDGE:** Cioffi

This is a declaratory judgment action initiated by plaintiff First American Title Insurance Company to determine whether it is obligated to defend an action brought by a third party against its insured, defendant Frank Jaworoski. First American asserts that it is not obligated to defend because at the time defendant purchased the policy he was aware of a possible defect in title, but did not

reveal this to First American. Exclusion number three of the policy states that any potential defects known by the insured and not revealed to the insurer are excluded from coverage.

Defendant Jaworoski asserts by way of counterclaim that, pursuant to the contract of insurance, plaintiff is obligated to pay defendant's costs and attorneys' fees in the declaratory judgment proceeding. First American has moved to strike the counterclaim, asserting that the policy does not provide for the payment of attorneys' fees and that Connecticut law does not provide for an allowance for attorneys' fees in declaratory judgment actions.

A motion to strike challenges the legal sufficiency of the allegations of any complaint, counterclaim, or cross-complaint. Conn. Practice Bk. §152 (1978). In passing on a motion to strike, the court must take the facts alleged favorably to the pleader, *Schmidt v. Yardney Electric Corporation*, 4 Conn. App. 69, 74 (1985), and in so doing the court will consider the factual allegations of the pleading to be true. *Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc.*, 39 Conn. Sup. 129, 131 (1983).

The rule in Connecticut is that, absent contractual or statutory authorization, each party must pay its own attorneys' fees. *Gino's Pizza of East Hartford, Inc. v. Kaplan*, 193 Conn. 135, 140 (1984).

Those portions of the insurance policy which defendant cites as providing for the payment of costs and attorneys' fees read as follows:

3(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or a defense interposed against an insured in an action to enforce a contract for a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.

6(b) The Company will pay. . .all costs, attorneys' fees and expenses in litigation carried on by such insured with the written authorization of the Company.

"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction." *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, 512 (1982). "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." *Id.* at 512-13. However, when the words of the policy are susceptible of two interpretations, the construction most favorable to the insured should be adopted. *Id.* at 513.

In clause 3(a), First American agreed to provide a defense, at its own cost, in all litigation against defendant, "to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy." First American contends that the meaning of the clause is that First American would defend an action initiated by a third party challenging defendant's title. However, the defendant contends that the meaning of the clause is unclear, and that the construction most favorable to defendant should therefore be adopted.

Under clause 6(b) of the policy, First American agreed to pay attorneys' fees for any litigation which defendant carried on with the written authorization of the company. Defendant argues that the bringing of this declaratory judgment action by the company constitutes its written authorization. A number of courts would seem to agree with defendant's position. *See Accidental Fire & Cas. Co. v. Cook*, 435 P.2d 364 (Idaho, 1967); *Allstate Insurance Company v. Robins*, 597 P.2d 1052 (Col. App. 1979). In those cases the courts interpreted a standard policy provision requiring the company to reimburse the insured for all "reasonable expenses incurred by the insured at the Company's request." The courts ruled that, by bringing a declaratory judgment action against the insured, the insurer was in effect "requesting" him to incur reasonable expenses. *Occidental*, 435 P.2d at 368; *Allstate*, 597 P.2d at 1053. Such a construction was rejected by the Fifth Circuit as "a mere play upon words" in *Milwaukee Mechanics Ins. Co. v. Davis*, 198 F.2d 441, 445 (5th Cir. 1952).

Despite the general rule that each party must pay his own attorneys' fees, it is generally held that attorneys' fees are recoverable where such fees are incurred in defending an action which one's insurer was obligated by the terms of the policy to defend, and unjustifiably refused to do so. Annot., 87 A.L.R.3d 429, 433 (1978). Further, there is a split of authority as to whether the insurer is to be held liable for fees incurred in a declaratory judgment action brought to establish the existence of coverage under the policy in question. *Id.* at 434. "There are innumerable cases dealing with this specific issue, and the courts have resolved the issue in practically every conceivable way." *Crist v. Insurance Co. of North America*, 529 F. Supp. 601, 607 (D. Utah 1982).

There does not appear to be a Connecticut case which addresses this precise question. In *Peterson v. Norwalk*, 152 Conn. 77, 80 (1964), the court noted that "[n]either the statutes nor the rules provide for an allowance for counsel fees in declaratory judgment actions." However, this case did not involve the determination of coverage under an insurance policy.

The supreme courts of a number of states, including Idaho, Maryland, Minnesota, and Ohio, have held that an insured who has incurred attorneys' fees in successful declaratory judgment litigation with his insurer may recover them from the insurer. *Union Mutual Fire Insurance Co. v. Inhabitants of the Town of Topsham*, 441 A.2d 1012, 1018 (Me. 1982). The highest courts of other states, including Alabama, California, Iowa, New Jersey, Tennessee, and Washington have denied such recovery. *Id.* In New York the rule appears to be that the insured is entitled to recover his expenses when he defends such an action, but not when he brings it as plaintiff. *Id.*

The majority rule is that an insurer is not liable for the insured's attorneys' fees in a declaratory judgment action to establish insurance coverage unless it is shown that the insurer has acted in bad faith or fraudulently or was stubbornly litigious. 22 Am. Jur.2d *Declaratory Judgments* §101 (Supp.) (1987). The theory behind the rule appears to be that it would be unfair to force the company to choose between defending an action it may not be obligated to defend or suing for a declaratory judgment, with liability for the insured's attorneys' fees if the suit is unsuccessful. "It would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts." *Western Casualty & Surety Company v. Merchant*, 615 P.2d 423, 427 (Utah 1980).

Appleman, in his treatise on insurance law, argues that the majority rule is unfair:

After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. . . .[T]he insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off than if he had never had the contract right mentioned above.

Appleman, *Insurance Law and Practice* §4691 (1979). A number of courts have cited Appleman in finding that an insured is entitled to attorneys' fees in a successful declaratory judgment action with the insurer. *See Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156 (W. Va. 1986).

Realizing that there is a split of authority, this court adopts the reasoning of Appleman and holds that when an insured wrongfully defends a declaratory judgment action regarding the issue of coverage, the insured is entitled to reasonable attorneys' fees.

Accidingly, the motion to strike is denied. ■

LEXSEE

Signal unavailable
As of: Dec 13, 2006

**Henry Velenchik v. First Union National Bank**

**CV000372515**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF FAIRFIELD, AT BRIDGEPORT**

**2002 Conn. Super. LEXIS 1975**

**June 7, 2002, Decided**
**June 7, 2002, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Plaintiff's motion to strike denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff debtor filed a complaint against defendant note holder asserting, inter alia, bad faith. The note holder filed its answer to the complaint which included a counterclaim alleging that according to the terms of the notes signed by the debtor, the debtor was required to pay the attorneys fees of the note holder. The debtor moved to strike the counterclaim.

**OVERVIEW:** The debtor signed three promissory notes for loans he obtained from the predecessor note holder. He also signed a security agreement in which he pledged the accounts receivable and inventory of his business as well as an assignment of the rents of his real property to the note holder. The debtor subsequently defaulted on the notes. The note holder initiated a civil action against the debtor, garnished his business inventory, bank accounts, and accounts receivable, and auctioned off his inventory. The court held the fees and costs the note holder claimed to have incurred were incurred in its defense of its attempt to collect the debt the debtor owed. Therefore, the debtor's complaint and the note holder's counterclaim arose out of the note holder's actions in enforcing the notes and the costs incurred as a result. Because the facts were related, it was in the interest of judicial economy to have the cases tried together. All that was required was that the note holder assert that there was a contractual exception in the case to the American Rule which would entitle it to reasonable attorneys fees. The note holder met that requirement in its counterclaim.

**OUTCOME:** The motion to strike was denied.

**CORE TERMS:** counterclaim, motion to strike, quotation, American Rule, contractual, cause of action, prevail, real property, promissory, inventory, mortgage, necessarily implied, independent action, legal sufficiency, prevailing, contest, pleaded, holder, accounts receivable, prevailing party, unpaid balance, third party, real estate, defaulted, notified, counters

**LexisNexis(R) Headnotes**

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview***
***Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview***
[HN1] See Conn. Gen. Prac. Book, R. Super. Ct. § 10-39(a).

