LEXSEE

Analysis
As of: Dec 13, 2006

**ALLSTATE INSURANCE COMPANY, Appellee, v. VASQUEZ et al., Appellants**

**No. 60695**

**Court of Appeals of Ohio, Eighth Appellate District, Cuyahoga County**

**74 Ohio App. 3d 564; 599 N.E.2d 756; 1991 Ohio App. LEXIS 2729**

**June 17, 1991, Decided**

**PRIOR HISTORY:** [***1]

Character of Proceeding: Civil appeal from Common Pleas Court; No. 163719.

**DISPOSITION:**

*Judgment affirmed.*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellee insurer brought a declaratory judgment action specifically requesting a determination of whether the insurer owed appellant insureds a duty to defend and indemnify them in a tort claim pursuant to their homeowner's insurance policy. The insureds later appealed a judgment from the Cuyahoga County Common Pleas Court (Ohio) denying their motion to recover attorney fees incurred in their defense of the declaratory judgment.

**OVERVIEW:** The tort claim was brought by parents on behalf of their minor child who sustained injuries on the insureds' property. The insured ran a babysitting business there. The insurer assigned an attorney to undertake the defense of the tort action on behalf of the insureds. In the action for declaratory relief, the insureds filed a counterclaim and third-party complaint against the insurer's sales agent. The trial court found, as a matter of law, that the policy unambiguously excluded coverage. However, the jury found that the agent did bind the insurer to provide coverage for the babysitting services. The court upheld the trial court's denial of attorney fees. Based on the rationale behind awarding attorney fees to insureds, the insurer had to breach its contract by wrongfully or unjustifiably refusing to defend the insureds in a tort action under the policy as a precursor to an award. Because the insurer did not breach the contract, the insureds were not entitled to fees. The insurer in fact undertook the defense of the insureds despite the unambiguous exclusion while simultaneously acting within its right to question its duty by filing a declaratory judgment action.

**OUTCOME:** The court affirmed the judgment of the trial court.

**CORE TERMS:** insured, declaratory judgment action, tort action, tort claim, babysitting, insurer, duty to defend, insured person, matter of law, statutory authorization, award of attorney, wrongfully, declaratory judgment, insurance policy, fees incurred, sub judice, counterclaim, third-party, undertook, undertake

**LexisNexis(R) Headnotes**

***Insurance Law > Claims & Contracts > Policy Interpretation > Plain Language***

[HN1] The construction of written contracts is a matter of law. The plain language of the contract controls.

***Insurance Law > Bad Faith & Extracontractual Liability***
***Insurance Law > Claims & Contracts > Costs & Attorney Fees > Declaratory Judgments***
***Insurance Law > Claims & Contracts > Costs & Attorney Fees > Failure to Defend***

[HN2] Implicit in all the cases dealing with the rights of an insured to recover attorney fees in a declaratory judgment action is that a breach of contract must occur under the policy. As a precursor to the award of attorney fees, an insurance company must breach the contract by wrongfully or unjustifiably refusing to defend its insured in a tort action under a policy.

**COUNSEL:**

*Fredric E. Kramer*, for appellee.

*George V. McCullough*, for appellants.

**JUDGES:**

Krupansky, C.J., Dyke and Nahra, JJ., concur.

**OPINION BY:**

PER CURIAM

**OPINION:**

[*565] [**756] Plaintiff-appellee, Allstate Insurance Company, filed a complaint January 20, 1989 for a declaratory judgment in Cuyahoga County Common Pleas Court case No. 163719, specifically requesting the court to determine whether Allstate owed defendants-appellants Fernando and Rose Vasquez a duty to defend and indemnify them in a tort claim pursuant to their Allstate homeowner's insurance policy. n1 The Vasquezes filed an answer, counterclaim and third-party complaint against the plaintiff's sales agent, John Kipp.

n1 The Vasquezes' homeowner's policy was in force at all times pertinent herein.

The underlying tort claim had been previously filed against the Vasquezes in Cuyahoga County Common Pleas Court case No. 158410 by the Suchans on behalf of their minor child, who apparently [***2] sustained a fractured femur on the Vasquezes' property while in the care of Mrs. Vasquez whose home business was babysitting. It is undisputed by the parties that Allstate assigned an attorney to undertake the defense of the Suchan tort action on behalf of the Vasquezes.

The relevant facts contained in the App.R. 9(A) record follow:

[**757] The pleadings indicate Rose Vasquez admitted she was regularly engaged in the business of day care for children conducted in her home. On or about November 19, 1984, Rose Vasquez was babysitting for a child when the child was injured while in her care and a tort claim filed on the child's behalf by her parents against appellants, the Vasquezes, for $ 125,000.

Thereafter, there were two issues decided in the trial court in the declaratory judgment action in the case *sub judice*, to wit:

1. On the complaint, the trial court found, as a matter of law, that the Allstate homeowner's insurance policy in effect at the time of the accident in November 1984 was unambiguous and specifically *excluded coverage*, since babysitting for compensation was a business activity contemplated by the written exclusion in the policy; and

2. On the counterclaim [***3] and third-party action, the jury, however, found that Allstate's agent, John Kipp, apparently, through verbal assurances to [*566] appellants, "did bind Allstate Insurance Company to provide coverage for the babysitting service being conducted by Mrs. Vasquez."

Thereafter, on June 14, 1990, appellants filed a motion with the trial court to recover attorney fees incurred in their defense of the declaratory judgment from Allstate.

The trial court denied the motion, from which the Vasquezes timely appeal, assigning one error as follows:

"Trial court erred in denying defendants' motion for attorney fees and expenses and denying requests for payment of extraordinary costs."

Appellants' sole assignment of error lacks merit.

Ohio generally follows the "American Rule" regarding recovery of attorney fees by the prevailing party in a civil action, which requires statutory authorization for awarding such fees. *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 558 N.E.2d 49; *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527. An exception to the general [***4] rule by judicial interpretation has developed when an insurer *wrongfully refuses to defend a tort action* brought against its insureds under the policy. See *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555; *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874.

The duty to provide a defense in a tort action against insureds arises when the allegations of the complaint state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy had been pleaded. *Willoughby Hills v. Cincinnati Ins. Co.* (1986), 26 Ohio App.3d 146, 26 OBR 363, 499 N.E.2d 31; see, also, *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 23 OBR 208, 491 N.E.2d 688.

As the Ohio Supreme Court has succinctly stated that the rationale behind allowing attorney fees to the insureds in a declaratory judgment [***5] action is to put the insureds in the same position they would have occupied if the insurer had performed its duty to defend under the policy. *Motorists Mut. Ins. Co. v. Trainor, supra*, 33 Ohio St.2d at 47, 62 O.O.2d at 405, 294 N.E.2d at 878.

The facts in the case *sub judice* clearly indicate Allstate did undertake the defense of the Vasquezes in the Suchan tort action in spite of the fact their written policy precluded liability coverage for conducting a business in the home. The Allstate homeowner's policy provided to the Vasquezes stated on page 21 the following exclusions:

"8. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** pursuits of an **insured person.**

[*567] "* * *

"11. **We** do not cover any liability an **insured person** *assumes* under any *unwritten* contract or agreement. ***We*** *will not cover any contract or agreement in connection with a* ***business*** *of an* ***insured person.***" (Emphasis added.)

[HN1] The construction of written contracts is a matter of law. *Alexander v. Buckeye Pipe* [**758] *Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. [***6] The plain language of the contract controls. *Id.*

From a clear reading of the four corners of the homeowner's policy supplied by Allstate to the Vasquezes, the trial judge concluded as a matter of law Allstate had *no contractual duty to defend* the Vasquezes in the tort action brought by the Suchans. Even the most unsophisticated layman can read the policy exclusions and conclude that a babysitting business or any business conducted in the home was not covered by the Allstate policy. Nevertheless, Allstate undertook the defense of the Suchan tort claim while simultaneously questioning its duty to so do by filing this declaratory judgment action as was its right.

[HN2] Implicit in all the cases dealing with the rights of an insured to recover attorney fees in a declaratory judgment action is that a *breach of contract* must occur under the policy. As a precursor to the award of attorney fees, the insurance company must breach the contract by wrongfully or unjustifiably refusing to defend the insureds in a tort action under the policy. *Motorists Mut. Ins. Co. v. Trainor, supra; Willoughby Hills v. Cincinnati Ins. Co.,* [***7] *supra.*

In *Motorists Mut. Ins. Co. v. Trainor, supra*, 33 Ohio St.2d at 46-47, 62 O.O.2d at 404-405, 294 N.E.2d at 877-878, the Ohio Supreme Court held the insureds, the Trainors, had a right to a "prompt and diligent defense" in a tort claim and stated as follows:

"We determine that Motorists had a duty to defend [in the tort action under the policy], and failed to carry out that duty. It is from this lack of action on the part of Motorists and the declaratory judgment action which it filed, that the trial court and the Court of Appeals allowed the Trainors' expenses, including attorney fees incurred *in the defense of both actions.*" (Emphasis added.)

Allstate did not breach the contract but in good faith undertook to defend the Suchan tort claim. We fail to see how Allstate has done anything wrong or violated any of its insureds' rights in seeking to define its liability by filing a declaratory judgment action. Thus, this declaratory judgment action did not differ in any respects from other civil litigation seeking to interpret contractual [*568] rights or duties in which attorney fees are precluded. Accordingly, [***8] we decline to extend the award of attorney fees to a declaratory judgment action filed on behalf of an insurer beyond its present limitations, requiring a breach of the insurer's duty to defend the insured in a tort claim based upon the policy, in the absence of statutory authorization.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Krupansky, C.J., Dyke and Nahra, JJ., concur.

LEXSEE

Positive
As of: Dec 13, 2006

**American Standard Insurance Company, Appellant, vs. Dang Van Le, Respondent, Truong Huu Do, et al., Defendants, Huong Thi Nguyen, Respondent.**

**CX-95-1239**

**SUPREME COURT OF MINNESOTA**

**551 N.W.2d 923; 1996 Minn. LEXIS 504**

**August 8, 1996, Filed**

**SUBSEQUENT HISTORY:** [**1] As Corrected July 14, 2003.

**PRIOR HISTORY:** Court of Appeals.

**DISPOSITION:** Reversed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer filed a declaratory action to resolve the issue of whether it was required to provide coverage to defendant insured in an underlying personal injury action. The lower court held that the insured was entitled to recover reasonable attorney fees for its defense of the declaratory judgment action. The insurer objected and filed post-trial motions. The court of appeals (Minnesota) affirmed the dismissal of the insurer's action.

