# EXHIBIT A

LEXSEE 2006 MASS LEXIS 678

Analysis
As of: Dec 12, 2006

**JOSEPH WILKINSON & another n1 vs. CITATION INSURANCE COMPANY & another. n2**

n1 Darlene Wilkinson.
n2 Commerce Insurance Company.

**SJC-09683**

**SUPREME JUDICIAL COURT OF MASSACHUSETTS**

***447 Mass. 663; 856 N.E.2d 829; 2006 Mass. LEXIS 678***

**September 6, 2006, Argued**
**November 17, 2006, Decided**

**SUBSEQUENT HISTORY:** As Corrected December 5, 2006

**PRIOR HISTORY:** [**1] Worcester. Civil action commenced in the Superior Court Department on February 19, 2002. The case was heard by Thomas P. Billings, J., on motions for summary judgment, and a hearing on an application for attorney's fees was had before John S. McCann, J. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court. *Wilkinson v. Citation Ins. Co., 2005 Mass. Super. LEXIS 21 (Mass. Super. Ct., 2005)*
*Wilkinson v. Citation Ins. Co., 2004 Mass. Super. LEXIS 245 (Mass. Super. Ct., 2004)*

**HEADNOTES:** Insurance, Homeowner's insurance, Coverage, Insurer's obligation to defend, Construction of policy. Indemnity. Contract, Insurance, Indemnity. Practice, Civil, Summary judgment, Attorney's fees. Words, "Business purpose."

**COUNSEL:** Richard W. Jensen (William A. Schneider with him) for the defendants.

James J. Walsh for the plaintiffs.

The following submitted briefs for amici curiae:

Anna K. Bennett for Massachusetts Insurance Federation, Inc.

David L. Elkind & John A. Gibbons, of the District of Columbia, Martin C. Pentz, Jonathan M. Ettinger, & Karen Crocker for Boston Gas Company.

Guy A. Cellucci & Shane Heskin, of Pennsylvania, & David B. Chaffin for Century Indemnity Company.

Laura A. Foggan & John C. Yang, of the District of Columbia, Richard Riley, & William Mekrut for Complex Insurance Claims Litigation Association.

**JUDGES:** Present: Marshall, C.J., Greaney, Ireland, Cowin, & Cordy, JJ. IRELAND, J. (concurring in part and dissenting in part).

**OPINION BY:** CORDY

**OPINION:**

[*664] CORDY, J. In *Preferred Mut. Ins. Co. v.*

*Gamache, 426 Mass. 93, 686 N.E.2d 989 (1997)* [**2] (Gamache), and its progeny, we articulated an exception to the "American Rule," under which parties to litigation generally bear the expense of their own attorney's fees regardless of the outcome of the case. The Gamache exception allows those who purchase insurance contracts containing a duty to defend provision to recover their attorney's fees when they must resort to litigation against their insurer to enforce that duty. In the present case, we must consider whether to extend that exception to circumstances where the dispute between an insured and an insurer concerns whether a claim falls within the coverage of a policy, that is, whether the insurer has a duty to indemnify the insured for its loss.

For the reasons set forth below, we decline to expand the *Gamache* exception beyond the duty to defend. Consequently, although we affirm summary judgment granted to the plaintiff insureds on the issue of coverage, we reverse the award of attorney's fees to them. n3

n3 We acknowledge the amicus briefs filed by the Complex Insurance Claims Litigation Association; the Massachusetts Insurance Federation, Inc.; Boston Gas Company; and Century Indemnity Company.

[**3]

1. Background. This case arises out of a fire at the home of Joseph and Darlene Wilkinson. The fire broke out in the home's garage and destroyed, among other items, tools and equipment owned by the Wilkinsons but used by their son, Todd, to maintain his racing cars. The Wilkinsons filed a claim under their homeowner's policy with their insurer, Citation Insurance Company. n4 The claim included the racing equipment.

n4 The binder issued to plaintiffs says that the policy is "[i]ssued by Citation Insurance Company." The binder has "Commerce Insurance" printed in bold at the top, with "The Commerce Insurance Company" and "Citation Insurance Company" printed on the next two lines in slightly smaller type. The exact nature of the affiliation between the two is not made clear in the record. The motion judge treated the two as one and the same, and neither party has made an issue of the insurer's identity. We refer to them collectively as Citation.