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview***
[HN2] The purpose of a motion to strike is to contest the legal sufficiency of the allegations of a pleading to state a claim upon which relief can be granted.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview***
[HN3] The role of the trial court in ruling on a motion to strike is to examine the challenged pleading construed in favor of the pleading party, to determine whether the pleading party has stated a legally sufficient cause of action. In ruling on a motion to strike, the court is limited to the facts alleged in the challenged pleading.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview***
[HN4] If the facts provable in a pleading would support a cause of action, a motion to strike must be denied. Moreover, what is necessarily implied in an allegation need not be expressly alleged. It is fundamental that in determining the sufficiency of a pleading challenged by a motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. Indeed, pleadings must be construed broadly and realistically rather than narrowly and technically.

***Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview***
***Civil Procedure > Pleading & Practice > Pleadings > Cross-Claims > General Overview***
[HN5] Under Connecticut's rules of practice, a counterclaim, if proper, is an independent action. It has been defined as a cause of action existing in favor of a defendant against a plaintiff which a defendant pleads to diminish, defeat or otherwise affect a plaintiff's claim and also allows recovery by the defendant. For purposes of examining pleadings relative to a counterclaim then, the party asserting it becomes the plaintiff on the counterclaim. Accordingly, the general rule is the counterclaim should be pleaded in exactly the same way the claim would be pleaded in the complaint in the independent action.

***Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview***
***Civil Procedure > Pleading & Practice > Pleadings > Cross-Claims > General Overview***
[HN6] See Conn. Gen. Prac. Book, R. Super. Ct. § 10-10.

***Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview***
***Civil Procedure > Pleading & Practice > Pleadings > Cross-Claims > General Overview***
***Civil Procedure > Appeals > Standards of Review > Abuse of Discretion***
[HN7] If a claim arises out of the same transaction described in the complaint, it is characterized as a counterclaim. The transaction test of Conn. Gen. Prac. Book, R. Super. Ct. § 10-10 is one of practicality, and the trial court's determination as to whether the test has been met ought not be disturbed except for an abuse of discretion.

***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > American Rule***
***Criminal Law & Procedure > Counsel > Right to Counsel > General Overview***
***Legal Ethics > Client Relations > Attorney Fees > General Overview***
[HN8] In the United States, the general rule of law known as the American Rule is that a prevailing litigant is ordinarily not entitled to collect a reasonable attorneys fee from the opposing party as part of his or her damages or costs. There are certain exceptions to this rule. In the main, the exceptions are based upon statutory or contractual provisions authorizing the recovery of attorneys fees by a prevailing litigant.

***Civil Procedure > Remedies > Costs & Attorney Fees > General Overview***
[HN9] Attorneys fees clauses should be construed to encompass only areas within the reasonable contemplation of the parties; and if the parties intended that the prevailing party in any litigation under the contract to recover attorneys fees, then they could have drafted the attorneys fee clause in this manner.

**JUDGES:** GALLAGHER, J.

**OPINION BY:** GALLAGHER

**OPINION:** MEMORANDUM OF DECISION RE MOTION TO STRIKE # 123

The plaintiff n1 in this action, Henry Velenchik, alleges the following facts in the complaint. On March 25, 1994, the plaintiff signed three promissory notes for loans he obtained from the Union Trust Company. The first note was for a loan of $ 900,000. The unpaid balance of this

note was due on April 9, 1999. To secure the note, Velenchik mortgaged real property at two locations in Fairfield, Connecticut. These mortgages were recorded in the Fairfield Land Records and were first mortgages on these premises. The plaintiff entered into the second note for $ 552,895.30 under substantially similar terms, except that this loan was guaranteed by a second mortgage on the real property as above.

n1 Both Fairfield Plumbing and Henry Velenchik are plaintiffs in this action. The plaintiffs allege that Velenchik is the sole stockholder in Fairfield Plumbing. Therefore, their interests merge and are discussed together for the purposes of this memorandum.

[*2]

The plaintiff also signed a third promissory note for $ 600,000. The unpaid balance of this note was due March 1, 1997. To secure this loan, the plaintiff agreed to a third mortgage on the above properties. To further secure the loan, the plaintiff also signed a security agreement with Union Trust in which he pledged the accounts receivable and inventory of his business as well as an assignment of the rents of his real property to Union Trust. n2 The defendant, First Union National Bank, merged with Union Trust and therefore, succeeded to its rights on all of the notes, mortgages, and security agreements.

n2 The parties modified this note on August 13, 1997, to extend the maturity date of the note to April 1, 1999. This modification was duly recorded in the Fairfield Land Records.

On April 1, 1999, the plaintiff defaulted on the notes, and notified the defendant that he intended to sell his business to satisfy his debts to the defendant. The defendant sent the plaintiff a forbearance agreement, which [*3] the plaintiff refused to sign allegedly because he found errors in the document pertaining to his obligations under the note. The plaintiff advised the defendant that he was contracting with a third party to sell the real estate, with a closing date of August 30, 1999, and he would apply the proceeds of the sale to repay the debt. On June 23, 1999, the plaintiff and the third party executed the real estate contracts and the purchaser gave the plaintiff a deposit on the land.

On June 29, 1999, the defendant initiated an action against the plaintiff in Superior Court, judicial district of Fairfield at Bridgeport, CV 99-0364159S. The defendant garnished the plaintiff's business inventory, bank accounts and accounts receivable. The sheriff sealed the premises and the plaintiff's business was put out of business. The defendant notified the plaintiff's tenants and debtors that they were to make payments of their accounts to the defendant rather than to the plaintiff. The defendant also impounded the personal and business accounts that the plaintiff had with the defendant and Chase Bank. The defendant disposed of the inventory of the plaintiff's business at an auction which yielded approximately [*4] $ 50,000.

The plaintiff filed a complaint on March 10, 2000, alleging that the defendant acted in bad faith and with reckless disregard, and in so doing, violated the Connecticut Unfair Trade Practices Act, General Statutes, § § 42-110a et seq. n3 The defendant filed its answer to the complaint on March 21, 2001. The answer presents five special defenses to the plaintiff's action and one counterclaim. In the counterclaim, the defendant alleges that according to the terms of the notes signed by the plaintiff, the plaintiff is required to pay the attorneys fees of the holder of the note should he default on the notes. The defendant alleges that it is the owner and holder of the note, that it has and will continue to incur reasonable costs, attorneys fees and expenses in connection with its defense of this action and demands the recovery thereof.

n3 The plaintiff filed a three-count complaint. The court, Melville, J. struck the second count. The first count of the complaint sounds in bad faith, and the third in CUTPA.

[*5]

On January 31, 2002, the plaintiff filed a motion to strike directed at the defendant's counterclaim. The defendant filed its objection to the motion to strike on February 8, 2002.

*DISCUSSION*

Practice Book § 10-39(a) states, in part, [HN1] "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim . . . or any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading of part thereof." [HN2] "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of [a pleading] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Peter-Michael, Inc. v. Sea Shell Associates*, 244 Conn. 269, 270, 709 A.2d 558 (1998).

[HN3] The role of the trial court in ruling on a motion to strike is "to examine the [challenged pleading] construed in favor of the [pleading party], to determine whether [the pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) *Dodd v. Middlesex Mutual Assurance Co.*, 242 Conn. 375, 378, 698 A.2d 859 (1997). [*6] "In ruling on a motion to strike, the court is limited to the facts alleged in the [challenged pleading]." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997).

"Thus, [HN4] if the facts provable in the [pleading] would support a cause of action, the motion to strike must be denied . . . Moreover, we note that what is necessarily implied [in an allegation] need not be expressly alleged . . . It is fundamental that in determining the sufficiency of a [pleading] challenged by a . . . motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted . . . Indeed, pleadings must be construed broadly and realistically rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) *Gazo v. City of Stamford*, 255 Conn. 245, 260, 765 A.2d 505 (2001).