**OVERVIEW:** The court reviewed the record and determined that the insurer's post-trial motions were not properly dismissed as untimely. Under Minn. R. Civ. P. 59.03, the insurer's motion for new trial had to be heard within 30 days after notice of filing the motion. The motion was not heard within 30 days because the court administrator changed the hearing date. It was determined that neither the court nor either party requested the hearing extension. Rather, the extension was entered on the volition of the court administrator. Thus, the court held that because the change in hearing date was not brought about by either party, the post-trial motions were timely filed. Additionally, because legal fees were only recoverable where there was a contractual agreement or statute, the insured was not entitled to recover attorney fees incurred in maintaining or defending the declaratory action to determine coverage.

**OUTCOME:** The court reversed the judgment of the appellate court, which affirmed the award of attorney fees to the insured. The insurer was not required to pay attorney fees because the declaratory judgment action did not involve a breach of the insurance contract. Further, the insured's post-trial motions were timely and therefore should not have been dismissed.

**CORE TERMS:** insurer, insured, post-trial, declaratory judgment action, van, administrator, notice, declaratory action, fees incurred, contractual duty, tort action, untimely, good cause, intentionally, rescheduled, truck, statutory authority, breach of contract, duty to defend, recoverable, award of attorney, disbursements, reservation, court of appeals, proof of service, general rule, legal fees, dissenters, entitled to recover, indemnify

**LexisNexis(R) Headnotes**

***Civil Procedure > Pleading & Practice > Pleadings > General Overview***
***Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials***
***Governments > Legislation > Statutes of Limitations > Time Limitations***
[HN1] Minn. R. Civ. P. 59.03 provides that a motion for a new trial must be served within 15 days after service of notice by a party of the filing of the decision or order.

Rule 59.03 also provides that the motion is to be heard within 30 days after such notice of filing, unless the time for hearing is extended by the court within the 30-day period for good cause shown.

***Civil Procedure > Pleading & Practice > Motion Practice > Content & Form***
[HN2] Minn. R. Civ. P. 59.03 does not prescribe the form an extension is to take.

***Civil Procedure > Remedies > Costs & Attorney Fees > General Overview***
***Insurance Law > Claims & Contracts > Declaratory Relief > General Overview***
[HN3] Legal fees are ordinarily not recoverable unless there is statutory authority for it.

***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > American Rule***
***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards***
[HN4] Absent a contractual agreement or statute, a party cannot collect attorney fees.

***Civil Procedure > Declaratory Judgment Actions > State Judgments > General Overview***
***Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards***
[HN5] Attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty or statutory authority exists to support such recovery.

***Civil Procedure > Declaratory Judgment Actions > General Overview***
***Contracts Law > Breach > General Overview***
***Criminal Law & Procedure > Counsel > Right to Counsel > General Overview***
[HN6] The insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some respect--usually by wrongfully refusing to defend the insured.

**SYLLABUS:** An insured is not entitled to recover attorney fees incurred in maintaining or defending an action for declaratory judgment to determine the question of insurance coverage unless the insurer has breached the insurance contract in some respect--usually by wrongfully refusing to defend the insured.

**JUDGES:** Considered and decided by the court without oral argument. COYNE, Justice.

**OPINION BY:** COYNE

**OPINION:** [*923] Considered and decided by the court en banc without oral argument.

OPINION

COYNE, Justice.

Plaintiff American Standard Insurance Company issued its auto policy to defendant Le. Defendants Le, Do, and Do's wife Tran all worked at Monfort Packing Plant in Worthington. As Le and his girlfriend Diep left the plant on November 30, 1993, Do cursed at Le and made an obscene gesture. The two men argued, and Tran began an argument with Diep. Do's tenant and rider, Ms. Nguyen, broke up the altercation, but as the five left the parking lot, Do said he would meet Le later to finish the fight.

[*924] Do, Tran and Nguyen left in Do's pickup truck. Le and Diep followed in Le's van. Whenever Le attempted to pass, Do swerved in front of him until Do stopped on the highway, forcing Le to stop behind him. Tran and Nguyen pulled Le out of [**2] the van and the two men fought until Le sustained a deep stab wound in his right hand. Le leaped back into his van and drove right into Do's pickup. Nguyen, who was standing between the two vehicles, was crushed between them. The impact was sufficient to drive Do's truck forward about 20 feet. Le then backed up, swerved to the right of the pickup, running over Nguyen before he once again hit Do's truck.

A police officer testified that Le had told him at the scene of the collision that he had intentionally struck the pickup and that he had seen Nguyen in front of his van. The officer also stated that the acceleration marks left at the scene "do not show up until the van actually makes contact with the back of the pickup truck and the acceleration marks are still continuing after contact is made." A witness said Nguyen spoke to Le and Le said he told her to move or he might hit her. Le told another officer that he had intended to run into the truck the second time. As a result of these collisions the box of the truck was shoved into the cab.

About a month after the incident, Nguyen told a police investigator that Le told her after he reentered the van that he wanted "to hit [her] with [**3] his van." Le ultimately pled guilty to criminal vehicular operation resulting in great bodily harm.

Huong Thi Nguyen brought an action against Dang Van Le and Truong Huu Do to recover damages for her injuries. American Standard assumed Le's defense in that action pursuant to a reservation of its right to assert that Nguyen's claim was not within the residual liability coverage afforded by its policy. Subsequently, American Standard commenced a declaratory judgment action to resolve the coverage question.

Of course, at the trial of the declaratory action, Le testified that he had not intended to strike Do's truck and that he had not seen Nguyen standing in front of his van. The jury found that Le had not intentionally injured Nguyen when he struck her with his van. On March 10, 1995, the court issued findings of fact, conclusions of law, and order for judgment. Included in the court's findings of fact were the findings that American Standard had "refused to defend or indemnify Defendant Dang Van Le in the personal injury action" and that Le did not intentionally injure Huong Thi Nguyen when he struck her with his van. On the basis of those facts, the court concluded that American Standard [**4] owed Le the duties to defend and indemnify him pursuant to its insurance policy for the claims asserted in Nguyen's action and also that Le was entitled to recover reasonable attorney fees incurred in defense of the declaratory judgment action.

Le served notice of making and filing of the order on American Standard by mail on March 13, 1995, n1 together with his application for costs and disbursements. On March 23rd American Standard objected to Le's taxation of costs and disbursements, and a hearing was set for April 4th but was changed to April 6, 1995 because of counsel's conflicting schedule.

n1 Although notice of the making and filing of the March 10, 1995 order was served, neither the notice nor affidavit of service was filed with the court administrator.

On March 27, 1995, American Standard served and filed motions for amended findings, judgment notwithstanding the verdict or, in the alternative, a new trial. The motions were unaccompanied by a notice of motion, but it appears that the parties anticipated that the post-trial motions were to be heard with the objections to costs and disbursements. On the same day, March 27, the district court administrator issued a notice [**5] of hearing informing counsel that the court had rescheduled the matter previously set for hearing on April 6, 1995 to April 18, 1995 at 11:00 a.m. Counsel for both American Standard and Le were present at the appointed time prepared to argue the post-trial motions as well as the objection to costs and disbursements.

At the hearing counsel for Le and for Nguyen both attacked the post-trial motions on the ground the hearing was untimely. On [*925] May 3, 1995 the court issued its order dismissing American Standard's post-trial motions as untimely heard. In the alternative, the motions were denied except for amendment of the findings of fact to acknowledge that American Standard had undertaken the defense of Nguyen's action subject to a reservation of rights and had retained counsel to represent Le in that action. Despite the dismissal of the motion to amend the findings and conclusions, the court went on to deny the motion, relying on Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824, 827 (Minn. 1989), for its decision that American Standard was obliged to pay the cost of Le's defense of the declaratory action. On appeal the court of appeals affirmed.

Our review here is limited to the question [**6] of the propriety of the award of attorney fees in this declaratory action, but prefatory to addressing that issue we must decide whether American Standard's post-trial motions were properly dismissed as untimely.

Rule 59.03, Minn. R. Civ. P., [HN1] provides that a motion for a new trial must be served within 15 days after service of notice by a party of the filing of the decision or order. It is undisputed that the post-trial motions were served timely. Rule 59.03 also provides, however, that the motion is to be heard within 30 days after such notice of filing, unless the time for hearing is extended by the court within the 30-day period for good cause shown. Inasmuch as the notice of filing was served by mail on March 13, 1995, Monday, April 17, 1995 was the last day on which the motions could be heard absent an extension granted by the court for good cause on or before April 17.

None of the parties requested an extension of the time for hearing, and, according to the trial judge, he did not extend the time. Apparently the hearing was rescheduled by the court administrator without consulting either the judge or any of the parties although the court administrator's notice represented to [**7] the parties that the matter had been "rescheduled by the court." n2

n2 We trust it is not necessary to remind any court administrator that he or she is not the court but only the court's clerk.

The disposition of the problems resulting from the series of post-trial technical defects clearly demonstrates the necessity for counsel--and the court administrator as well--to acquaint themselves with the Rules of Civil Procedure and the General Rules of Practice and to conduct themselves accordingly.

At the hearing on April 18, counsel for Le and Nguyen questioned the court's jurisdiction to hear the post-trial motions, complaining that the hearing was untimely. n3 Apparently, those counsel then proffered the notice of making and filing of the order with proof of service by mail because the court noted that it had not been filed with the court administrator's office. Citing Woodrow v. Tobler, 269 N.W.2d 910 (Minn. 1978), American Standard argued that the hearing was timely because it had been reset to April 18 by the court. Distinguishing Woodrow on the ground that there the judge's unavailability constituted good cause, the judge dismissed the post-trial motions as untimely because [**8] he had been available within the 30-day period for hearing, and there was, therefore, no good cause for an extension of which the judge was not even aware.

n3 We are constrained to comment that "trial by ambush" fell out of favor more than 50 years ago and that not so long ago professional courtesy prompted a lawyer to notify opposing counsel of an intention to attack a proceeding on technical grounds--a custom respectful not only of opposing counsel but also of the financial resources of one's own client.