[*665] A provision in the policy limited coverage for property used for [**4] "any 'business' purpose" to $ 3,000. The policy defined "business" as "trade, profession or occupation." After investigating the Wilkinsons' claims, Citation denied coverage beyond the $ 3,000 limit, concluding that the racing equipment was used for a "'business' purpose" within the meaning of the policy. The Wilkinsons made a written demand under *G. L. c. 93A* and *c. 176D*, alleging that, in denying coverage, Citation had construed the policy incorrectly and engaged in an unfair trade practice. Citation responded with a timely letter denying the allegations. The Wilkinsons then instituted the present action. Their complaint sought a judgment of coverage under the policy, along with damages and attorney's fees under *G. L. c. 93A*. A Superior Court judge heard the case on cross motions for summary judgment, and granted summary judgment for the Wilkinsons on the coverage claim and for Citation on the *G. L. c. 93A* claim.

The Wilkinsons then filed a motion and application for attorney's fees, arguing that the language of *Rubenstein v. Royal Ins. Co., 429 Mass. 355, 708 N.E.2d 639 (1999)*, provided a right of recovery for attorney's fees in any action in which an insured party must resort [**5] to legal action "to obtain the full benefit of his insurance contract." *Id. at 359*, quoting *Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn. 2d 37, 53, 811 P.2d 673 (1991)*. A different Superior Court judge agreed and ordered judgment for attorney's fees in addition to the indemnity amount owed under the policy. Citation appealed from both judgments to the Appeals Court. The Wilkinsons did not appeal from the dismissal of their *G. L. c. 93A* claim. We transferred the case here on our own motion.

2. Undisputed facts. The following facts are undisputed in the summary judgment record. Todd Wilkinson is employed full time as an operator of heavy equipment in the excavating business owned by his father, Joseph. Most of Todd's time outside [*666] of work is devoted to car racing, a pursuit he began in his early teens. Since that time, Todd has taken several specialized training courses in automobile racing and maintenance. Todd races at tracks throughout the northeastern part of the country.

Todd's racing involves many of his friends and

family, who contribute time and effort to help Todd maintain his cars, and who serve as his crew and mechanics during races. In addition [**6] to occasional prize money, Todd also receives two types of sponsorships from local businesses in connection with his racing. One type allows him to use engines and other components in his racing cars, with the businesses still maintaining ownership of the parts. The other provides him with revenue in exchange for advertising painted on the side of the car he is racing. On the advice of his accountant, Todd opened up a separate banking account to hold these and other funds used for racing. Although Todd uses the name "Wilkinson Racing" in his racing activities, he has not organized a corporation, partnership, or other separate entity by that name. The bank account uses his own Social Security number, and the profit and loss from racing are stated on the personal tax return Todd files jointly with his wife.

Todd's racing activities brought him a substantial amount of income in the years before the fire: approximately $ 20,000 in both 1998 and 1999, and over $ 26,000 in 2000. In each of those years, however, the costs of racing exceeded the income it generated, resulting in a net loss for that three-year period of over $ 12,000. On his tax return, Todd treated those amounts in accordance [**7] with the "hobby loss" provisions of the Internal Revenue Code of 1986 (I.R.C.). See *I.R.C. § 183(b) (2000)*. That section allows a taxpayer to offset hobby losses against hobby gains. Any net gain is then taxed at the usual rate for regular income, but a net loss may not be offset against regular income. Accrued hobby losses may only be applied against future hobby gains. This treatment of loss is the opposite of that for "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business," which may be applied to reduce taxable ordinary income for the current year. *I.R.C. § 162(a) (2000)*.