In his motion to strike, the plaintiff contends that (1) the counterclaim is not related to the facts alleged in the complaint, (2) the defendant's claim for attorneys fees is unwarranted and (3) the counterclaim fails to allege that the defendant must prevail [*7] in order to collect attorneys fees from the plaintiff. In opposition, the defendant argues that the plaintiff's debt to the defendant is the underlying factual basis for both the plaintiff's claim, as well as the counterclaim, and attorneys fees are provided for in the promissory notes, regardless of which party prevails.

[HN5] "Under our rules of practice, a counterclaim, if proper, is an independent action . . . It has been defined as a cause of action existing in favor of a defendant against a plaintiff which a defendant pleads to diminish, defeat or otherwise affect a plaintiff's claim and also allows recovery by the defendant . . . For purposes of examining pleadings relative to a counterclaim then, the party asserting it becomes the plaintiff on the counterclaim. Accordingly, the general rule is the counterclaim should be pleaded in exactly the same way the claim would be pleaded in the complaint in the independent action." (Citations omitted; internal quotation marks omitted.) *Home Oil Co. v. Todd*, 195 Conn. 333, 341, 487 A.2d 1095 (1985). Practice Book § 10-10 states, in pertinent part, [HN6] "In any action for legal or equitable relief, any defendant may file counterclaims [*8] against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . ." [HN7] "If the claim arises out of the same transaction described in the complaint, it is characterized as a counterclaim." *225 Associates v. Connecticut Housing Finance Authority*, 65 Conn.App. 112, 121, 782 A.2d 189 (2001). "The transaction test [of § 10-10] is one of practicality, and the trial court's determination as to whether the test has been met ought not be disturbed except for an abuse of discretion." (Internal quotation marks omitted.) *Southbridge Associates, LLC v. Garofalo*, 53 Conn.App. 11, 21, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

The plaintiff's cause of action arises out of the actions he alleges the defendant took after he defaulted on the three promissory notes. The defendant's counterclaim for attorneys fees and other litigation costs arises out of the agreement outlined in the notes. The fees and costs the defendant claims to have incurred were incurred in its defense of its attempt to collect the debt the [*9] plaintiff owed to the defendant under the notes. Therefore, the plaintiff's complaint and the defendant's counterclaim arise out of the defendant's actions in enforcing the notes and the costs incurred as a result. Because the facts are related, it is in the interest of judicial economy to have the cases tried together, and therefore, the plaintiff's motion to strike on this ground is denied.

The plaintiff's second argument is that under "the American Rule," each litigant pays his own attorneys fees and litigation costs. The defendant counts that its claim for the payment of fees and costs arises out of the notes that the plaintiff signed in 1994 and thus, qualifies as an exception to the American Rule.

[HN8] "In the United States, the general rule of law known as the American Rule is that a prevailing litigant is ordinarily not entitled to collect a reasonable attorneys fee from the opposing party as part of his or her damages or costs . . . There are certain exceptions to this rule . . . In the main, the exceptions are based upon statutory or contractual provisions authorizing the recovery of attorneys fees by a prevailing litigant." *Narcisco v. Brown*, 63 Conn.App. 578, 580, 777 A.2d 728 (2001). [*10]

The plaintiff contends that because it is uncontested that the notes have been paid in full, any obligation he had under them is discharged. The defendant counters that payment of the note only discharges the plaintiff's liability as to the debt incurred, not as to the other contractual provisions. In its counterclaim, the defendant alleges that under the terms of the notes, the plaintiff agreed to pay reasonable attorneys fees incurred by the defendant in any litigation connected to the notes. In viewing the pleading in a light most favorable to the defendant as is

the standard for a motion to strike, the defendant has adequately alleged that it meets the contractual exception to the "American Rule" and is therefore, entitled to attorneys fees under the contract it entered into with the plaintiff.

The plaintiff's final contention is that the defendant fails to plead that it must prevail in the present litigation in order to be entitled to attorneys fees. The defendant counters that the language of the note controls, and therefore, as the note does not require it to have prevailing party status, it is not required to include this allegation in its counterclaim.

[HN9] "Attorneys [*11] fees clauses should be construed to encompass only areas within the reasonable contemplation of the parties; and if the parties intended [that] . . . the prevailing party in any litigation under the [contract] to recover attorneys fees, then they could have drafted the attorneys fee clause in this manner." (Citation omitted; internal quotation marks omitted.) *Elliott v. Staron*, 46 Conn.Sup. 38, 52, 735 A.2d 902 (1997), affirmed, 54 Conn.App. 632, 736 A.2d 196 (1999), appeal dismissed, 255 Conn. 18, 761 A.2d 1291 (2000).

It is unclear from the pleadings whether the language of the notes requires the defendant to prevail at trial before seeking attorneys fees as part of its damages from the plaintiff. Therefore, the defendant is not required to plead these facts as part of its counterclaim. All that is required is that the defendant assert that there is a contractual exception in the case to the American Rule which would entitle it to reasonable attorneys fees. The defendant has met this requirement in its counterclaim, and therefore, the motion to strike is denied.

*CONCLUSION*

The defendant's counterclaim is related to [*12] the transaction alleged in the plaintiff's complaint, and is therefore, procedurally proper. Further, the defendant's claim for attorneys fees is properly pleaded as a contractual exception to the American Rule. For these reasons, the plaintiff's motion to strike is denied.

GALLAGHER, J.

LEXSEE

Analysis
As of: Dec 13, 2006

**Jennifer Benedetto v. William Wanat**

**CV990364526S**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF FAIRFIELD, AT BRIDGEPORT**

**2002 Conn. Super. LEXIS 3142**

**September 6, 2002, Decided**
**September 9, 2002, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**PRIOR HISTORY:** Benedetto v. Wanat, 2002 Conn. Super. LEXIS 2620 (Conn. Super. Ct., Aug. 1, 2002)

**DISPOSITION:** Plaintiff's request for attorneys fees denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff prevailed on her claim of breach of contract and the court awarded her $ 75,000 in damages plus statutory interest in a decision on August 1, 2002. On August 12, 2002, plaintiff moved for an award of counsel fees pursuant to Conn. Gen. Prac. Book, R. Super. Ct. § 11-21.

**OVERVIEW:** Under the American rule, counsel fees were not awarded to a successful litigant in the absence of a statute or specific contract language. It was the latter exception, specific contract language, that plaintiff was claiming. Based on the hearing and the court's view of the complexity of the underlying case, the court concluded that plaintiff's attorney's request for a legal fee in the amount of $ 22,140 (147.60 hours at $ 150 per hour) was reasonable. However, because the court's decision for plaintiff was not made as to any specific covenant or obligation found in plaintiff's contract, but on facts and representations made long after the lease was executed, the specific contract language relied on by plaintiff did not afford plaintiff a valid claim for counsel fees.

**OUTCOME:** Plaintiff's request for attorneys fees was denied.

**CORE TERMS:** lease, default, new tenant, covenant, general knowledge, contract language, deposit, tenant

**LexisNexis(R) Headnotes**

***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees***
***Family Law > Marital Termination & Spousal Support > Costs & Attorney Fees***
[HN1] Courts have a general knowledge of what would be reasonable attorneys fees for services which are fairly stated and described. Courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award for attorneys fees. The court is in a position to evaluate the complexity of the issues presented and the skill with which counsel has dealt with those issues. Expert testimony is not required in such matters and if offered is not binding on the court.

***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > American Rule***

[HN2] Connecticut has adopted the American rule that counsel fees are not awarded to a successful litigant in the absence of a statute or specific contract language.

***Civil Procedure > Remedies > Costs & Attorney Fees > General Overview***
***Contracts Law > Contract Interpretation > General Overview***
***Legal Ethics > Client Relations > Attorney Fees > Fee Agreements***
[HN3] Contract language which flies in the face of the American rule should be strictly construed.