In the particular circumstances of this case, it seems to us unreasonable to penalize one party for the benefit of another who is also at fault. The setting of the hearing date resulted not merely from the failure of American Standard's counsel to include a notice of motion with his post-trial motion papers but depended as well on the failure of Le's or Nguyen's counsel to file the notice of making and filing order with proof of service. n4 Moreover, although there surely was no judicial determination of good cause, neither [*926] was the setting of the hearing date the product of counsel's unilateral action. United States Leasing Corp. v. Biba Information Processing Servs., Inc., [**9] 489 N.W.2d 231, 232 (Minn. 1992). Rather the hearing was rescheduled beyond the 30-day limitation by the court administrator's unilateral action, and counsel were notified in writing that the hearing had been "rescheduled by the court." Undoubtedly, the defect in the proceeding would have come to light had counsel queried the court about the reason for the resetting, [HN2] but Rule 59.03 does not prescribe the form an extension is to take and it seems to us that counsel for American Standard was justified in assuming that the court had good cause to reschedule the hearing. As a practical matter, a lawyer ought not to be required to initiate an inquiry that might be considered disrespectful of the judge. Therefore, we are of the opinion that American Standard's post-trial motions were improperly dismissed.

n4 Filing the notice and proof of service would have served to advise the court and the administrator's office that the 30-day period for hearing had started to run.

Apparently concerned over the propriety of the dismissal, the district court ruled, in the alternative, that the post-trial motions should be denied, except for the amendment of the findings of fact to reflect American [**10] Standard's assumption of Le's defense in the main action pursuant to a reservation of rights. Unfortunately, the district court refused to amend the conclusion of law awarding Le attorney fees in the defense of the declaratory action, and the court of appeals affirmed.

The seminal case in the recurring skirmishes over liability for attorney fees in declaratory actions to determine questions with respect to insurance coverage is Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966). In Morrison, after Arrow Insurance Company had denied that its policy was in force at the time of the accident and had wrongfully refused to defend its insured, the insured brought a declaratory action against the insurer to determine whether the insurer was bound by the representations of its apparent agent with respect to the reinstatement of an insurance policy. After ruling that the insurer was bound by the representation that the policy had been reinstated, the court addressed the question whether the insured should recover his legal fees incurred in the declaratory judgment action. First the court set out the general rule: [HN3] "Legal fees are ordinarily not recoverable unless there is statutory authority [**11] for it.

> However, this action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory judgment action were damages arising directly as a result of the breach. We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.

Id. at 137-38, 142 N.W.2d at 647 (citations omitted).

That the limited exception to the general rule which was carved out in Morrison "is in fact limited to damages resulting from breach of contract by the insurer's failure to defend" was made quite clear in Abbey v. Farmers Ins. Exch., 281 Minn. 113, 119, 160 N.W.2d 709, 712 (1968). And with a single exception, this court has consistently resisted efforts to expand the Morrison holding to allow collection of attorney fees in actions which do

not involve the insurer's breach of contract by failure to assume the duty to defend. E.g., SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 319 (Minn. 1995); Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49, 54 (Minn. 1979); Rent-A-Scooter, Inc. v. Universal [**12] Underwriters Ins. Co., 285 Minn. 264, 268, 173 N.W.2d 9, 11 (1969).

The sole exception is Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824 (Minn. 1989), which had assumed a very curious posture by the time it reached this court. Iverson, the insured, shot a person who had threatened to kill him. The victim commenced a tort action against Iverson and Iverson tendered defense of the action to his insurer under the terms of his homeowner's policy. The complaint alleged one count of negligence which, if proven, would fall within the scope of Iverson's policy coverage, so there was no question that the insurer had a duty to defend. Id. at 825. The insurer defended the tort action in which the jury ultimately found that Iverson had intentionally [*927] caused bodily injury to the victim but that he was acting in self-defense. The insurer initiated a declaratory judgment action alleging that it had no obligation to defend or indemnify Iverson and asking to be released from any duty to defend. Id.

This court treated the declaratory action as one in which the insurer sought to be excused from any obligation to defend. Having decided that the insurer was obliged to defend up to the time the tort [**13] action was settled, the court saw no reason to reach the coverage issue. Without any articulation of a reason for departing from the rule established in Morrison and, indeed, indicating that it was following Morrison, the court held that the insurer was required to pay the insured's attorney fees incurred in the declaratory judgment action. Id. at 826-27.

The almost cavalier disposition of the attorney fee issue in the majority opinion is, perhaps, explained in the dissent of Justice Simonett, in which two other justices joined. The dissenters were of the opinion that the court should reach the coverage issue. The dissenters would have held that if an insured in self-defense intentionally injures the person threatening his life or property and does so expecting or intending to cause bodily injury to that person, the intentional act exclusion applies to bar insurance coverage for the injury. Id. at 828-29 (Simonett, J., dissenting in part).

With respect to the attorney fee issue, however, the dissenters agreed that the insured should recover his attorney fees under the particular circumstances of Economy Fire. The declaratory judgment action in the Economy Fire case was brought to decide [**14] coverage, but that question necessarily and effectively resolved the issues of underlying tort liability. In those circumstances, the insurer should pay the insured's legal fees "because it would have paid [those same] attorney fees if the tort action which involved the same dispositive fact issue had been tried first; it should pay because it is satisfying its duty to defend on the negligence count in the tort action by litigating that count in the declaratory judgment action." Id. at 830-31 (Simonett, J., dissenting in part).

Subsequent to the Economy Fire decision, this court has twice refused to extend the exception for fees incurred as a direct loss incident to the breach of a contractual duty to defend beyond the facts which prompted recognition of the Morrison v. Swenson exception. As the court commented in Garrick v. Northland Ins. Co., 469 N.W.2d 709, 714 (Minn. 1991), "For over 100 years, the law in Minnesota has been that, [HN4] absent a contractual agreement or statute, a party cannot collect attorney fees." Ruling that Minn. Stat. § 555.08 (1990) could not be extended to provide for attorney fees absent a breach of the contractual duty to defend, we reversed the court of [**15] appeals' award of attorney fees. Most recently, in SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 319 (Minn. 1995), this court once again stated that:

> [HN5] Attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty or statutory authority exists to support such recovery. Morrison v. Swenson, 274 Minn. 127, 137-38, 142 N.W.2d 640, 647 (1966). In this case, recovery is premised on Allied's breach of its contractual duty to defend.

Once again we reiterate that attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty or statutory authority exists to support such an award. Neither Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824 (Minn. 1989), nor Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49 (Minn. 1979), stand for the proposition that the insured is entitled to recover from the insurer the financial burden of defending an action to determine the existence of coverage. [HN6] The insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some [**16] respect--usually by wrongfully refusing to defend the insured. To the extent that prior cases, such as Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824 (Minn. 1989), or Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49 (Minn. 1979), are or can be interpreted as inconsistent with the foregoing rule adopted in Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966), as a limited exception to [*928] the general rule

that legal fees are not recoverable absent statutory authority therefor, they are hereby overruled.

Here the trial court found as fact that American Standard had undertaken the defense of Nguyen's action subject to a reservation of rights and had retained counsel to represent Le, its insured, in that action but incorrectly concluded that American Standard was obliged to pay Le's attorney fees incurred in defense of the declaratory action. We reverse the decision of the court of appeals affirming the award of attorney fees and direct the entry of judgment denying Le an award of attorney fees.

Reversed.

LEXSEE

Caution
As of: Dec 13, 2006

**Rocky Mountain Fire & Casualty Company, Appellant, v. Ralph M. Rose et al., Respondents**

**No. 36668**

**Supreme Court of Washington, Department Two**

**62 Wn.2d 896; 385 P.2d 45; 1963 Wash. LEXIS 406; 1 A.L.R.3d 876**

**September 5, 1963**

**SUBSEQUENT HISTORY:** [***1]

Petition for Rehearing Denied October 3, 1963.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Respondent insured requested payment by appellant insurer under an automobile policy following an accident. The insurer sought a declaratory judgment to determine its liability or duty under the policy. The Superior Court for King County (Washington) held that the insurer was obligated to pay benefits under the policy and awarded the insured attorneys' fees. The insurer challenged the judgment.

**OVERVIEW:** The insured purchased automobile insurance from the insurer's predecessor for his adult daughter's car. The insurer's agent advised the insured how to set up the policy and also informed him when the daughter traded in the car for another that the second was also covered under the policy. The daughter got married and her husband was involved in an accident while driving the car. The agent advised the insured that he was covered under the policy. The trial court ordered that the policy be reformed to add the name of the daughter as an additional named insured and construed to cover her husband. The trial court awarded the insured attorneys' fees. The court affirmed in part and reversed in part and held that (1) the trial court properly found that the agent determined how the policy should be written and caused the insured, alone, to be named as the insured; (2) the trial court erred in awarding the insured attorneys' fees because they were not "costs" under the Uniform Declaratory Judgments Act and were neither statutory fees nor provided for in the policy; and (3) the insurer, as a principal, was bound by its agent's representation that the daughter was covered under the policy.

**OUTCOME:** The court affirmed the trial court's order that the policy be reformed to include the insured's daughter as a named insured under the policy. The court reversed the trial court's award of attorneys' fees to the insured.

**CORE TERMS:** reformation, insured, coverage, insurer, reformed, mutual mistake, named insured, daughter, declaratory judgment, policy of insurance, predecessor, allowance, declaratory, decreed, insurance policy, imputed, traded, rules of law, accountants', automobile insurance, entitled to judgment, contracting parties, assignment of error, apparent authority, insurance contract, written agreement, insurance agent, settlement, prosecuting, instituted

**LexisNexis(R) Headnotes**

***Civil Procedure > Appeals > Standards of Review > General Overview***
[HN1] Where the findings of fact and the judgment of the trial court are supported by the record, the reviewing court will not disturb them.

***Civil Procedure > Declaratory Judgment Actions > State Judgments > Uniform Declaratory Judgment Act***

*Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview*
[HN2] The Uniform Declaratory Judgments Act provides in part as follows: In any proceeding under this chapter, the court may make such award of costs as may seem equitable and just. Wash. Rev. Code § 7.24.100.

*Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview*
[HN3] "Costs" do not include attorneys' fees (other than statutory) or accountants' fees. The term "costs" is synonymous with the term "expense." Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word "costs," in the absence of statute or agreement, does not include counsel fees; in other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.

*Civil Procedure > Remedies > Costs & Attorney Fees > Costs > General Overview*
[HN4] Allowances of attorneys' fees and other items of expense in preparation of trial, such as accountants' fees, will be allowed only in case of agreement between the parties or by virtue of specific authority.

*Civil Procedure > Declaratory Judgment Actions > State Judgments > Uniform Declaratory Judgment Act*
*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards*
*Governments > Courts > Authority to Adjudicate*
[HN5] The court is without power to award attorneys' fees, other than statutory fees, under the provisions of the Uniform Declaratory Judgments Act.