3. Coverage. Citation first asks us to reverse the judge's [*667] determination that the "'business' purpose" coverage limits do not apply to the car racing tools and equipment damaged in the fire.

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991)*, citing [**8] *Mass. R. Civ. P. 56 (c)*, 365 Mass. 824 (1974). We therefore construe the facts in the summary judgment record in the light most favorable to Citation.

Before examining the facts, however, we must first determine the meaning of the relevant contractual provision. This is done "according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed." *Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146, 439 N.E.2d 234 (1982)*, quoting *MacArthur v. Massachusetts Hosp. Serv., Inc., 343 Mass. 670, 672, 180 N.E. 2d 449(1962)*. If some ambiguity remains, "doubts as to the meaning of the words must be resolved against the insurance company that employed them and in favor of the insured." *Cody v. Connecticut Gen. Life Ins. Co., supra*, quoting *August A. Busch & Co. of Mass., Inc. v. Liberty Mut. Ins. Co., 339 Mass. 239, 243, 158 N.E.2d 351 (1959)*. The interpretation of an insurance contract is a question of law. See *Cody v. Connecticut Gen. Life Ins. Co., supra.*

The critical provision here is the $ 3,000 limitation on property "used at any time or in any manner for [**9] any 'business' purpose." The question thus posed is whether Todd Wilkinson's car racing was a "'business' purpose." If so, the equipment he used is subject to the coverage limitation; otherwise, it is not.

The policy gives a brief and general definition of the relevant term, providing only that "'[b]usiness' includes trade, profession or occupation." As these predicate words are not further defined, they add little meaning to the term "business" other than to suggest its use in common parlance, which our cases have taken to be "an activity engaged in for the purpose of gain or profit." *Newell-Blais Post # 443, Veterans of Foreign Wars of the U.S., Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 636, 487 N.E.2d 1371 (1986)*. We so interpret the contract term.

[*668] Citation argues that Todd Wilkinson engages in racing "for the purpose of gain or profit" by reason of the significant amounts of money he received in contributions and prizes, his extensive training, and the sophistication of his crew's operation. Yet none of these standing alone helps differentiate an amateur's hobby from a professional's occupation. Many people undertake competitive activities that consume much time, energy, and money. [**10] Prizes and outside contributions may help defray these costs -- particularly in a pursuit as

expensive as racing cars. For the amateur, though, the "gain or profit" is for the purpose of continued engagement in the pursuit, and not (as in business) vice versa. The amateur may manage his affairs in an orderly and responsible way, much as one would run a business. Indeed, Todd did so, both by keeping a separate accounting of his racing on his tax returns and in opening up a separate bank account for "Wilkinson Racing." This does not of necessity make the activity one for gain or profit.

Citation correctly notes that the fact that Todd reported losses on his racing activities is irrelevant to the determination of a "business purpose." A reported loss does not make a business into a hobby. Nor is the Wilkinsons' subjective belief that Todd's racing was a hobby rather than a business determinative. What does dispel any ambiguity, however, is the tax treatment used consistently by both Todd and his parents. The Wilkinsons never depreciated the value of the equipment as one normally would with business equipment. More important, Todd treated his racing losses under the "hobby loss" provisions [**11] of the Internal Revenue Code, *I.R.C. § 183(b)*, which do not allow for any excess loss (beyond the offset of hobby-related gains) to be offset against ordinary income. The treatment of profit-seeking business activities is just the opposite. See *I.R.C. § 162(a)*.

The motion judge interpreted the terms of the policy to give it a fair and reasonable meaning, correctly noting that "[r]easonable policyholders would not understand the term 'business,' either in customary usage or under the Policy's definition, to apply to the weekend avocation of an otherwise gainfully employed individual." Even viewed in the light most favorable to Citation, the undisputed facts in this case establish that Todd did not at the relevant times race for "gain or profit," that is, [*669] for a "'business' purpose." The Wilkinsons were entitled to a judgment of coverage as a matter of law.