**JUDGES:** GORMLEY, J.

**OPINION BY:** GORMLEY

**OPINION:** MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR COUNSEL FEES

The plaintiff in this case has prevailed on her claim of breach of contract set forth in the First Count of her Complaint and the court awarded her $ 75,000 in damages plus statutory interest in a decision on August 1, 2002. In her complaint, the plaintiff also sought counsel fees pursuant to her agreement with the defendant. At the conclusion of the trial, the plaintiff did not offer any evidence as to counsel fees. On August 12, 2002, the plaintiff moved for an award of counsel fees pursuant to Practice Book § 11-21 and paragraph 26 of the Indenture Agreement (plaintiff's exhibit 1) entitled "Default" which reads as follows:

In the event either party shall be in default of any of its covenants or obligations under the within Lease, the defaulting party shall be liable to the other for all reasonable attorneys fees incurred by the other in enforcing its rights under the [*2] within Lease.

The court conducted a hearing on this matter and thereafter allowed the parties to file supplemental briefs on the subject. The defendant has objected to the motion on multiple grounds, all set forth in its Memorandum of August 23, 2002.

The court does not agree with the defendant that this motion is untimely or has denied the defendant of the opportunity to contest the issue of reasonableness of those fees. See, e.g., *Arnone v. Town of Enfield*, No. CV960558333 (J.D. Hartford July 23, 2001). That is precisely what the hearing on this matter was intended to do. The plaintiff's attorney at the hearing described his legal experience, his years at the bar, his time spent in pursuing this case totaling 147.60 hours and his hourly rate of $ 150 per hour. The court afforded defense counsel an opportunity to question plaintiff's counsel on these matters and he declined.

As has been stated in *Andrews v. Gorby*, 237 Conn. 12, 24, 675 A.2d 449 (1996):

[HN1] Courts have a general knowledge of what would be reasonable attorneys fees for services which are fairly stated and described. Courts may rely on their general knowledge of what has occurred [*3] at the proceedings before them to supply evidence in support of an award for attorneys fees . . . The court is in a position to evaluate the complexity of the issues presented and the skill with which counsel has dealt with those issues.

Expert testimony is not required in such matters and if offered is not binding on the court. *Appliances, Inc. v. Yost*, 186 Conn. 673, 680, 443 A.2d 486 (1982). Based on the hearing and the court's view of the complexity of the underlying case, the court concludes that the plaintiff's attorney's request for a legal fee in the amount of $ 22,140 (147.60 hours at $ 150 per hour) is reasonable.

That, however, does not end the court's consideration of this issue. No one would dispute the fact that [HN2] Connecticut has adopted the American rule that counsel fees are not awarded to a successful litigant in the absence of a statute or specific contract language. It is the latter exception, specific contract language, that the plaintiff is claiming, specifically paragraph 26 of the Indenture Agreement (plaintiff's exhibit 1). That clause refers to "a default of any of its covenants or obligations under the written lease." Here we are not [*4] talking about a failure to pay rent or a failure to construct the building, which would clearly fall under this description. Also, there is no provision in the lease for a return of the $ 100,000 deposit. It is described throughout as "nonrefundable."

What this case is all about are promises, understandings and commitments made outside the lease and long after its execution. Obviously, the plaintiff never became the tenant of the defendant. What did happen is because of delays in construction the plaintiff through her father Stanley Benedetto, a defendant in the cross claim, sought relief from the defendant in getting out of the lease. He made efforts to find a new tenant and he asked the defendant and his agent Mr. Girouard to look for a new tenant. The court has already found that this was conditioned on a new tenant taking over all of the plaintiff's obligations under the lease and the return of the full deposit. Otherwise, the plaintiff would in fact become the defendant's tenant and live by the lease. The court will

not repeat what is contained in its earlier memorandum in support of its finding for the plaintiff.

What the court does conclude is that its decision for [*5] the plaintiff was not made as to any specific covenant or obligation found in plaintiff's exhibit 1, but on facts and representations made long after the lease was executed. For that reason, the court does not believe that paragraph 26 of plaintiff's exhibit 1 affords the plaintiff a valid claim for counsel fees. [HN3] Contract language such as this, which flies in the face of the American rule, should be strictly construed.

The court, therefore, denies the plaintiff's request for attorneys fees.

GORMLEY, J.

LEXSEE

Positive
As of: Dec 13, 2006

**AETNA LIFE & CASUALTY CO. v. JOSEPH GENTILE, JR. ET AL**

**NO. 0122259**

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF WATERBURY**

**1995 Conn. Super. LEXIS 3444**

**December 12, 1995, Decided**
**December 12, 1995, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer filed a declaratory judgment action against defendant insured seeking a determination whether it had a duty to defend the insured against certain claims in a subrogation action.

**OVERVIEW:** The insured operated a body shop that sustained fire damage when 11 vehicles were on the premises. Under the insured's garage keepers policy, there was a $ 50,000 single limit for all vehicles. The insurer took charge of managing the various damages claims. One claim involving a truck was thought to be settled, but no written release was obtained, and the insured found himself named as a defendant in a subrogation action involving the truck. The insurer contended that it had no duty to defend the insured in that action because it had already paid out a total of $ 50,000 in response to the claims arising from the fire. The court determined that there was no "settlement" of the claim involving the truck and that the insurer therefore had a duty to defend in the subrogation action. Further, the court concluded that the insurer had a duty to indemnify the insured and to reimburse the insured for his reasonable attorney's fees and costs in defending the subrogation action; the insured also had a right to be reimbursed his reasonable attorney's fees and costs in defending the declaratory judgment action.

**OUTCOME:** The court ruled that the insured was entitled to be reimbursed by the insurer for his reasonable attorney's fees and costs in defending the underlying subrogation action and to be reimbursed his reasonable attorney's fees and costs in defending the declaratory judgment action.

**CORE TERMS:** insured, insurer, settlement, duty to defend, appraisal, declaratory judgment, underlying action, defending, coverage, claimant, settle, accord and satisfaction, truck, insuror, declaratory judgment action, duty to indemnify, exhausted, enclosed, utilized, insurance contract, fees incurred, viability, mutual, contract of insurance, subrogation claim, continuing right, partial payment, facts presented, thousand dollar, oral agreement

**LexisNexis(R) Headnotes**

***Civil Procedure > Settlements > General Overview***
***Insurance Law > General Liability Insurance > Obligations > Settlements***
[HN1] The word "settle" when applied to an unliquidated claim or demand means its mutual adjustment between the parties and an agreement upon the balance. When applied to an unliquidated demand, the word means to effect a mutual adjustment between the parties and to agree upon the balance. The release of a tortfeasor in any

cause of action involves what fairly and euphemistically are called "settlements." Settlement means to fix the amount due a claimant.

***Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > General Overview***
[HN2] When the words of an insurance contract are, without violence, susceptible to two or more interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted.

***Civil Procedure > Settlements > General Overview***
[HN3] Partial payment, without an agreement of accord and satisfaction, written or oral, is not a "settlement."

***Contracts Law > Contract Interpretation > Fiduciary Responsibilities***
***Contracts Law > Types of Contracts > Covenants***
***Insurance Law > Claims & Contracts > Good Faith & Fair Dealing > Payments***
[HN4] Appended to every contract is the implied covenant of "good faith and fair dealing."

***Contracts Law > Contract Conditions & Provisions > Conditions Precedent***
***Insurance Law > General Liability Insurance > Obligations > Defense***
[HN5] An insurer cannot condition the insured's continuing right to a defense by imposing upon the insured, as a condition precedent, the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit.

**JUDGES:** L. PAUL SULLIVAN, J.

**OPINION BY:** L. PAUL SULLIVAN

**OPINION:**

MEMORANDUM OF DECISION

This is an action for a declaratory judgment to determine whether the Aetna Life and Casualty Company has a duty to defend Joseph Gentile and John Gentile, d/b/a Lakewood Auto Parts against certain claims by ITT Hartford Insurance Group in a subrogation action against Gentile for damage to the truck of ITT's insured Mattatuck Scrap Company caused by a fire at Gentile's premises.

The matter is submitted to this court on a stipulation of facts submitted by the parties on October 10, 1995.

The facts are not complicated. Gentile is in the business of repairing body damage and painting motor vehicles. At a given time, during the policy period, a fire broke out at Gentile's premises. At the time eleven vehicles of customers were at the premises, and they sustained damage by virtue of said fire. Included therein was a certain 1980 Mack truck owned by one Mattatuck Industrial Scrap Metal, Inc., which was insured for fire casualty [*2] loss by ITT Hartford Insurance Group.