*Contracts Law > Defenses > Ambiguity & Mistake > Mutual Mistake*
*Insurance Law > Claims & Contracts > Contract Formation > Mutual Mistake*
*Insurance Law > Claims & Contracts > Contract Formation > Reformation*
[HN6] The rules of law governing the reformation of written agreements are applicable to the reformation of an insurance policy. An insurance contract is no different from any other contract, when the rules of law governing the reformation of written agreements are to be applied to it. To support a reformation of contract, there must be a showing of either fraud or mutual mistake.

*Contracts Law > Defenses > Ambiguity & Mistake > Mutual Mistake*
*Contracts Law > Formation > Ambiguity & Mistake > Mutual Mistake*
[HN7] If the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred.

*Business & Corporate Law > Agency Relationships > Types > Insurance Agent & Insurance Company*
*Insurance Law > Claims & Contracts > Contract Formation*
*Insurance Law > Industry Regulation > Insurance Company Operations > Representatives > General Overview*
[HN8] The knowledge which an agent acquires while acting as such and within the scope of his authority is imputed to his principal and an insurance company is bound by the acts, contracts, or representations of its agent, which are within the scope of his apparent authority.

*Business & Corporate Law > Agency Relationships > Duties & Liabilities > Authorized Acts of Agents > General Overview*
*Insurance Law > Claims & Contracts > Contract Formation*
[HN9] The principal, rather than the person with whom he deals through an agent, should be held accountable for mistake of the agent committed in the course of the very transaction entrusted to his performance. There is no sound principle, either of law or equity, upon which the insured may be punished for the mistakes of the insurer's agent, so as to relieve the insurer from the liability that he meant to undertake and for which he was paid.

**SUMMARY:**

Appeal from a judgment of the Superior Court for King County, No. 563844, Edward E. Henry, J., entered May 17, 1962. *Affirmed in part; reversed in part.*

Action for a declaratory judgment. Plaintiff appeals from a judgment in favor of the defendants.

**HEADNOTES: [1] Costs -- Attorneys' Fees -- Declaratory Judgments** The "costs" which may be awarded in declaratory judgment proceedings (RCW 7.24.100), do not include attorneys' fees other than statutory fees.

**[2] Insurance -- The Contract -- Agreement to Defend** The liability of an insurance company on that part

of its contract requiring it to defend any suit against the insured within the policy's coverage, does not extend to declaratory judgment actions instituted by the insurance company so as to determine its rights and liabilities under the contract.

**[3] Same -- Contracts -- Reformation -- Grounds** An insurance contract is treated the same as other contracts for reformation purposes, and there must be a showing of either fraud or mutual mistake to support a reformation of such a contract.

**[4] Same -- Agents -- Acts Binding Principal** An insurance company is bound by the acts, contracts or representations of its agent [***2] which are within the scope of his apparent authority; and any knowledge acquired by the agent in the course of such conduct is imputed to the principal.

**[5] Same -- Contracts -- Reformation -- Mutual Mistake** Where the intention of an insurance company, imputed from its agent's acts and representations, was identical with that of a parent and child, *viz.*, that an automobile policy issued by the company would protect both the parent and child as named insureds, the issuance of a policy naming only the parent as a named insured constituted a mutual mistake justifying a reformation of the contract, since the written agreement did not express the identical intentions of the contracting parties.

**COUNSEL:**

*Regal & McDonell*, by *John Patrick Cook*, for appellant.

*Whitmore, Vinton, Powers & Manion, Robert B. Johnson*, and *Brightman & Holm*, for respondents.

**JUDGES:**

Ryan, J. + Ott, C. J., Donworth, Finley, and Hamilton, JJ., concur.

+ Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[***3]

**OPINION BY:**

RYAN

**OPINION:**

[*897] [**46] The appellant, Rocky Mountain Fire & Casualty Company, brought this action for a declaratory judgment to determine its liability or duty under a policy of automobile insurance which had been issued to the respondent, Ralph M. Rose, by its predecessor, the Mayflower Insurance Exchange.

The trial court found that in 1958 respondent Ralph M. Rose consulted one Ronald Smith, an insurance agent for appellant's predecessor company, with offices in Snoqualmie, Washington. As a result of this conference, a policy of automobile insurance upon a 1956 Plymouth automobile, then owned by Mr. Rose, was issued by the company.

On or about September 19, 1959, the respondent Clara Harden, then Clara Rose, daughter of Ralph M. Rose, who was 17 years old, employed full time, and residing in her parents' home, purchased a new 1959 Plymouth automobile on installment contract. Title to this car was taken in the name of Ralph M. Rose, for the purpose of obtaining financing of the balance of the purchase price. On the same day that the car was purchased, Mr. Rose and Clara went to the office of Mr. Smith and advised him of the purchase of this new automobile, and [***4] requested insurance coverage on it. The court made finding of fact No. 6, to which the appellant assigns error. It recites the following:

"That after full disclosure of the facts of the purchase of said automobile to said Ronald Smith, said agent of the plaintiff's predecessor advised defendant Ralph M. Rose and his daughter that said 1959 Plymouth automobile should be added to the existing policy of Ralph M. Rose, which decision was that of said Ronald Smith, and coverage upon said automobile was then entered with the defendant Ralph M. Rose as the only named insured thereon. Clara Rose was listed as a 60% driver of the said car on the policy. EH"

Some months later, Clara decided that she could not meet the payments on her car, because of her anticipated marriage to William Harden. Consequently, an agreement was made between her and Mr. Rose, whereby she traded her [*898] equity in the 1959 Plymouth for a 1953 Ford automobile, title to which was in her father's name and which was listed under the same policy of insurance. The court further found that Mr. Rose informed Mr. Smith of the trade of the two cars and was advised by him that this would make no difference and [***5] that no change was necessary in the policy of insurance.

William Harden and Clara Rose were married on October 17, 1960 and established their own residence a short distance from that of her parents in the city of Snoqualmie, taking the 1953 Ford automobile with them. Although there was testimony that the agent had been informed of Clara's marriage, the court found that neither the appellant nor the agent had been so advised.

On November 30, 1960, William Harden, while driving the 1953 Ford automobile, with the knowledge and consent of his wife, Clara Rose Harden, and with the knowledge of Ralph M. Rose, was involved in an accident resulting in injuries to some of the [**47] respondents, other than the Roses and the Hardens. The court found that within 2 or 3 days after the accident, the appellant was advised by Mr. Rose and Mr. Harden of the accident and the claim of coverage under the policy. Testimony was introduced that the agent then told them, in effect, that they were covered by the policy. The trial judge, in his oral decision, referred to this acknowledgment by the agent as having been undenied.

The trial court entered a declaratory judgment decreeing that the policy [***6] of insurance be reformed to add the name of Clara Rose Harden as an additional named insured, and as so reformed, that it be interpreted and construed to include William Harden, as an additional insured, by reason of his operation of the automobile at the time of the accident, with the permission of a named insured under the policy. The court further awarded the respondents, Rose and Harden, attorneys' fees in the sum of $ 750.

Appellant's first assignment of error is directed to finding of fact No. 6, which is set forth above. A careful examination of the record discloses that this finding is amply supported by the evidence. The testimony of both parties was [*899] to the effect that the father and daughter approached Mr. Smith, the agent, explaining that *they* wanted liability and medical coverage on the 1959 Plymouth. They further disclosed all of the facts relative to ownership of the car. It was only natural that as laymen, uninitiated in the intricacies of insurance contracts, they relied entirely upon the agent to give them the coverage they requested, which was that they both be named as insureds.

The trial court found that the agent, Mr. Smith, determined how [***7] the policy should be written, and that it was he who caused Mr. Rose, alone, to be named as the insured.

". . . We have stated many times that [HN1] where the findings of fact and the judgment of the trial court are supported by the record, this court will not disturb them. *Cuillier v. Coffin*, 57 Wn. (2d) 624, 628, 358 P. (2d) 958 (1961); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454 (1958)." *Port of Seattle v. Blatz*, 59 Wn. (2d) 55, 57, 365 P. (2d) 779 (1961).

See, also, *Delegan v. White*, 59 Wn. (2d) 510, 368 P. (2d) 682 (1962).

Appellant's second and fourth assignments of error pertain to the court's finding and conclusion that the respondents Rose and Harden were entitled to judgment against the appellant in the sum of $ 750 for attorneys' fees. [HN2] The Uniform Declaratory Judgments Act provides in part as follows:

"In any proceeding under this chapter, the court may make such award of costs as may seem equitable and just." RCW 7.24.100.

**[1]** In *Chapin v. Collard*, 29 Wn. (2d) 788, 795, 189 P. (2d) 642 (1948), which was an action under the declaratory judgments act, this [***8] court said, in reference to the section of the act above quoted:

"We have repeatedly held that [HN3] 'costs' do not include attorneys' fees (other than statutory) or accountants' fees. In *Fiorito v. Goerig*, 27 Wn. (2d) 615, 179 P. (2d) 316, we said:

"'The term "costs" is synonymous with the term "expense." Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word [*900] "costs," in the absence of statute or agreement, does not include counsel fees; in other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.

"'We have consistently followed the general rule concerning [HN4] allowances of attorneys' fees and other items of expense in preparation of trial, such as accountants' fees, that such allowances will be allowed only in case of agreement between the parties or by virtue [**48] of specific authority. *State ex rel. Macri v. Bremerton*, 8 Wn. (2d) 93, 111 P. (2d) 612.'"

See, also, *Schoenwald v. Diamond K Packing Co.*, 192 Wash. 409, 421, 73 P. (2d) 748 (1937), and *Beadle v. Barta*, 13 Wn. (2d) 67, 74, 123 P. (2d) 761 (1942). [***9]

In another case brought under the declaratory judgments act, *Seattle First Nat. Bank v. Crosby*, 42 Wn. (2d) 234, 254 P. (2d) 732 (1953), we held that the trial court did not err in denying appellants a reasonable attorneys' fee, but that they were entitled to their statutory costs, citing *Chapin v. Collard, supra.* We must, therefore, conclude that [HN5] the court is without power to award attorneys' fees, other than statutory fees, under the provisions of the declaratory judgments act. Since such fees are not authorized by statute in the instant case, the only remaining question in this respect, then, is whether or not such fees can be based upon the contract of the parties.