4. Attorney's fees. Citation next challenges the award of attorney's fees to the Wilkinsons. The basis of this award is a question of law, which we consider de novo. See *Anastos v. Sable, 443 Mass. 146, 149, 819 N.E.2d 587 (2004)* ("legal conclusions are reviewed de novo").

"The [**12] usual rule in Massachusetts is that the litigant must bear his own expenses . . . ." *Waldman v. American Honda Motor Co., 413 Mass. 320, 321, 597 N.E.2d 404 (1992)*. n5 This is the so-called "American Rule." In Gamache, we stated an exception to that rule applicable to cases in which an insured successfully establishes an insurer's duty to defend. While subsequent cases have expanded and clarified the exception, see, e.g., *Hanover Ins. Co. v. Golden, 436 Mass. 584, 766 N.E.2d 838 (2002)* (Golden), and *Rubenstein v. Royal Ins. Co., 429 Mass. 355, 708 N.E.2d 639 (1999)* (Rubenstein), we have applied it only in the context of litigation between the insured and the insurer regarding the latter's duty to defend. While the language used in some of our decisions regarding this exception suggested its broader application (as the judge here concluded), we now expressly limit the *Gamache* exception to duty to defend litigation. n6

n5 This rule is of long standing. See, e.g., *Linthicum v. Archambault, 379 Mass. 381, 389, 398 N.E.2d 482 (1979)*; *Creed v. Apog, 377 Mass. 522, 525, 386 N.E.2d 1273 (1979)*; *Broadhurst v. Director of the Div. of Employment Sec., 373 Mass. 720, 721, 369 N.E.2d 1018 (1977)*; *Fuss v. Fuss (No. 1), 372 Mass. 64, 70, 368 N.E.2d 271 (1977)*; *Bournewood Hosp., Inc. v. Massachusetts Comm'n Against Discrimination, 371 Mass. 303, 312-313, 358 N.E.2d 235 (1976)*; *United Tool & Indus. Supply Co. v. Torrisi, 359 Mass. 197, 197-198, 268 N.E.2d 837 (1971)*; *Commissioner of Ins. v. Massachusetts Acc. Co., 318 Mass. 238, 241, 61 N.E.2d 137 (1945)*; *Boynton v. Tarbell, 272 Mass. 142, 144, 172 N.E. 340 (1930)*; *Fuller v. Trustees of Deerfield Academy, 252 Mass. 258, 262, 147 N.E. 878 (1925)*.

[**13]

n6 Based on language in *Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 686 N.E.2d 989 (1997)* (Gamache), and *Rubenstein v. Royal Ins. Co., 429 Mass. 355, 708 N.E.2d 639 (1999)* (Rubenstein), the Appeals Court, in *Safety Ins. Co. v. Day, 65 Mass. App. Ct. 15, 25-26, 836 N.E.2d 339 (2005)*, held to the contrary. We reach a different conclusion.

In Gamache, an insurer refused to defend its insured under a homeowner's liability policy containing a duty to defend, forcing the insured to litigate to establish the duty. We held, "as an exception to our traditional rule disallowing attorney's fees and expenses, that an insured

under a homeowner's policy, like Gamache, is entitled to the reasonable attorney's fees and [*670] expenses incurred in successfully establishing the insurer's duty to defend under the policy." *Id. at 98.* We acknowledged that our holding constituted "a deviation from the general rule denying these costs," *id. at 97* but we considered the deviation justified by "the well-established principle that 'the liability insurer's duty of defense [**14] is so extensive and the burden on the insured of a breach of that duty is likely to be so heavy [that] the insurer should not enjoy the usual freedom to litigate without concern about the possibility of having to pay the [insured's] attorneys' fees.'" *Id. at 96*, quoting *Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1354 (Me. 1996).* The holding, and its supporting logic, focus exclusively on the "duty of defense."