The plaintiff in this action, Aetna, has settled with apparent finality all of the claims of the vehicle owners, except for the possibility of additional claims of loss to Mattatuck's Mack Truck as asserted by an action brought through Mattatuck's first party insurer ITT Hartford.

On January 4, 1991 the Aetna, through its claim's representative, sent a two page letter to Mattatuck, enclosing a copy of its appraisal of the damage to the truck (appraisal of Frank J. Haiko, Inc. Automobile Appraisal Service) reflecting damage in the amount of $ 8,183.29. The only open item in the appraisal was "possible additional electrical damage from heat unknown at this time".

The Aetna adjuster, Ms. Saracino further informed Mattatuck, by this letter, that the total coverage for all vehicles in this loss was $ 50,000 single limit for all vehicles. The letter further informed Mattatuck that if there was presently a claim for sums in addition to the appraisal amount, "that I be notified by January 30, 1991". The letter informed Mattatuck that if the total claims for all vehicles exceed the $ 50,000 coverage, a proportionate distribution of the proceeds of the [*3] policy would be made to the claimants. By letter of direction of December 28, 1992 Mattatuck, through one Pete Tatalias had signed a "direction of payment" letter directing that all payments be paid directly to Lakewood, who as repairer was undertaking the repairs of the vehicle.

The Haiko appraisal enclosed in the Aetna letter is dated November 30, 1990. Mattatuck did not respond to the Aetna's letter, which invited Mattatuck to submit any claim for additional sums above and beyond the amount of the Haiko appraisal.

Thereafter, on February 4, 1991 Aetna forwarded to Lakewood Auto Painting and Body Work, a check in the amount of $ 49,029.98 bearing the specific caption "all seven vehicles full and payment and release of all claims". None of the individual claimants, including Mattatuck, were made payees on the check, nor were any releases obtained by Aetna from Mattatuck, or from any of the other claimants apparently. A check for $ 970.22 was also paid to one Cynthia Noti for "rental reimbursement". The sum of the two checks is $ 50,000.

On March 30, 1992 ITT Hartford, claiming to be the subrogatee of "Mattatuck", commenced suit against Gen-

tile in the Superior Court, J.D. Waterbury, [*4] claiming damages in the amount of $ 28,000 arising out of the damage to Mattatuck's truck. There is nothing in the stipulation of facts to indicate that either the Aetna or Gentile had any idea that there was such additional loss, or that ITT Hartford had paid anything to Mattatuck, or that it had any subrogation claim whatsoever.

The Aetna seeks a declaratory judgment from this court determining that the Aetna has no duty to defend Gentile in the ITT Hartford action, and further that it has no duty to indemnify Gentile for any loss to Gentile for the ITT Hartford claim. Gentile conversely seeks, in response, "reasonable attorney's fees".

The issues presented by this action are quite narrow. The Aetna's policy with Gentile provides "Garage Keepers Coverage" for claims of this nature in the amount of $ 50,000.00. The policy covers the insured's liability for damages arising out of injury or loss to the property of others which are in the insured's care while attending, servicing, repairing, parking or storing in garage operations.

The Aetna has paid out a total of fifty thousand dollars in response to these claims.

The policy provides that the Aetna has "the right and duty to defend [*5] any 'suit' asking for these damages". The policy further states "Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgment or settlements". (emphasis added). The policy further reserves to the insurer Aetna the sole determination as to the negotiation and payment of claims. Section V, General Conditions provides, in paragraph 2b "Additionally, you and any other involved 'insured' must (1) assume no obligation, make no payment or incur no expense without our consent, except at the 'insured's' own cost". The policy gives to the insured no authority or decision making prerogative as to the payment of claims.

The Aetna paid to the benefit of the claimant Mattatuck Industrial Scrap Metal, Inc. a sum of money. Although the amount of the payment is not set forth in the stipulation of the parties, the transmittal letter from the Aetna to Mattatuck enclosed its appraisal of "Frank J. Haiko, Inc., Appraisers", in the amount of $ 8,183.24, leaving open only the question of "possible additional electrical damage from heat unknown at this time". The amount paid for Mattatuck is admittedly part of the $ 50,000 total [*6] payment.

The Aetna did not obtain a written release from Mattatuck. There is nothing to indicate that an oral agreement of release and settlement was obtained from Mattatuck. It may be argued, at the appropriate time, in Mattatuck's suit through ITT Hartford, that Mattatuck's failure to respond to Aetna's letter prior to acceptance of payment, constitutes an accord and satisfaction i.e. an acceptance of a settlement offer by accepting payment of the amount offered. This court cannot so conclude merely on the status of the facts before this court. The existence of the ITT-Mattatuck suit versus the insured Gentile precludes an inference that Aetna has in fact "settled" the Mattatuck claim.

Aetna did send a check in the amount of $ 49,029.78 to Lakewood Auto Body, marked "all seven vehicles, full and final payment and release of all claims". It must be understood that though Lakewood was the insured, it was in fact the actual repair shop for the vehicles, per the notation on the Haiko appraisal. The direction of the claimants to pay the funds to Lakewood must be understood in that context. There is nothing in the factual context of this case to indicate that Lakewood was given the authority [*7] by Mattatuck to act on its behalf to settle its claim. Nor that Lakewood was given the authority by Aetna to settle any claims by Mattatuck on behalf of Aetna. The release of Aetna by Lakewood can only be interpreted to be a release by the repairer Lakewood for the parts auto be furnished and labor to be performed in the specific repairs which it was to actually accomplished on these vehicles.

Hence the issue becomes focused. Was the payment to Lakewood made for the benefit of Mattatuck, a "settlement". If so, the policy limits are exhausted and there is no further duty to defend. If not, the payment must be subtracted from the fifty thousand dollar coverage for the purposes of this issue, and the duty to defend would then continue.

The law in this state is quite clear as to what is a "settlement", and has been so determined at an early time in the jurisprudence of this state:

[HN1] "The word 'settle' when applied to an unliquidated claim or demand means its mutual adjustment between the parties and an agreement upon the balance". State v. Staub, 61 Conn. 553, 568, 23 A. 924 (1892).

"When applied to an unliquidated demand, the word means to effect a mutual adjustment between [*8] the parties and to agree upon the balance." Ballentine's Law Dictionary, Third Edition, p. 1165, 1166, citing State v. Staub, 61 Conn. 553, 568, 23 A. 924.

"...release of a tortfeasor in any cause of action involves what fairly and euphemistically are called 'settlements'". Peck v. Jacquemin, 196 Conn. 53, 59, 491 A.2d 1043 (1985).

Settlement means "...to fix the amount due a claimant...". See Dowe v. Egan, 133 Conn. 112, 127, 48 A.2d 735 (1946) citing State v. Staub, supra.

It is quite clear, in the instant case, that there is a continuing claim, asserted by Mattatuck, through its assignee and subrogee ITT Hartford, as to the damages sustained by Mattatuck. There is no written release signed by on or behalf of Mattatuck, nor is there any evidence or assertion that there is an oral agreement between Mattatuck and Aetna, an oral accord and satisfaction, in settlement of this claim.

This contract of insurance contains no specific definition of the word "settlement" so as to describe that word in a fashion different then as has been interpreted by the common law of this state. If there were to be ambiguity in the word "settlement" as utilized in this contract of [*9] insurance, the law is clear that the interpretation favoring the insured would be applicable.

[HN2] "When, however, the words of an insurance contract are, without violence, susceptible to two or more interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." Griffith v. Security Ins. Co., 167 Conn. 450, 460, 356 A.2d 94 (1975). (Internal Citations omitted).

It is clear that [HN3] partial payment, without an agreement of accord and satisfaction, written or oral, is not a "settlement". The payment of funds which do not constitute "payment of judgments or settlements" (the terms articulated in this contract) are not sums which can be mathematically utilized to conclude an exhaustion of the policy limits. This court concludes that what appears to be a partial payment made to Mattatuck is not a "settlement". When deducted from the fifty thousand dollar coverage, this compels the conclusion that the limit of insurance had not been exhausted of payment of "judgments or settlements". The duty of the plaintiff Aetna to defend John Gentile/and or Joseph Gentile Jr. hence does continue.