The respondents urge that a reasonable attorneys' fee should be allowed because of the appellant's contractual obligation to defend the insured. The insurance policy with which we are here concerned provided in part as follows:

"II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy for coverages A, D and E, the Exchange shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account [***10] thereof, even if such suit is groundless, false or fraudulent; but the Exchange may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"

**[2]** In support of their contention that they are entitled to judgment against the appellant for a reasonable attorneys' [*901] fee, by virtue of the above provision, the respondents cite several authorities which are not in point in the instant case. These cases are distinguishable in that they are based upon the insurer's refusal to defend actions instituted against the insureds. There is no showing in the record before us that the appellant has refused to defend an action against any of the respondents, but only that, by the present action, it is seeking to determine the rights and obligations between the parties. Although no Washington case directly in point has been cited to us, other jurisdictions, when confronted with the same question, have supported the right of an insurer to maintain an action for a declaratory judgment under circumstances comparable to those in the instant case, without subjecting itself to liability for the opposing party's attorneys' fees.

In the case of [***11] *Maryland Cas. Co. v. Sammons*, 63 Ga. App. 323, 327, 11 S. E. (2d) 89 (1940), the court was faced with the same issue as the instant one. It determined that the insurance company was not liable for attorney's fees unless it had acted in bad faith, fraudulently or had been stubbornly litigious, stating:

". . . Every person, natural or artificial, has a right to have his rights under a contract adjudicated, subject to the rule just stated, whether the issues are made affirmatively or defensively, without paying the attorney's fees of the opposite party in such a suit. . . ."

In the case of *Carter v. Virginia Surety Co.*, 187 Tenn. 595, 216 S. W. (2d) 324 (1948), the court said:

"'The suit which occasioned complainant's damage was the defendant's effort to obtain a declaration that, on the facts, it owed him no duty. To hold that such a suit may not be brought without liability for damage in event of failure to prevail, even though in good faith, would go far, and place a penalty on the insurer's access to adjudication of rights not common to other contracting parties or to litigants generally. No case has been cited in support of the proposition. Public policy might lead [***12] the legislature to place [**49] this extra duty on an insurer, assuming its power present, but a Court must find sound legal principle, or at least precedent, and neither is here shown or has been discovered.'"

[*902] See, also, *Standard Surety & Cas. Co. of New York v. Perrin*, 19 So. (2d) 783, (La. App. 1944), and *O'Morrow v. Borad*, 27 Cal. (2d) 794, 167 P. (2d) 483, 163 A.L.R. 894 (1946).

It is our opinion that the court was in error in granting attorneys' fees to the respondents, and this portion of the judgment is reversed, but without prejudice to an allowance of reasonable attorneys' fees in any further action under proper circumstances, and in conformity with the views herein expressed.

The appellant's third assignment of error is that the court erred in concluding that the contract of insurance should be reformed to conform with the objects and purposes for which it was purchased, and that, by such reformation, Clara Rose should be added as a named insured, thereby maintaining the policy in full force and effect and extending its coverage to protect Clara and the estate of her deceased husband against any claims of the other respondents.

**[3]** In [***13] the case of *Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of America*, 189 Wash. 329, 336, 65 P. (2d) 689 (1937), we stated:

[HN6] "The rules of law governing the reformation of written agreements are applicable to the reformation of an insurance policy. An insurance contract is no different from any other contract, when the rules of law governing the reformation of written agreements are to be applied to it. *Bjorklund v. Continental Casualty Co.*, 161 Wash. 340, 297 Pac. 155. . . ."

To support a reformation of contract, there must be a showing of either fraud or mutual mistake. There is no suggestion of fraud in the instant case, so it must be conceded that the only ground for reformation is that of mutual mistake. In the case of *Tenco, Inc. v. Manning*, 59 Wn. (2d) 479, 483, 368 P. (2d) 372 (1962), we stated:

[HN7] ". . . If the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred. *Bergstrom v. Olson* (1951), 39 Wn. (2d) 536, 236 [*903] P. (2d) 1052; *Keesling v. Pehling* (1950), 35 Wn. (2d) 624, 214 P. (2d) 506."

**[4]** **[5]** The trial court found [***14] that it was the intention of the agent and of Mr. Rose and his daughter that the policy would cover and protect both the father and daughter, the same as if they were named insureds. That this is what the agent had in mind is clearly demonstrated by the fact that when the accident was reported to him, he assured Mr. Rose and Mr. Harden that they were protected by the policy as written. When Mr.

Rose and his daughter traded the two cars, they were again advised by the agent that they were both protected by the policy, the agent then being fully aware of the fact that the 1953 Ford was Clara's property. Later, by letter dated February 10, 1961, the appellant advised Mr. Rose that it was cancelling the coverage on the 1953 Ford, effective March 1, 1960, for the reason that it had then learned of the trade of the car, and that by that exchange the interest and equity of Mr. Rose were entirely transferred to Clara, so that he was no longer entitled to insure the vehicle as owner. The position then taken by the company was a direct contradiction of the agent's representation to Mr. Rose and Clara. It is the established rule of law that [HN8] the knowledge which an agent acquires while acting [***15] as such and within the scope of his authority is imputed to his principal and that an insurance company is bound by the acts, contracts, or representations of its agent, which are within the scope of his apparent authority. American Fidelity & Cas. Co. v. Backstrom, 47 Wn. (2d) 77, 287 P. (2d) 124 (1955); Fanning v. Guardian Life Ins. Co. of America, 59 Wn. (2d) 101, 366 P. (2d) 207 (1961).

[**50] In the case of Gaskill v. Northern Assur. Co., 73 Wash. 668, 674, 132 Pac. 643 (1913), this court said:

[HN9] ". . . The principal, rather than the person with whom he deals through an agent, should be held accountable for mistake of the agent committed in the course of the very transaction entrusted to his performance. There is no sound principle, either of law or equity, upon which the insured may be punished for the mistakes of the insurer's [*904] agent, so as to relieve the insurer from the liability which he meant to undertake and for which he was paid. . . ."

Although an exhaustive search has been made, we are unable to find any prior Washington case directly in point. The case of Miller v. United Pac. Cas. Ins. Co., 187 Wash. 629, 60 P. (2d) 714 (1936), wherein [***16] reformation was decreed, appears to be very similar in many respects, and yet it is not identical on its facts. Other cases in which we have approved reformation of insurance policies in order to conform them to the intention of the parties are Robbins v. Milwaukee Mechanics' Ins. Co., 102 Wash. 539, 173 Pac. 634 (1918); and Gaskill v. Northern Assur. Co., supra.

The case of Doyle v. Allstate Ins. Co., 4 Wis. (2d) 411, 90 N. W. (2d) 562 (1958), is almost identical with the instant case. The court there held that a policy of insurance should be reformed where the son purchased a car, but the father co-signed the conditional sale contract and the title to the car was placed in both names, although the son was the sole owner. The insurance agent was told that the son wanted insurance on his car and all facts were disclosed to him. The agent placed the insurance in the name of the father, only. Later the son traded this car for another one, following which he had an accident. Both the accident and exchange of automobiles were reported to the insurer which extended the coverage to the second car. The insurance company disclaimed responsibility, however, on the grounds [***17] that it had no knowledge that the son was the owner.

The court held that the agent's knowledge was that of the insurer, that the policy should be reformed to show the son as the owner of the second car at the time of the accident, although the agent had merely insured the son's first car as a second car under a policy already issued to the father.

See, also, Beach v. United States Fidelity & Guaranty Co., 205 Cal. App. (2d) 409, 23 Cal. Rptr. 73 (1962), and General Ins. Co. of America v. Western Fire & Cas. Co., 241 F. (2d) 289 (1957). These two cases are very similar [*905] on their facts to the instant case, and in each of them the court decreed that an insurance policy issued to a parent should be reformed to add a child as a named insured.

It is our conclusion that the policy of insurance issued by appellant's predecessor should be reformed as decreed by the trial court, and in this respect the judgment is affirmed. That portion of the judgment awarding attorneys' fees to the respondents is reversed. Respondents, having substantially prevailed upon this appeal, shall recover their costs.

LEXSEE

Caution
As of: Dec 13, 2006

**DAVID LITZ et al. v. STATE FARM FIRE AND CASUALTY COMPANY et al.**

**No. 36, September Term, 1996**

**COURT OF APPEALS OF MARYLAND**

**346 Md. 217; 695 A.2d 566; 1997 Md. LEXIS 86**

**June 27, 1997, Filed**

**PRIOR HISTORY:** [***1] Certiorari to the Court of Special Appeals (Circuit Court for Charles County). Robert C. Nalley, JUDGE.

**DISPOSITION:** JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID ONE-HALF BY RESPONDENT AND ONE-HALF BY PETITIONER PAMELA LITZ.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioners, insured husband and insured wife, challenged a decision from the Court of Special Appeals (Maryland), which held in respondent insurer's declaratory judgment action that the insurer had no duty to defend because of the business pursuits exclusion in the homeowner's policy and that the insurer was not responsible for the insured husband's attorneys' fees in defending the declaratory judgment action.

**OVERVIEW:** A child was injured while the insured wife babysat in her home. The insurer sought a declaration that it had no duty to defend the insured wife or the insured husband in a personal injury action filed by the parents of the injured child. The trial court held that the insured wife's babysitting services constituted a business pursuit and that the insured wife and the insured husband were both excluded from coverage. The appellate court affirmed because the event was beyond the scope of coverage, regardless of who participated in the event, and also denied the insured husband attorneys' fees. The court reversed with regard to the insured husband. The court held that the insurer's obligation was several, that the business pursuits exclusion applied separately to each insured, and that the insured wife's excluded activity did not preclude coverage for the insured husband who did not participate in the excluded activity. The court held that the insurer had a duty to defend the insured husband because potentiality of coverage was established by the personal injury complaint and extrinsic evidence and that he was entitled to attorneys' fees for defending the declaratory judgment action.

**OUTCOME:** The court reversed with regard to the insured husband because he did not participate in the excluded activity and was entitled to attorneys' fees. The court affirmed the declaratory judgment as it pertained to the insured wife.

**CORE TERMS:** insured, coverage, declaratory judgment action, pursuit, business pursuit, babysitting, duty to defend, potentiality, insurer, declaratory judgment, underlying tort, insurance policy, bodily injury, defending, fees incurred, co-insured, indemnify, separately, insurance contract, participated, entertaining, construe, severability clause, spouse, extrinsic evidence, insurance policies, liability policy, policy coverage, tort action, third party

**LexisNexis(R) Headnotes**

*Contracts Law > Contract Interpretation > General Overview*
*Contracts Law > Defenses > Public Policy Violations*
*Insurance Law > Claims & Contracts > Policy Interpretation > Entire Contract*
[HN1] In Maryland insurance policies are construed like other contracts. When deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself. An appellate court construes insurance policies as a whole to determine the parties' intentions. An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of the execution.