Rubenstein also concerns only the duty to defend. In that case, we considered whether the holding in Gamache should extend beyond homeowner's policies to all forms of liability insurance that include a duty to defend clause. Finding "no sound reason to differentiate between homeowner's insurance and other kinds of liability insurance in applying the rule in Gamache," we concluded that an insured "is entitled to attorney's fees, regardless of which party instituted the declaratory judgment action, whenever the insured establishes that the insurer violated its duty to defend." *Rubenstein, supra at 357, 358.* Thus, we clarified that the Gamache rule applies to particular coverage (the duty to defend) [**15] and not to any particular type of liability policy (homeowner's, business, or some other). Rubenstein makes no reference to any other coverage in the insurance contract, such as the duty to indemnify. n7

n7 We also noted in Rubenstein that the rule in Gamache did not depend on the reasonableness or good faith of the insurer's refusal to defend. *Rubenstein, supra at 359* & n.9.

Taken together, *Gamache* and *Rubenstein* establish that, to be entitled to collect attorney's fees expended in connection with duty to defend litigation, the insured need only show that the insurer was obligated to undertake the defense of the case. This was the circumstance presented in *Golden, supra.* There, the insurer lost a declaratory judgment action (which it had instituted) seeking a ruling that it was not required to provide a defense under the policy after it had paid the policy limits. Because the insured parties prevailed, we concluded that they [*671] were entitled to collect [**16] the attorney's fees expended to establish the insurer's continuing duty to defend them. We reached this conclusion even though the insurer had in fact continued to provide a defense for the insured while contesting its contractual obligation to do so. As in Gamache and Rubenstein, the fee award in Golden, and the reasoning supporting it, related entirely to the duty to defend.

The Wilkinsons make two arguments for extending the Gamache exception to duty to indemnify cases. First they argue that the Gamache line of cases does not distinguish between the duty to defend and the duty to indemnify in any significant way. By that reckoning, the court addressed the duty to defend issue in those cases only because the facts involved such coverage, and not because it intended to draw a distinction between the duty to defend and the duty to indemnify. We disagree.

There is a meaningful difference between an insurer's duty to defend (and an insured's reliance on that duty) and a duty to indemnify. The duty to defend arises in situations involving threatened or actual litigation by a third party, a context in which time is of the essence, and in which cost and complexity [**17] can compound each passing day. By the time the insurer's duty to defend has been established through litigation, the insured may already have been denied much of the benefit and protection of that defense, depriving the insured of the benefit of the bargain and requiring an alternative compensatory measure like attorney's fees. Such is not the case with the duty to indemnify. That duty arises only after the insured's liability has been established and is between the insurer and the insured. The element of time is less critical. n8 Payment of claims does not happen immediately on loss, and both parties expect a reasonable delay during which the loss is investigated and evaluated against the policy coverage. Once the duty to indemnify is established, the policy itself, and not an outside measure like attorney's fees, provides the proper basis for calculating the amount owing. Once that amount is paid, the insured has received the benefit of the policy. That this benefit may in practice be reduced by [*672] attorney's fees is the expected (if difficult) result in a jurisdiction that follows the American Rule. n9

n8 This is not to say that insured parties do not want or need their claims paid in a timely fashion.

[**18]

n9 The dissent's characterization of this result, post at (Ireland, J., concurring in part and dissenting in part), as depriving plaintiffs "of the benefit of the bargain they made with the insurance company" conflates in the term "benefit of the bargain" two costs to an insured that are not the same. The amount recovered on any contract breach (a wrongful refusal to indemnify would be such a breach) is quite different from the cost to the prevailing party of establishing the breach, typically attorney's fees. "The bargain" in an insurance contract is for indemnity. Once that amount is established and paid, the insured party has received the benefit of the bargain. The fees incurred in establishing the recovery are separate. Unless otherwise provided, the rule for allocation of those costs is that each party bears its own. This case is not about the benefit of the bargain. It concerns only the allocation of costs.