It is conceivable that the defendant, through counsel furnished [*10] by Aetna, may prevail in the defense of the underlying subrogation claim by ITT Hartford. The trial court, in that action, could conceivably conclude that there was in fact an accord and satisfaction, though the facts presented to this court and the arguments in the brief do not compel that conclusion.

The court further notes that Mattatuck and ITT Hartford apparently did not follow what is at least the customary practice of the ITT-insured Mattatuck assigning the entire claim to its first party carrier ITT, who would then assert the entire claim, and, after payment, then dividing the proceeds between insured and insurer according to their respective equitable interests. See Corpus Juris Decorundum, Assignments, § 65, p. 699; Corbin on Contracts, One Volume Edition, § 889 "Partial Assignments", p. 837; see also Rock v. Adley Express Co. Inc., 130 Conn. 274, 282, 33 A.2d 329 (1943) and Smith v. Waterbury & Milldale Transway Co., 99 Conn. 446, 451, 121 A. 873 (1923) giving sanction to the assignment of an entire claim as a unit, but not determining the viability of partial assignments, which have the obvious effect of attempting to divide single claim into multiple causes [*11] of action.

This court, and properly so, is not asked to determine whether Mattatuck's acceptance of the payment made to it by Aetna, in light of the invitation by Aetna to Mattatuck to present "a claim for anything in excess of the enclosed appraisal", constitutes the acceptance of an offer of full and final settlement. These matters may well be determined by the litigation now pending in the case ITT Hartford Insurance Group v. John Gentile, CV92-0108452S. It should appear obvious that even if the Aetna were to succeed in defending that litigation, reflecting a retrospective conclusion that it had settled the claim by Mattatuck, the Aetna could not surcharge its insured Gentile for the cost of defense. The Aetna, having reserved total control of settlement of the claim, must assume the duty of defending the viability of any settlement which it may claim to have accomplished.

The first question presented to this court, to wit a determination that Aetna has no duty to defend John Gentile and/or Joseph Gentile, is answered in the negative. Aetna does in fact have a duty to defend the case of ITT Hartford Insurance Group v. Joseph Gentile et al, No. CV92-0108452S (J.D. Waterbury). [*12]

The second request is for "a determination from this court that it has no duty to indemnify these defendants for the subject loss under the terms of the subject insurance contract".

The relationship between insurer and insured is extremely complex in dealing with incidents involving multi-claimants wherein the total amount of the claims asserted have the prospect of exceeding the policy limits. It may be argued, from a simplistic standpoint, that the mere payment of the policy limits, in whatever fashion and in whatever amount the insurer may choose, in accordance with its sole discretion under the terms of the policy, satisfies the requirements of the policy. When, however, it is understood that the exhaustion of the policy exposes the insured to the financial jeopardy of payment of any excess sums from the insured's own funds, and bearing in mind the implications of unsatisfied judgments, the relationship between insurer and insured assumes a different complexion.

[HN4] Appended to every contract is the implied covenant of "good faith and fair dealing". See cases such as Carbone v. Atlantic Richfield Co., 204 Conn. 460, 528 A.2d 1137 (1987). Does the insurer assume a fiduciary [*13] relationship to the insured under circumstances presented by the potential of excess claims? Has the in-

surer utilized due care in paying each claim so as to guard against dissipation of the policy limits by payments which do not settle claims. Does the mandatory abrogation of the insured's right to settle the claims require of the insuror a high degree of care in undertaking that function? What level of coordination and dissemination of information, insurer to insured, is required under such circumstances? These questions have not been addressed in sufficient fashion by the parties in the facts presented to the court, or in the briefs submitted by the parties.

This court determines that the mere fact that payments have been made by the insurer which may equate to the extent of the policy limits does not in and of itself lead to the conclusion that the insurer has no duty to indemnify the insured. The court declines to grant declaratory judgment on this aspect of this action.

Lastly, the defendant Gentile et al seeks, by "claim for relief" in his answer of September 22, 1995 "Reasonable Attorney's fees". The court accepts this claim for relief as the defendant-insured's request [*14] for declaratory judgment as concerns attorney's fees for representing defendants Gentile, in both this declaratory judgment proceeding and in the underlying action.

As stated herein, this court has determined that the insurer Aetna has the duty to defend Gentile in the action pending in the Superior Court, "ITT Hartford Insurance Group v. John Gentile et al, Docket No. CV92-0108452S". "The breach in the terms of the policy made the defendant liable to pay the plaintiff his reasonable expenses in the defense of Patricia's suit against him". Jenkins v. Indemnity Co., 152 Conn. 249, 261, 205 A.2d 780 (1964).

"Under all the circumstances the plaintiff is entitled to recover of the defendant the amount of the settlement in the Shuhi case, together with the expenses and attorney's fees incurred by it in defending the case..." Missionaries of C of Mary, Inc. v. Aetna Casualty & Surety Co., 155 Conn. 104, 114, 230 A.2d 21 (1967).

"The general rule is that, in the absence of express contractual terms to the contrary, allowance of fees is limited to the defense of the claim which was indemnified and does not extend to services rendered in establishing the right to indemnification". [*15] Burr v. Lichtenheim, 190 Conn. 351, 363, 460 A.2d 1290 (1983).

It may be argued that Gentile is entitled to payment of attorney's fees incurred solely in the defense of the underlying action, ITT Hartford v. Gentile, and would be entitled to no attorney's fees in defending this declaratory judgment action. However, once it is understood that this is an action by the insurer seeking a declaratory judgment, the purpose of which is to foreclose Gentile, the insured, from eventually claiming attorney's fees for defending the underlying action, ITT Hartford v. Gentile, then this declaratory judgment is in no fashion an optional action by an insured seeking indemnity from a judgment, including attorney's fees for having defended the underlying claim. Rather, this action is an attempt by the plaintiff insuror to foreclose the insured's right to assert an eventual claim for which indemnity and attorney's fees for defense of the underlying action may in the future be brought by the insured.

A declaratory judgment is an extraordinary procedure. Though apparently well meaning, it is here legally unnecessary, is brought for the convenience of the insurer plaintiff, [*16] and thrusts upon the insured defendant the unnecessary expense of having to defend against this action so as to preserve his right to be furnished a defense of the underlying action, a right to which he is entitled under the specific provisions of the policy. Viewed accordingly, the right to be furnished a defense to this action is a part and parcel of the continuing right to be furnished a defense to the underlying action. [HN5] The insuror cannot condition the insured's continuing right to a defense by imposing upon the insured, as a condition precedent, the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit.

Where an insurer perceives a conflict of interest between itself and its insured prior to or during the course of a trial it is customary, legally appropriate, and often legally necessary for the insurer to provide independent counsel to the insured so as to not jeopardize the insured's rights under the terms of the contract. Viewed in this additional light, it is appropriate that the insurer furnish to the insured a defense or reimburse to the insured the cost of defense of this declaratory judgment action which it thrust [*17] upon the insured.

The court determines that the defendant insured is entitled to be reimbursed by the insurer for the insured's reasonable attorney's fees and costs in defending the underlying action to date here of, and to be reimbursed his reasonable attorney's fees and costs in defending against this declaratory judgment action.

L. PAUL SULLIVAN, J.

LEXSEE

Caution
As of: Dec 13, 2006

**Chicago Title Insurance Company, a Missouri Corporation, Appellant, v. Federal Deposit Insurance Corporation, Appellee.**

**No. 97-4367**

**UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT**

**172 F.3d 601; 1999 U.S. App. LEXIS 6054**

**December 16, 1998, Submitted**
**April 5, 1999, Filed**

**PRIOR HISTORY:** [**1]

Appeal from the United States District Court for the District of Minnesota. CIV 4-92-129. Honorable James M. Rosenbaum.

**DISPOSITION:**

District court's grant of attorneys' fees and costs affirmed. Remanded to district court to award $ 280,968.97 in fees and costs.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant insurer sought review of a judgment from the United States District Court for the District of Minnesota, which granted attorney fees and costs in favor of appellee insured federal agency in appellant's declaratory judgment action.