*Contracts Law > Contract Conditions & Provisions > Indemnity*
*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN2] The duty to defend is broader than the duty to indemnify. The insurer's duty to defend is a contractual duty arising out of the terms of a liability insurance policy.

*Contracts Law > Contract Conditions & Provisions > Indemnity*
*Insurance Law > Claims & Contracts > Premiums > General Overview*
*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN3] The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy considered is most often referred to as liability insurance, it is "litigation insurance" as well, protecting the insured from the expense of defending suits brought against him.

*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN4] The duty to defend exists even though the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment.

*Contracts Law > Contract Conditions & Provisions > Indemnity*
*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN5] An insurer has a duty to defend when there exists a potentiality that the claim could be covered by the policy. Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend. Any potentiality of coverage, no matter how slight, gives rise to a duty to defend. The potentiality rule, in this regard, is perhaps better labeled the "possibility rule," and courts characterize it as such. The defense obligation extends even to those claims filed in bad faith for the sole purpose of raising a potentiality of coverage.

*Evidence > Relevance > Parol Evidence*
*Insurance Law > Claims & Contracts > Contract Formation > General Overview*
*Insurance Law > Claims & Contracts > Policy Interpretation > Parol Evidence > General Overview*
[HN6] A potentiality of coverage is typically established by the allegations in the tort plaintiff's complaint. Sometimes, however, extrinsic evidence may also be used to establish a potentiality of coverage. When extrinsic evidence, but not the allegations of the complaint, establish a potentiality of coverage, the insured may rely on evidence outside of the complaint. The insurer should not be allowed to refuse to defend based solely on allegations in the complaint because the insured is completely at the mercy of the tort plaintiff's pleadings to establish a potentiality of coverage.

*Evidence > Relevance > Parol Evidence*
*Insurance Law > Claims & Contracts > Contract Formation > General Overview*
*Insurance Law > Claims & Contracts > Policy Interpretation > Parol Evidence > General Overview*
[HN7] The insured may rely on evidence outside the four corners of the complaint to establish the potentiality of coverage.

*Contracts Law > Third Parties > Joint & Several Contracts*
*Torts > Procedure > Multiple Defendants > Joint & Several Liability*
[HN8] Unless the insurance policy provides otherwise, an insurer's obligation should be considered several as to each person insured.

*Contracts Law > Third Parties > Joint & Several Contracts*

*Torts > Procedure > Multiple Defendants > Joint & Several Liability*
[HN9] The effect of the severability clause requires that each insured be treated as having a separate insurance policy.

*Insurance Law > Claims & Contracts > Premiums > General Overview*
*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN10] The obligation to defend is contractual and exists because of the agreement made by the insurer and the insured.

*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN11] If there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend. An insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer. Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support the insured's assertion be used to establish a potentiality of coverage under an insurance policy.

*Civil Procedure > Declaratory Judgment Actions > State Judgments > General Overview*
*Insurance Law > Bad Faith & Extracontractual Liability*
*Torts > Damages > Costs & Attorney Fees > General Overview*
[HN12] Contrary to the usual American rule that the prevailing party in litigation may not recover attorneys' fees from the losing party, an insured may recover attorneys' fees incurred due to the insurer's wrongful denial of a duty to defend. This rule applies to attorneys' fees incurred in a declaratory judgment action to determine policy coverage as well as to fees incurred in defending the tort action.

*Civil Procedure > Declaratory Judgment Actions > State Judgments > General Overview*
*Contracts Law > Remedies > Compensatory Damages > General Overview*
*Insurance Law > Claims & Contracts > Costs & Attorney Fees > Declaratory Judgments*
[HN13] An insurer is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend.

*Civil Procedure > Declaratory Judgment Actions > State Judgments > General Overview*
*Insurance Law > Bad Faith & Extracontractual Liability*
*Insurance Law > General Liability Insurance > Obligations > Defense*
[HN14] A declaratory judgment action prior to the underlying tort trial can be both a valuable and appropriate means of resolving questions of policy coverage when the question of policy coverage is independent and separable from the claims asserted in a pending suit by an injured third party. When a question sought to be resolved in the declaratory judgment proceeding would be decided in the pending tort action, however, it is ordinarily inappropriate to grant a declaratory judgment prior to resolution of the underlying tort trial.

**COUNSEL:** ARGUED BY: Stephen P. Fitzgerald (Mudd, Mudd and Fitzgerald, on brief) of La Plata, MD., FOR PETITIONERS.

ARGUED BY: Allan A. Noble (James M. Linsao, Budow and Noble, P.C. on brief) of Bethesda, MD., FOR RESPONDENTS.

**JUDGES:** ARGUED BEFORE: Bell, C.J.; Eldridge, Rodowsky, Chasanow, Karwacki, Raker, and Wilner, JJ. Opinion by Raker, J.

**OPINION BY:** Raker

**OPINION:** [*220] [**567] Opinion by Raker, J.

The primary issue we must decide in this case is whether the "business pursuits" exclusion in a homeowner's liability insurance policy relieves the insurer from its duty to defend an innocent spouse who does not participate in the business pursuit of the other spouse against a suit brought by a third party who allegedly suffered injuries arising [***2] out of the business pursuit.

I.

This appeal arises out of a declaratory judgment action filed by Respondent, State Farm Fire and Casualty Company ("State Farm") to determine its obligation to defend and indemnify Petitioners, David and Pamela Litz, in a pending tort action brought by Russell and Sharon Wright on behalf of their minor child, Stephanie. David Litz and his wife, Pamela Litz, were insured under a homeowner's policy issued by State Farm. The policy

covered damage to the Litz residence and provided personal liability insurance protection. Several provisions in the policy are relevant to the matters in dispute. [*221] Under one such provision, State Farm agreed to defend and indemnify the "insured", n1 as follows:

n1 The Declarations page of the State Farm insurance policy identifies as the named insured: LITZ, DAVID W. & PAMELA J.

COVERAGE L. -- PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of [**568] bodily injury or property damage to which this coverage [***3] applies, we will:

* * * * * *

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. . . .

Another provision, relied on by State Farm to deny coverage, which we refer to as the "business pursuits exclusion," states that liability coverage is excluded for "bodily injury . . . arising out of business pursuits of an insured." Business is defined as "a trade, profession or occupation." The final provision of importance to this case is entitled "Severability of Insurance," which states as follows:

This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

On October 21, 1992, Mr. and Mrs. Wright, on behalf of their minor child Stephanie, filed a complaint for negligence against Pamela and David Litz in the Circuit Court for Charles County. n2 The Wright complaint alleged that on December 31, 1986, while in the care and custody of the Litzes, [*222] Stephanie suffered serious injuries due to the negligence of David and Pamela Litz. n3

n2 Russell and Sharon Wright had previously filed a complaint on their own behalf alleging that they had been damaged by the Litzes' negligence. State Farm settled that claim with the Wrights for $ 8000. Russell and Sharon Wright executed a release of all claims against the Litzes on behalf of themselves only, not on Stephanie's behalf.

[***4]

n3 The depositions taken in connection with the declaratory judgment action establish that when Stephanie was injured, Mrs. Litz had babysat for Stephanie in the Litz home for approximately four months. Stephanie was under Mrs. Litz's care on weekdays between approximately 6:00 a.m. and 4:00 p.m. and Mrs. Litz was paid weekly for her services. Mr. Litz worked for the Washington Metropolitan Area Transit Authority and was rarely at home during the hours that Mrs. Litz cared for Stephanie.

On February 22, 1994, State Farm filed a declaratory judgment action in the Circuit Court for Charles County seeking a declaration that it had no duty to defend or indemnify David Litz and Pamela Litz from the personal injury claim filed against them by the Wrights as parents of their minor daughter, Stephanie. State Farm claimed that the policy provides no insurance coverage for allegations contained in the Wright complaint because Stephanie's injuries had occurred while the Litzes were providing babysitting services. State Farm denied coverage under the "business pursuits" exclusion of the insurance policy. [***5]

The tort case was scheduled for trial on August 3, 1994, but by order of the circuit court dated July 28, 1994, was continued and reset for May 16, 1995, to allow for resolution of the declaratory judgment action. The Litzes requested that the declaratory judgment action be stayed pending final resolution of the minor's tort claim. The circuit court denied this request, and the declaratory judgment case proceeded to trial on January 25, 1995.

The circuit court concluded that "the babysitting services provided by Pamela Litz n4 at the time of the alleged injury . . . constitute a business pursuit as defined in the State Farm policy and as such, the business pursuits exclusion in the State Farm policy is applicable." The court continued: "As a result [*223] of the business pursuits exclusion in the policy there is no coverage for Pamela and David Litz."

n4 The court had previously ruled from the bench that, as a matter of fact, Mr. Litz "was not engaged in any business pursuit out of which this episode arose."

The [***6] Litzes noted a timely appeal to the Court of Special Appeals. That court, by a divided panel, affirmed the judgment of the circuit court in an unreported opinion. The Court of Special Appeals held that the homeowner's policy did not extend coverage to Mr. Litz because "the event itself is beyond the scope of the coverage provided, regardless of who participated in that event." The Court of Special Appeals also affirmed the circuit court's denial of attorneys' fees to Mr. Litz.

This Court granted the Litzes' petition for certiorari to consider whether State Farm owed David Litz, an apparently innocent [**569] spouse, a duty to defend and attorney's fees incurred in this declaratory judgment action. We will also consider whether the circuit court erred as a matter of law in entertaining the declaratory judgment action prior to the conclusion of the underlying tort case. We shall hold that the business pursuits exclusion of the Litzes' homeowner's liability does not exclude coverage for Mr. Litz and that State Farm had a duty to defend him. Consequently, Mr. Litz is entitled to attorney's fees incurred in defending the declaratory judgment action. Finally, we shall hold that the trial court [***7] erred as a matter of law in granting a declaratory judgment prior to resolution of the underlying tort trial.

II.