The Wilkinsons' second argument for extending attorney's fees awards to coverage litigation relies on language appearing throughout the Gamache line of cases asserting "the [**19] existence of a special relationship between an insured and insurer." See *Gamache, supra at 96*; *Rubenstein, supra at 358*; *Golden, supra at 587*. Because of this "special relationship," the Wilkinsons argue, an insured is unfairly disadvantaged by the need to resort to litigation to enforce coverage. Requiring the insured, after having won on coverage, to bear his own costs "is effectively to deny the insured, the benefit of his bargain." This logic applies, the argument goes, with equal force to the duty to indemnify as to the duty to defend.

The Wilkinsons are correct that litigation costs associated with disputed coverage can consume much of the ultimate award to a successful insured. The coverage becomes, in effect, reduced, and the value of the contract to the insured decreases. Yet the converse is also true: an insurer who successfully litigates a decision to deny coverage also loses contract value because of the need to expend funds to keep from paying for coverage it did not agree to provide. Indeed, one could describe similarly any dispute to which the American Rule applies: one or both parties will come out less than [**20] economically whole, even if that party is successful in court.

No party to insurance or any other contract wants, expects, or bargains for the cost and disturbance of litigation. It is, though, the settled expectation and rule in this Commonwealth that parties bear their own litigation costs. Whether the American Rule [*673] is the best rule or not, it applies across all types of disputes except when, for example, a specific statute (or contract provision) provides otherwise. n10 Any extension of the *Gamache* exception to duty to indemnify cases must rely on some significant distinction between insurance and other contracts. Otherwise, we could not justifiably apply such an exception in insurance cases but not in other contract disputes without drawing into question the continued general applicability of the American Rule. n11

n10 For statutory provisions allowing successful plaintiffs to recover attorney's fees, see, e.g., *G. L. c. 12, § 11I* (actions for violations of Federal and State constitutional rights); *G. L. c. 19A, § 33A* (actions for retaliation against residents or employees of long-term care facilities for filing complaint with ombudsman); *G. L. c. 93A, § 9* (actions for unfair trade practices); *G. L. c. 231, § 6F* (actions "wholly insubstantial, frivolous and not advanced in good faith").

[**21]

n11 The dissent, in arguing that we should expand the exception to include duty to indemnify cases, offers no reason for distinguishing insurance from other types of contracts other than the reasons we also address. Post at (Ireland, J., concurring in part and dissenting in part). It does not, as we think critical, provide a limiting principle that would allow us to expand the Gamache exception without entirely reconsidering the general applicability of the American Rule.

The Wilkinsons suggest that the relative bargaining power of the parties to an insurance contract is a distinguishing feature warranting an exception to the American Rule in insurance cases. They draw our attention to a case decided by the Supreme Court of Appeals of West Virginia, *Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 352 S.E.2d 73 (1986)*

(Hayseeds). That case modified the American Rule in West Virginia to allow for awards of attorney's fees in disputes over the duty to indemnify much like the one at bar. In an extensive discussion, the West Virginia court offers a description of the complicated, [**22] frustrating, and unfortunate experience some policyholders face when making a claim in the face of an insurer that denies coverage. See *id. at 327-328.*

While compelling, particularly on the facts in *Hayseeds*, this description does not establish that there exists in all insurance cases a particular "disparity of bargaining power between company and policyholder" that "make[s] insurance contracts substantially different from other commercial contracts." *Id. at* [*674] *328.* In fact, many types of commercial contracts involving private consumers and corporate enterprises can be said to involve a "disparity of bargaining power." In addition, many insurance contracts and disputes do not involve parties with disparate bargaining power. n12

n12 Two of the amici in this case are a large utility company and its liability insurer, presently embroiled in complicated coverage litigation in the Federal District Court for the District of Massachusetts.