**OVERVIEW:** Although appellant insurer initially refused to defend lien actions against appellee insured federal agency, it subsequently agreed to reimburse appellee for the attorney fees and costs incurred in a defense. Appellant ultimately refused reimbursement, claiming it was unreasonable, and brought a declaratory action to recover an amount it had contributed to appellee pursuant to a settlement agreement. After a jury determined that appellant owed a contractual duty to defend appellee and that the district court awarded reasonable attorney fees and costs to appellee, appellee moved to recover attorney fees and costs expended in the declaratory judgment action. The appellate court affirmed the judgment of the district court, which granted appellee's motion on the ground that appellant had breached its duty to defend. The court held that appellant's refusal to pay fees and costs was a breach of the contractual duty to defend, thereby authorizing the award of fees and costs in the declaratory judgment action. Appellant's argument that appellee claimed an unreasonable amount of fees and costs did not vitiate the duty to pay the amount that appellant considered reasonable.

**OUTCOME:** The court affirmed a judgment that granted attorney fees and costs to appellee insured in appellant insurer's declaratory judgment action. Appellant's refusal to pay fees and costs expended by appellee in an underlying action was a breach of the contractual duty to defend, thereby authorizing the award of fees and costs to appellee in appellant's subsequent declaratory action. The court remanded the action to award the fees and costs.

**CORE TERMS:** duty to defend, title insurance policy, insured, insurer, declaratory judgment action, mechanics', tender of defense, settlement, mortgage, reservation, reimburse, contractual duty, reimbursement, breached, coverage, receiver, reasonableness, apartment building, unreasonably high, refused to pay, insurance contract, special master, general rule, de novo, contributed, defending, defended, fulfills, contest, invoices

**LexisNexis(R) Headnotes**

*Civil Procedure > Declaratory Judgment Actions > State Judgments > Appellate Review*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1] The court reviews questions of fact under the clearly erroneous standard and conclusions of law de novo.

*Insurance Law > Bad Faith & Extracontractual Liability > Refusals to Defend*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN2] The general rule is that attorney fees and costs are awarded only when authorized by statute or provided for in the contract. However, a limited exception to the general rule provides that attorney fees and costs can be awarded when an insurer has breached the insurance contract in some respect. One such breach of the insurance contract is a breach of the duty to defend.

*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Declaratory Judgments*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
[HN3] A breach of the contractual duty to defend usually occurs by wrongfully refusing to defend the insured. This does not mean that the insurer cannot contest coverage. If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend. Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorney fees and costs in the declaratory judgment action to determine coverage. Attorney fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation.

*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Pay Claims*
*Insurance Law > Claims & Contracts > Reservation of Rights > General Overview*
[HN4] When a conflict of interest arises - such as accepting the tender of defense while denying coverage - the duty to defend transforms into a duty to reimburse the insured for reasonable attorney fees incurred in defending the lawsuit.

*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN5] In Minnesota, the duty to defend is read broadly. For example, it requires insurers to defend an entire action and not just to the extent of the insurer's own interests in the litigation.

*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Declaratory Judgments*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Pay Claims*
[HN6] When a breach of the duty to defend occurs, the insured is entitled to be reimbursed for attorney fees and costs expended to force the insurer to pay for the defense.

**COUNSEL:**

Counsel who presented argument on behalf of the appellant was Michael Joseph Orme of Minneapolis, Minnesota. Also appearing on the brief was Louis W. Brenner, Sr.

Counsel who presented argument on behalf of the appellee was Barbara S. Woodall of Washington, D.C. Also appearing on the brief were Ann S. DuRoss, Robert McGillicuddy, and Jerome A. Miranowski.

**JUDGES:**

Before BEAM, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

**OPINION BY:**

BEAM

**OPINION:** [*603] BEAM, Circuit Judge.

Chicago Title Insurance Company (Chicago Title) appeals the grant of attorneys' fees and costs in favor of the Federal Deposit Insurance Corporation (the FDIC). The district court n1 granted the FDIC's motion for attorneys' fees and costs because Chicago Title breached its contractual duty to defend its insured--the FDIC. Chicago Title argues that there was no breach. We affirm and remand.

n1 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

[**2]

**I. BACKGROUND**

In 1987, Murray Savings Association (Murray), provided a loan for the construction of an apartment building. As security for the loan, Murray took a mortgage on the apartment building and property. Murray also obtained a title insurance policy, issued by Chicago Title, that insured, among other things, the priority of the mortgage. The title insurance policy required that Chicago Title provide a defense, "at its own cost and without undue delay," for any claims covered by the policy. Construction of the apartment building began, but the builder eventually experienced financial difficulties and abandoned the unfinished project. Murray also fell upon hard times and was declared insolvent. Murray was placed in receivership, and a real estate development company was retained to complete the project. The mortgage, along with the title insurance policy, was assigned to the FDIC as receiver. n2

n2 Originally the mortgage was transferred to the Murray Federal Savings & Loan Association with the Resolution Trust Corporation acting as receiver. The FDIC is now acting as receiver and holds the mortgage and title insurance policy. For simplicity, the actions of the receiver will simply be referred to as those by the FDIC, although in some instances, the actions were taken by the Resolution Trust Corporation.

[**3]

Beginning in 1989, a series of legal proceedings were commenced to foreclose mechanics' liens filed against the apartment property for work done on the project (hereinafter the lien actions). The lien actions asserted that the mechanics' liens had priority over the mortgage. On the belief that the title insurance policy covered mechanics' liens and thereby required Chicago Title to defend against the lien actions, the FDIC tendered the defense to Chicago Title. A defense was requested for the first time in May 1989, but was promptly refused by Chicago Title. The FDIC retained independent counsel to defend against the lien actions but persisted in seeking a defense from Chicago Title. Chicago Title finally accepted the tender of defense for all the lien actions in April 1991, subject to a reservation of rights. Chicago Title agreed to defend the FDIC but reserved the right to dispute whether the insurance policy provided coverage for the mechanics' liens. The reservation of rights on coverage created a conflict of interest for Chicago Title in providing the defense, thus it agreed that the FDIC would defend against the lien actions, and Chicago Title would reimburse FDIC for the attorneys' [**4] fees and costs incurred.

The FDIC paid their counsel for defense fees and costs, and sought reimbursement [*604] for the first time in August 1991. Chicago Title informed the FDIC that the requested fees and costs were unreasonably high and refused to pay any amount. Settlement negotiations between the parties to the lien actions were then underway. Because insurance coverage was uncertain, Chicago Title also participated with the FDIC in the settlement negotiations. In September 1991, a settlement was reached with the FDIC and Chicago Title each contributing one-half of the $ 498,000 agreed upon amount. After the settlement, the FDIC submitted its final attorneys' fees and costs, amounting to $ 280,584.06, to Chicago Title. Chicago Title deemed the requested sum to be unreasonably high and again refused to pay any amount.

Chicago Title brought this declaratory judgment action to recover the amount it had contributed to the settlement ( $ 249,000) from the FDIC. Chicago Title alleged that the title insurance policy did not cover the mechanics' liens that were the subject of the lien actions. The FDIC counterclaimed for the amount it had contributed towards the settlement and [**5] the fees and costs it incurred in defending against the lien actions. On appeal from the results of a jury trial, we concluded that the title insurance policy covered the mechanics' liens. See Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 903 & 908 (8th Cir. 1995). Consistent with the title insurance policy, we affirmed the jury's express finding that Chicago Title owed a contractual duty to defend the FDIC in the lien actions. We then remanded to the district court. The district court referred the matter to a special master, for a determination of reasonable attorneys' fees and costs required to defend the FDIC. The district court reduced the FDIC's requested fees and costs from $ 280,584.06 to an amount it considered reasonable-- $ 197,559.54.