Mr. Litz contends that the business pursuits exception should not exclude him from coverage under the policy because he did not participate in the business pursuits of his spouse. He argues that the liability coverage under the policy applies separately to each insured and, as such, the business pursuits of his wife do not deprive him of coverage under the policy. Mr. Litz further contends that the trial court erred in denying his motion for attorney's fees because he incurred attorney's fees in defending against a breach of the insurer's duty to defend. Both Mr. Litz and Mrs. Litz also maintain [*224] that the trial court erred in entertaining the declaratory judgment action prior to the resolution of the underlying tort suit.

State Farm disputes the Litzes' interpretation of the business pursuits exclusion. State Farm contends that the exclusion denies coverage to all insureds when the injury arises out of an excluded activity, no matter who actually participated in the activity. Accordingly, State Farm denies that it is liable to Mr. Litz for attorney's fees. It has not, [***8] State Farm continues, breached its duty to defend Mr. Litz against a claim potentially within the policy's coverage because the business pursuits exclusion removes the claim from coverage. State Farm also maintains that the trial court properly entertained the declaratory judgment action prior to the resolution of the underlying tort case because the issues decided in the declaratory judgment action were independent and separate from those to be resolved at the tort trial.

III.

It is well established [HN1] in Maryland that insurance policies are construed like other contracts. "When deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb v. Utica Mutual*, 330 Md. 758, 779, 625 A.2d 1021, 1031 (1993). We construe insurance policies as a whole to determine the parties' intentions. *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508, 667 A.2d 617, 619 (1995). This Court has summarized these principles of construction as follows:

Construction of insurance contracts in Maryland is governed by a few well-established principles. An insurance contract, like any other contract, [***9] is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole. Maryland courts should examine the character of the contract, its purpose, [*225] and the facts and circumstances of the parties at the time of the execution.

*Pacific Indem. v. Interstate Fire & Cas.* 302 Md. 383, 388, 488 A.2d 486, 488 (1985) (citations omitted).

IV.

[HN2] The duty to defend is broader than the duty to indemnify. *Hartford Accident v. Sherwood*, 111 Md. App. 94, 106, 680 A.2d 554, 560, *cert. granted*, 344 Md. 116, 685 A.2d 450 (1996); 7C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4684, at 83 (1979, 1996-97 Supp.). The insurer's duty to defend is a contractual duty arising out of the terms of a liability insurance policy. Judge Eldridge, writing for this Court in *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 409-10, 347 A.2d 842, 851 (1975), said:

[HN3] The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although [**570] the type of [***10] policy here considered is most often referred to as liability insurance, it is "litigation insurance" as well, protecting the insured from the expense of defending suits brought against him.

[HN4] The duty to defend exists "even though 'the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment.'" *Id.* at 408-09, 347 A.2d at 850 (quoting *Burd v. Sussex Mutual Ins. Co.*, 56 N.J. 383, 267 A.2d 7, 10 (N.J. 1970)).

This Court has also held that [HN5] an insurer has a duty to defend when there exists a "*potentiality* that the claim could be covered by the policy." Id. at 408, 347 A.2d at 850 (emphasis in original). Under the potentiality rule, the insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the duty to defend. *Hartford Accident*, 111 Md. App. at 106, 680 A.2d at 560. One commentator has noted:

> [*226] *Brohawn* and its progeny make clear that any potentiality of coverage, no matter how slight, gives rise to a duty to defend. The potentiality rule, in this regard, is perhaps better labeled the "possibility [***11] rule," and courts have characterized it as such. The defense obligation extends even to those claims filed in bad faith for the sole purpose of raising a potentiality of coverage.

Andrew Janquitto, *Insurer's Duty to Defend in Maryland*, 18 U. BALT. L. REV. 1, 13-14 (1988) (footnotes omitted).

[HN6] A potentiality of coverage is typically established by the allegations in the tort plaintiff's complaint. *Brohawn*, 276 Md. at 407, 347 A.2d at 850. Sometimes, however, extrinsic evidence may also be used to establish a potentiality of coverage. *Aetna v. Cochran*, 337 Md. 98, 109, 651 A.2d 859, 865 (1995). When extrinsic evidence, but not the allegations of the complaint, establish a potentiality of coverage, the insured may rely on evidence outside of the complaint. *Id.*, 651 A.2d at 865. Judge Chasanow, writing for the Court in *Cochran*, explained that the insurer should not be allowed to refuse to defend based solely on allegations in the complaint because the insured is completely at the mercy of the tort plaintiff's pleadings to establish a potentiality of coverage. *Id.* at 111, 651 A.2d at 866.

V.

We turn now to determine whether there is a potentiality of coverage [***12] for Mr. Litz under the Litzes' homeowner's policy. The allegations contained in the Wright's complaint alone do not create a potentiality of coverage because those allegations, if proven, would establish that Mr. Litz was engaged in a business pursuit, namely babysitting, and thus excluded from coverage. The inquiry does not end here, however, and these peculiar facts do not necessarily deprive Mr. Litz of a defense. *Cochran* teaches that [HN7] the insured may rely on evidence outside the four corners of the complaint to establish the potentiality of coverage. Here, we look to the Litzes' answer to State Farm's complaint in the declaratory [*227] judgment action. David Litz asserts in the answer that "regardless of whether or not his wife, Pamela Litz, was engaging in a 'business pursuit' out of which the alleged bodily injury arose, that he was never so engaged and as such, the purported exclusion does not apply to him." Furthermore, both Mr. and Mrs. Litz stated in depositions that Mr. Litz was not at home during the hours that Mrs. Litz cared for Stephanie and did not participate in his wife's babysitting activities.

Before we can conclude that there exists a potentiality of coverage for [***13] Mr. Litz, we must interpret the business pursuits exclusion in the policy to determine whether the business pursuits of any insured excludes all insureds from coverage under the policy. The Court of Special Appeals agreed with State Farm's contention that it was not necessary to consider whether the policy applied separately to each insured because "the event itself is beyond the scope of the coverage provided, regardless of who participated in that event." Before we can decide whether the Litzes' extrinsic evidence establishes a potentiality of coverage, we must construe the business pursuits exclusion in the policy to determine whether the Court of Special [**571] Appeals was correct or whether, as Judge Hollander asserted in her dissent, the business pursuits of one insured do not exclude all insureds from coverage under the policy.

A.

The business pursuits exception in the Litzes' insurance policy excluded coverage for injuries arising out of "business pursuits of an insured." We must decide whether the business pursuits of "an" insured were intended to deprive coverage for "all" insureds. We conclude that the business pursuits exclusion in David and Pamela Litz's homeowner's policy [***14] applies separately to each insured such that one insured's excluded activity does not preclude coverage for other insureds who did not participate in the excluded activity. This Court concluded similarly in *St. Paul Fire & Marine Insurance v. Molloy*, 291 Md. 139, 150, 433 A.2d 1135, 1140 (1981).

> [*228] In our opinion, whether an innocent co-insured, notwithstanding his or her spouse's misconduct, can recover under an insurance contract, depends primarily upon whether the parties intended, and thus whether the contract contemplates, the obligations of the co-insureds to be joint or several. To hold otherwise would be to deny the parties to agreements insuring jointly owned property the ability to determine the nature of the co-insureds' contractual interests and obligations.

(citations omitted). *See* D. D'Antonio et al., *Protecting the Innocent*, A.B.A J., Feb. 1997, at 78 (describing "innocent co-insureds" as an insured who suffers a loss due to the other insured's wrongdoing or omission but played no role in it). We agree with the reasoning of Judge Hol-

lander in her dissent to the Court of Special Appeals' opinion. She stated:

> The policy in issue here specifically bars coverage [***15] for bodily injury arising "out of business pursuits of *an insured.*" (Emphasis added). To the extent that Pamela Litz, an *insured*, engaged in a "business pursuit," she is not entitled to coverage with respect to the tort suit. But the policy leaves open the question of whether coverage is barred for *all* policy holders or merely for the particular insured who has breached the insurance contract; the policy does not expressly state that coverage is denied to *all* insureds based on the conduct of "*an* insured." . . . As I read the policy language, its plain meaning leads to the conclusion that *an* insured's business pursuits may result in the denial of coverage to that insured, but not to all other persons insured under the same policy.

*See* Allstate Ins. Co. v. Worthington, 46 F.3d 1005, 1008 (10th Cir. 1995) (construing similar policy language in an exclusion); *McFarland v. Utica Fire Ins. Co.*, 814 F. Supp. 518, 525 (S.D. Miss. 1992), *aff'd*, 14 F.3d 55 (5th Cir. 1994) ("The language of the exclusion withholds coverage for 'an' act committed by 'an' insured, not 'an' act committed by 'any' insured. Hence, one also may reasonably conclude that the exclusion [***16] provision is directed only at the acting insured.")

[*229] Our decision in *St. Paul Fire & Marine Insurance Company v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981) supports this interpretation of the Litzes' policy. In *Molloy*, Charles and Diane Molloy were co-insureds under a fire insurance policy issued by St. Paul. The policy obligated the insureds to use all reasonable means to save and preserve the insured property. Mr. Molloy was alone in the home at the time the Molloy residence caught fire, and he was later charged with arson. St. Paul denied liability for the loss as to both Mr. and Mrs. Molloy because Mr. Molloy intentionally set the house on fire and thus violated the conditions of the policy. *Id.* at 143, 433 A.2d at 1137.

The policy in *Molloy* did not specify whether the insurance was joint or several. We held in *Molloy* that [HN8] unless the insurance policy provides otherwise, an insurer's obligation "'should be considered several as to each person insured.'" *Id.* at 153, 433 A.2d at 1142 (quoting *Howell v. Ohio Casualty Ins. Co.*, 130 N.J. Super. 350, 327 A.2d 240, 243 (N.J. Super. Ct. App. Div. 1974)). The Court summarized:

> We conclude that the trial court correctly instructed [***17] the jury that this insurance contract provides coverage for each of the name insured's interests separately, and [**572] that the alleged incendiary act of Charles does not defeat liability to Diane for her share of the loss. Consequently, Diane is entitled to be compensated for damage to her interest in the property.

*Id.* at 153, 433 A.2d at 1142.

Unlike the insurance policy in *Molloy*, the Litzes' policy contained an explicit severability of insurance clause specifying that the insurance was to apply separately to each insured. This provision is a clear reflection that the parties intended the insurance policy to provide coverage for each named insureds separately. In light of this express severability clause, we construe the business pursuits exception in the Litzes' policy to mean that the business pursuits of "an" insured disqualify only that insured from coverage in the event of property damage or bodily injury resulting from the [*230] business pursuit; other insureds, *i.e.*, those not engaging in a business pursuit, remain covered under the policy.