A distinction that does exist between insurance [**23] and other contracts is the comprehensive statutory and regulatory framework under which the insurance industry operates. See generally *G. L. c. 175* (insurance). See, e.g., *G. L. c. 175, §§ 3A-17* (powers and duties of Commissioner of Insurance). The significant involvement of the Commonwealth in ensuring consistency and fairness in contracts of insurance does, in a sense, create a "special relationship" absent from most other types of contracts. It does so, however, in a way that cautions against judicial modification of the relationship by, for example, expanding the Gamache rule. n13 In a field such as insurance, where a comprehensive regulatory scheme prevails, we are hesitant to alter the balance created by that scheme through modification of the common-law framework against which it developed.

n13 We note, as the dissent points out, post at (Ireland, J., concurring in part and dissenting in part), that *Gamache* "explicitly rejected the argument that a statutory provision was necessary for the award of attorney's fees and costs." This discussion of the statutory framework governing the insurance market is not meant to imply that we lack the power to modify the common-law American Rule. Rather, the point is that a court should be all the more deliberate and cautious when asked to modify common-law rules that operate along with comprehensive legislative and regulatory schemes. Our conclusion here is reinforced by such caution.

[**24]

In this case, the parties do not contest the judge's conclusion that the dispute as to coverage was bona fide and not the product of an unfair or abusive trade practice. Yet we are mindful of the concern that denying fee awards in duty to indemnify cases might encourage some insurers to deny coverage (improperly) in cases where they calculate that the policyholder will find litigation too costly. There are, however, other statutory and regulatory avenues available to counter such unfair or abusive tactics. See *G. L. c. 175 § 3A* (delegating broad authority to [*675] Commissioner of Insurance to enforce insurance laws and to promulgate regulations thereunder); 211 Code Mass. Regs. §§ 1.00 (1996) (regulations issued under authority of *G. L. c. 175*). See also *G. L. c. 93A* (consumer action for unfair or abusive trade practices); *G. L. c. 176D* (prohibiting unfair or deceptive trade practices in business of insurance).

Finally, most State courts that have considered whether to create a further exception to the American Rule by extending the entitlement to attorney's fees beyond disputes regarding an insurer's duty to defend have reached the same conclusion [**25] we do here. See *Bausch & Lomb Inc. v. Utica Mut. Ins. Co., 355 Md. 566, 592, 735 A.2d 1081 (1999)* (declining to extend exception to American Rule for duty to defend cases to duty to indemnify cases); *American Standard Ins. Co. v. Dang Van Le, 551 N.W.2d 923, 927 (Minn. 1996)* (insured can recover attorney's fees when insurer wrongfully fails to defend but not when insurer litigates duty to indemnify); *Emmanuel Baptist Church v. Southern Mut. Church Ins. Co., 259 S.C. 223, 233, 191 S.E.2d 255 (1972)* (excluding attorney's fees from damages in insurance cases absent contractual provision); *Reid v. Benz, 2001 WI 106, 245 Wis. 2d 658, 686, 629 N.W.2d 262 (2001)* (requiring insured party to bear her own costs in coverage litigation). n14 Similarly, the

Supreme Judicial Court of Maine has drawn its exception for duty to defend cases in such narrow language as to preclude its extension to the duty to indemnify. See *Gibson v. Farm Family Mut. Ins. Co., 673 A.2d 1350, 1354 (Me. 1996)* (providing fee awards in duty to defend cases while otherwise affirming "usual freedom to litigate without concern about the possibility of having to pay [**26] the other party's attorneys' fees").

n14 Three State Supreme Courts have held otherwise. See *Mountain W. Farm Bur. Mut. Ins. Co. v. Brewer, 2003 MT 98, 315 Mont. 231, 69 P.3d 652 (2003)* (extending exception to American Rule previously applied in duty to defend cases to duty to indemnify cases); *Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn. 2d 37, 811 P.2d 673 (1991)* (granting insured right to recover attorney's fees when insurer refused to defend or pay claim); *Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 352 S.E.2d 73 (1986)* (finding special relationship between insurer and insured and giving policy holder right to recover fees in dispute over coverage).