Ordinarily, when the coverage issue is concluded, that is the end of the matter. However, the FDIC filed a motion to recover the $ 434,384.24 in fees and costs it had expended in this declaratory judgment action. The FDIC argued that because Chicago Title had not reimbursed the FDIC for defense fees and costs until forced to do so by the district court, that this refusal to pay was a breach of the duty to [**6] defend which, in turn, authorized an award of attorneys' fees and costs in this litigation. The district court concluded that, because Chi-

cago Title had breached its duty to defend the FDIC in the lien actions, Chicago Title should be liable for the fees and costs required to enforce that duty. However, the district court reduced the requested amount by 30% and awarded $ 304,068.97. Chicago Title appeals.

**II. DISCUSSION**

Chicago Title argues on appeal that it did not breach a duty to defend the FDIC in the lien actions because it accepted the tender of defense and only refused to reimburse the FDIC for excessive and unreasonable charges. In contrast, the FDIC argues that the refusal to pay attorneys' fees and costs was a breach of the contractual duty to defend, thereby authorizing the award of fees and costs in this declaratory judgment action. Applying Minnesota law, which the parties agree controls, see Chicago Title, 53 F.3d at 904, [HN1] we review questions of fact under the "clearly erroneous" standard and conclusions of law de novo. n3 Fed. R. Civ. P. 52(a) (review [**7] of factual findings); see Hawkins Chem., Inc. v. Westchester Fire Ins. Co., 159 F.3d 348, 352 (8th Cir, 1998) (de novo review for legal questions).

n3 Chicago Title would have us review de novo the legal question of whether a failure to pay an unreasonable amount of attorneys' fees constitutes a breach of the duty to defend. We do not reach this issue, as the subsequent analysis will demonstrate, because Chicago Title failed to pay what it considered to be a reasonable sum.

[HN2] The general rule is that attorneys' fees and costs are awarded only when authorized by statute or provided for [*605] in the contract. See Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co., 285 Minn. 264, 173 N.W.2d 9, 12 (Minn. 1969). While the title insurance policy required Chicago Title to pay attorneys' fees and costs in the lien actions, it did not authorize fees and costs for this declaratory [**8] judgment action. However, a limited exception to the general rule was developed in Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640, 647 (Minn. 1966). The exception provides that attorneys fees and costs can be awarded when an "insurer has breached the insurance contract in some respect." American Standard Ins. Co. v. Le, 551 N.W.2d 923, 927 (Minn. 1996). One such breach of the insurance contract is a breach of the duty to defend. See Domtar, Inc. v. Niagara Fire Ins. Co., 563 N.W.2d 724, 737-38 (Minn. 1997).

There is no question that Chicago Title had a duty to defend the FDIC against the lien actions. "'That is, the insured has a contract right to have actions against him defended by the insurer, at its expense.'" Security Mut. Cas. Co. v. Luthi, 303 Minn. 161, 226 N.W.2d 878, 884 (Minn. 1975) (quoting 7C John Alan Appleman, Insurance Law and Practice § 4691, at 283 (Walter F. Berdal rev. 1979)). The title insurance policy provides, as indicated, that for covered claims, Chicago Title "at its own cost and without undue delay, shall provide for the defense of an insured." Appellee's Appendix at 41. And, [**9] as noted, the jury expressly found, and we affirmed, a duty to defend. The only question remaining is whether Chicago Title breached that duty.

[HN3] A breach of the contractual duty to defend usually occurs by "wrongfully refusing to defend the insured" Le, 551 N.W.2d at 927. This does not mean that the insurer cannot contest coverage, If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend. See id. Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorneys' fees and costs in the declaratory judgment action to determine coverage. Attorneys' fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation. See id.

Chicago Title refused the tender of defense in the lien actions for nearly two years, then grudgingly accepted the tender with an extensive reservation of rights that continued [**10] to deny that Chicago Title had a duty to defend or that the title insurance policy covered the mechanics' liens. n4 [HN4] When a conflict of interest such as this arises--accepting the tender of defense while denying coverage--the duty to defend transforms into a "duty to reimburse [the FDIC] for reasonable attorneys' fees incurred in defending the lawsuit." Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 391 (Minn. 1979). Therefore, Chicago Title authorized reimbursement for "all action [deemed] necessary to defend such claims." Appellee's Appendix at 71. This would have fulfilled Chicago Title's duty to defend, but Chicago Title then refused to pay any amount of the invoices for attorneys' fees and costs because it considered the requested amount unreasonable.

n4 The reservation of rights document reserved "the right to seek reimbursement for defense costs advanced" to the FDIC in the event that the mechanics' liens were not covered by the title insurance policy. Appellant's appendix at 33 (letter explaining Chicago Title's acceptance of the tender of defense and reservation of rights). A right of reimbursement would not have arisen since the jury found that Chicago Title had a duty to defend. See Knapp v. Commonwealth Land Ti-

tle Ins. Co., 932 F. Supp. 1169, 1171-72 (D. Minn. 1996).

[**11]

Chicago Title argues that the law, as stated in Prahm, only imposes a duty to reimburse for *"reasonable"* attorneys' fees. Prahm, 277 N.W.2d at 391 (emphasis added). That is true. However, the district court found that at least $ 80,000 to $ 120,000 of the invoices were [*606] not disputed by Chicago Title as unreasonable, and Chicago Title did not pay or, apparently, even offer to pay a portion of them. [HN5] In Minnesota, the duty to defend is read broadly. See Brown v. State Auto. & Cas. Underwriters, 293 N.W.2d 822, 825 (Minn. 1980). For example, it requires insurers to defend an entire action and not just "to the extent of [the insurer's] own interests in the litigation." Mannheimer Bros. v. Kansas Cas. & Sur. Co., 149 Minn. 482, 184 N.W. 189, 190 (Minn. 1921). Furthermore, payment of the undisputed amount is consistent with the Minnesota policy of "encouraging insurance companies to properly meet their duty to defend [the] insured against third party claims and minimize unnecessary claims to enforce policy coverage." [**12] Knapp v. Commonwealth Land Title Ins. Co., 932 F. Supp. 1169, 1172 (D. Minn. 1996).

Our opinion in Continental Casualty Co. v. Employers Commercial Union Insurance Co., 476 F.2d 782 (8th Cir. 1973), provides a useful analogy in this case. In Continental, two insurance companies were disputing which one was obligated to the insured and therefore had a duty to defend. The Continental court stated that one of the insurance companies should have defended the suit and then subsequently taken up legal action to determine which company had the obligations. See id. at 784.

Chicago Title had a duty to defend the FDIC by providing the defense or reimbursing the defense fees and costs. Despite Chicago Title's nominal acceptance of the duty, the FDIC was in fact required to defend itself in the lien actions. Chicago Title was then forced by litigation to reimburse the defense costs. This is a breach of the duty to defend. See Brown, 293 N.W.2d at 826. [HN6] When a breach of the duty to defend occurs, the insured "is entitled to [**13] be reimbursed for attorneys fees and costs expended" to force the insurer to pay for the defense. Independent Sch. Dist. No. 697 v. St. Paul Fire and Marine Ins. Co., 515 N.W.2d 576, 581 (Minn. 1994). Pursuant to the finding of breach, the FDIC requested $ 434,384.24 in attorneys' fees and costs for litigating this declaratory judgment action. The district court reduced that amount by 30% to $ 304,068.97. We affirm the district court's discretionary reduction. See Domtar, 563 N.W.2d at 740-41. We also think it is appropriate to further reduce the award by $ 23,100, equaling 70% of the time expended to establish the reasonableness of the lien action fees before the special master. Appellee's Appendix at 59. This amount should not be recoverable since the sole purpose of the hearing was to establish the reasonableness of the fees, which fees were found to have been unreasonably high.

Chicago Title's argument that it is relieved from its breach because the FDIC claimed an unreasonable amount of attorneys' fees and costs--relying on the implied covenant of good faith and fair dealing--is of no avail. It does not, in any event, vitiate the duty to pay [**14] at least what Chicago Title itself considered an unquestionably reasonable amount. Cf. Gopher, 588 N.W.2d 756, 770 (concluding that "an insurer's ability to dispute the reasonableness of attorney fees is diminished when it has improperly declined a tender of defense").

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of attorneys' fees and costs resulting from Chicago Title's breach of its duty to defend. We remand to the district court to award $ 280,968.97 in fees and costs.