The Supreme Judicial Court of Massachusetts, in a case involving the interaction of a policy exclusion and a severability clause, [***18] described [HN9] the effect of the severability clause as "requiring that each insured be treated as having a separate insurance policy." *Worcester Mutual Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (Mass. 1986). When we consider Mr. Litz and Mrs. Litz as each having separate insurance policies, we conclude that Mrs. Litz's exclusion from coverage under her policy should not affect Mr. Litz's coverage under his policy. *See* COUCH ON INSURANCE § 23:2 (3d ed. 1996) ("A common provision declares the interests of various insureds to be severable, so that a breach by one does not destroy coverage for all."). Because Mr. Litz has not engaged in any activities excluding him from coverage, he is covered by the policy. *See* Worthington, 46 F.3d at 1009 (holding that co-insured spouse not barred from coverage under homeowner's liability policy when damages caused by husband's assault on a third party are excluded from the policy); *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456, 462 (Kan. 1992) (holding that co-insured parents not barred from coverage under homeowner's liability policy when damages resulting from child's intentional conduct excluded from the policy); *Marnell*, [***19] 496 N.E.2d at 160-61 (holding that co-insured parents not barred from coverage under homeowner's liability policy when damages resulting from child's automobile accident were excluded from the policy); *cf. Wedtech Corp. v. Federal Ins. Co.*, 740 F. Supp. 214, 218-19 (S.D.N.Y. 1990) (holding that severability clause in directors' and officers' insurance permitted coverage for those directors and officers who had not made false representations but policy was voided for the directors and officers who made false representations).

B.

We return now to potentiality of coverage. There exists a potentiality of coverage in this case. Assuming Mr. [*231] Litz was not involved in the excluded activity, this case then is "a suit . . . against an insured for damages because of bodily injury . . . to which this coverage applies," under the terms of the general insuring provisions of his policy. n5 As to Mr. Litz, the suit by the Wrights is a suit for bodily injury free of the business pursuits exclusion, and State Farm has promised to defend him. As we noted in *Brohawn* the [HN10] "obligation [to defend] is contractual and exists because of the agreement made by [the insurer and the insured]. . . [***20] . The promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums." Brohawn, 276 Md. at 408-09, 347 A.2d at 850.

n5 As discussed above, the trial court at the declaratory judgment proceeding found as a fact that "one thing . . . is not in dispute. Mr. Litz, himself, was not engaged in any business pursuit out of which this episode arose or this injury arose." *See supra* note 4.

[HN11] If there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend. *See* Brohawn, 276 Md. at 408, 347 A.2d at 850; Janquitto, *supra*, at 13-14. We noted in Cochran, 337 Md. at 112, 651 A.2d at 866, that

an insured cannot assert a frivolous defense merely to establish a duty to defend [**573] on the part of his insurer. Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support [***21] the insured's assertion be used to establish a potentiality of coverage under an insurance policy.

In this case, Mr. Litz has demonstrated a reasonable potential that the issue triggering coverage, *i.e.,* that he never participated in the babysitting, will be generated at trial. We hold that the possibility that the factfinder may conclude that Mr. Litz was not involved in the babysitting creates a potentiality of coverage and entitles Mr. Litz to a defense in the underlying tort case.

[*232] C.

We next address whether State Farm must pay Mr. Litzes' attorney's fees incurred in defending the declaratory judgment action. [HN12] Contrary to the usual American rule that the prevailing party in litigation may not recover attorneys' fees from the losing party, an insured may recover attorneys' fees incurred due to the insurer's wrongful denial of a duty to defend. Hess v. Board of Educ., 341 Md. 155, 160, 669 A.2d 1352, 1354 (1996). As this Court held in Bankers & Shippers Insurance Company v. Electro Enterprises, 287 Md. 641, 648, 415 A.2d 278, 282 (1980), this rule applies to attorneys' fees incurred in a declaratory judgment action to determine policy coverage as well as to fees [***22] incurred in defending the tort action. The *Electro Enterprises* case, like the one before us, involved a declaratory judgment action initiated by the insurer asking that it be relieved of any obligation to defend the insureds. The Court wrote:

[HN13]

An insurer is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend.

Id., 415 A.2d at 282.

The circuit court concluded that State Farm owed Pamela Litz no duty to defend because her babysitting constituted a business pursuit, and this issue was not raised on appeal. Thus, Mrs. Litz is responsible for her attorney's fees incurred in defending the declaratory judgment action.

State Farm owed Mr. Litz a duty to defend. Thus, the attorney's fees incurred by Mr. Litz in defending against State Farm's declaratory judgment action are fees "incurred by an insured as a result of the insurer's [***23] breach of its contractual obligation to defend the insured against a claim potentially [*233] within the policy's coverage . . . ." Id., 415 A.2d at 282. State Farm is liable for those fees.

VI.

We consider now the second question presented in the petition for certiorari: whether, apart from the circuit court's decision on the merits of the declaratory judgment action, the circuit court erred in entertaining the declaratory judgment action prior to the resolution of the underlying tort trial.

We again turn to Brohawn v. Transamerica Insurance Company, 276 Md. 396, 347 A.2d 842 (1975). In *Brohawn*, Mary Brohawn, the insured, was sued for both assault and negligence arising out of an incident at a nursing home in which Brohawn allegedly hit a nursing home employee. The comprehensive liability sections of Brohawn's homeowner's insurance policy excluded injury caused by the intentional act of the insured. Transamerica Insurance contended that it had no duty to defend due to the intentional act exclusion and sought a

declaratory judgment that Brohawn's acts were intentional. The trial court in *Brohawn* properly denied Transamerica's requested relief because the factual issues [***24] relied upon to deny coverage would be resolved in the underlying tort trial, specifically, whether Brohawn acted intentionally or negligently.

We recognized in *Brohawn* that [HN14] a declaratory judgment action prior to the underlying [**574] tort trial can be both a valuable and appropriate means of resolving questions of policy coverage when the question of policy coverage is "independent and separable from the claims asserted in a pending suit by an injured third party." Brohawn, 276 Md. at 405, 347 A.2d at 848. When a question sought to be resolved in the declaratory judgment proceeding would be decided in the pending tort action, however, it is ordinarily inappropriate to grant a declaratory judgment prior to resolution of the underlying tort trial. *Id.* at 406, 347 A.2d at 849; *see* Allstate Ins. Co. v. Atwood, 319 Md. 247, 252, 254-55, 572 A.2d 154, 157-58 (1990).

[*234] In the case before us, State Farm filed a declaratory judgment action seeking, *inter alia*, a declaration that State Farm was not obligated to indemnify and defend Pamela and David Litz. In its complaint in the declaratory judgment action, State Farm alleged that "David and Pamela Litz were providing care and babysitting [***25] services for Stephanie Wright on a regular basis and had been receiving financial compensation for these services." The complaint also referred to the facts alleged in the complaint in the Wright's underlying tort action. In that complaint, the Wrights alleged that "David and Pamela Litz were babysitting the Minor Plaintiff Stephanie Wright" when she was injured. In the answer to the declaratory judgment complaint, Pamela Litz "denied that the alleged bodily injury arose 'out of business pursuits' of an insured, as the term 'business' is defined in the policy." David Litz "asserted that regardless of whether or not his wife, Pamela Litz, was engaging in a 'business pursuit' out of which the alleged bodily injury arose, that he was never so engaged and as such, the purported exclusion does not apply to him."

At the declaratory judgment trial, State Farm introduced evidence that Mrs. Litz's babysitting constituted a business pursuit. The Litzes countered with evidence that Mrs. Litz had only agreed to babysit as a favor to a neighbor and only for a temporary period of time. The circuit court concluded that Mrs. Litz's babysitting services constituted a business pursuit and, therefore, [***26] the business pursuits exclusion of the policy applied. On that basis, the court declared that "State Farm Fire and Casualty Company is not obligated to defend and/or indemnify Defendants Pamela J. Litz and David W. Litz in the case of Wright v. Litz."

We hold that the circuit court properly entertained the declaratory judgment action as to Pamela Litz. Mrs. Litz did not deny that she was babysitting for Stephanie Wright at the time of the accident. Rather, in defending the declaratory judgment action, she contended that the babysitting did not constitute a business pursuit within the meaning of the policy exclusion. The circuit court concluded that "the babysitting services provided by Pamela Litz at the time of the alleged [*235] injury . . . constitute[] a business pursuit as defined in the State Farm policy," and this issue was not raised on appeal. n6 Thus, we affirm the declaratory judgment as it pertains to Pamela Litz.

n6 We intimate no opinion on whether the circuit court was correct to conclude that the babysitting in this case constituted a business pursuit.

[***27]

We hold that, as to David Litz, the circuit court erred in entertaining a declaratory judgment action prior to the tort trial. The trial court decided an issue in the declaratory judgment action that is necessary to decide in the tort case against Mr. Litz. Specifically, State Farm's complaint in the declaratory judgment action alleges that Mr. Litz, as well as Mrs. Litz, babysat for Stephanie. In his answer, however, Mr. Litz asserted that, even if his wife's babysitting constitutes a business pursuit, he was never engaged in the business pursuit. Thus, the issue of whether Mr. Litz participated in the babysitting, regardless of whether it is classified as a business pursuit, is an issue to be resolved in the underlying tort case. Entertaining the declaratory judgment before the tort trial was error in this case as to Mr. Litz because in order to declare that State Farm had no duty to indemnify or defend Mr. Litz, it must first be established that Mr. Litz participated in the babysitting. As noted above, this is an issue that necessarily will be decided at the tort trial. According [**575] to *Brohawn* and its progeny, this issue is inappropriate for resolution in the declaratory judgment [***28] action prior to the tort trial. n7 Accordingly, we reverse the declaratory judgment as it pertains to David Litz.

n7 We note that had the declaratory judgment action decided only whether the babysitting in this case constituted a business pursuit it may have been appropriate. Whether the babysitting in this case rose to the level of a business pursuit under the terms of the policy would not be relevant to establishing the elements of the Wrights' negligence claim against the Litzes. *See, e.g.,*

*Chantel Associates v. Mt. Vernon*, 338 Md. 131, 149, 656 A.2d 779, 786 (1995) (allowing declaratory judgment action prior to trial to determine dates of lead paint related injuries).

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT [*236] WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID ONE-HALF BY RESPONDENT [***29] AND ONE-HALF BY PETITIONER PAMELA LITZ.