5. Conclusion. Summary judgment for the plaintiffs on the coverage count is affirmed, the judgment awarding attorney's fees is vacated, and the case is remanded to the Superior Court [*676] for entry of a judgment denying the plaintiffs' motion for attorney's fees. n15

n15 Because we hold that the Wilkinsons were not entitled to attorney's fees, we do not reach Citation's claim that it did not receive proper notice of the claim for fees in count one (coverage) of the complaint. For the same reason, we also deny the Wilkinsons' request for appellate attorney's fees.

[**27]

So ordered.

**CONCUR BY:** IRELAND (In Part)

**DISSENT BY:** IRELAND (In Part)

**DISSENT:**

IRELAND, J. (concurring in part and dissenting in part). I agree with the court's conclusion that summary judgment for the plaintiffs should be affirmed because their insurance policy covers their loss. I write separately because I conclude that there is no logical reason not to extend the exception to the American rule concerning who bears the cost of litigation carved out in the *Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 98, 686 N.E.2d 989 (1997)* (under a homeowner's policy, the insured "is entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy") to insured homeowners who successfully established an insurer's duty to indemnify.

The court correctly points out, ante at 669, that the issue in the Gamache case, as well as in *Rubenstein v. Royal Ins. Co., 429 Mass. 355, 356, 708 N.E.2d 639 (1999)*, and *Hanover Ins. Co. v. Golden, 436 Mass. 584, 766 N.E.2d 838 (2002)*, was limited to whether attorney's fees and costs should be awarded where a duty to defend existed. However, the Rubenstein case set forth a further [**28] explanation of the policy reasons behind the Gamache decision. In particular, as noted by the Superior Court judge, the Rubenstein decision stated that the denial of attorney's fees and costs would deny the insured the benefit of the bargain they made with the insurance company. *Id. at 358*. The court also noted that a special relationship between the insurer and insured exists, id., and that "[t]he promise to defend [and] indemnify, is the consideration received by the insured for payment of the policy premiums" (emphasis added). Id., quoting *Brohawn v. Transamerica Ins. Co., 276 Md. 396, 409-410, 347 A.2d 842 (1975)*. Moreover, if the insured had to bear the cost of litigation concerning coverage, the insured [*677] would be no better off for having a policy. *Rubenstein v. Royal Ins. Co., supra at 357*.

In highlighting these principles, the Rubenstein case quoted, with approval, decisions where State courts awarded the insureds attorney's fees in successful duty to indemnify actions. *Id. at 359, 360*, quoting *Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn. 2d 37, 53, 811 P.2d 673 (1991)*, and *Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 329, 352 S.E.2d 73 (1986)*. [**29] In addition, the court awarded appellate attorney's fees and costs to the plaintiffs, even though they did not request them. *Rubenstein v. Royal Ins. Co., supra at 361*. The principles outlined in the Rubenstein case were reiterated in *Hanover Ins. Co. v. Golden, supra at*

*586-588*, where the court held that insureds could recover attorney's fees and costs after successfully establishing an insurer's duty to defend, even in the absence of a breach of contract. In addition, *Preferred Mut. Ins. Co. v. Gamache, supra at 96-97*, explicitly rejected the argument that a statutory provision was necessary for the award of attorney's fees and costs. See *Hanover Ins. Co. v. Golden, supra at 587 n.3*, citing *Preferred Mut. Ins. Co. v. Gamache, supra.*

In this case, as the Superior Court judge noted, without the award of attorney's fees and costs, the plaintiffs are ultimately worse off for having prevailed on the issue whether the insurer had a duty to indemnify. The costs of litigation have deprived them of the benefit of the bargain they made with the insurance company. Given the principles [**30] articulated in the Gamache, Rubenstein, and Golden cases, I do not see a logical reason not to expand the exception to the American rule to cover the duty to indemnify. Therefore, I respectfully dissent from that part of the court's opinion that vacates the award of attorney's fees and costs to the plaintiffs.